# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
|     Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |
| JEANNE ANNE BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | Adv. Proc. No. 3:20-ap-90002 |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |

---

## HAGH LAW, PLLC AND AFSOON HAGH'S OBJECTION AND RESPONSE TO PLAINTIFF'S EXPEDITED MOTION FOR TURNOVER OF FUNDS

---

## I.    <u>INTRODUCTION</u>

Plaintiff seeks the turnover of funds (hereinafter "the Fitzgerald Fee") that are the rightful property of, and in possession of, third party Hagh Law, PLLC ("Hagh Law"). Plaintiff seeks to do so through an unsworn motion, filed concurrently with an unverified complaint, on less than four (4) business days' notice.

Plaintiff's motion should be denied. Turnover is a permitted remedy only as to undisputed property of a bankruptcy estate. The Fitzgerald Fee is simply not property of the bankruptcy estate. To the extent Plaintiff alleges otherwise, that claim is vigorously

1

disputed by Hagh Law and Afsoon Hagh, and, as a result, turnover is wholly unavailable to the Plaintiff under Section 542.

Plaintiff's own filings conclusively demonstrate that the Fitzgerald Fee is not undisputed property of the bankruptcy estate. Likewise, Plaintiff cites no authority for the proposition that disputed property may be expropriated from a third party via turnover motion, while simultaneously omitting the uniform and overwhelming body of law holding to the contrary.

Plaintiff's turnover motion should be viewed for what it is: an improper attempted end-run around the heightened substantive, jurisdictional, and procedural protections inherent in the actual litigation of a disputed sum. The Plaintiff has only filed its adversary Complaint within the last week and has yet to even serve it. If the Trustee truly believes a defunct law firm is entitled to some portion of a fee that it not only did not earn, but also directly disclaimed, the Trustee should litigate the matter in the normal course in the correct forum.

## II.    FACTUAL BACKGROUND

Debtor Cummings Manookian, PLLC ("Cummings Manookian") was a Tennessee law firm formed by Brian Cummings and Brian Manookian in January 2015.[1] Cummings Manookian focused on Plaintiff's side law with a particular specialty in medical malpractice cases.[2]

---

[1] Declaration of Brian Manookian at Para. 2. Exhibit 1.
[2] *Id.*

In May of 2018, Brian Manookian was asked by the Fitzgerald family to represent them in a case involving the death of their seventeen-year-old daughter in a motor vehicle accident.[3]  Mr. Manookian agreed to do so, and the parties entered into a standard Cummings Manookian engagement agreement retaining him as their lawyer.[4]

The engagement agreement provided that both the client and Cummings Manookian had the independent right to terminate their relationship.[5]  In the event that the client terminated the relationship, the client remained responsible for all costs and expenses incurred prior to the termination, and Cummings Manookian would be entitled to receive a reasonable fee for the work performed based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, and the results obtained.[6]  Conversely, if Cummings Manookian terminated the relationship, the engagement agreement provided that Cummings Manookian would only be entitled to receive advanced costs.[7]

On September 4, 2018, Brian Cummings provided written notice of his voluntary withdrawal as a member of Cummings Manookian.[8]  On October 4, 2018, Brian Cummings formally left the firm as a member, partner, and attorney.[9]  Concurrently, on September 21, 2018, Brian Manookian was suspended from the practice of law with an effective date of

---

[3] Declaration of Brian Manookian at Para. 3.  Exhibit 1.
[4] *Id.*
[5] Declaration of Brian Manookian at Para. 4.  Exhibit 1.
[6] *Id.*
[7] *Id.*
[8] Declaration of Brian Manookian at Para. 5.  Exhibit 1.
[9] *Id.*

December 7, 2018.[10]  Pursuant to applicable Rules of Professional Conduct, he promptly moved to withdraw as counsel in the Fitzgerald matter.[11]

Because Brian Cummings had left the firm, and Brian Manookian was suspended from the practice of law, Cummings Manookian ceased operating as a law firm, and its cases were transferred to other firms and attorneys capable of handling those specific matters.[12]  A number of the medical malpractice cases were taken on by Brian Cummings with Cummings Law given his expertise and experience in the field.[13]

On December 7, 2018, Cummings Manookian gave written notice to the Fitzgeralds of its termination of representation, and to request in writing that they obtain another firm or attorney to represent them.[14]  Pursuant to the terms of the engagement agreement, Cummings Manookian specifically disclaimed any portion of an attorney's fee, but exercised its right to reimbursement for all advanced costs and expenses, which it estimated to be less than three thousand dollars ($3,000).[15]

The Fitzgeralds elected to retain Afsoon Hagh of Hagh Law to pursue their case.[16] Afsoon Hagh has significant experience handling and trying motor vehicle accident cases (such as the Fitzgerald matter) to juries in Tennessee.[17]

---

[10] Declaration of Brian Manookian at Para. 6.  Exhibit 1.
[11] *Id.*
[12] Declaration of Brian Manookian at Para. 8.  Exhibit 1.
[13] *Id.*
[14] Declaration of Brian Manookian at Para. 7.  Exhibit 1.
[15] *Id.*
[16] Declaration of Brian Manookian at Para. 8.  Exhibit 1.
[17] *Id.*

4

At no time during Cummings Manookian's representation of the Fitzgeralds was an offer to settle the matter received.[18]  Cummings Manookian did not effectuate any settlement of the case or the payment of monies to the Fitzgeralds.[19] Cummings Manookian did not secure any recovery for the Fitzgeralds.[20]

Hagh Law subsequently settled the Fitzgerald case on behalf of the Fitzgeralds.[21] The Fitzgeralds paid Hagh Law a percentage of their recovery as compensation for services it provided in securing a recovery.[22]  The Fitzgeralds did not pay any portion of the settlement to Cummings Manookian, and they did not consent to any portion of the settlement funds being paid to Cummings Manookian.[23]  Cummings Manookian has never been in possession of any portion of the Fitzgerald Fee.[24]

## III.   **ARGUMENT**

The Trustee argues that Cummings Manookian is entitled to turnover of the Fitzgerald Fee on contractual, quasi-contractual, and various other grounds.  The Trustee makes those claims despite: (1) the plain language of the engagement agreement precluding Cummings Manookian from receiving any portion of the Fitzgerald Fee; (2) any such controversy between Cummings Manookian and these Defendants consisting of a "non-

---

[18] Declaration of Brian Manookian at Para. 10.  Exhibit 1.
[19] *Id.*
[20] *Id.*
[21] Declaration of Brian Manookian at Para. 11.  Exhibit 1.
[22] *Id.*
[23] *Id.*
[24] *Id.*

5

core" matter within the exclusive jurisdiction of the Tennessee state Courts;[25] and (3) the fundamentally disputed nature of the funds sought to be "turned over."

For purposes of this Response, the final point is dispositive. Plaintiff simply may not seek or receive turnover of property whose ownership is subject to dispute. For that reason alone, Plaintiff's motion must be denied.

A.      **Turnover Claims Only Apply to Property of the Estate.**

The Bankruptcy Code's "turnover" provision (Section 542) is captioned "Turnover of property to the estate" and provides, in relevant part:

> (a)      . . . an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
>
> (b)      . . . an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(a)-(b).

Under Section 542(a), "turnover of property may be sought and obtained by what is in substance a federal right of replevin – a right to recover the estate's property in kind, with the ability to get the value of the property as a substitute." Bell v. Soundview

---

[25] *See,* Collier on Bankruptcy ¶ 542.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("An action for turnover is a core proceeding because it is a substantive right created under federal bankruptcy law. However, where title to the property sought to be turned over to the bankruptcy estate is in dispute, such an action can only constitute, at the most, non-core rather than core proceedings, given that such actions are not true turnover actions."). Defendants reserve and do not waive any rights or ability to challenge jurisdiction, forum, and any other objections they may have to the concurrent adversary proceeding. Defendants have not raised any such objections at this time as they have yet to even be served with the Complaint and summons in this matter.

6

Composite Ltd. (In re Soundview Elite Ltd.), 543 B.R. 78, 97 (Bankr. S.D.N.Y. 2016). Section 542(b), on the other hand, "provides what is in substance a mechanism for monetizing a receivable that is property of the estate." *Id.*

Thus, a trustee may only seek the turnover of property when the property is subject to administration by the trustee (e.g., the trustee may use, sell, or lease the property under § 363) or the property may be exempted by the debtor. "In more simplistic terms, this requirement means that the property to be turned over must be estate property." In re Mobley, 2012 Bankr. LEXIS 5658, *5 (Bankr. N.D. Ohio Dec. 6, 2012) (emphasis added); *see also* In re Richard Osterwalder, 407 B.R. 291, 294 (Bankr. N.D. Ohio 2008) ("Thus, although not specifically stated in § 542, fundamental to the concept of 'Turnover' is that the asset to be turned over must be property of the debtor's bankruptcy estate.") (emphasis added). Similarly, Section 542(b) provides that, subject to the exceptions in § 542(c) and (d) and to offset under § 553, "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b) (emphasis added). When properly invoked, turnover "is simply an effort to recover property – or on property – that is already property of the estate." In re Soundview Elite Ltd., supra, 543 B.R. at 97 (emphases in original).

### B. Disputed Funds, Like the Fitzgerald Fee, are not Property of the Estate.

Turnover under Section 542 "is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." Asousa P'ship v. Pinnacle Foods, Inc. (In re Asousa P'ship), 264 B.R. 376, 384 (Bankr. E.D. Penn 2001). But that is not

7

what Plaintiff is doing here.  As set forth above, Hagh Law vehemently disputes that it owes or is in possession of any money belonging to Cummings Manookian.  Therefore, Plaintiff is not actually seeking property acknowledged to be estate property but is instead seeking turnover of funds involving a disputed contractual or quasi-contractual debt.

It is well settled that "where the amount to be turned over is subject to dispute, an action for turnover is improper."  <u>VML Co., LLC v. Meguir's Inc. (In re VML Co., LLC)</u>, 2017 Bankr. LEXIS 4625, *33 (Bankr. W.D. Tenn Mar. 10, 2017); *see also* <u>In re Mobley, 2012 Bankr. LEXIS 5658, *8-9 (Bankr. N.D. Ohio Dec. 6, 2012)</u> ("[A]n action brought under § 542 for turnover <u>cannot be used as a method to determine disputed rights of parties to property; rather, turnover is a limited remedy for a trustee to obtain what is acknowledged to be property of the bankruptcy estate</u>.") (emphasis added).

Turnover "is not a remedy available to recover claimed debts which remain unliquidated and/or in dispute."  <u>In re Hechinger Inv. Co. of Del., Inc.</u>, 282 B.R. 149, 162 (Bankr. D. Del. 2002) (collecting cases); *see also* <u>In re Asousa P'ship</u>, supra, 264 B.R. at 384 ("[Turnover under § 542] cannot be used to determine the rights of parties in legitimate contract disputes.") *see also* <u>United States v. Inslaw, Inc.</u>, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").

As the Court in <u>In re Soundview Elite Ltd.</u>, supra, explained:

<u>The turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims</u>; when the property in question is not already the property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's

claim of ownership is legitimately debatable.  <u>It is well established that the turnover power may not be used for such purposes.</u>

*Id.* at 97 (emphases added).

Here, Plaintiff is not seeking to recover property that undisputedly belongs to the estate but rather property it alleges is owned by or owed to Cummings Manookian as a result of the breach of some contractual or quasi-contractual duty.  The Hagh Parties dispute that they owe any amount of monies to Plaintiff; and until Cummings Manookian can establish all the elements of its claims, it is not entitled to obtain, in advance, its purported damages by recasting its breach of contract and other state law claims as ones for turnover.  *See* <u>In re VML Co., LLC</u>, supra, at *33 ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").

With respect to Section 542(b), these Defendants dispute that they owe any debt to Cummings Manookian or that they have ever entered into any contract or arrangement with Cummings Manookian that could give rise to a valid or enforceable debt.  On that point, the plain language of § 542(b) "creates a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed the debtor." <u>In re VML Co., LLC</u>, supra, at *33 (citation omitted).

In light of the plain dispute over the funds which Cummings Manookian seeks, Plaintiff's turnover claim cannot succeed as a matter of law and should be denied.

C.  **<u>Plaintiff is attempting an improper end-run around Defendants' jurisdictional, procedural, and substantive objections, safeguards, and defenses.</u>**

9

The timing and substance of Plaintiff's Motion for Turnover reveals its true purpose. Plaintiff seeks to relieve itself of its burden of actually demonstrating entitlement to funds from these Defendants by sufficiently proving up liability and damages in the course of orderly and scheduled litigation.

Instead, Plaintiff has essentially asked this Court for a money judgment against a non-debtor party, by motion, on less than four business days' notice of hearing without the heightened procedural protections afforded by service of a summons and a complaint with the requisite thirty (30) days to response and a schedule of pretrial proceedings. Defendants have been required to quickly marshal resources at significant time and expense for a turnover motion regarding knowingly disputed property that lacks even the slightest shred of bases in law. United States v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute."); *see also* In re VML Co., LLC, 2017 Bankr. LEXIS 4625, *33 (Bankr. W.D. Tenn Mar. 10, 2017) ("[W]here the amount to be turned over is subject to dispute, an action for turnover is improper.").

## IV.    **CONCLUSION**

Because the Fitzgerald Fee is disputed and is not property of the estate, Plaintiff's request for turnover must be denied.

10

Respectfully submitted,

**John Spragens**
*Attorney for Hagh Law PLLC and Afsoon Hagh*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 14, 2020, a true and correct copy of this document was served upon all parties of record requesting notice through the Court's electronic filing system.

**John Spragens**