# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
|     Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:20-ap-90002 |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | |

## JOINT PRETRIAL STATEMENT

Plaintiff, Jeanne Ann Burton, chapter 7 trustee herein ("Plaintiff" or "Trustee"), and Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC ("Defendants")[1] respectfully submit this Joint Pretrial Statement, pursuant to Fed.R.Civ. Pro. ("Rule") 16 and the Preliminary Pretrial Order entered by the Court on January 15, 2020, applicable to this adversary proceeding.

### I.

### PLAINTIFF'S STATEMENT OF THE CASE

The Defendants in this matter are attempting to play a shell game to defraud this Court and the creditors of Cummings Manookian, PLC (the "Debtor"). The Debtor was a law firm formed in 2015 by attorneys Brian Cummings ("Cummings") and Brian Manookian ("Manookian"). The Debtor specialized in representing plaintiffs in personal injury and medical malpractice cases. Cummings and Manookian were the only partners of the Debtor, though

---

[1] Defendant First-Citizens Bank & Trust Company has been dismissed from this action.

Manookian's wife, Defendant Afsoon Hagh ("Hagh"), an attorney who also specialized in personal injury cases, would assist on cases from time to time. In September 2018, Cummings withdrew from the Debtor. Shortly thereafter, in December 2018, Manookian was suspended from the practice of law.

Upon the withdrawal of Cummings and the suspension of Manookian from the practice of law, Hagh continued representing clients of the Debtor in pending cases. She signed pleadings on behalf of the Debtor's clients as a representative of the Debtor; she continued working from the Debtor's offices; she continued utilizing the Debtor's computers, files and equipment; and she continued using the Debtor's email addresses, telephone number, and physical address.

In March 2019, with creditors beginning to circle the Debtor, Hagh formed a new entity, Hagh Law, PLLC ("Hagh Law"). However, the only thing that changed at that juncture was the firm designation on her signature block. She continued representing clients of the Debtor, and she continued using the Debtor's offices, computers, files and equipment, all without compensating the Debtor. Similarly, when Manookian's law license was reinstated, he formed Manookian, PLLC ("Manookian PLLC"). Like Hagh Law, Manookian PLLC provided services to the Debtor's clients, operated from the Debtor's offices, utilized the Debtor's computers, files and equipment, and continued to use the Debtor's email addresses, telephone numbers and physical address. Manookian PLLC did not compensate the Debtor for its use of the Debtor's property.

This scheme came to light when, in August 2019, Hagh and/or Manookian settled the *Fitzgerald v. Osborn* case for just over $4,000,000. Pursuant to an engagement letter between the Fitzgeralds and the Debtor, the Debtor was entitled to receive $1,350,000 in fees. However, Manookian and Hagh directed the Defendant's counsel to pay all fees to Hagh Law, claiming that the Debtor had no legal interest in the fees. The Receiver over the Debtor's business was

2

successful in getting an order restraining the distribution of the fees to Hagh Law. Later, an agreed order was entered in the state court matter allowing Hagh Law a partial distribution of the fees, but requiring it to hold $760,000 in an IOLTA account. Hagh Law violated that order by moving the funds into a regular checking account, at which time the state court ordered Hagh Law to deposit the $760,000 with the court. Hagh Law also violated that court order and never deposited the funds. Ultimately, $715,000 of the *Fitzgerald* fees were deposited with this Court by Hagh Law's depository institution, upon an order of this Court.

The Defendants are attempting to convert the Debtor's accounts receivable, intellectual property, and other property without any compensation to the Debtor or its creditors. They essentially seek to raid the coffers of the Debtor, while leaving the creditors to look to an insolvent corporate shell. The complaint alleges causes of action for conversion, fraudulent transfer (both under state law and the Bankruptcy Code), tortious interference with contract, successor liability / alter ego, turnover and declaratory judgment. The Trustee expects this to be a very fact-intensive matter that will likely require several depositions, written discovery, and subpoenas to third parties. However, the full extent of discovery is unknown at this time because the Debtor has failed to turn over certain documents to the Trustee, which is the subject of a pending motion to compel. The full extent of necessary discovery may be unknown until the Trustee is given full access to the Debtor's documents and records.

3

## II.

## DEFENDANTS HAGH LAW, PLLC AND AFSOON HAGH'S
## STATEMENT OF THE CASE

CM's right to conduct business ceased on the date that Brian Manookian, its sole remaining member, had his licensed suspended. Contrary to the position of the Trustee, no one could continue to conduct any business on CM's behalf after that date. Tennessee's limited liability acts expressly provide that when there is no remaining member of a PLLC, it is deemed to be dissolved, and upon dissolution, it must cease all business operations and can thereafter simply wind up its affairs.

The proof will show that at the point in time of its forced dissolution, CM's only "property" were the contract rights available to it under CM's engagement letters with its clients. The engagement letters at issue in this litigation plainly provide that if CM withdraws from the engagement, then the client only owes CM for any costs advanced. CM had no right to sell its clients or demand consideration beyond reimbursement of costs advanced. For this reason, all of the Trustee's claims fail. No one has interfered with CM's right to recover costs advanced – those still exist. Furthermore, given that Hagh was never a member of CM, there is absolutely no basis to argue that she or Hagh Law are the "alter-ego" or a "mere continuation" of CM. Finally, all of the Trustee's avoidance claims fail because no property of CM was transferred to anyone.

## III.

## DEFENDANT MANOOKIAN PLLC'S STATEMENT OF THE CASE

Manookian PLLC adopts the statement of Afsoon Hagh and Hagh Law, PLLC. Additionally, the proof will show that Manookian PLLC ("MP") has never received any fee in any case in which Cummings Manookian participated. MP has never received or made use of any property belonging to Cummings Manookian. MP is not an appropriate defendant in this

matter, and the Trustee lacks the slightest shred of legal or factual bases to have made her unsupported and unsworn allegations against MP.

If not voluntarily dismissed, MP anticipates filing and prevailing on a Motion for Summary Judgment precisely because no person can offer sworn testimony that supports the Trustee's allegations. The Trustee is wholly unable to identify any specific item, asset, payment, or service received by MP that belongs to Cummings Manookian. Indeed, that is the reason why the allegations against MP are so broad and non-specific. For example, the Trustee alleges that MP has improperly converted Cummings Manookian's "intellectual property" without ever identifying what that intellectual property consists of. The Trustee's other allegations against MP are equally unfounded and incapable of both the specificity and sworn support required to actually maintain an action. MP believes it was named as a Defendant in this matter solely to harass, intimidate, and cause needless expense by Trustee's Counsel, Phillip Young, who holds significant personal animus against Brian Manookian for opposing a fee application Mr. Young is currently pursuing in State Court, adversely to Cummings Manookian, in which Mr. Young seeks to be paid roughly $70,000 of Cummings Manookian fees while simultaneously serving as Counsel to the Trustee in Cummings Manookian's bankruptcy matter.

## IV.

## JOINT STATEMENT OF UNCONTESTED FACTS

1.     Plaintiff Jeanne Ann Burton (the "Trustee") is the duly appointed Chapter 7 Trustee of the Estate of Cummings Manookian, PLC[2] (the "Debtor" or "CM").

2.     The Trustee brought the Complaint in her capacity as trustee, on behalf of the Debtor, for its claims against Defendants.

---

[2] The Debtor is incorrectly named "Cummings Manookian, PLLC" in the petition.

5

3. CM was a law firm founded by Brian Cummings and Brian Manookian ("Manookian") in 2015 that specialized in representing plaintiffs in personal injury and medical malpractice cases.

4. In September 2018, Brian Cummings withdrew from CM.

5. Subsequently, on December 2018, Brian Manookian's law license was temporarily suspended by the Tennessee Board of Professional Responsibility.

6. After the withdrawal of Brian Cummings from CM, Mr. Cummings took over as primary counsel of record (through his new law firm) on certain CM matters.

7. Mr. Cummings and another attorney, Mark Hammervold, assisted with the completion of a number of CM case files.

8. Mr. Cummings, Mr. Hammervold and CM reached an agreement concerning the division of fees between CM and these other attorneys.

9. CM received a portion of the fees of each such CM case.

10. Afsoon Hagh ("Hagh") is a licensed attorney and the wife of Manookian.

11. From December 2018 through at least March 2019, Hagh filed pleadings, under the firm name of CM, in certain cases. For example, in the case of *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311 (the "Fitzgerald Case"), Hagh filed pleadings under the firm designation of CM through February 2019, then filed more pleadings with no firm designation but using a CM email address in March 2019.

12. In the Fitzgerald Case, Brian Manookian filed a motion to withdraw as counsel of record on December 13, 2018.

6

13.     The motion to withdraw filed by Brian Manookian specifically stated, "Afsoon Hagh continues to represent the Plaintiffs".  That motion was signed by Brian Manookian, but included Afsoon Hagh's name, as attorneys for Cummings Manookian.

14.     On March 25, 2019, Afsoon Hagh formed Hagh Law PLLC ("Hagh Law") with the Tennessee Secretary of State.  The information filed with the Secretary of State shows that Hagh Law had one member and its principal place of business was listed as "45 Music SQ W, Nashville, TN 37203 (the same address as the office of CM).

15.     Sometime after March 25, 2019, Hagh began filing pleadings in the Fitzgerald Case and certain other CM cases with a signature block of "Hagh Law PLLC".

16.     On January 14, 2019, Brian Manookian formed Manookian PLLC with the Tennessee Secretary of State, with a delayed effective date of February 1, 2019.  The information filed with the Secretary of State shows that Manookian PLLC had one member and its principal place of business was listed as "45 Music SQ W, Nashville, TN 37203 (the same address as the office of CM).

17.     Sometime after May 17, 2019, after Brian Manookian's law license had been reinstated, Manookian began filing pleadings and/or taking depositions in the Fitzgerald Case and certain other CM cases with a signature block of "Manookian PLLC".

18.     Manookian filed no notice of substitution of counsel, nor did he file any notice of address changes in any of the CM cases in which he was continuing to provide services.

19.     On April 25, 2019, Dean Chase, Sandra Chase and D.F. Chase, Inc. (the "Chase Plaintiffs") filed a motion (the "Receivership Motion") in the Williamson County Circuit Court asking the court to appoint a receiver to assist the Chase Plaintiffs in collecting a $750,000 sanctions award rendered jointly and severally against Brian Manookian, Mark Hammervold, CM

7

and Hammervold PLC.  In the Receivership Motion, the Chase Plaintiffs asked the court to appoint a receiver for the purpose of levying on choses in action belonging to CM and Hammervold PLC.

20.  On June 20, 2019, the Williamson County Circuit Court granted the Receivership Motion and entered an order (the "Receivership Order") appointing Phillip G. Young (the "Receiver") as receiver for the purposes of collecting the CM and Hammervold PLC choses in action.  Among the powers granted by the court to the Receiver was:  "The right to file notices of attorney'*[sic]* liens in any pending lawsuits and to collect payment of any amounts due Cummings Manookian and/or Hammervold PLC, their agents, assignees and assigns, from any pending litigation and to deposit same in a trust account established by the receiver and held for said purposes related to the scope of the receivership. . . ."

21.  The Receiver filed attorneys' liens in the cases listed in Paragraph 23 of the Complaint (the "CM Cases").

22.  The Receiver represents he has received from Brian Cummings CM's portion of fees and expenses in the *Thompson v. Sidrys* case, plus CM's portion of fees and expenses in two cases that settled prior to the Receiver's filing of attorneys' liens (*Hanna* and *Long*).   The Trustee states he has received from Brian Cummings CM's portion of fees and expenses in the *Ruffino v. Archer* case.[3]

23.  Neither Brian Cummings' new law firm nor Mark Hammervold's law firm participated with CM in the representation of the *Fitzgerald* plaintiffs.

24.  Pursuant to the non-confidential settlement agreement, the defendant in the Fitzgerald case agreed to pay the plaintiffs $4,050,000.00 to settle the matter.

---

[3] The Trustee received one-third of the feed in the *Ruffino* case plus one-half of the expense reimbursement in that case.  The Trustee has reserved all rights regarding whether CM is entitled to more than one-half of the expenses in that case, pending further investigation by the Trustee.

25. Brian Manookian, as counsel for Hagh Law, argued, among other things, that CM was entitled to no fees in the Fitzgerald Case for two reasons: (1) because the engagement agreement between CM and the plaintiffs did not allegedly allow CM to receive any fees if it withdrew from representation; and (2) Brian Manookian, on behalf of CM, allegedly sent a letter to the plaintiffs on December 7, 2018 in which CM withdrew from representing the plaintiffs and disclaimed any rights to fees.

26. From March 2019 through the settlement of the Fitzgerald Case in August 2019, Hagh filed pleadings and/or made appearances through her new firm, Hagh Law, and Manookian filed pleadings and/or made appearances through his new firm, Manookian PLLC.

27. The Receiver sought, ex parte, and was granted a temporary restraining order on August 23, 2019 (the "First TRO").

28. The First TRO prevented the defendant in the Fitzgerald Case from delivering any attorneys' fees to Hagh Law.

29. Manookian and the Receiver entered into an Agreed Order Regarding Temporary Restraining Order (the "Agreed Order") on August 29, 2019.

30. Pursuant to the terms of the Agreed Order, Hagh Law was ordered to hold $760,000 (the "Trust Funds") in an IOLTA trust account pending the Receiver's and/or the court's determination of the ownership of the Trust Funds; the remaining attorneys' fees from the Fitzgerald Case (totaling approximately $590,000) were released to Hagh Law.

31. The Receiver later filed a motion asking the court to order that the Trust Funds be paid into the Williamson County Circuit Court.

9

32. On November 8, 2019, Manookian withdrew as counsel for both Hagh and Hagh Law in the Williamson County Circuit Court action, citing a new suspension of his license by the Board of Professional Responsibility.

33. The Williamson County Circuit Court entered an Order Directing Hagh Law PLLC to Deposit Funds into Court on November 12, 2019. Pursuant to the terms of that order, Hagh Law was required to deposit the Trust Funds with the clerk of the Williamson Court Circuit Court by no later than noon on November 12, 2019.

34. The Trust Funds had not been deposited with the court as of November 18, 2019.

35. The Receiver sought and was granted a temporary restraining order (the "Second TRO") on November 18, 2019. Pursuant to the terms of the Second TRO, Afsoon Hagh, Hagh Law and First Citizens were each restrained from moving the Trust Funds or allowing the Trust Funds to be moved, pending further order of the court.

36. On December 10, 2019, the Williamson County Circuit Court held a hearing on the Receiver's request to enjoin the disposition of the Trust Funds. On December 13, 2019, the court entered a Temporary Injunction (the "Injunction") in which it enjoined Hagh, Hagh Law and/or First Citizens from transferring $715,000 of the Trust Funds until January 17, 2020 absent a further order of a court of competent jurisdiction.

37. Both CM and Manookian PLLC were, or are still, 100% owned by Brian Manookian.

38. According to the schedules and claims filed in this bankruptcy, CM has over $1,000,000 in liabilities but only $70,000 in assets.

10

# V.

## JOINT STATEMENT OF CONTESTED FACTS

39. Whether all CM files were outsourced to other counsel after December 2018.

40. Whether CM continued providing legal services to some existing clients until at least March 2019, through Afsoon Hagh.

41. Whether Hagh provided legal services to CM on certain cases after December 2018.

42. Whether Afsoon Hagh, doing business as Hagh Law, continued utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers and email addresses, all to work on CM's client files.

43. What property, if any, did CM own at the time of Manookian's suspension of practice in December 2018?

44. Whether any property of CM was transferred to defendants.

45. Whether Afsoon Hagh or Hagh Law compensated CM for use of CM's property or client files.

46. Whether Manookian PLLC began utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers and email addresses, all to work on CM's client files.

47. Whether Manookian PLLC compensated CM for use of CM's property or client files.

48. Whether the Fitzgerald Case settled on August 19, 2019.

49. Whether, according to the engagement agreement between the plaintiffs and CM dated May 23, 2018, CM was to receive one-third of the fees from the settlement of the Fitzgerald Case.

11

50. Whether, based upon the settlement amount and the engagement agreement, CM was entitled to receive $1,350,000.00 in fees from the Fitzgerald Case.

51. Whether the Receiver made demand on the defendant's counsel in the Fitzgerald case to remit $1,350,000.00 to the Receiver, and whether the defendant's counsel refused, stating that Brian Manookian had directed him to remit the funds to Hagh Law PLLC.

52. Whether the engagement agreement between CM and the Fitzgerald plaintiffs specified that CM was entitled to no attorneys' fees if CM withdrew from representation.

53. Whether CM waived its rights to attorney fees in the Fitzgerald Case to allow the plaintiffs to retain new counsel in the case after Manookian had been suspended by the Board of Professional Responsibility.

54. Whether CM ever formally withdrew as counsel in the Fitzgerald Case, and whether it kept representing the plaintiffs through attorney Afsoon Hagh.

55. Whether, in October 2019, Brian Manookian, as counsel for Hagh Law, informed the Receiver that the Trust Funds had been moved from Hagh Law's IOLTA trust account to a regular checking account in the name of "Afsoon Hagh d/b/a Hagh Law PLLC".

56. Whether, without leave of court, Hagh and/or Manookian transferred the Trust Funds out of the Hagh Law IOLTA trust account.

57. Whether Hagh and/or Manookian were instructed by the Board of Professional Responsibility that it was unethical for Hagh Law to continue holding the Trust Funds in its trust account.

58. Whether the Williamson County Circuit Court issued an oral ruling on November 5, 2019 requiring Afsoon Hagh and/or Hagh Law to deposit the Trust Funds with the clerk of the Williamson County Circuit Court by noon on November 12, 2019.

59. Whether, on November 5, 2019, Brian Manookian, as counsel for Hagh and Hagh Law, informed the court's assistant that he planned to submit a competing order prior to November 12, 2019.

60. Whether Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

61. Whether Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.

62. Whether Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

63. Whether Afsoon Hagh, Hagh Law and/or Manookian PLLC received other transfers from CM for the purposes of hindering, delaying, and defrauding creditors.

64. Whether, at all relevant times, creditors of CM existed who had the right to assert a claim for fraudulent transfer or avoidance based on such transfers.

65. Whether Afsoon Hagh, Hagh Law and/or Manookian PLLC received transfers of property which belonged to CM (including the Property described in the Complaint), whether Afsoon Hagh, Hagh Law and/or Manookian PLLC received such transfers as initial, mediate, or intermediate transferees.

13

66.     Whether Afsoon Hagh and/or Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

67.     Whether Afsoon Hagh and Hagh Law's interference with CM's contract with the Fitzgerald Case plaintiffs continues.

68.     Whether CM and the Trustee have been denied access to $1,350,000 in attorneys' fees to which CM is entitled to recover.

69.     Whether many of the clients and vendors of CM are the same or are vastly similar to the clients and vendors of Hagh Law and Manookian PLLC.

70.     Whether Brian Manookian held 100% of the membership interests of CM, and whether he and Afsoon Hagh were the only attorneys who rendered services on behalf of CM after September 2018.

71.     Whether Brian Manookian is also the 100% owner of the membership interests of Manookian PLLC and whether Afsoon Hagh is the 100% owner of the membership interests of Hagh Law.

72.     Whether Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM.

73.     Whether Hagh Law and/or Manookian PLLC occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

14

74. Whether any funds were transferred to CM as compensation for the transfer of any of these assets, and whether funds have been diverted from CM to Hagh Law.

75. Whether Hagh Law and/or Manookian PLLC provide the exact same services as CM, and to many of the same clients.

76. Whether, for several months, Afsoon Hagh was the only practicing attorney who represented CM's clients and whether Afsoon Hagh continues representing CM's clients through Hagh Law.

77. Whether Brian Manookian and/or Afsoon Hagh made all decisions regarding the transfer or use of CM's assets, the creation of Hagh Law and Manookian PLLC, and the filing of CM's bankruptcy petition.

78. Whether Brian Manookian, the 100% owner of CM, represented Hagh Law in diverting and instructing third parties to divert attorneys' fees owing CM to Hagh Law and/or Afsoon Hagh.

79. Whether, due to the transfer of over $1,000,000 in CM's accounts receivable to Hagh Law and/or Afsoon Hagh, CM could not pay its debts as they came due.

80. Whether Brian Manookian, Afsoon Hagh, Hagh Law and/or Manookian, PLLC sought to shift any valuable assets away from CM and leave all debt in the corporate shell of CM, in an attempt to hinder, delay, and defraud CM's creditors.

## VI.

### JOINT STATEMENT OF CONTESTED LEGAL ISSUES

81. Whether his Court has jurisdiction in the matter pursuant to 28 U.S.C. § 157(b).

82. Whether this adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).

15

83. Whether, as a matter of law, CM was able to conduct business after the date on which the suspension of Manookian became effective.

84. Whether CM was dissolved as of the date Manookian was suspended from practice?

85. Whether CM was authorized to conduct any on-going business after the date Manookian was suspended from practice.

86. Whether CM had any right after the date Manookian was suspended to sell or obtain value for its previously existing client relationships.

87. Whether Hagh was required to file a notice substitution of counsel or notice of address changes in any of the CM cases in which she was continuing to provide services.

88. Whether Afsoon Hagh or Hagh Law were legally required to compensate CM for use of CM's property or client files.

89. Whether Manookian PLLC was required to file a notice substitution of counsel or notice of address changes in any of the CM cases in which Manookian was continuing to provide services.

90. Whether Manookian PLLC was legally required to compensate CM for use of CM's property or client files.

91. Whether the Plaintiff has any right to collect amounts owed to CM beyond any rights that existed as of December 2018.

92. Whether CM is entitled to any compensation other than the cost advances in the CM Cases.

93. Whether funds from the settlement of the Fitzgerald Case that have been released to Hagh Law were, in fact, fees earned by CM.

16

94. Whether Afsoon Hagh, Hagh Law and/or Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.

95. Whether the Trustee is entitled to exemplary and punitive damages for conversion.

96. Whether Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.

97. Whether the Trustee, on behalf of CM, is entitled to avoid, and recover back, all such fraudulent transfers, pursuant to, among other things, Tennessee's law against fraudulent conveyances, T.C.A. § 66-3-101, *et seq.*, and Tennessee's codification of the Uniform Fraudulent Transfers Act, T.C.A. § 66-3-301, *et seq.*, which include strong-arm provisions of the Trustee pursuant to 11 U.S.C. § 544(b).

98. Whether Plaintiff is entitled to avoid, and recover back, on behalf of CM, all such fraudulent transfers, pursuant to, among other things, the United States Bankruptcy Code's Section prohibiting fraudulent transfers, 11 U.S.C. § 548.

99. Whether, pursuant to 11 U.S.C. §§ 550 and 551, Plaintiff is entitled to recover back the avoided property or the value thereof, and such avoidances are recovered for the benefit of the estate, and whether the Trustee is further entitled to recover pre- and post-judgment interest, attorneys' fees, and the costs of this action.

100. Whether CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case based upon an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.

101. Whether Afsoon Hagh and Hagh Law's alleged interference with the contract between CM and the Fitzgerald Case plaintiffs is improper and, whether, as a result, the Plaintiff,

on behalf of CM, has incurred damages in an amount of $1,350,000, plus pre- and post-judgment interest, attorneys' fees and the costs of this action.

102. Whether Hagh Law, Manookian PLLC and CM are all one and the same entity, and Hagh Law and/or Manookian PLLC are a mere continuation of CM.

103. Whether Plaintiff is entitled to a judgment against Hagh Law and Manookian PLLC, jointly and severally, in the full amount of the indebtedness owed by CM, plus all attorneys' fees and costs incurred by the Trustee and the estate for the pursuit of this action, because Hagh Law and Manookian PLLC are nothing more than a mere continuation and alter ego of CM.

104. Whether Plaintiff is entitled to turnover of $715,000 held by the Clerk of this Court pursuant to 11 U.S.C. §542.

105. Whether Plaintiff is entitled to the turnover of an additional $635,000 from Hagh Law and/or Afsoon Hagh pursuant to 11 U.S.C. §542.

106. Whether CM has a contractual and/or equitable right to payment of fees from the Fitzgerald Case in the amount of $1,350,000.

107. Whether, pursuant to 11 U.S.C. §541 and Rule 7001 of the Rules of Bankruptcy Procedure, the Court can determine the extent of the estate's interest in property.

108. Whether CM has a legal and/or equitable interest in the attorneys' fees generated by each of the CM Cases, listed in the Complaint.

109. Whether the Court should determine the extent of CM's portion of the fees and expenses generated by each of the CM cases.

110. Whether the Court should find that this estate, and not Afsoon Hagh, Hagh Law or Manookian PLLC, is entitled to receive CM's portion of fees.

18

RESPECTFULLY SUBMITTED:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6008
Email: phillip@thompsonburton.com

Special Counsel for Plaintiff

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Glenn B. Rose
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
Tel: (615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

Attorneys for Defendants Afsoon Hagh and Hagh Law, PLLC

/s/ John Spragens
John Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.com

Attorneys for Defendant Manookian PLLC

19