**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
|     **Debtor.** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **BRIAN CUMMINGS,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Adv. Proc. No. 3:23-ap-90036** |
| | ) | |
| **BRETTON KEEFER; JEANNE** | ) | |
| **BURTON, TRUSTEE; and AFSOON** | ) | |
| **HAGH,** | ) | |
|     **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT BRETTON KEEFER'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brian Cummings respectfully submits this Response in Opposition to Defendant Bretton Keefer's Motion for Summary Judgment. Contrary to Defendant Keefer's claim, there is no ruling in this case mandating dismissal of Defendant Keefer as a party, there is no express or implied provision in the applicable engagement letter forfeiting Plaintiff's right to be compensated for his work on Defendant Keefer's behalf, and there is no prohibition against *quantum meruit* claims in attorney's fee disputes involving written fee agreements. Therefore, this Court must deny Defendant Keefer's Motion in its entirety, as Defendant Keefer is not entitled to judgment as a matter of law.

**Statement of Facts**

Plaintiff Brian Cummings filed this action for payment of attorney's fees for legal services he provided to Defendant Bretton Keefer in a lawsuit seeking damages for the wrongful death of Defendant Keefer's mother, Chesta Shoemaker. The lawsuit filed on Defendant Keefer's behalf was *Bretton Keefer, as surviving adult son and next-of-kin of his deceased mother, Chesta*

1

*Shoemaker v. Vanderbilt University Medical Center and Dr. Gretchen Edwards*, Case No. 19C358 in the Circuit Court for Davidson County, Tennessee (the "*Shoemaker* case").

Plaintiff began working with Defendant Keefer shortly after Ms. Shoemaker's death in April 2017. Affidavit of Brian Cummings ("First Cummings Aff."), Doc. 55 at ¶ 6(f)(i). Defendant Keefer signed an Attorney-Client Agreement with Cummings Manookian, PLC dated April 19, 2017 (the "Cummings Manookian Agreement") agreeing to pay a contingency fee of 33.33% of any recovery plus reimbursement of litigation expenses to the attorneys who provided legal services to him. First Cummings Aff. Ex. 4, Doc. 55-4. The Cummings Manookian Agreement does not contain any provision forfeiting or extinguishing the right to recover attorney's fees. *See id*.

Plaintiff worked on behalf of Defendant Keefer for 42 months. First Cummings Aff., Doc. 55 at ¶ 6(f)(i). For lengthy periods of time, Plaintiff was the only attorney working with Defendant Keefer. *Id*. Plaintiff performed all aspects of the intake of the *Shoemaker* case on behalf of Cummings Manookian and was the attorney who signed the Attorney-Client Agreement. *Id*. at ¶¶ 6(a)(ii),(x). Plaintiff's work included: the initial evaluation of the case; a detailed, comprehensive review of the medical records; preparing a detailed expert summary letter; preparing for and attending a pre-suit mediation; preparing the Complaint; preparing a timeline that demonstrated to Vanderbilt that its summary judgment motion was meritless; preparing the initial written discovery to the defendants; working with Defendant Keefer to prepare responses to written discovery; locating, contacting, and retaining all of the expert witnesses; providing materials and information to the expert witnesses; working with the expert witnesses to prepare expert disclosures; preparing Mr. Keefer and Mr. Goodwin for their depositions and defending those depositions; taking nearly half of the approximately 30 fact depositions and attending nine other depositions; drafting and

2

responding to motions; attending hearings; and preparing for and attending a second mediation. *Id*. ¶¶ 6(a)(i)-(ix), 11.

In January 2020, Defendant Keefer showed Plaintiff a letter with the subject line "Updated Legal Representation and Engagement" on letterhead for Manookian PLLC, in which Defendant Keefer had confirmed his understanding that the fees in the *Shoemaker* case would be split with Plaintiff. First Cummings Aff., Doc. 55 at ¶ 6(j)(i).  At that time, Plaintiff asked Defendant Keefer to confirm via email that he continued to authorize Plaintiff to work on the *Shoemaker* case, which Defendant Keefer did. *Id*. at ¶ 6(j)(i); First Cummings Aff. Ex. 5, Doc. 55-5.

Plaintiff intended to represent Defendant Keefer until the conclusion of the *Shoemaker* case; however, interactions with Defendant Keefer and Defendant Hagh caused Plaintiff to seek guidance from the Tennessee Board of Professional Responsibility ("BPR"), who told him explicitly that he was required to withdraw from representation. First Cummings Aff., Doc. 55 at ¶ 6(f)(ii). In late September 2020, Defendant Hagh's husband, Brian Manookian, made oral comments to Plaintiff suggesting that Plaintiff potentially had no right to payment of any portion of the fees earned in the *Shoemaker* case. Second Affidavit of Brian Cummings ("Second Cummings Aff."), Doc. 66 at ¶ 3. To ensure that there was no doubt concerning the terms of Plaintiff's representation of Defendant Keefer, Plaintiff asked Defendant Keefer to sign an Attorney-Client Agreement with Plaintiff's new firm. *Id*. at ¶ 4. Defendant Keefer refused, and told Plaintiff that he had been expressly told not to sign a new Attorney-Client Agreement with Plaintiff. *Id*. Defendant Keefer also stated that he believed that Plaintiff was attempting to increase the total attorney's fee, even though the proposed new Attorney-Client Agreement clearly confirmed this was not the case. *Id*. at ¶ 5; First Cummings Aff., Doc. 55 at ¶ 6(f)(iii).

Around that the same time, issues also arose with Defendant Hagh. First Cummings Aff., Doc. 55 at ¶ 6(f)(iv). By September 2020, Plaintiff had advanced more than $60,000.00 in litigation expenses without any contributions from Defendant Hagh. *Id*. Plaintiff asked Defendant Hagh to work out an agreement regarding sharing the burden of paying litigation expenses going forward, but Defendant Hagh ignored these requests and continued to refuse to pay any litigation expenses. *Id*. When Plaintiff finally had a telephone call with Defendant Hagh, she began yelling at him, calling him "shady" and declaring that he was "only looking out for Brian Cummings." *Id*.

As a result of these interactions with Defendant Keefer and Defendant Hagh, Plaintiff called the BPR. *Id*. at ¶ 6(f)(v). After Plaintiff shared what had occurred, the BPR attorney told Plaintiff in no uncertain terms that he was required to withdraw. *Id*.; Second Cummings Aff., Doc. 66 at ¶¶ 6-7. The BPR attorney advised Plaintiff that he was ethically required to withdraw and, further, that he was required to withdraw effective immediately. Second Cummings Aff., Doc. 66 at ¶¶ 6-7. Plaintiff had no choice but to comply with the instructions from the BPR, and he sent a letter to Defendants advising them of his mandatory withdrawal. *Id*. at ¶¶ 7-8; Second Cummings Aff. Ex. 2, Doc. 66-2.

By the time of Plaintiff's withdrawal, the factual evidence supporting Defendant Keefer's case had already been developed and the experts had been retained and disclosed. First Cummings Aff., Doc. 55 at ¶¶ 6(a)(vi)-(ix), 9. After that point, the evidence did not significantly improve or change. *Id*. at ¶ 9. There were no newly-developed pieces of evidence or newly-added expert witnesses after Plaintiff's withdrawal. *Id*. Plaintiff's work developed the fact and expert evidence necessary to position the *Shoemaker* case for settling at the exceptional result reached, and Plaintiff provided indisputable and substantial value to Defendant Keefer. *Id*.

In the spring of 2021, Defendants hired North Carolina attorney John Edwards to serve as trial counsel in the *Shoemaker* case. *Id*. at ¶ 8. The *Shoemaker* case was resolved in October 2021. *Id*. at ¶ 6(d)(i). Plaintiff and the Trustee had each filed a notice of attorney's lien in the *Shoemaker* case. Second Cummings Aff., Doc. 66 at ¶¶ 9, 10; Second Cummings Aff. Ex. 3, Doc. 66-3. In light of the pending liens, attorney Craig Gabbert with the law firm of Bass, Berry & Sims PLC sought written confirmation from Plaintiff that Plaintiff consented to a proposal that Defendant Keefer receive his portion of the settlement funds, John Edwards' firm receive its portion of the attorney's fee, and the balance of the settlement funds be sent to Mr. Gabbert's trust account, to which Plaintiff's lien would attach. Second Cummings Aff., Doc. 66 at ¶ 11; Second Cummings Aff. Ex. 4, Doc. 66-4. Plaintiff agreed to this proposal, and an attorney at Mr. Edwards' firm confirmed that Mr. Gabbert would hold "the attorney's fees in trust in compliance with [Plaintiff's] attorney's lien." Second Cummings Aff., Doc. 66 at ¶ 12; Second Cummings Aff. Ex. 5, Doc. 66-5. Approximately one month later, Mr. Gabbert reiterated this agreement in an email to counsel for the Trustee, stating: "Your client's claim/lien has attached to my escrow account by agreement, as has those of Brian Cummings and Phillip North's client. I am holding the fee there. The only thing I released were the funds necessary to pay/reimburse actual costs of travel, experts, etc." Second Cummings Aff., Doc. 66 at ¶ 13; Second Cummings Aff. Ex. 6, Doc. 66-6. Since that time, Plaintiff has not been asked to consent to the release of any of the escrowed funds that are being held in compliance with, and subject to, his attorney's lien. Second Cummings Aff., Doc. 66 at ¶ 14.

### **Standard of Review**

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion" but does not "weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter." *Bernard v. Amazon.com Servs., LLC*, 795 F. Supp. 3d 1042, 1049 (M.D. Tenn. 2025). If there is "evidence on which a trier of fact could reasonably find for the non-moving party," summary judgment should be denied. *Id*.

**Discussion**

**A. There is No "Law of the Case" Requiring Dismissal of Plaintiff's Claim Against Defendant Keefer.**

The fallacy of Defendant Keefer's "Law of the Case" argument is evidenced by his own filing. Defendant Keefer simultaneously argues that he has no interest in the outcome of this litigation while actively advocating for a particular outcome in the next section of his brief. Contrary to Defendant's claim, there is no "Law of the Case" holding that Plaintiff has no claim against Defendant Keefer.

Defendant Keefer asserts that this Court should grant him summary judgment based on the District Court's comment in a footnote that it was unclear what interest Defendant Keefer has in this case. *See* Memorandum and Order, Doc. 32 at n.4. In making this observation, the District Court did not rule that Defendant Keefer could not participate in the case, nor did it render any findings concerning the substance of Plaintiff's claims. *Id*.

Defendant Keefer is the party who signed the Cummings Manookian Attorney-Client Agreement agreeing to pay fees to the attorneys who provided legal services to him. First Cummings Aff. Ex. 4, Doc. 55-4. He was the plaintiff in the *Shoemaker* case, which resulted in a settlement from which the attorney's fees at issue will be paid. First Cummings Aff., Doc. 55 at ¶ 6; Second Cummings Aff., Doc. 66 at ¶¶ 11-13; Second Cummings Aff. Ex. 4, Doc. 66-4; Second

6

Cummings Aff. Ex. 5, Doc. 66-5; Second Cummings Aff. Ex. 6, Doc. 66-6. The Tennessee Court of Appeals has made clear that a plaintiff who receives a settlement in a lawsuit has a real interest in a dispute concerning the division of the attorney's fees because the plaintiff owns the funds from which the fees are to be paid. *See Williams v. Hirsch*, Case No. M2010-02407-COA-R9-CV, 2011 WL 303257 at *2 (Tenn. Ct. App. May 26, 2011). The fact that the plaintiff will be obligated to pay the same amount of fees regardless of how they are to be divided does not change his status as an interested party. *Id*. Nor does the fact that the funds are being held by a third-party in escrow pending the resolution of this dispute. *Id*.; *see also Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999) (explaining that an attorney seeking to enforce his attorney's lien must commence a separate proceeding against his client to enforce his right to a fee).

Defendant Keefer further asserts that he is a "nominal defendant" and should therefore not be forced to participate in this litigation. Notably, Defendant Keefer cites to no authority supporting his claim that it is an abuse of the judicial process to force a nominal defendant to remain in a case. As discussed above, under Tennessee law, Defendant Keefer has a real interest in this action and is therefore not a nominal party. Furthermore, although nominal parties are disregarded for purposes such as removal and jurisdiction, they are properly included parties in litigation. *See, e.g.*, *Young v. Compass Group USA, Inc.*, Case No. 3:25-cv-00504, 2025 WL 2098741 (M.D. Tenn. July 24, 2025) (finding that nominal parties were not required to consent to removal); *Mortenson Family Dental Ctr., Inc. v. Heartland Dental Care, Inc.*, 526 Fed. Appx. 506 (6th Cir. 2013) (explaining that the citizenship of a nominal party does not destroy diversity jurisdiction). Even in cases where the nominal defendant is a discharged debtor, courts permit the claims to proceed against the defendant despite acknowledging the burden of attending depositions and trial. *See In re Morris*, 430 B.R. 824 (Bankr. W.D. Tenn. 2010); *In re Rodgers*, 266 B.R. 834

7

(Bankr. W.D. Tenn. 2001). And where a party initially named as nominal party then actively participates in litigation, the party becomes an active litigant. *See E.E.O.C. v. Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO, CLC, Local 758*, 631 F.2d 81 (6th Cir. 1980).

Defendant Keefer's argument that he should be granted summary judgment based on the District Court's comment that his interest in the case is unclear fails as a matter of law, and his motion should therefore be denied.

**B.  The Cummings Manookian Agreement Does Not Bar Plaintiff's Claim for Fees.**

Defendant Keefer next asks this Court to find that the Cummings Manookian Agreement contained an implied provision extinguishing Plaintiff's right to be compensated for his legal services. The Cummings Manookian Agreement does not bar Plaintiff's claim, and the Court's creation of such a provision would violate Tennessee's public policy against forfeitures.

Tennessee law does not favor forfeitures of contractual rights. *Hooton v. Nacarato GMC Truck, Inc.*, 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989); *Bachour v. Mason*, Case No. M2012-00092-COA-R3-CV, 2013 WL 2395027 at *4 (Tenn. Ct. App. May 30, 2013) (noting that "liquidated damages provisions in contracts are subject to close scrutiny because of the public policy against forfeitures"); *Bryce v. Partin*, Case No. E2024-01404-COA-R3-CV, 2025 WL 3023736 at *8 (Tenn. Ct. App. Oct. 29, 2025) (explaining that waiver can excuse nonperformance of contractual duties or conditions "based in large part on the policies against forfeiture and unjust enrichment"). Forfeitures are to be strictly construed. *Hooton*, 772 S.W.2d at 46. If forfeiture is to be imposed, the Court must find clear proof of the right to forfeiture, and of the grounds on which the forfeiture is allowed. *Id*. "Every reasonable presumption is against forfeiture and every intendment or presumption is against the party seeking to enforce the forfeiture." *Id. See also Hasden v. McGinnis*, 387 S.W.2d 631, 632-633 (Tenn. Ct. App. 1964) (affirming the trial court's refusal to

8

permit a forfeiture where it "would constitute unjust enrichment" and "would be unjust, inequitable, and unconscionable").

Under Tennessee law, the central principle of contract interpretation is to "interpret contracts so as to ascertain and give effect to the intent of the contracting parties." *Colley v. Colley*, 715 S.W.3d 293, 304 (Tenn. 2025). Courts "give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute." *Id*.

In the Cummings Manookian Agreement, Defendant Keefer agreed that he would pay a contingency fee of 33.33% and that he would reimburse any costs and expenses advanced during the pendency of the *Shoemaker* case. First Cummings Aff. Ex. 4, Doc. 55-4. There is no provision in the Cummings Manookian Agreement forfeiting the right to an attorney's fee in the event of withdrawal from representation. *See id*. There is no express forfeiture provision, so Defendant Keefer points to the maxim *expressio unius est exclusio alterius* and asserts that two portions of the section titled "Termination of Professional Relationship" should be interpreted to imply a forfeiture in the event of a withdrawal. The maxim "is not a rule of law but merely an aid to construction" which "should not be used to create an ambiguity, or to contradict a clear expression of intent." *Beeler v. Pennsylvania Threshermen and Farmers Ins. Co.*, 346 S.W.2d 457, 459 (Tenn. Ct. App. 1961). The Tennessee Supreme Court has repeatedly urged courts to exercise caution in applying the maxim "lest it may be used for the purpose of defeating instead of subserving the real intent of the parties." *See, e.g.*, *Associated Indem. Corp. of San Francisco v. McAlexander*, 79 S.W.2d 556, 562 (Tenn. 1935). The Court has instructed that "the maxim ought not to be applied

9

when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice." *Id*.

Defendant Keefer asks this Court to do exactly what the Tennessee courts prohibit: apply the maxim of *expressio unius* to create an ambiguity and then interpret the Cummings Manookian Agreement to include an implied forfeiture that extinguishes Plaintiff's right to be compensated for the services he provided to Defendant Keefer. Such an interpretation would defeat the intent of the parties and result in a windfall to Defendant Keefer and/or Defendant Hagh. There is no clear proof of the right to forfeiture as required under Tennessee law, and the position urged by Defendant Keefer should be rejected because it would constitute unjust enrichment. *See Hooton*, 772 S.W.2d at 46; *Hasden*, 387 S.W.2d at 632-633.

Moreover, Plaintiff did not voluntarily withdraw from representation in the *Shoemaker* case. Second Cummings Aff., Doc. 66 at ¶¶ 4-7. Defendant Keefer initiated the termination of the relationship when he refused to sign a new Attorney-Client Agreement with Plaintiff and explained that he was told not to sign such an agreement. *Id*. at ¶ 4. Defendant Keefer and Defendant Hagh then made statements demonstrating a lack of trust as required in an attorney-client relationship. *Id*. at ¶¶ 5-6; First Cummings Aff., Doc. 55 at ¶¶ 6(f)(ii)-(v). When Plaintiff sought guidance from the Tennessee Board of Professional Responsibility ("BPR"), the BPR informed Plaintiff that he was ethically required to withdraw from further representation effective immediately. Second Cummings Aff., Doc. 66 at ¶¶ 6-7; First Cummings Aff., Doc. 55 at ¶¶ 6(f)(ii)-(v). Once Defendant Keefer informed Plaintiff (through his refusal to sign an Attorney-Client Agreement with Plaintiff and his statement that he had been told not to sign any such agreement with Plaintiff) that he intended to terminate the attorney-client relationship, Plaintiff had no choice and was forced to withdraw. Second Cummings Aff., Doc. 66 at ¶¶ 4-7; First Cummings Aff., Doc. 55 at ¶¶ 6(f)(ii)-

(v). It would be inequitable for the Court to find that, after Defendant Keefer and Defendant Hagh forced Plaintiff to withdraw as counsel, Plaintiff forfeited his rights to be compensated for the 42 months of work he performed in the *Shoemaker* case. Therefore, this Court should deny Defendant Keefer's motion for summary judgment.

**C. Plaintiff is Permitted to Seek Fees Under Alternative Theories of *Quantum Meruit* and Unjust Enrichment.**

Tennessee cases discussing claims for attorney's fees frequently consider such claims under both the applicable contract provisions and *quantum meruit*. It is well-established under Tennessee law that an attorney who is discharged without cause can "elect to recover based on the full contract price or on *quantum meruit*, whichever is greater," while an attorney who is discharged for cause "is entitled to recover on the basis of *quantum meruit* or breach of contract, *whichever is less*." *See, e.g.*, *Gupton v. Davis*, Case No. E2011-02215-COA-R3-CV, 2012 WL 4358184 at *8 (Tenn. Ct. App. Sept. 25, 2012). An attorney who withdraws prior to completion of a matter is entitled to recover fees under *quantum meruit*. *See Estate of Fetterman v. King*, Case No. E2003-02081-COA-R3-CV, 2004 WL 1906449 (Tenn. Ct. App. Aug. 26, 2004). Additionally, "a party who had a contract at one time may pursue a *quantum meruit* recovery if the contract is no longer enforceable." *Johnson v. Hunter*, Case No. M1998-00314-COA-R3-CV, 1999 WL 1072562 at *8 (Tenn. Ct. App. Nov. 30, 1999).

The ultimate question for this Court will be the determination of a reasonable fee to be awarded to Plaintiff. Regardless of the theory under which fees are awarded, in determining whether an attorney's fee is reasonable, the Court must consider the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct. *See, e.g.*, *Coleman v. Coleman*, Case No. W2012-02183-COA-R3-CV, 2013 WL 5308013 at *13-14 (Tenn. Ct. App. Sept. 19, 2013). Plaintiff has discussed each of the Rule 1.5 factors in his January 23, 2026 affidavit. First Cummings Aff., Doc.

55 at ¶¶ 6(a)(i)- 6(j)(i). Plaintiff performed a substantial amount of work on the *Shoemaker* case over a period of 42 months, including all intake, analysis, drafting of initial pleadings and various motions, written discovery requests and responses, numerous depositions, two mediations, locating and retaining all experts for the case, and preparing the expert disclosures. *Id*. at ¶¶ 6(a)(i)-(ix), 11. The factual evidence supporting Defendant Keefer's case did not significantly improve or change after Plaintiff's withdrawal, and there was no newly-developed evidence or newly-added expert witnesses. *Id*. at ¶ 9. The *Shoemaker* case was positioned to settle at an exceptional amount as a direct result of Plaintiff's work. *Id*. If Plaintiff is not entitled to recover fees for this work under the Cummings Manookian Agreement, he should be awarded fees under the equitable remedies of *quantum meruit* and unjust enrichment.

Defendant Keefer is not entitled to judgment as a matter of law, and this Court should deny his motion seeking dismissal of equitable remedies.

## Conclusion

For the foregoing reasons, this Court should deny Defendant Bretton Keefer's Motion for Summary Judgment in its entirety.

Respectfully Submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Elizabeth S. Tipping  
Elizabeth S. Tipping, No. 023066  
1222 Demonbreun Street, Suite 1201  
Nashville, TN 37203  
(629) 250-3388  
Liz.Tipping@wbd-us.com  
*Counsel for Plaintiff Brian Cummings*

12

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing document was electronically filed and served via the Court's ECF system this, the 9th day of February, 2026.

/s/ Elizabeth S. Tipping
Elizabeth S. Tipping

13