IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CUMMINGS MANOOKIAN, PLLC, ) | Case No. 3:19-bk-07235 |
|    Debtor. ) | Chapter 7 |
| ) | Judge Walker |
| JEANNE ANN BURTON, TRUSTEE, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 3:20-ap-90002 |
| ) | |
| HAGH LAW, PLLC; AFSOON HAGH; ) | |
| MANOOKIAN, PLLC; and FIRST- ) | |
| CITIZENS BANK & TRUST ) | |
| COMPANY, ) | |
|    Defendants. ) | |
| ) | |

## MOTION TO STAY ALL DISCOVERY

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), who respectfully moves to stay all discovery and discovery-related issues in this matter pending further order of this Court. As grounds for this Motion, the Trustee states that:

1. Cummings Manookian, PLC (the "Debtor") filed a voluntary Chapter 7 Petition with this Court on November 6, 2019 (the "Petition Date"). The Trustee was appointed to serve as the Chapter 7 Trustee for the Debtor on the same day, and continues to serve in that regard.

2. On January 8, 2020, the Trustee initiated this matter by filing her Complaint against Hagh Law, PLLC ("Hagh Law"), Afsoon Hagh ("Hagh"), Manookian, PLLC ("Manookian Law") and First-Citizens Bank & Trust Company (the "Bank").

3. At the onset of this matter, the Trustee asked the Court to order the turnover of $715,000.00 being held by the Bank to the Clerk of the Court. These funds were disputed fees

from a case in which the Debtor had represented the plaintiffs, referred to in the Complaint as the "*Fitzgerald* case". The Court conducted a hearing on this matter and, on January 16, 2020, ordered the Bank to turnover the disputed funds to the Clerk for safekeeping. The Trustee dismissed the Complaint as to the Bank on January 28, 2020 after the Bank, pursuant to the Court's order, deposited $715,000.00 with the Clerk of the Bankruptcy Court.

4. As to the three remaining Defendants, the Complaint alleges several causes of action including: conversion, state law fraudulent transfers, fraudulent transfers pursuant to 11 U.S.C. § 548, tortious interference with contract, successor liability and alter ego, turnover, and declaratory judgment.

5. At the beginning stages of this case, in January 2020, counsel for Hagh and Hagh Law asked the Court to proceed with this case expeditiously. The Trustee agreed and, in compliance with that request, immediately sought documents from the Debtor's representative that were relevant to this adversary proceeding. The Trustee was forced to file a motion to compel responses to those requests and, even to this day, has not received adequate and appropriate responses. Further to the request that the Trustee proceed expeditiously, throughout 2020 the Trustee inquired of the Court regarding its preferences about conducting depositions. The Defendants consistently asked the Court to delay depositions of the Defendants due to (a) the pandemic or (b) the pending appeal of the Chase judgment (discussed more fully below).[1] The Trustee agreed to postpone the taking of all depositions, agreeing with the Court's health concerns; in fact, the only reason the Trustee sought to take depositions during 2020 was because the Defendants had insisted that this matter proceed as expeditiously as possible.

---

[1] Most recently, at a pretrial conference conducted by the Court on January 12, 2021, counsel for Hagh and Hagh Law reiterated their reluctance to participate in any depositions at this time.

6.     While depositions were held in abeyance, and in addition to her attempts to collect records from the Debtor's representative, the Trustee sent written discovery to the Defendants on November 24, 2020. The Defendants responded to this written discovery between January 26, 2021 to January 28, 2021, after having requested additional time from the Trustee. In addition to serving its responses, Defendant Manookian PLLC also served the Trustee with two sets of interrogatories and requests for production, in addition to 85 requests for admission. The Trustee has provided responses to this written discovery.

7.     Meanwhile, in the main case, the claims bar date was set for April 1, 2020. As of the date of this Motion, the following claims have been filed in the Debtor's bankruptcy case:

| Claim No. | Claimant | Amount | Priority |
|---|---|---|---|
| 1 | Insbank | $963,951.62 | Secured |
| 2 | Grant, Konvalinka & Harrison, P.C. | $295,305.27 | Unsecured |
| 3 | George Robertson, M.D. | $35,000.00 | Unsecured |
| 4 | Toby Smith, M.D. | $54,190.99 | Unsecured |
| 5 | Dean Chase et al. | $806,927.04 | Unsecured |
| 6 | Ronette Leal McCarthy, Esq. | $337,500.00 | Unsecured |

8.     While the Trustee has not completed a formal review of all of the claims filed in this case, few of these claims appear to be valid claims that will ultimately be payable by this estate. For example:

- Claim No. 1, filed by Insbank, is based upon the Debtor's guaranty of a commercial mortgage. The commercial mortgage is secured by certain real estate that, upon information and belief, likely has equity over and beyond the amount of the indebtedness. Therefore, it seems unlikely that this will result in a valid claim against this estate.

- Claim No. 3, filed by George Robertson, M.D., appears to be a claim against Brian Manookian individually, and not one against the Debtor. As such, it seems unlikely this is a valid claim against this estate.

- Claim No. 4, filed by Toby Smith M.D., appears to be a claim against Brian Manookian individually, and not one against the Debtor. As such, it seems unlikely this is a valid claim against this estate.

- Claim No. 6, filed by Ronettee Leal McCarthy, appears to be a claim based upon an alleged oral agreement between the claimant and Brian Manookian to split the fees from the *Fitzgerald* case. Because oral agreements to share legal fees are unenforceable in the State of Tennessee, it seems unlikely that this is a valid claim against this estate.

9. If the Trustee's initial impressions of these claims prove correct, that leaves only two potentially valid unsecured claims against this estate: Claim No. 2 filed by Grant, Konvalinka, & Harrison, P.C. (the "Grant Konvalinka Claim") and Claim No. 5 filed by Dean Chase et al. (the "Chase Claim"). The Grant Konvalinka Claim is based upon a default judgment entered against the Debtor and Brian Manookian, jointly and severally, in a Hamilton County court. Based upon the Trustee's initial review of the Grant Konvalinka Claim, it appears that this claim is likely allowable as an unsecured claim in the amount shown on the proof of claim.

10. The Chase Claim is much more complex and has been the subject of much discussion before this Court. As the Court may recall, the Chase Claim is based upon a judgment entered against the Debtor, Brian Manookian, and other third parties, jointly and severally, for sanctions exceeding $750,000 issued by a Williamson County court. The judgment underlying the Chase Claim has been on appeal during the entire pendency of this bankruptcy matter. In fact, the Court may recall that, on numerous occasions, counsel for one or more of the Defendants have asked the Court to slow down this adversary proceeding in order to allow the Tennessee Court of Appeals to issue a decision on this appeal.

11. On February 4, 2021, the Tennessee Court of Appeals issued an opinion in which it vacated the Chase judgment and remanded it for rehearing by the Williamson County court. A true and correct copy of that opinion is attached hereto as <u>Exhibit A</u>. Based upon the Trustee's interpretation of this opinion, the Tennessee Court of Appeals did not overturn the sanctions judgment; rather, it vacated the judgment and ordered that a different judge determine what, if any, sanctions are appropriate. In other words, this matter remains undecided despite the order from the appellate court.

12. As a result of the Tennessee Court of Appeals decision, in the Trustee's view, the single largest unsecured claim against this estate has shifted from an "allowable claim" to a "contingent/unliquidated claim". Until the Williamson County court conducts a new hearing in front of a different judge and issues a new judgment, it is unclear whether the Chase Claim will be disallowed, will be allowed at the original amount of $806,927.04, or will be allowed as some other amount between $0 and $806,927.04 (or perhaps a greater amount).

13. The ultimate determination of the Chase Claim has a very significant impact, both practically and legally, on this adversary proceeding. The Clerk of the Court is currently holding

$715,000.00 (a portion of the fees from the settlement of the *Fitzgerald* case) pending the outcome of this matter. If the Chase Claim is ultimately disallowed because the Williamson County court finds that no sanctions are appropriate (or if the court substantially reduces sanctions), and the Trustee's initial review of the other claims in this case proves accurate, then the total amount of unsecured claims in this case could total less than the amount being currently held by the Clerk. If this is the ultimate outcome, neither the Court nor the parties to this adversary proceeding need delve into any matter or allegation of the adversary proceeding other than whether the estate has a claim to the $715,000 being held by the Court from the *Fitzgerald* settlement.

14. If this adversary proceeding ultimately involves only the rights to the *Fitzgerald* fees, the scope of discovery, pretrial motions, and topics for trial will be significantly curtailed. The Trustee believes that a decision as to the legal and equitable rights to the $715,000 currently being held by the Clerk would involve limited discovery, followed by cross motions for summary judgment. If, on the other hand, the Trustee and the other parties must proceed with discovery concerning other receivables, whether the Defendants converted other property of the estate and/or whether one or more of the Defendants is operating as a successor-in-interest to the Debtor, the estate will spend significant fees, and the Court will spend significant time, on matters that might prove moot. In summary, the Williamson County court's ultimate decision regarding the Chase judgment might have a significant effect on how this matter proceeds, its scope, and its complexity.

15. The change in status of the Chase Claim should cause the litigants to this adversary proceeding to proceed with more deliberation. However, despite the fact that the Defendants' counsel have over the last year repeatedly asked this Court to delay discovery due to pandemic concerns and/or the pending Chase appeal, now that there is valid reason to proceed more deliberately the Defendants are demanding to immediately proceed with depositions. Despite the

changed circumstances that now make it sensible to proceed through discovery with some restraint, counsel for Manookian PLLC is demanding a *two-day* deposition of the Trustee in the next 30-60 days.

16. It is illogical and a waste of estate assets to proceed with discovery, as the Defendants wish, at this time. First, as described above, the changed circumstances involving the Chase Claim should result in some pause. If the Chase sanctions verdict is eliminated or even significantly reduced, it could cut down the scope of discovery by as much as two-thirds, thus saving all parties and the Court significant time and resources. Second, little has changed about the public health situation in this country to warrant moving forward with depositions at this time. Defendants' counsel have repeatedly asked the Court to delay any depositions by the Trustee due to the pandemic. The Trustee has respected the Court's instruction to avoid any situation that would necessitate any face-to-face meeting, which leads to the Trustee's third point: if and when depositions are scheduled, it should be the Trustee who is first allowed to schedule depositions, since she sought to depose the Defendants nearly a year ago. It would be patently inequitable to allow the Defendants to delay the Trustee's discovery efforts for a year, only to push through their discovery efforts when they unilaterally decide it is convenient to do so.

17. Finally, but importantly, if discovery proceeds at this juncture in the case, the Trustee expects that this Court will be required to expend a significant amount of time deciding discovery disputes that might very well be moot. The Trustee has already highlighted the looming issues concerning the scheduling of depositions, but written discovery is also likely to be a significant problem. Despite having already filed a motion to compel and receiving from this Court an order compelling production of documents, the documents produced by Brian Manookian, the corporate representative of the Debtor, remain wholly unsatisfactory. Moreover,

Case 3:20-ap-90002    Doc 68    Filed 03/03/21    Entered 03/03/21 14:39:07    Desc Main
Document      Page 7 of 9

the responses to written discovery that the Trustee has received recently from all three Defendants in this matter were likewise inadequate.[2]  In light of the changed circumstances with the Chase Claim, the Trustee has made the decision to "hit pause" on these disputes concerning the adequacy of written discovery rather than following the process under the Federal Rules of Civil Procedure to bring those issues before this Court for an immediate determination.  It makes no sense to try discovery disputes until it becomes apparent that are relevant.

18.	"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  While the Trustee acknowledges that she bears the burden of showing that such a stay is in the best interest of the Court and the litigants, she submits that this Court has already determined that the interest of public health outweighs the need for expeditious discovery in this case.  The public health concern still exists and now, as a result of the decision in the Chase appeal, an additional issue has arisen concerning the scope and necessity of certain proceedings, including discovery.

19.	For all of these reasons, the Trustee submits that this Court should stay all discovery in this matter for some period of time.[3]  The Trustee would suggest that the Court stay all further

---

[2] For example, the responses from all three Defendants to any request for engagement or disengagement letters, which is an important element of this case, were the same:  "Defendant believes these materials may be attorney-client privileged.  Subject to that objection, Defendant will permit inspection of responsive documents upon entry of a suitable protective order which Defendant believes can be easily reached by agreement."  The Defendants provided no privilege log, they offered no proposed protective order, and they offered only to *permit inspection*, knowing that the Trustee and her counsel likely would be uncomfortable with a face-to-face meeting during the current health crisis.

[3] Trustee's counsel has sought to resolve these issues with Defendants' counsel, without Court intervention, to no avail.  There exists a fundamental disagreement among the parties about how to proceed:  the Trustee believes discovery should continue to be held in abeyance (as it has for the past year) pending some resolution of the Chase Claim, while Defendants' counsel suddenly wish to immediately begin taking depositions.

discovery and discovery-related issues in this adversary proceeding until such time as the Chase Claim has been liquidated, with all parties reserving all rights regarding discovery issues until that time.  The Trustee believes this course of action best serves the goal of judicial economy and best preserves estate assets for potential creditors.  Alternatively, the Trustee would suggest that the Court stay all discovery and discovery-related issues at least through April 16, 2021, the date on which this Court has scheduled a pretrial conference, at which time the parties can discuss with the Court an appropriate discovery schedule.

WHEREFORE, the Trustee respectfully requests that this Court enter an order (a) staying all discovery and discovery-related issues in this case until such time as the Chase Claim has been liquidated, or (b) alternatively, staying all discovery and discovery-related issues in this case through the pretrial conference scheduled in this matter for April 16, 2021, at which time the Court can set an appropriate discovery schedule, and (c) granting such other and further relief as the Court deems equitable and appropriate under the circumstances.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 3rd day of March, 2021.

/s/ Phillip G. Young, Jr.

Case 3:20-ap-90002    Doc 68    Filed 03/03/21    Entered 03/03/21 14:39:07    Desc Main
Document    Page 9 of 9