# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| **IN RE:** | **Case No. 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS,** | |
| Plaintiff, | |
| v. | |
| **BRETTON KEEFER, JEANNE BURTON, and AFSOON HAGH** | |
| Defendants. | |

## DEFENDANT AFSOON HAGH'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This adversary proceeding represents an attempt by Plaintiff Brian Cummings to recover an attorney's fee from a case he voluntarily abandoned years prior to its successful resolution. At the very threshold, Plaintiff's claims fail because he sued the wrong party. Seeking to avoid the financial consequences of suing the wrong defendant and the strict terms of his own drafted contract, Plaintiff now asks this Court to ignore black-letter corporate law, pierce a valid corporate shield, and award him a windfall in equity.

His attempt to survive summary judgment fails comprehensively across four distinct domains:

**First, Plaintiff sued the wrong defendant.** He seeks to hold Defendant Afsoon Hagh individually liable, despite the undisputed fact that the relevant legal work and subsequent fee agreements were conducted through her corporate entity, Hagh Law PLLC. Ms. Hagh signed the underlying fee agreements explicitly as a representative of the corporate entity, not in her personal capacity.

**Second, Plaintiff's individual liability theory relies on an administrative dissolution that Tennessee law has legally erased.** Plaintiff attempts to bypass the corporate liability shield of Defendant's law firm by exploiting the temporary administrative dissolution of Hagh Law PLLC, incorrectly asserting that the firm's liabilities passed to Ms. Hagh individually. This argument is factually and legally defunct. Hagh Law PLLC was formally reinstated by the Tennessee Secretary of State on February 19, 2026. Under the absolute statutory mandate of the Tennessee Revised Limited Liability Company Act, this reinstatement explicitly relates back to the date of dissolution, meaning the limited liability company exists as if the administrative dissolution had never occurred. Plaintiff is attempting to pierce a corporate shield that, under the law, was never actually lowered.

**Third, Plaintiff attempts an impermissible procedural ambush backed by zero discovery.** Faced with the reality that his corporate liability theory is defunct, Plaintiff attempts to plead an entirely new veil-piercing theory for the very first time in his Response. Sixth Circuit precedent strictly prohibits this textbook procedural ambush at the summary judgment stage.

**Fourth, Plaintiff's opposition relies on a non-existent evidentiary record.** By his own brazen admission, Plaintiff strategically elected to conduct "zero discovery" during the multi-year pendency of this litigation. Because he failed to develop the record, Plaintiff's entire opposition relies exclusively upon inadmissible hearsay consisting of an unsubstantiated, purported "phone

call with the BPR" and various unauthenticated third-party emails. Under the strict mandates of the Sixth Circuit and the Federal Rules of Civil Procedure, this legally incompetent "evidence" must be disregarded, leaving Plaintiff with a complete failure of proof. A party cannot affirmatively opt out of the discovery process and then attempt to survive summary judgment using speculation.

Because Plaintiff sued the wrong party, failed to carry his evidentiary burden under Federal Rule of Civil Procedure 56, and his claims fail comprehensively under Tennessee corporate and contract law, Defendant Afsoon Hagh is entitled to summary judgment.

**STANDARD OF REVIEW**

The procedural mechanism of summary judgment is not merely a preliminary hurdle; it is the integral mechanism designed to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial. Under Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Crucially, the non-moving party cannot satisfy its burden through speculation, conjecture, or inadmissible evidence. Federal Rule of Civil Procedure 56(c)(1) explicitly requires that a party asserting that a fact is genuinely disputed must support that assertion by citing to particular parts of materials in the record that can be presented in a form that would be admissible in evidence. The Sixth Circuit has strictly and consistently enforced this requirement, holding repeatedly that a trial court may only consider admissible evidence in ruling on a motion for summary judgment. Self-serving affidavits containing hearsay, and unauthenticated documents submitted without

3

proper foundation, are legally incompetent to defeat a properly supported motion for summary judgment.

In his Response in Opposition, Plaintiff asserts the astonishing excuse that he "cho[se] not to seek discovery" because he believed the evidence relevant to his claim was "already in that party's possession". This deliberate, strategic decision to forgo depositions, interrogatories, and requests for admission is procedurally fatal to his opposition. By electing to conduct zero discovery, Plaintiff has left himself with an empty record consisting solely of his own self-serving affidavits and unauthenticated attachments.

The Sixth Circuit has repeatedly held that a plaintiff's failure to conduct discovery and marshal admissible evidence at the summary judgment stage necessitates dismissal. A non-moving party cannot rest on the mere allegations of his pleadings, nor can he rely on unauthenticated documents or inadmissible hearsay to survive summary judgment. As detailed exhaustively below, the entirety of Plaintiff's proffered "evidence" falls squarely into these prohibited categories, leaving him with a complete failure of proof concerning the essential elements of his case.

**ARGUMENT**

I.    **Plaintiff's Opposition Relies on Inadmissible Hearsay and Unauthenticated Documents That Must Be Disregarded Under Rule 56**

To survive summary judgment, Plaintiff must present affirmative evidence that could be reduced to an admissible form at trial. Instead, Plaintiff attempts to construct his entire opposition out of out-of-court statements offered for the truth of the matter asserted and unauthenticated third-party emails. These submissions violate the Federal Rules of Evidence and firmly established Sixth Circuit summary judgment standards, and therefore must be stricken and disregarded.

A.    **Plaintiff Cannot Evade His Own Contract Using an Uncorroborated, Hearsay Conversation with an Unnamed BPR Employee**

A cornerstone of Plaintiff's argument to avoid the contractual forfeiture of his fee is his claim that he did not voluntarily withdraw from the underlying Shoemaker litigation, but rather was ethically "forced" to withdraw by the Tennessee Board of Professional Responsibility (BPR). Plaintiff asserts that this alleged ethical mandate overrides the plain language of the contract he drafted, converting his voluntary withdrawal into a compensable event.

The sole "proof" Plaintiff offers for this highly consequential assertion is his own affidavit, in which he recounts a supposed unrecorded, uncorroborated phone call with an unnamed BPR attorney. In his Second Affidavit, Plaintiff testifies that after sharing his grievances regarding Defendant Keefer and Defendant Hagh, the mystery individual that he refuses to name told him "in no uncertain terms" that he was "ethically required to withdraw" and must do so "effective immediately".

This testimony constitutes textbook hearsay under Federal Rule of Evidence 801(c). Here, the out-of-court declarant is the secret BPR attorney. The statement is being offered to prove the absolute truth of the matter asserted: that Plaintiff was legally, ethically, and immediately mandated to withdraw from the representation.

Under Federal Rule of Evidence 802, hearsay is fundamentally inadmissible unless a specific exception applies. Plaintiff has cited no exception in his Response, nor could he conceivably apply one. The Sixth Circuit has unequivocally established that hearsay statements contained within an affidavit cannot be considered on summary judgment. In *Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009), the Sixth Circuit affirmed the grant of summary judgment where the plaintiff's opposition relied on inadmissible hearsay, emphasizing a strict rule that "unauthenticated documents or hearsay evidence should not be considered without adequate assurance that their contents can be proved by admissible evidence at trial".

The policy rationale behind this rule is perfectly illustrated by Plaintiff's conduct in this case. Plaintiff asks the Court to accept his own characterization of a conversation with an unnamed regulatory official to justify breaching a contract and demanding a significant fee. Because Plaintiff deliberately chose to take zero discovery, he has not deposed the BPR representative. He has not subpoenaed the BPR's intake records. He has not provided a formal, written advisory opinion from the BPR. The Court has no way of knowing what specific facts Plaintiff relayed to the BPR attorney on this unrecorded call, whether he accurately portrayed the situation, or whether the BPR attorney actually mandated withdrawal or simply advised that permissive withdrawal was an option (or whether this conversation ever happened).

Because his recounting of the supposed BPR instructions rests solely on his own self-serving, inadmissible hearsay testimony, it is legally incompetent to create a genuine dispute of material fact and must be completely disregarded by this Court. Without this hearsay, Plaintiff has absolutely no evidentiary support for his claim that his withdrawal was anything other than a voluntary business decision.

**B.  Plaintiff's Unauthenticated Third-Party Emails Are Legally Invisible Under Rule 56(c) and Must Be Disregarded**

Plaintiff similarly attempts to rely on a series of documents attached as exhibits to his affidavits to prove essential elements of his claims. These include his own October 2, 2020 withdrawal letter, as well as November and December 2021 emails from third-party attorneys Craig Gabbert and Bill Bystrynski. These exhibits suffer from fatal authentication and admissibility defects that prohibit their consideration under Federal Rule of Civil Procedure 56(c).

Under Federal Rule of Evidence 901(a), authentication is a strict condition precedent to admissibility. The rule requires the proponent to produce evidence sufficient to support a finding

that the item is what the proponent claims it is. Furthermore, the contents of these documents are offered for their truth. Specifically, Plaintiff offers the emails from Mr. Gabbert and Mr. Bystrynski to prove that his attorney's lien successfully attached to specific escrowed funds held by a third-party law firm.

The Sixth Circuit strictly prohibits the consideration of unauthenticated documents and unsworn third-party emails at the summary judgment stage. In *Alexander v. CareSource*, the court explicitly excluded unauthenticated documents, noting that the failure to properly authenticate exhibits under Rule 56(c) renders them legally invisible for the purposes of defeating summary judgment.

Plaintiff has not deposed Mr. Gabbert or Mr. Bystrynski. He has not provided sworn declarations or affidavits from these third-party attorneys verifying the contents, accuracy, or authenticity of these emails. Plaintiff cannot authenticate an email written by a third party merely by attaching it to his own affidavit. Moreover, at least one email Plaintiff attempts to rely upon is a purported "forward" from another third-party individual, and not the supposed declarants themselves. Therefore, these out-of-court statements are both inadmissible hearsay and unauthenticated exhibits that fail the fundamental requirements of Fed. R. Civ. P. 56(c).

Because the Court is obligated to strike and disregard these inadmissible materials, Plaintiff is left with a record utterly devoid of proof. He cannot establish that his withdrawal was mandatory, nor can he establish the proper attachment of his lien using competent evidence. Consequently, he cannot survive summary judgment.

II.     **The Reinstatement of Hagh Law PLLC Renders Plaintiff's "Administrative Dissolution" Argument a Legal Nullity**

In his Response in Opposition, Plaintiff attempts to bypass the formidable corporate liability shield of Hagh Law PLLC by weaponizing a temporary administrative lapse. Plaintiff

7

argues that because the entity was administratively dissolved by the Tennessee Secretary of State on August 11, 2021, the firm was prohibited from carrying on business, and therefore all of its assets and liabilities automatically "passed to its members," rendering Afsoon Hagh individually liable for the corporate entity's alleged obligations.

First, and as detailed below, this is not the law. An administrative dissolution does not result in individual liability of the LLC's members. But even if it did (and it does not), the Plaintiff's assertion is entirely defeated by the recent formal statutory reinstatement of the entity and the absolute, retroactive protections codified in Tennessee corporate law.

**A.      The "Relation Back" Doctrine Retroactively Cures Any Dissolution**

On February 19, 2026, Hagh Law PLLC was formally reinstated by the Tennessee Secretary of State. *(See Declaration of John Spragens, Exhibits A-C)* The official filing acknowledges that the entity successfully submitted an Application for Reinstatement Following Administrative Dissolution. The reinstatement filing included the payment of all required fees ($1,270.00) and the submission of all delinquent annual reports for the years 2022, 2023, 2024, and 2025. As a result, the Tennessee Secretary of State officially changed the entity's status from "Inactive - Dissolved (Administrative)" to "Active," clearing the inactive date entirely and returning the firm to Good Standing.

Under the Tennessee Revised Limited Liability Company Act, this formal reinstatement has a profound and retroactive legal effect that completely eviscerates Plaintiff's theory of individual liability. Tenn. Code Ann. § 48-249-606(c) explicitly governs the "relation back" of a reinstated limited liability company. The statute mandates:

*"When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the LLC resumes carrying on its business as if the administrative dissolution had never occurred."*

This statutory mandate creates a powerful, impenetrable legal fiction: the administrative dissolution is erased from history for liability purposes. Because the reinstatement explicitly relates back to August 11, 2021, Hagh Law PLLC is legally treated as having maintained a continuous, uninterrupted corporate existence from its initial formation in 2019 through the present day.

Consequently, Plaintiff's argument that the corporate shield was somehow permanently pierced, or that assets permanently passed to individual members during the temporary period of administrative dissolution, is a legal nullity. The statute leaves no room for ambiguity; the business resumes *as if the dissolution had never occurred*. Therefore, Plaintiff cannot rely on the temporary administrative dissolution to impose individual liability on Ms. Hagh.

**B.  The Corporate Shield Was Never Lost, and Precedent Forbids Plaintiff's Exploitation of the Dissolution**

Tennessee courts have consistently interpreted corporate relation-back statutes to safeguard the entity's liability shield and prevent opportunistic third parties from capitalizing on temporary administrative lapses. In *Kerney v. Cobb*, the court examined the reinstatement of a revoked corporate charter and adopted the majority view that reinstatement retroactively validates all interim acts as those of an existing, shielded corporation.

The *Kerney* court noted the vital public policy underpinning this doctrine: <u>administrative dissolution statutes are primarily revenue-raising and reporting mechanisms for the State, not punitive tools designed to strip business owners of liability protection to the benefit of opportunistic litigants</u>. The court held that it would be highly inequitable to permit third parties to

exploit a temporary forfeiture to impose personal liability on corporate members after the entity has complied with the statute, paid its fees, and been formally reinstated. This precedent squarely prevents Plaintiff from weaponizing Hagh Law PLLC's temporary administrative lapse to target Ms. Hagh individually.

In a belated attempt to salvage his theory, Plaintiff relies heavily on a single bankruptcy court case, *In re Erskine*, 550 B.R. 362 (Bankr. W.D. Tenn. 2016), arguing it establishes that assets automatically "passed to members" upon dissolution. This reliance is fundamentally misplaced and demonstrates a deep misunderstanding of bankruptcy jurisdiction versus state corporate law.

*In re Erskine* involved a highly specialized federal bankruptcy context where the court analyzed whether a debtor's interest in an administratively dissolved entity became property of the federal bankruptcy estate under 11 U.S.C. § 541. In bankruptcy, federal law determines what constitutes the "estate," and courts scrutinize trusts and LLCs to prevent debtors from hiding assets from creditors.

But Hagh Law PLLC is not in bankruptcy, and Afsoon Hagh is not a bankruptcy debtor. This is a state-law fee dispute involving non-debtor third parties. *Erskine* does not, and cannot, override the explicit statutory text of Tenn. Code Ann. § 48-249-606(c), which dictates that upon reinstatement under state law, the business resumes "as if the administrative dissolution had never occurred". The relation-back doctrine retroactively cures the dissolution under state law, thoroughly defeating Plaintiff's attempt to use federal bankruptcy property concepts to establish individual state-law liability against a non-debtor.

## C. Statutory Protection Continues Even During Winding Up

Furthermore, even if Hagh Law PLLC had not been fully reinstated on February 19, 2026, Plaintiff's theory that assets and liabilities automatically and instantaneously transfer to individual

members upon administrative dissolution is legally defective under the plain text of the LLC Act.

Tenn. Code Ann. § 48-249-605(c) dictates that an administratively dissolved LLC continues its corporate existence, albeit restricted to carrying on the business necessary to wind up and liquidate its affairs. Crucially, during this winding-up period, the LLC explicitly retains its liability shield. The statute does not mandate an immediate, automatic transfer of assets to members that strips them of limited liability protection. Rather, the entity must first marshal assets, discharge its liabilities, and only then distribute remaining assets to members.

Because Hagh Law PLLC was actively defending this litigation (which is a necessary and statutorily permitted winding-up activity), the liability remained with the corporate entity, not the individual members. Therefore, under both the relation-back doctrine of § 48-249-606(c) and the winding-up protections of § 48-249-605(c), Afsoon Hagh is shielded from personal liability as a matter of law.

## III. Plaintiff Cannot Impermissibly Introduce a New "Veil-Piercing" Theory at the Summary Judgment Stage

Recognizing the insurmountable barrier posed by the corporate liability shield—now cemented by the formal reinstatement of Hagh Law PLLC—Plaintiff attempts to pivot in his Response by suggesting the Court should simply disregard the corporate entity because it would be "unjust" for Ms. Hagh to receive fees. This operates as a *de facto* veil-piercing argument. This argument is both procedurally barred by Sixth Circuit precedent and substantively devoid of evidence under Tennessee law.

### A. Procedural Bar on Unpled Claims

Plaintiff failed entirely to plead a veil-piercing theory or allege alter-ego liability against Afsoon Hagh in his 2022 Amended Complaint. A review of the Amended Complaint reveals no allegations of corporate domination, fraud, or undercapitalization regarding Hagh Law PLLC. A

plaintiff cannot ambush a defendant with a new legal theory for the first time in a response brief to a motion for summary judgment.

The Sixth Circuit strictly enforces this procedural bar to protect the integrity of the pleading process under Federal Rule of Civil Procedure 8. In *Tucker v. Union of Needletrades, Industrial, and Textile Employees*, 407 F.3d 784 (6th Cir. 2005), the court held that a plaintiff who neglects to include a specific legal claim or theory in her complaint cannot raise it for the first time in opposition to summary judgment. The Sixth Circuit emphasized that "once a case has progressed to the summary judgment stage, the liberal pleading standards under Swierkiewicz and the Federal Rules are inapplicable".

A plaintiff cannot effectively amend his complaint through a response to a motion for summary judgment. Because Plaintiff failed entirely to plead veil-piercing or alter-ego liability in his 2022 Amended Complaint, he is strictly barred from raising it now as a desperate shield against summary judgment.

**B. Failure to Satisfy the Rigorous Substantive Standard for Veil-Piercing**

Even if the Court were to entertain this procedurally barred argument, Plaintiff has completely failed to satisfy the rigorous evidentiary burden required to pierce the corporate veil under Tennessee law.

Tennessee courts presume that corporate debt is the debt of the entity, not the owners, and exercise the extraordinary power to pierce the veil "with great caution and not precipitately". The Tennessee Supreme Court recently clarified and reaffirmed the rigorous standard for piercing the corporate veil in *Youree v. Recovery House of East Tennessee, LLC*, 705 S.W.3d 193 (Tenn. 2025). Under *Youree*, which reaffirmed the bedrock elements established decades ago in *Continental*

*Bankers*, a plaintiff must affirmatively prove three distinct elements to disregard the corporate form:

1. **Domination:** The individual exercises such complete dominion over the entity that it has no separate mind, will, or existence of its own;

2. **Fraud/Wrong:** This control was used to commit fraud, a wrong, or a violation of a statutory or other duty; and

3. **Proximate Causation:** The control and breach of duty proximately caused the injury or unjust loss complained of.

Because Plaintiff intentionally elected to conduct zero discovery—taking no depositions, serving no interrogatories, and requesting no documents regarding the capitalization, financial structure, or operational formalities of Hagh Law PLLC—he has absolutely no evidence to satisfy the *Youree* standard, nor has he attempted to present any.

Without admissible evidence to satisfy all three of the strict *Youree* elements, the corporate veil remains intact as a matter of law. Plaintiff cannot pierce the veil via assumption or rhetoric, and Ms. Hagh cannot be held personally liable for the obligations of Hagh Law PLLC.

## IV. The Plaintiff's Unjust Enrichment / Quantum Meruit Claims are Categorically Barred by the Express Contract

In his Amended Complaint, Plaintiff attempts to plead around his contractual forfeiture by asserting claims for equitable relief, seeking recovery under the quasi-contractual theories of unjust enrichment and quantum meruit. Under Tennessee law, however, these equitable remedies are completely unavailable to the Plaintiff for two independent, dispositive reasons.

## A. The Express Contract Preempts Quasi-Contractual Claims

It is a bedrock, unyielding principle of Tennessee contract law that an equitable claim for

unjust enrichment or quantum meruit cannot lie where a valid, express contract governs the subject matter of the dispute. As the Tennessee courts have consistently held, unjust enrichment is a quasi-contractual theory in which a court may impose an obligation in equity *only* where no express contract exists between the parties. Where an express contract addresses the specific issue in dispute, claims arising out of that relationship do not support a claim for unjust enrichment.

Here, it is undisputed that the 2017 Attorney-Client Agreement governed the compensation, discharge, and withdrawal terms regarding Plaintiff's representation of Mr. Keefer in the Shoemaker matter. In his Response, Plaintiff argues that quantum meruit is generally available to an attorney who withdraws prior to completion of a matter. While this may be true in the rare *absence* of a contract, it is strictly false when a valid, express contract explicitly addresses the financial consequences of withdrawal.

The 2017 Agreement, drafted by the Plaintiff himself, expressly dictates that upon a "withdrawal," the client's only continuing financial responsibility to the firm is the payment of advanced costs. Because the express contract definitively governs the compensation owed upon an attorney's withdrawal, the Court cannot use equity to rewrite the contract and award a multi-million-dollar quantum meruit fee. Plaintiff cannot rely on an implied contract theory to secure compensation that his own express contract expressly denies him.

**B.      Lack of Individual Enrichment to Afsoon Hagh**

Furthermore, the most fundamental element of any unjust enrichment claim is that a specific benefit was conferred upon the defendant by the plaintiff. Plaintiff has failed to produce a scintilla of evidence that Afsoon Hagh *individually* received any benefit or was unjustly enriched by his prior work on the case.

The attorney's fees generated from the Shoemaker settlement were contractually owed to the corporate entities involved, namely Hagh Law PLLC and Edwards Kirby, as evidenced by the 2021 Engagement Agreement. Ms. Hagh signed that agreement explicitly as a representative of the corporate entity, not in her personal capacity. Any alleged "enrichment" derived from Plaintiff's prior work would reside in the operating accounts of the corporate entities, or in the third-party trust accounts holding the disputed funds. Plaintiff has conducted no discovery and has produced no bank records or financial documents tracing any funds to Ms. Hagh personally. Without proof of individual enrichment, the equitable claim against her fails as a matter of law.

## V.     Plaintiff Contractually Forfeited His Fee by Voluntarily Withdrawing

Even if Plaintiff had sued the proper corporate party, and even if his claims were not barred by the corporate shield, his claim for a contingency fee fails completely on the merits. The undisputed record demonstrates that Plaintiff voluntarily withdrew from the representation. Under the plain, unambiguous language of the contract he drafted, this voluntary withdrawal extinguished his right to a fee.

## A.     The Unambiguous Contract Must Be Enforced Against the Drafter

Tennessee courts interpret contracts according to their plain terms, giving words their natural and ordinary meaning. Furthermore, under the bedrock doctrine of *contra proferentem*, any ambiguity in an attorney-client fee agreement is strictly construed against the drafter—in this case, Plaintiff Brian Cummings.

The 2017 Attorney-Client Agreement creates a stark, dispositive distinction between two termination events:

- **Discharge (Termination Clause):** "If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed...".

- **Withdrawal Clause:** "We may choose to withdraw from representing you... A 'withdrawal' by this firm does not relieve you of the responsibility to pay advanced costs.".

The Plaintiff argues in his Response that interpreting the contract to deny him a fee operates as a "disfavored forfeiture" under Tennessee law. This argument fails logically and legally. This is not a punitive forfeiture imposed by an outside party or an unconscionable contract of adhesion. Plaintiff, an experienced litigator, meticulously drafted an agreement that protected his fee if he was fired, but limited his recovery to advanced costs if he chose to walk away. Now, suffering from severe drafter's regret, he asks this Court to invoke equity to grant him a windfall that he expressly bargained away. Equity does not exist to save sophisticated attorneys from the clear text of their own agreements.

Under the recognized canon of *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of others), the explicit inclusion of a right to recover a fee in the "Discharge" clause, coupled with the conspicuous omission of a fee right in the "Withdrawal" clause, demonstrates a clear, unambiguous intent: no fee is owed upon a voluntary withdrawal. The contract specifically preserved the right to be reimbursed only for "advanced costs" upon withdrawal. If Plaintiff intended to preserve a *quantum meruit* fee upon his own withdrawal, he was fully capable of writing that into the contract. He did not. Under *contra proferentem*, he must bear the consequences of his own drafting.

**B.      The Withdrawal Was Voluntary, Not "Forced"**

Attempting to escape his own contractual language, Plaintiff argues that his withdrawal was not voluntary, but rather a "mandatory" ethical obligation forced upon him by the BPR. As established exhaustively in Section III(A), his reliance on hearsay to prove this BPR directive is legally inadmissible and must be struck from the record. However, even examining the Plaintiff's own (unauthenticated) October 2020 withdrawal letter, his stated rationale for leaving the case amounts to nothing more than a permissive, voluntary business decision.

In his withdrawal letter, Plaintiff cites "strained relationships" and "personal conflict" as the reasons for his exit. He complains that the client refused to sign a new fee agreement that he proposed, and that co-counsel called him "shady" on a phone call. Under the Tennessee Rules of Professional Conduct (TRPC), these interpersonal grievances do not constitute grounds for *mandatory* withdrawal.

TRPC Rule 1.16(a) governs Mandatory Withdrawal. An attorney is only mandated to withdraw if the representation will inherently result in a violation of the Rules of Professional Conduct or other law (e.g., the client demands the lawyer engage in illegal or fraudulent conduct), or if the lawyer is physically or mentally impaired. "Strained relations," interpersonal friction with co-counsel, or a client's refusal to sign a new contract do not trigger mandatory withdrawal.

Rather, these factors are classic grounds for *Permissive* Withdrawal under TRPC Rule 1.16(b). This rule allows a lawyer to voluntarily withdraw if it can be accomplished without material adverse effect on the client, or if the client makes the representation unreasonably difficult.

Even if the Court accepts Plaintiff's unauthenticated withdrawal letter, his stated reasons — "strained relationships" and "personal conflict" — are the textbook definition of a voluntary,

permissive withdrawal under TRPC 1.16(b). He was not asked to commit a crime; he was merely annoyed that his co-counsel called him "shady" and his client refused to sign a new contract. He chose his ego and pocketbook over the representation, and his own contract dictates the financial consequence of that choice. Because Plaintiff's exit was a voluntary business decision prioritizing his own comfort over the continuation of the representation, he triggered the Withdrawal clause of his own contract. He is legally entitled only to advanced costs, which he admits he has already received, and cannot now demand millions of dollars in equity.

## CONCLUSION

The record before this Court presents a glaring absence of admissible evidence to support the Plaintiff's claims. By deliberately refusing to conduct discovery, Plaintiff has failed to carry his evidentiary burden under Rule 56, relying instead on inadmissible hearsay regarding the BPR and unauthenticated documents that must be stricken and disregarded by this Court.

Substantively, Plaintiff has sued the wrong party under the wrong legal theories. The formal statutory reinstatement of Hagh Law PLLC completely nullifies Plaintiff's administrative dissolution argument, as the relation-back doctrine retroactively cures the dissolution and preserves the corporate liability shield uninterrupted as if the dissolution never occurred. Plaintiff is procedurally barred from raising an unpled veil-piercing claim in a summary judgment response, and he possesses zero evidence to satisfy its rigorous elements regardless. Finally, Plaintiff's claims for equitable relief are barred by the express 2017 Attorney-Client Agreement he drafted, which strictly limited his recovery upon a voluntary withdrawal to advanced costs.

Because there are no genuine disputes of material fact and Plaintiff's claims fail comprehensively as a matter of law, Defendant Afsoon Hagh respectfully requests that this Court grant her Motion for Summary Judgment and dismiss all claims against her with prejudice.

Date:  February 20, 2026

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
915 Rep. John Lewis Way S
Suite 100, Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Bretton Keefer and Afsoon Hagh*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed February 20, 2026 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*