IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC, AFSOON HAGH, and MANOOKIAN PLLC,<br><br>Defendants. | Case No. 3:19-bk-07235<br>Adv. Proc. No. 3:20-ap-90002<br><br>Chapter 7<br><br>Judge Walker |

**DEFENDANT MANOOKIAN PLLC'S MOTION TO COMPEL
RESPONSES TO INTERROGATORIES FROM FIRST AND
SECOND SETS OF WRITTEN DISCOVERY**

Pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7037, Manookian PLLC, Adversary Proceeding Defendant (the "Defendant"), respectfully moves to compel responses to Defendant's First and Second Set of Interrogatories propounded to Plaintiff Jeanne Anne Burton ("Plaintiff").

I.  **Introduction and Background**

This is an adversary proceeding. The Plaintiff is the Trustee for a defunct law firm, Cummings Manookian ("CM"). The Defendant is the law firm Manookian PLLC. Over two (2) years ago, the Plaintiff sued the Defendant making numerous and serious claims of fraudulent transfer, tortious interference with contracts, and conversion.

1

The Complaint, however, was grossly deficient as to detail. For example, although it alleges that Manookian PLLC received "substantial Property of CM without giving reasonable equivalent value" it never actually identifies the property over which it brought suit. Complaint, ¶ 48. Other representative allegations include that Manookian PLLC received substantial transfers form (*sic*) CM without giving reasonably equivalent value," but again neglecting to identify any details about these alleged transfers. *Id.*, ¶ 52. The utter lack of specificity of these allegations was particularly disturbing to Manookian PLLC given that it has never received property or transfers from any person or entity, and, indeed, has never even held a bank account.

In order to learn what Plaintiff was even alleging occurred, Manookian PLLC propounded its first set of written discovery on January 26, 2021, including eighteen separate interrogatories. Manookian PLLC followed up by posing a second set of written discovery on January 27, 2021, including five additional interrogatories. Pursuant to the Federal Rules of Civil Procedure and the Bankruptcy Rules, responses were due no later than February 25, 2021 and February 26, 2021, respectively.

The Plaintiff served her responses on March 1, 2021. Those responses are attached as **Collective Exhibit 1.** Consistent with the deficiencies noted in the Complaint, Plaintiff once again declined to provide any detail whatsoever regarding her allegations; either outright refusing to respond, lodging improper boilerplate objections, or providing non-responsive advocacy positions in response to all 23 pending interrogatories.[1]

---

[1] The Plaintiff additionally refused to produce a single page of documents in response to twenty-four (24) separate detailed Requests for Production. Defendant continues to seek adequate responses to its Requests for Production, but anticipates filing a Motion to Compel on those requests if unsuccessful.

2

Following the expiration of a discovery stay, Defendant wrote the Plaintiff on October 21, 2021, seeking full, supplemented responses to its outstanding discovery. **Exhibit 2.** The Defendant requested supplementation within two (2) weeks by November 5, 2021.

Unfortunately, despite two (2) years having passed since Plaintiff filed her bare-bones Complaint; one (1) year having passed since Defendant posed basic written discovery seeking elemental information about Plaintiff's claims; and three (3) months having passed since Defendant sought full responses in writing through a meet-and-confer letter, Plaintiff continues to refuse to provide even the most basic information about her allegations against the Defendant.

As a result, Defendant seeks an Order compelling Defendant to fully and adequately respond to the interrogatories discussed below. Because of the extreme bad-faith nature of Plaintiff's responses (refusing to answer a single interrogatory *about Plaintiff's own allegations*) – and the inordinate amount of time Defendant has been required to spend addressing those deficiencies – Manookian PLLC additionally seeks an award of the attorney's fees it has been required to spend simply to learn what Plaintiff is alleging Manookian PLLC did wrong or to otherwise injure Plaintiff.

**II.     First Set of Written Discovery**

<u>Interrogatory No. 1</u>:     This interrogatory seeks the specific dates on which Cummings Manookian withdrew, terminated its representation, or stopped providing legal services to any client from January 1, 2018 to the present. Plaintiff lodges boilerplate objections and refuses to provide any substantive information in response. This interrogatory is directly relevant to Plaintiff's claims that Plaintiff is due attorney's fees for work performed in those very same cases. By identifying the date on which Cummings Manookian alleges it withdrew from the case, Defendant can begin to determine the scope of work Cummings

3

Case 3:20-ap-90002    Doc 104    Filed 01/19/22    Entered 01/19/22 17:51:31    Desc Main
Document    Page 3 of 16

Manookian alleges it completed, as well as any work which occurred after Cummings Manookian was no longer involved in a case.

Interrogatory No. 2: This interrogatory seeks specific information about cases from which Cummings Manookian withdrew, in particular the last or most recent legal task or service provided by the Plaintiff to the client. The Plaintiff refuses to respond on the circular grounds that it refused to respond to Interrogatory No. 1.

This interrogatory is relevant to Plaintiff's claims that it provided legal services for which it should be compensated. Again, a full response to this interrogatory allows the Defendant to "book-end" Plaintiff's claims of unpaid, rendered services. Any work performed after those final services would necessarily not have been completed by Cummings Manookian, and would therefore not be subject to any claims by Cummings Manookian.

Interrogatory No. 3: This interrogatory seeks detailed information about the work performed by Plaintiff, services rendered by Plaintiff, and outcomes achieved by Plaintiff in any case for which Plaintiff is claiming Plaintiff is owed money for services provided to a legal client. Rather than answer the detailed inquiries, Plaintiff simply provides a list of cases for which she alleges that "Cummings Manookian is entitled to fees and/or expenses." This is necessary, but nowhere approaching sufficient. Rather, the interrogatory requests *specific information* about Cummings Manookian's work on those cases in order to test the validity of the Plaintiff's claims. The Plaintiff just provides a list of cases without detailing what Plaintiff alleges CM did in those cases. Again, this is non-responsive to the tailored, detailed inquiries.

4

Interrogatory No. 4: This interrogatory requests that Plaintiff state the total number of hours Cummings Manookian spent working on any case for which Plaintiff claims the firm is due monies, even if such number is merely an estimate. Plaintiff makes a boilerplate objection and then refuses to respond. Again, this interrogatory is narrowly tailored to discover material factual information regarding Plaintiff's claims that the firm worked on legal cases for which it is now due compensation. If Plaintiff is unable to provide even a rough estimate of the number of hours CM worked on any case, she should simply say so.

Interrogatory No. 5: This interrogatory seeks detailed information regarding the allegations of fraud that Plaintiff has alleged against any Defendant in the case. The Defendant, again, just refuses to answer. This is directly material to Plaintiff's own ambiguous allegations contained in the Complaint—allegations that are governed by Fed. R. Civ. P. 9(b) and Fed. R. Bank. P. 9011. Defendant is entitled to know precisely which of its actions Plaintiff is alleging constituted fraud or one of the discrete elements of fraud. Fed. R. Bank. P. 7009 ("[Fed. R. Civ. P.] Rule 9 applies in adversary proceedings."); *see also In re Kimmel*, 2008 WL 5076380 at *1 (9th Cir. 2008) ("In order to properly plead fraud with particularity, the complaint must allege the time, and content of the fraudulent representation such that a defendant can prepare an adequate response to the allegations."); *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 322 (Bankr. N.D. Ill. 2004) (noting that "fraud is a serious charge, easy to allege and hard to prove").

Interrogatory No. 6: This interrogatory seeks a concrete answer as to the date upon which Cummings Manookian completely ceased, as an entity, providing legal services. This is

material for any number of reasons, including the fact that Cummings Manookian – as a law firm – eventually neither employed any licensed attorneys or had any actively licensed members. As a result, it necessarily stopped providing legal services as of some date when it no longer had any licensed professionals whom could carry out legal services. Plaintiff seeks Defendant's position on the date of that occurence. In reply, the Defendant lodges multiple boilerplate objections to this straightforward, material inquiry before declining to provide a concrete response. This interrogatory is material to Plaintiff's claims that it is due compensation for purported legal services it allegedly rendered.

Interrogatory No. 7: At some point during its operation, Cummings Manookian occupied (but never owned) office space at 45 Music Square West. Plaintiff alleges that, at some other separate undisclosed time, all of the Defendants somehow improperly utilized that office space; including, presumably, by being physically present on the premises. This interrogatory asks the Plaintiff to identify each and every day that Afsoon Hagh or any employee of Hagh PLLC was present at 45 Music Square West. The Defendant lodges boilerplate objections before refusing to answer. This interrogatory is directly relevant and highly material to Plaintiff's claims that the Defendants somehow improperly used 45 Music Square West, which is pled repeatedly, but without detail, in Plaintiff's Complaint.

Interrogatory No. 8: This interrogatory asks the Plaintiff the identify with specificity the "furnishings and equipment" it alleges that Afsoon Hagh of Hagh Law improperly utilized in Paragraph 17 of Plaintiff's Complaint. The Plaintiff makes a number of boilerplate objections before refusing to respond. This interrogatory is relevant and material because

the Plaintiff alleges that Defendants improperly utilized "furnishings and equipment" as one of its claims, but has, to date, refused to describe any such furnishings and equipment.

<u>Interrogatory No. 9</u>: This interrogatory seeks identification of the specific "office space" and specific "furnishings and equipment" that the Plaintiff alleges that Brian Manookian or Manookian PLLC improperly utilized at Paragraph 20 of the Plaintiff's Complaint. The Defendant generally identifies 45 Music Square West as the "office space" but refuses to identify any specific "furnishings and equipment."

This information is material because Plaintiff's Complaint is so devoid of actual factual allegations, the Defendant is not even on notice of what it is alleged to have improperly utilized. Defendant is not aware of any "furnishings" or "equipment" owned by Cummings Manookian. Because of the total lack of detail in Plaintiff's Complaint and discovery responses, Manookian PLLC cannot even be sure what Plaintiff is claiming. Plaintiff should be required to respond by stating with specificity the purported "furnishings and equipment" that were allegedly improperly utilized.

<u>Interrogatory No. 10</u>: In addition to "improper utilization" of office space, furnishings, and equipment, one of Plaintiff's more bizarre claims is that Manookian PLLC converted or otherwise stole "telephone numbers" or "email addresses" belonging to Cummings Manookian. But the Plaintiff refuses to even identify those telephone numbers or email addresses with specificity.

What makes this allegation all the more perplexing is (1) Defendant is not aware that anyone can "own" a telephone number and (2) Manookian PLLC did not even use the same domain for email addresses as Cummings Manookian. Cummings Manookian email addresses were located at cummingsmanookian.com while Manoookian PLLC email addresses were located at tntriallawyers.com. Brian Manookian, for example, used the email address bmanookian@cummingsmanookian.com while with Cummings Manookian and brian@tntriallawyers.com while with Manookian PLLC.

This interrogatory asks the Plaintiff to specifically identify any and all office space, real property, furnishings, equipment, telephone numbers, and email addresses that Defendant alleges were owned by Cummings Manookian PLLC in Plaintiff's Complaint. The Plaintiff lodges a number of boilerplate objections and refuses to respond, other than by stating it had "an interest" in unidentified telephone number and email addresses and a "leasehold interest" in 45 Music Square West. This is not responsive. The interrogatory specifically seeks identification of those enumerated categories which the Defendant alleges it *owns or owned*. The Defendant should be required to provide an actual response to the inquiry posed.

<u>Interrogatory No. 11:</u> This interrogatory asks the Plaintiff to specifically identify the "property" and "client files" that Plaintiff alleges in Paragraph 20 of its Complaint were "used" by Brian Manookian or Manookian PLLC. After lodging various boilerplate objections, the Trustee again simply states "all furnishings and equipment" located at 45 Music Square West, without such much as generally describing the furnishings or equipment, and then refuses to identify any specific "client file."

This response is self-evidently problematic, but more so given that certain furnishings or equipment were indisputably owned by Brian Cummings. For example, Mr. Cummings owned his own desk, a valuable antique, as well as other office furniture. The Trustee's casual response that "everything" located inside a particular street address belonged to Cummings Manookian is not only unhelpful in unraveling her allegations, but demonstrably false.

Defendant is entitled to know with specificity the actual "property" and "client files" that are only generally referred to in Plaintiff's Complaint. With respect to the "client files," Defendant's understanding is that such files are owned by the client. To the extent Plaintiff is alleging otherwise (which it appears Plaintiff is generally doing), the Trustee needs to identify those client files as well as their content. Defendant is not capable of responding to Plaintiff's claims in the absence of actual identification of the property or client files. If Plaintiff has actual, concrete information supporting its claims, it should be a simple matter to state what exactly it claims the Defendant improperly took.

Interrogatory No. 12: This interrogatory asks the Plaintiff to identify with specificity the work it completed in the Fitzgerald case, including specifying the number of hours spent on each task, and which attorney performed the work. This is highly relevant and material to Plaintiff's claims that it is due some unpaid money as a result of purported legal service performed in the Fitzgerald case. After lodging various boilerplate objections, the Plaintiff simply refuses to answer, despite having alleged that it performed such work in its Complaint.

9

Interrogatory No. 13:   This interrogatory asks the Plaintiff to identify any and all offers of settlement obtained by Cummings Manookian in the Fitzgerald case during any time that Cummings Manookian was involved in the Fitzgerald case. This request is highly relevant and directly material to Plaintiff's claims that it is due money in the Fitzgerald case, because it evidences outcomes that Cummings Manookian may have directly worked to secure for the Fitzgerald.

After lodging various objections, the Trustee states that "any and all settlement offers in the Fitzgerald Case were obtained by Cummings Manookian." Notwithstanding the fact that this response is demonstrably false (because Cummings Manookian no longer existed as a going concern at the time of the case's settlement); it also fails to answer the inquiry. To the extent that Cummings Manookian obtained any settlement offers, the Defendant requests that the Plaintiff identify those settlement offers with specificity. Such specificity would include, at a minimum, the date on which the offer was obtained and the amount of money of the settlement offer.

Interrogatory No. 14:   This interrogatory asks the Plaintiff to identify the date on which Cummings Manookian stopped providing legal services in the Fitzgerald case. This is highly relevant and material to the Plaintiff's claims that it is due unpaid monies for services purportedly rendered in the Fitzgerald case. After lodging various objections, the Plaintiff responds that "notwithstanding these objections, the Trustee states that Cummings Manookian PLC continued providing services in the Fitzgerald case through the conclusion of that matter." Again, notwithstanding that Plaintiff's response is demonstrably false

10

(Cummings Manookian no longer existed by that time or had any licensed professionals working for it), Plaintiff has failed to identify the specific date it concluded its representation. If Plaintiff's position is that it continued provided services through the "conclusion of the matter," it should be able to identify a date or approximate date on which the matter concluded and Cummings Manookian's representation ended.

Interrogatory No. 15: This interrogatory asks the Plaintiff to "identify and itemize" the specific property it alleges in Paragraph 44 of its Complaint that any Defendant "exercised control over to the exclusion of Cummings Manookian." This is highly relevant in that it merely and literally asks the Plaintiff to describe in detail the property at the heart of its own claims (but for which the Plaintiff has only generally listed by broad category in the Complaint).

Yet again, after lodging various boilerplate objections, the Plaintiff refuses to do so. Defendant is entitled to specific, itemized, and detailed descriptions of whatever property, items, or other materials the Plaintiff is alleging the Defendant wrongfully exercised control over. This request is taken directly from the language in Plaintiff's Complaint.

Interrogatory No. 16: This interrogatory is a direct question. It asks the Plaintiff whether it alleges that Afsoon Hagh was ever employed by Cummings Manookian, and, if so, to identify the dates and terms of her employment. This is directly relevant to all of Plaintiff's claims alleging that work completed by Afsoon Hagh should be credited to the Plaintiff. After raising various objections, the Plaintiff again refuses to respond with a simple affirmation or denial. This is a simple, straightforward request to which Defendant is entitled an answer.

Interrogatory No. 17: This interrogatory is another direct question, this time asking the Plaintiff whether it contends that Cummings Manookian has ever entered into any written agreement with any of the Defendants. This goes to the heart of Plaintiff's claims. Plaintiff is apparently alleging that the Defendants have some unfulfilled financial obligation to the Plaintiff. Here, the Defendant seeks to identify whether that purported obligation is contractual in nature, or otherwise, rule out any such basis for the alleged obligation. Plaintiff lodges various boilerplate objections before refusing to give a straightforward response. To the extent Defendant is alleging that any of the Defendants had any written agreement with the Plaintiff, Defendant is entitled to know.

Interrogatory No. 18: This final interrogatory is of critical importance. Plaintiff has sued the Defendant for various causes of action, alleging general and unarticulated injuries. This interrogatory asks the Plaintiff to "identify and itemize with specificity all economic damages Cummings Manookian claims to have suffered and is seeking from any Defendant in this action." After lodging various objections, the Plaintiff, again refuses to provide any type of substantive response from which the Defendant could possibly divine, what, specifically the Plaintiff wants from it.

This is perhaps one of the most fundamental inquiries that can be made in a lawsuit. Defendant simply wants to know, with specificity, what Plaintiff is alleging it is owed, and by whom. Defendant is entitled to this very basic information. Defendant cannot even determine its purported liability or financial exposure in the absence of such elemental information.

### III. Second Set of Written Discovery

Interrogatory No. 1: Paragraphs 47 and 48 of Plaintiff's Complaint allege that Manookian PLLC received fraudulent transfers of property. This interrogatory merely asks the Plaintiff to identify with specificity the dates of the transfers, as well as precisely what was transferred, what was received by the Defendant, and in what manner. After raising various boilerplate objections, the Plaintiff refuses to provide a substantive response to the inquiry, including providing no dates, no specific property, and failing to specify the manner in which Manookian PLLC purportedly received those transfers. Again, this is fundamental information to which the Defendant is entitled.

Interrogatory No. 2: Plaintiff's Complaint alleges that Defendants received "substantial transfers from Cummings Manookian." This interrogatory simply asks the Plaintiff to identify those transfers with specificity, including the nature of the property transferred, the value of the property transferred, and the dates of the transfers. Again, after lodging various objections, the Plaintiff refuses to provide any specific and substantive response.

Plaintiff was apparently confident enough in its Complaint to allege that Manookian PLLC, a law firm, received "substantial transfers" from Cummings Manookian. Defendant is entitled to know what those purported transfers consisted of, what the Plaintiff believes those transfers were worth, and the date on which those transfers were alleged to occur.

Interrogatory No. 3: Paragraph 63 of the Plaintiff's Complaint references "client and vendors" that were purportedly improperly utilized or otherwise taken from Cummings

13

Case 3:20-ap-90002   Doc 104   Filed 01/19/22   Entered 01/19/22 17:51:31   Desc Main
Document      Page 13 of 16

Manookian. This interrogatory simply asks the Plaintiff to specifically identify those clients and vendors, as well as the date and nature of any agreement between those clients and vendors and any party to this suit. The relevance of this inquiry is self-evident. Defendant needs to know what Plaintiff is alleging in order to defend itself from Plaintiff's claims. In response, Plaintiff refuses to identify a single client or vendor by name, a single agreement between a client or vendor and any party to this lawsuit, or a single date or the nature of any such agreement. Defendant is entitled to the identity of these individuals and entities that Plaintiff alleges Defendant improperly "utilized."

Interrogatory No. 4: Paragraph 66 of the Plaintiff's Complaint alleges that "assets" were transferred from Cummings Manookian. This interrogatory simply asks that the Plaintiff identify all such assets with specificity. This is an incredibly basic request. After lodging various boilerplate objections, the Plaintiff refuses to identify any such asset that was purportedly *transferred from Cummings Manookian* with any specificity. Defendant is entitled to this information, including on fundamental due process grounds. The continual reference to non-specific "property" or "assets" in Plaintiff's Complaint, purportedly taken from Cummings Manookian, is improper and impossibly insufficient to place Defendant on notice of whatever Plaintiff is even claiming was taken from Cummings Manookian. Defendant is entitled to this information.

Interrogatory No. 5: This interrogatory asks the Plaintiff to describe in as much detail, including listing a dollar amount and the bases for same, of any legal or equitable interest the Plaintiff claims to hold in any attorney's fee for cases the Plaintiff identified in its Complaint, including whether those cases even generated an attorney's fee.

This inquiry is highly relevant to Plaintiff's claims of being owed attorney's fees, particularly so because a number of the cases in Plaintiff's complaint never generated attorney's fees to Defendant's knowledge. In response, Plaintiff lodges serial boilerplate objections and refuses to provide any substantive response.

Defendant is entitled to know exactly what dollar amount of attorney's fees the Plaintiff is alleging Defendant owes it, and the bases for such a claim. This is fundamental to the litigation and critical for the Defendant to mount a defense. For example, this Defendant has never received an attorney's fee in any case. It is simply perplexed how it could then owe such attorney's fees (which it has never received) to a third-party with which it never had any type of agreement.

**IV.    Conclusion**

For all of the reasons discussed above, Manookian PLLC requests that the Court compel the Plaintiff to respond to the outstanding Interrogatories discussed in this Motion. Manookian PLLC further requests that the Court award it its attorney's fees in connection with this Motion.[2]

Date:   January 19, 2022                                                Respectfully submitted,

                                                                        */s/ John Sragens*
                                                                        John Spragens (TN Bar No. 31445)
                                                                        Spragens Law PLC
                                                                        311 22nd Ave. N.
                                                                        Nashville, TN 37203

---

[2] *See*, Fed. R. Civ. Pro. 37(a)(5)(a).

T: (615) 983-8900  
F: (615) 682-8533  
john@spragenslaw.com  

*Attorney for Manookian PLLC and Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed January 19, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*