IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>    Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>    Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,<br><br>    Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

## BRIAN MANOOKIAN AND MANOOKIAN PLLC'S MOTION TO DISQUALIFY BANKRUPTCY JUDGE CHARLES WALKER

Brian Manookian and Manookian PLLC ("the Manookian Parties") respectfully ask the Court to recuse itself from further consideration of this matter, pursuant to 28 U.S.C. §§ 455(a), (b)(1), and the Code of Conduct for Federal Judges.

The Court is required to disqualify itself from this matter because it engaged in multiple prohibited *ex parte* communications about Brian Manookian[1] and this proceeding with "at least two [unidentified] lawyers" while this action has been pending.[2]

---

[1] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.
[2] Ex. 1, Transcript of Pretrial Conference and Motion Hearing, March 17, 2022, at 84:15-85:11. On April 21, 2022, the Manookian Parties learned that the Trustee, through her

The Court then failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.³ Instead, the Court only disclosed their occurrence much later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location. In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed attorneys in various *ex parte* phone calls — buttressed by other information the Court gleaned from extrajudicial research — calls that neither the Court nor those attorneys disclosed to the Manookian Parties at the time.

As a result, the Manookian Parties were never able to respond to the *ex parte* representations, or even make a record regarding those improper communications and independent research for review by a superior court. To this day, potentially years after the *ex parte* communications in this still-pending case, the Manookian Parties thus remain in the dark as to the substance of those prohibited communications, although their corrosive effect on the Court has recently become clear.

The Court and the as-yet unidentified attorneys have, intentionally or not, engaged in conduct that violates multiple provisions of the Code of Conduct for United States Judges as well as the Rules of Professional Conduct governing attorneys licensed in Tennessee.⁴ Recusal is required by statute. *See* 28 U.S.C. § 455(a) & (b)(1).

---

Special Counsel, has had at least one improper *ex parte* communication with the Court about Mr. Manookian. Ex. 2, Deposition of Phillip Young, at 43:15-45:25.
³ Code of Conduct for United States Judges, Canon 3(A)(4).
⁴ *Id. See also* Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.5, Impartiality and Decorum of the Tribunal ("A lawyer shall not: (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; [or] (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order.").

This is not a close call. The Court is required to immediately disqualify itself from this case. The Court should additionally submit a sworn declaration detailing the dates, substance of, and parties to each of its *ex parte* communications so that the Manookian Parties may: (1) determine which orders of this Court occurred after the improper communications; (2) ascertain whether the Court is now a witness to party or creditor statements such that depositions of the *ex parte* participants is necessary; and (3) report any improper conduct to the appropriate licensing and oversight authorities.

## I. LEGAL STANDARD

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not permit *ex parte* communications, except in limited circumstances, and if such a communication is received, the Court must give all parties prompt notice of the communication and an opportunity to respond:

> Except as set out below, <u>a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers</u>. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested</u>. A judge may:
>
> (a) initiate, permit, or consider ex parte communications as authorized by law;
>
> (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
>
> (c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the

> person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or
>
> (d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(emphasis added).

The Tennessee Rules of Professional Conduct are likewise clear that attorneys may not engage in *ex parte* communications with the Court. Rule 3.5 states that, "A lawyer shall not seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; [or] communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order."

Finally, federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This includes but is not limited to situations "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id*. § 455(b)(1). Receiving, failing to disclose, and then ruling based upon improper *ex parte* communications and extrajudicial information in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality reasonably being questioned.

## II. FACTUAL BACKGROUND

On March 17, 2022, counsel to the Trustee, Phillip Young, announced in a hearing that he sought to conduct depositions in this case exclusively at a "secured" location at the courthouse, because of a heretofore unrevealed "security issue" about Brian Manookian,

the sole member of the Debtor Cummings Manookian and the Adversary Defendant, Manookian PLLC.[5] Counsel for Mr. Manookian and Manookian PLLC, John Spragens, immediately opposed the request, as did counsel for Adversary Defendants Afsoon Hagh and Hagh Law.[6]

Rather than permit briefing or argument on the issue, the Court gratuitously and *sua sponte* began holding forth on what it described as the "100 pound gorilla in the room on that issue," despite no such issue never having been previously addressed to the Court by any party (at least not properly or on the record). First, the Court – after undersigned counsel said he would preserve his objection to this departure from the ordinary course of proceedings for appeal – undertook to create an evidentiary record in support of his ruling.[7] Next, the Court solicited a representation from the Trustee's counsel to the effect that the Trustee's counsel was "uncomfortable doing depositions in [defense counsel's] office." Finally, the Court described *ex parte* communications and offered its own view, based upon undisclosed information not in the record, purporting to justify that Mr. Manookian's unspecified "past behavior" in front of "the tribunals" posed an undefined security threat:

---

[5] Ex. 1, Transcript of Pretrial Conference, March 17, 2022, at 83:21-25.
[6] *Id.*, at Page 82:8-10.
[7] *Id.*, at Page 82:8-83:13 (The Court: "So, Mr. Young, let's articulate a basis on the record.").

```
11            THE COURT:  Okay.
12            And, Mr. Young, you're going to represent that you're
13   uncomfortable doing depositions in Mr. Spragens' office?
14            MR. YOUNG:  Yes, Your Honor.
15            THE COURT:  All right.  And then I'll just address
16   the 100 pound gorilla in the room on that issue.
17            To be candid, Mr. Spragens, I mean, your client's
18   past behavior before the tribunals, and I've had at least two
19   lawyers call the Court and say they don't feel comfortable if
20   your client is going to appear, and, you know, the Court takes
21   those concerns very seriously and makes no conclusion on
22   whether they are valid, they are perceptions which drive
23   behaviors of other parties.  And to eliminate any of those
```

Ex. 1, Transcript of Pretrial Conference, at 84:11-23.

In addition to admitting having participated in multiple *ex parte* conversations in this case, the Court additionally made reference to "[Brian Manookian's] past behavior before the tribunals" when it ordered that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian.  But the Court did not disclose what it believed that "past behavior" to include, or where it acquired such information.

To be clear, Mr. Manookian has conducted or attended hundreds of depositions over the course of his career, including as a witness on multiple occasions.  No court has ever found that he acted even remotely inappropriately, much less in a physically threatening manner, during a deposition — nor, crucially, does the record in this case support such a finding.  The Court's ruling could have only been based upon its *ex parte* communications and extrajudicial research – and its view was so deeply held that it

offered it *sua sponte* based upon an extrajudicial record the Court itself endeavored to create.

### III. ARGUMENT

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective: the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), *aff'd*, 486 U.S. 847 (1988); *see Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc. (In re Continental Airlines Corp.)*, 901 F.2d 1259, 1262 (5th Cir. 1990); *In re Faulkner*, 856 F.2d 716, 720-21 (5th Cir. 1988).

"Ex parte contacts are improper where, given all the circumstances, they could cause a reasonable person to question that judge's impartiality." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). And "decisions made by the district court in reliance on any undisclosed ex parte communications are inappropriate." *United States v. Lanier*, 748 F. App'x 674, 678 (6th Cir. 2018) (citing *United States v. Hayes*, 171 F.3d 389, 390–91 (6th Cir. 1999)). "If any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the ex parte communication to the parties as soon as possible." *Id.* at 678.

"Extrajudicial knowledge," meanwhile, is knowledge that the judge acquires "outside a courthouse." *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996) (citations omitted). "The point of distinguishing between 'personal knowledge' and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process. Knowledge

received in other ways, which can be neither accurately stated nor fully tested, is 'extrajudicial.' " *Id*.

The Court's repeated *ex parte* communications with practicing attorneys regarding this case and the parties to it – which were not disclosed at the time and only revealed by the Court to support a subsequent ruling, when the Court spontaneously revealed its concern about the "100 pound gorilla in the room on that issue" – require recusal. Indeed, the Court's ruling requiring that depositions be conducted in the courthouse was expressly premised upon concerns the Court developed based upon (1) *ex parte* communications about Mr. Manookian that Mr. Manookian had no knowledge of, nor any opportunity to rebut, and (2) the Court's views about "Mr. Manookian's past behavior before the tribunals" – again unspecified, and again, based upon information outside the record in this case. [8]

A reasonable observer would conclude that the Court has developed views of a litigant, based upon improper *ex parte* communications and information outside the record in this case, and – however unintentionally – has made a ruling based on those concerns. On any objective basis, recusal is appropriate and required, and is the course of action that best promotes respect for the rule of law.

The Court's statements confirm that it has entertained *ex parte* communications, failed to disclose those communications to the impacted parties, conducted its own

---

[8] The Court's views were so strongly – and mistakenly – held that it took a second unusual step, not just requiring that the depositions be held in the courthouse but also leaving instructions for the participants and setting a time for hearings on objections (a copy of which is attached as Exhibit 3). The depositions were predictably uneventful and conducted professionally by all parties, and no objections were brought to the Court. But the Court's overreaction to an ill-defined threat of misconduct based on not even a scintilla of record evidence, considered by a reasonable observer, further demonstrates that recusal is warranted here.

independent investigation into a litigant in this case, and has – most troublingly – formed impressions and opinions based upon the information gained in those improper exercises, relying on them in its rulings and approach to this case.

Of particular concern, the Court's multiple *ex parte* communications pertained to the character of a witness that, in the Court's view, "holds the keys to the kingdom," because – as the Court put it in partially denying the Manookian Parties' motion to compel discovery responses from the Trustee – the key knowledge in the case concerning the Trustee's allegations "is locked away deep inside Mr. Manookian's brain somewhere."[9] The Court emphasized Mr. Manookian's centrality to the case, volunteering that "while he's under oath he will enlighten the Trustee and the other parties on exactly what happened," enabling the Trustee to learn details about the allegations in her Complaint.[10] When in response to the Court, undersigned counsel stated that it was "certainly the Trustee's theory" that Mr. Manookian holds the "keys to the kingdom," the Court corrected counsel, stating, "It's not a theory, Mr. Spragens," and explaining that the Trustee could not be expected to provide further information about her adversary proceeding allegations because she merely stepped into "save the estate for the benefit of creditors based off the actions of the people who put it in bankruptcy."[11]

Taken together, these comments indicate that the Court has developed "concerns" that it takes "very seriously" about whether Mr. Manookian can attend a deposition at counsel's office without some unspecified harm occurring. The Court has formed the view that Mr. Manookian is the key witness whose testimony will unlock the case when he is

---

[9] Ex. 1, Transcript of Pretrial Conference, at 49:2-16.
[10] *Id.*
[11] *Id.*

put under oath, and it has also determined that he poses a threat to other individuals or the orderly proceeding of the case, such that he cannot be trusted to attend or give a deposition at counsel's office. Those concerns are based exclusively upon *ex parte* communications and the Court's own investigation into, and extrajudicial impressions formed about, this key witness in the case. Under these circumstances, where the Court is both law-giver and factfinder, the Court should, consistent with principles of fair dealing and judicial neutrality, recuse itself so another judge can preside over this case.

The Court's undisclosed *ex parte* communications and consideration of extrinsic information, all of which explicitly formed the basis of its ruling, are not the kinds of innocuous *ex parte* communications allowed under the Federal Rules. *See, e.g.*, *Blixseth*, 742 F.3d 1215 at 1219-20 (permitting *ex parte* communications regarding scheduling and a non-public bankruptcy auction). Instead, the communications and extrinsic evidence are relevant to the material disputed issues in the case and its forthcoming findings about the credibility of a material witness whom the Court believes holds the "keys to the kingdom" in this case.

In short, the Court's failure to promptly disclose the occurrence of *ex parte* communications, lack of disclosure about the total substance of, and participants to, those conversations, undertaking of an independent investigation into this matter, and reliance upon both *ex parte* communications and extrajudicial research require immediate recusal. It further requires full disclosure of the circumstances and substance of the *ex parte* communications and extrajudicial materials considered by the Court.

## IV. CONCLUSION

For all these reasons, the Court is required to immediately disqualify itself. Moreover, the Court should promptly submit a sworn declaration detailing the dates,

substance of, and parties to each of its *ex parte* communications as well as the particulars of its independent investigation.

Date: May 5, 2022                           Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed May 5, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*