# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CUMMINGS MANOOKIAN, PLLC, ) | Case No. 3:19-bk-07235 |
| Debtor. ) | Chapter 7 |
| ) | Judge Walker |
| JEANNE ANN BURTON, TRUSTEE, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HAGH LAW, PLLC; AFSOON ) | |
| HAGH; MANOOKIAN, PLLC; and ) | |
| FIRST-CITIZENS BANK & TRUST ) | |
| COMPANY, ) | |
| Defendants. ) | |
| ) | Adv. Proc. No. 3:20-ap-90002 |

### PLAINTIFF'S RESPONSE TO BRIAN MANOOKIAN AND MANOOKIAN PLLC'S MOTION TO DISQUALIFY BANKRUPTCY JUDGE CHARLES WALKER

Comes now the Plaintiff, Jeanne Ann Burton, Trustee, (the "Plaintiff" or "Trustee") by and through special counsel and files this response (the "Response") to Brian Manookian and Manookian, PLLC's Motion to Disqualify Bankruptcy Judge Charles Walker (the "Motion"). While the Trustee believes that the Court is certainly capable of determining whether it should recuse itself in this matter, the Trustee believes that certain facts and legal standards cited in the Motion are incorrect. The Motion alleges that the Court has been biased as a result of "*ex parte* communications and extrajudicial research." *See* Motion, p. 6. The Trustee has knowledge and information concerning only one communication that the Motion alleges is the basis for recusal. The Trustee files this

Response for the purpose of clarifying both the facts and the applicable law as it relates to that one communication.

## FACTS

The Motion contains a number of factual errors, omissions, and/or incorrect inferences that should be clarified for the record in this matter. First, the Motion intimates that the Trustee's special counsel contacted Judge Charles Walker; that is an incorrect inference. In fact, as detailed in sworn testimony taken in this case, the Trustee's special counsel had a brief telephone conversation with the Court's courtroom deputy, not the judge himself. *See* Deposition Transcript of Phillip Young ("Young Transcript) (A full copy of which is attached hereto as Exhibit 1), pp. 43-44.

Not only was the communication not with Judge Walker, the communication did not involve any substantive issue. Special Counsel for the Trustee explained that the call to the Court's courtroom deputy was to address a "logistical issue", namely that counsel for the largest scheduled creditor (Dan Puryear) had a protective order against the Debtor's representative (Brian Manookian). Young Transcript, pp. 44-46. The fact that a protective order had been issued against Mr. Manookian was a matter of public record, and was only brought to the attention of the courtroom staff to avoid "a potential problem." *See id.* Far from intending the communication to be some sort of a smear campaign against Mr. Manookian, as the Movants seem to allege, the Trustee and her special counsel considered this to be nothing more than an administrative issue. In fact, special counsel for the Trustee testified that he said nothing about Mr. Manookian posing an actual physical risk to any person. *See id.*

The Motion also implies that the only reason for the Trustee's request to conduct depositions at the courthouse was one of security. That is likewise incorrect. As special counsel for the Trustee explained at the hearing, the Trustee preferred to take all in-person depositions at the courthouse not just because of security but also because conducting depositions at the courthouse is not outside the normal course for a trustee, the courthouse provided a centralized location, and conducting the depositions at the courthouse provided the litigants easy access to the Court in case of discovery disputes. *See* Hearing Transcript (Attached to the Motion as Exhibit 1), pp. 82-83. In fact, the Trustee's primary reason for seeking to conduct depositions at the courthouse was the availability of the Court to rule on discovery disputes, since there had already been multiple cross motions to compel discovery. Discovery was (and is) a significant, ongoing problem in this matter; in fact, the hearing conducted in this matter that is the source of the Motion was to resolve discovery disputes.

Finally, the Motion incorrectly states that the Court's decision on the procedural issue of where to conduct depositions displays some bias against Brian Manookian (who is not even a party to this matter). In fact, the Court's statements at the hearing illustrate the contrary:

> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and <u>makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties. And to eliminate any of those perceptions,</u> and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.

Hearing Transcript (Attached to the Motion as Exhibit 1), pp. 84-85 (emphasis added). Far from pre-judging Mr. Manookian or his motives, the Court was drawing no conclusions about Mr. Manookian and ordered that depositions be conducted at the courthouse to avoid any allegations of bad behavior, whether real or perceived.

While the Court undoubtedly knows the actual facts relevant to the Motion considering many of them concern the Court's own rulings and its reasons therefore, the Trustee felt it important to clarify these facts for the record in this case.

## LAW

The Motion also misstates, or understates, the applicable legal authority that should be considered by the Court in determining whether to recuse itself. The basis of the Motion is 28 U.S.C. § 455. That section states in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

In evaluating a motion brought under § 455, a judge is not required "to accept all allegations by the moving party as true" because "[i]f a party could force recusal of a judge by factual allegations, the result would be virtual open season for recusal." *In re Gibson*, 2010 WL 744572, at *2 (Bankr. C.D. Ill. 2010); *see also Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222-23 (9th Cir. BAP 1996) (finding that the court is not required to take all factual allegations as true in a recusal motion). Rather, disqualification "should be viewed as an extraordinary occurrence," and "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified." *In re Stroller,* 374

B.R. 618, 621 (Bankr. N.D. Ill. 2007) (quoting *Laird v. Tatum*, 209 U.S. 824, 837 (1972)). "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir. 1988) (citations omitted).

The party moving for recusal has a burden of proving doubts about the judge's impartiality. *In re* Pansier, 2019 Bankr. LEXIS 2431, at *2-3 (Bankr. E.D. Wisc. 2019); *Stroller*, 374 B.R. at 622. A judge is required to recuse himself only where (a) a *reasonable* person might question his impartiality, or (b) where the judge is subjectively biased toward a party.[1] The first is an objective test that asks the court to consider how things might appear from a reasonable and rational party's perspective, not a "hypersensitive, unduly suspicious person." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). "That an unreasonable person focusing on only one aspect of the story might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). The second test is a subjective test; "[t]his test is highly personal in nature and requires each judge in such situation to set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.'" *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (quoting 28 U.S.C. § 453).

The occurrence of an *ex parte* communication with the court or its staff does not automatically necessitate recusal. "While *ex parte* communications are discouraged, they aren't always improper and don't necessarily call for recusal." *Blixseth v. Yellowstone Mt. Club, LLC,* 742 F.3d 1215, 1219 (9th Cir. 2013) (citing *Reed v. Rhodes,* 179 F.3d 453, 468-

---

[1] Only the Court can answer whether it is subjectively biased toward a party though the Trustee would point out that Brian Manookian is not a party hereto.

69 (6th Cir. 1999); *United States v. Van Griffin,* 874 F.2d 634, 637 (9th Cir. 1989); *Willenbring v. United States,* 306 F.2d 944, 946 (9th Cir. 1962)). The fact that an *ex parte* communication occurred, on its own, does not require recusal. *In re Allen,* 2009 LEXIS 4431, at *26 (Bankr. Idaho 2009); *see also Willenbring,* 306 F.2d at 946. *Ex parte* communications are only the basis for recusal when the substance of those communications might cause a reasonable person to question the judge's impartiality. *Blixseth,* 742 F.3d at 1219; *United States v. Wecht,* 484 F.3d 194, 214-15 (3d Cir. 2007).

The ultimate question presented by the Motion is whether an objective, reasonable person might question the impartiality of the Court based upon a telephone conversation between the Trustee's special counsel and the Court's courtroom deputy. The law seems clear that the conversation detailed above, and about which special counsel testified, would not lead a reasonable person to question the Court's impartiality and does not warrant recusal.

First, special counsel described the purpose of the telephone call to the courtroom deputy as an administrative matter, or "a logistical issue" as he referred to it in his testimony. A number of courts have held that discussions between a party's counsel and a court concerning administrative matters does not constitute an impermissible *ex parte* communication that would warrant recusal. *See, e.g., Metcalf v. Golden (In re Adbox, Inc.),* 234 Fed. Appx. 420, 420 (9th Cir. 2007) ("Although the Metcalfs have identified several *ex parte* contacts between the bankruptcy judge, his law clerk and counsel for appellees, those communications related to purely procedural matters."); *In re Beard,* 811 F.2d 818, 829-30 (4th Cir. 1987) (meeting between a district court judge and debtor's counsel to discuss "a procedural order to govern the administration of a complex Chapter 11

proceeding" was no basis for recusal); *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 956 (1st Cir. BAP 1982) (communications between bankruptcy judge and Chapter 11 Trustee concerning administrative, rather than substantive, issues did not require disqualification); *Blixseth,* 742 F.3d at 1220 ("*Ex parte* communications with judicial staff concerning routine administrative matters do not raise any inference of bias."); *Allen,* 2009 Bankr. LEXIS at *26-30 (a telephone call between a judge and counsel to discuss scheduling of an emergency hearing did not warrant recusal). This is even more true where the communication was between counsel and the judge's staff, as opposed to the judge himself. *In re Parson,* 2018 Bankr. LEXIS 830, at *12 (Bankr. N.D. Tex. 2018) ("Importantly, the Court's courtroom deputy and the intake staff at the clerk's office have been the only means of communication between the Court, [counsel], and the Debtor.").

Moreover, even if the purpose of the communication from the Trustee's counsel to the Court's staff had been to express a security concern about Mr. Manookian, or if the Court's staff interpreted such conversation as expressing a security concern, that communication would not warrant recusal. The United States Bankruptcy Appellate Panel considered and rejected a nearly identical argument in *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214 (9th Cir. BAP 1996). Among the reasons cited for recusal by the movant in *Seidel* was that "the judge admitted that his secretary had received calls from persons attending the proceedings who expressed concerns about their safety." *Seidel*, 194 B.R. at 224. However, the appellate court concluded: "There is no merit to the contention that the judge should be disqualified because of phone calls to his secretary regarding security. The judge has an obvious administrative responsibility concerning the security of the courtroom. This includes protecting not only the judge personally, but also the parties, the

attorneys, the witnesses, and the spectators." *Id.* The 9th Circuit BAP elaborated: "Here the expressions of concern were made to the judge's secretary, and not to the judge personally. The security imposed was hardly exceptional. These facts would not cause a reasonable person to question the judge's impartiality." *Id.*[2]

Thus, whether the Court and its staff considered the telephone call from the Trustee's special counsel to be merely an administrative function, as counsel believed, or whether they considered it to be a statement of concern for security, as the Movants allege, it was not an *ex parte* communication that any reasonable person would believe could taint the judge's impartiality. It involved an administrative matter and its impact upon the Court, if any, was regarding an administrative matter, *i.e.* the physical location for depositions. The Court has expressly stated that it has formed no opinion about the veracity of any security concern, much less any substantive matter.

## CONCLUSION

Having clarified the facts for the record and provided a more thorough analysis of the applicable legal standard, the Trustee defers to the Court to determine whether subjectively it is biased against any party or whether a reasonable and objective person would find that the Court's impartiality might be questioned in this matter.

---

[2] In the *Seidel* case the Court's initial security measure was simply to post a United States Marshal in the courtroom for each hearing.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton,
Trustee