**EXHIBIT 1**

April 19, 2017

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

**Via E-Mail: chimme_chunga@yahoo.com**
Edward Goodwin
Brett Keefer

**Re:   Legal Representation and Engagement**

Dear Edward and Brett:

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

www.cmtriallawyers.com

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

**Contingency Fee**

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

I have read and consent to the terms in this letter.

_____   4-19-17
Edward Goodwin                                DATE

_____   4-19-17
Brett Keefer                                        DATE

4

**BRIAN CUMMINGS**
Licensed to practice in
TN, GA, FL, CA and HI

**BRIAN MANOOKIAN**
Licensed to practice in TN

May 23, 2018

EXHIBIT

2

**VIA HAND DELIVERY**
Marty Fitzgerald
Melissa Fitzgerald
1376 Hunter Road
Franklin, Tennessee 37064

    Re:    **Legal Representation and Engagement**

Dear Mr. and Mrs. Fitzgerald:

It is our firm's practice to enter into engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

Our clients will be your deceased daughter, Megan Fitzgerald, with you both acting as her legal representatives, as well as each of you in your individual capacities. We will represent you concerning the incident on May 10, 2018 that resulted in Megan's death.

All work on this matter will be done by Brian Manookian, Brian Cummings, or Afsoon Hagh. Our office phone number is (615) 266-3333. My direct line is (615) 266-0226. I can be reached on that line during normal business hours. If you have an after-hours urgent matter regarding your case, you may call Brian Manookian on his cell phone at (615) 979-6440. You may also text message or email me at bmanookian@cummingsmanookian.com at any time.

*BFM*

45 Music Square West
Nashville, TN 37203
T 615.266.3333
F 615.266.0250

Pauahi Tower
1003 Bishop St.
Suite 2710
Honolulu, HI 96813
T 808.444.4800
F 808.444.4888

www.cmtriallawyers.com

1

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

We may work with other attorneys in this matter. You understand and consent that a portion of the contingency fee may be shared with other attorneys in accordance with the rules governing the practice of law in Tennessee. In no event, however, shall you incur any additional legal fees or costs by virtue of the sharing of any portion of the contingency fee with another attorney or attorneys.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this case. They may include items such as court filing fees, expert witness fees, court reporter fees, and deposition transcripts among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be deducted from the amount you receive after the contingency fee is allocated.

We specifically do _not_ charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the event that you lose in litigation, you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

2

**Settlement or Compromise**

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding upon you.

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

If any of the terms stated in this letter is not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email, fax, or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to call me.

Sincerely,

Brian Manookian
CUMMINGS MANOOKIAN PLC

I have read and consent to the terms in this letter.

_____    5/23/2018
CLIENT                             DATE
Melissa L Fitzgerald

3



BRIAN MANOOKIAN
Licensed to practice in TN

December 7, 2018

**EXHIBIT**

**3**

**VIA CERTIFIED MAIL**
Marty Fitzgerald
Melissa Fitzgerald
1376 Hunter Road
Franklin, Tennessee 37064

> *Re:* *Fitzgerald v. Osborn, et al. / Withdrawal by Brian*
> *Manookian and Cummings Manookian*

Marty and Melissa,

  The Tennessee Supreme Court recently lifted the stay of the temporary suspension of my license to practice law. As a result, and as we have discussed, I am required to withdraw as counsel in this matter. Cummings Manookian is additionally required to withdraw as Brian Cummings has recently left the firm, and I am in the process of winding up its affairs. I am writing to notify you of the withdrawal, and to request, that you obtain another attorney or firm to represent you.

  Pursuant to our Legal Representation and Engagement Agreement, Cummings Manookian is entitled to reimbursement of certain advanced costs and expenses in this case. I estimate those costs and expenses to be less than $3000. Because Cummings Manookian is withdrawing from this matter, it will not be entitled to any portion of an attorney's fee and specifically disclaims the same under the terms of our prior engagement agreement. You may provide this letter to any future attorneys representing you in this case as confirmation of the same.

45 Music Square West
Nashville, TN 37203
T 615.266.3333
F 615.266.0250

Sincerely,

Brian Manookian

www.cmtriallawyers.com

**EXHIBIT**

4
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>**CUMMINGS MANOOKIAN, PLLC**<br><br>　　Debtor.<br><br>**JEANNE ANN BURTON, TRUSTEE**<br><br>　　Plaintiff,<br><br>v.<br><br>**HAGH LAW, PLLC; AFSOON HAGH;<br>and MANOOKIAN PLLC,**<br><br>　　Defendants. | **Case No, 3:19-bk-07235**<br>**Chapter 7**<br><br>**Judge Walker**<br><br>**Adv. Proc. No. 3:20-ap-90002** |

**DEFENDANT MANOOKIAN PLLC'S SECOND SET OF
REQUESTS FOR ADMISSION TO THE PLAINTIFF**

Manookian PLLC, through counsel, and propounds the following Requests for Admission upon the Plaintiff.

**REQUESTS FOR ADMISSION**

1.　　Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**

2.      Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**


3.      Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 1.

**RESPONSE:**


4.      Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

**RESPONSE:**


5.      Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**RESPONSE:**


6.      Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**RESPONSE:**


7.      Admit that Exhibit 1 was drafted by Cummings Manookian.

**RESPONSE:**

2

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 10 of 205

8.     Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**


9.     Admit that Exhibit 1 is a binding contract.

**<u>RESPONSE:</u>**


10.     Admit that Exhibit 1 is binding upon Brett Keefer.

**<u>RESPONSE:</u>**


11.     Admit that Exhibit 1 is binding upon Edward Goodwin.

**<u>RESPONSE:</u>**


12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**<u>RESPONSE:</u>**


13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**<u>RESPONSE:</u>**


14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**<u>RESPONSE:</u>**

3

Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 11 of 205

15. Admit that Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**

16. Admit that Cummings Manookian withdrew from representing Edward Goodwin prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**

17. Admit that Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**

18. Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**

19. Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**

20. Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

**RESPONSE:**


21.     Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**


22.     Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**


23.     Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**


24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**


25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**


26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.

5

Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 13 of 205

**RESPONSE:**


27.     Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**


28.     Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**


29.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**


30.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**


31.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**


32.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 14 of 205

**RESPONSE:**


33.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**


34.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**


35.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**


36.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**


37.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 15 of 205

38.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**


39.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**


40.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**


41.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**


42.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2020.

**RESPONSE:**


43.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

**RESPONSE:**

44.    Admit that Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

**RESPONSE:**

45.    Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

46.    Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

47.    Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

9

48.     Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


49.     Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


50.     Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


51.     Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


52.     Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


54.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2019.

**RESPONSE:**


55.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2020.

**RESPONSE:**


56.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2021.

**RESPONSE:**


57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**



59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**



60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**



61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**



62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**RESPONSE:**



63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**RESPONSE:**

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**RESPONSE:**

65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**RESPONSE:**

66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**RESPONSE:**

67.     Admit that Exhibit 2 is a binding contract.

**RESPONSE:**

68.     Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**

69.     Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**

70.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

**RESPONSE:**


71.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**


72.     Admit that Exhibit 2 is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**RESPONSE:**


73.     Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


74.     Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**


75.     Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**RESPONSE:**


77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**RESPONSE:**


78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**RESPONSE:**


80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**RESPONSE:**

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 23 of 205

82. Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**


83. Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**


84. Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**


85. Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**


86. Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**

16

Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 24 of 205

Date:   March 3, 2022

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on Phillip Young as Counsel for the Plaintiff on March 3, 2022.

*/s/ John Spragens*

EXHIBIT

5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) Judge Walker |
| Debtor. | ) |
| | ) |
| JEANNE ANN BURTON, TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 3:20-ap-90002 |
| | ) |
| HAGH LAW, PLLC; AFSOON HAGH; | ) |
| MANOOKIAN, PLLC; and FIRST- | ) |
| CITIZENS BANK & TRUST COMPANY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF REQUESTS
FOR ADMISSION TO THE PLAINTIFF**

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to

Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as

follows:

**GENERAL OBJECTIONS**

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her

objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible

discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is

protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1.      Admit that Afsoon Hagh was never an employee of Cummings Manookian.

### RESPONSE:

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

2.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

2

the Internal Revenue Service.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

3.  Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

the Tennessee Department of Revenue.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4.  Admit that Cummings Manookian never filed any documents with any state, local,

or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

5.  Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this

3

issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

6. Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

7. Admit that Afsoon Hagh never held an ownership interest in Cummings

Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

8. Admit that Afsoon Hagh served as co-counsel with certain attorney members of

Cummings Manookian in various legal cases.

**RESPONSE:**

Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters. Trustee is unable to admit or deny the remainder of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4

9.     Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

10.     Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

11.     Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

12.     Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

**RESPONSE:**

Denied. Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

13.     Admit that Cummings Manookian had two members.

**RESPONSE:**

Admitted that Cummings Manookian had at least two members. Trustee is unable to

5

admit or deny any remaining elements of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

14.     Admit that the two members of Cummings Manookian were Brian Manookian and Brian Cummings.

**RESPONSE:**

Admitted that Brian Manookian and Brian Cummings were members of Cummings Manookian. Trustee is unable to admit or deny whether Mr. Cummings and Mr. Manookian were Cummings Manookian's only members because Cummings Manookian, PLC and/or Afsoon Hagh have failed to appropriately or adequately respond to Trustee's outstanding discovery requests on this issue.

15.     Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

Admitted.

16.     Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

Admitted.

17.     Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

Admitted.

18.     Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

6

Admitted.

19.     Admit that Cummings Manookian entered into engagement agreements with  their

clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients.  However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20.     Admit that Cummings Manookian entered into engagement agreements with their

clients that laid out the duties and rights of both parties to the contract.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract.  Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21.     Admit that Cummings Manookian utilized a standard form engagement agreement

whose content and terms with respect to the rights and duties of the parties generally did not vary

from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

22.     Admit that the Cummings Manookian Engagement Agreement included terms

regarding the parties' rights in the event that the client terminated Cummings Manookian.

7

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

23. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

24. Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

25. Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

8

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

26.     Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

27.     Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

28.     Admit that Cummings Manookian has never entered into a contract or written agreement with Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookiann PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

29.     Admit that Cummings Manookian does not own, and has never owned, any real property.

9

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own any real property. Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

      30.     Admit that Cummings Manookian does not own, and has never owned, 45 Music

Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own 45 Music Square West, Nashville, Tennessee 37203. Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

      31.     Admit that Cummings Manookian was a party to a lease for 45 Music Square West,

Nashville, Tennessee, 37203 ("the 45 MSW Lease).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

      32.     Admit that Cummings Manookian was required to pay rent to 45 MSW Partners

under the terms of the 45 MSW Lease.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

      33.     Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay

rent to 45 MSW Partners beginning in November of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

34.     Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

35.     Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

36.     Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

37.     Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has

11

alleged that Cummings Manookian has never owned computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

38. Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

39. Admit that Cummings Manookian has never owned any telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

40. Admit that the web domain cummingsmanookian.com was registered by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

41. Admit that the web domain cummingsmanookian.com is owned by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

12

42.     Admit that Cummings Manookian has never owned any website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  However, Trustee is aware that Cummings Manookian utilized a website at times during its operations.

43.     Admit that the Defendants have never utilized cummingsmanookian.com as a website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

44.     Admit that cummingsmanookian.com has not functioned as a website since at least October of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

45.     Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized that telephone number at times during its operations.

13

46.     Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized certain telephone numbers at times during its operations.

47.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings.

48.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time after October 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings after October 2018.

49.     Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

14

Trustee objects to this request on the grounds that it calls for a legal conclusion. However, Trustee affirmatively alleges that a law firm may own client lists, client contact information, and accounts receivable associated with clients.

50.     Admit that Cummings Manookian does not now, nor has it ever, owned a client's

case file.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue.   Trustee also objects to this request to the extent that it calls for a legal conclusion.   However, Trustee affirmatively alleges that Cummings Manookian did own client lists, client contact information, and accounts receivable associated with clients.

51.     Admit that Cummings Manookian is and was required to return, destroy, or transfer

a client's case file upon that client's request.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed  adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.   Trustee also objects to this request to the extent that it calls for a legal conclusion.   Trustee further states that she has not been provided copies of certain disengagement letters that might govern Cummings Manookian's responsibilities to its clients.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion.   However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

53.     Admit that Cummings Manookian does not have an ownership interest in any case

brought on behalf of a client.

**RESPONSE:**

15

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

54.     Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

55.     Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

56.     Admit that any Cummings Manookian client was empowered to terminate

Cummings Manookian at any time and for any reason.

**RESPONSE:**

Admitted that any client had the right to terminate Cummings Manookian at any time and for any reason.

57.     Admit that Cummings Manookian provided no services to Manookian PLLC.

16

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

58.     Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

59.     Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

60.     Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

61.     Admit that Cummings Manookian provided no services to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh

17

to utilize its leased premises and certain personal property.

62.     Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

63.     Admit that Cummings Manookian provided no services to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

64.     Admit that Cummings Manookian provided no goods to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

65.     Admit that Cummings Manookian provided no services to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on

18

this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

66. Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

67. Admit that Cummings Manookian provided no services to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

68. Admit that Cummings Manookian provided no goods to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

69. Admit that Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in

19

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted

70.     Admit that Cummings Manookian withdrew from representing the Fitzgeralds in

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.   While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was delivered to the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71.     Admit that the Fitzgeralds did not terminate Cummings Manookian from

representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

72.     Admit that Cummings Manookian never recovered any monies for the Fitzgerald

in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73.     Admit that Cummings Manookian never even secured an offer of settlement from

the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 45 of 205

74.     Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn

matter.

**RESPONSE:**

Denied.  Cummings Manookian filed  a substantial number of pleadings in that case.

75.     Admit that none of the work performed by Cummings Manookian in the Fitzgerald

v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied.  The work performed by Cummings Manookian in the matter directly caused the
settlement payment.

76.     Admit that Manookian PLLC has never received a transfer of funds from

Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an
opportunity to depose Brian Manookian on this topic.  However, according to its discovery
responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be
property of this estate.

77.     Admit that Manookian PLLC has never received any funds from Cummings

Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an
opportunity to depose Brian Manookian on this topic.  However, according to its discovery
responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be
property of this estate.

78.     Admit that Manookian PLLC has never received any funds belonging to Cummings

Manookian.

**RESPONSE:**

21

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

79. Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

80. Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

81. Admit that Manookian PLLC has never received any monies from any person or

any entity.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

82. Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

83. Admit that Hagh Law PLLC has never received any monies from Cummings

Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

22

84.     Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied.  Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85.     Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court of Williamson County directed to be held in trust.  However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

23

**<u>Certificate of Service</u>**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 25th day of February, 2021.

/s/ *Phillip G. Young, Jr.*
Phillip G. Young, Jr.

24

Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 49 of 205

**EXHIBIT**

6



**HARPETH**
**COURT REPORTERS**

(615) 933-6786
www.harpethcourtreporters.com

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                       NASHVILLE DIVISION

 3
   IN RE:                            ) Case No:
 4                                   ) 3:19-bk-07235
        CUMMINGS MANOOKIAN, PLLC,    ) Chapter 7
 5                                   )
               Debtor,               ) Honorable Charles
 6   _____) M. Walker
                                     )
 7   Jeanne Ann Burton, in her       )
     capacity as Chapter 7           )
 8   Trustee,                        )
                                     )
 9             Plaintiff,            )
                                     )
10   v.                              ) Adv. No:
                                     ) 3:20-ap-90002
11   Hagh Law, PLLC, Afsoon Hagh,    )
     Manookian PLLC,                 )
12                                   )
               Defendants.           )
13   _____)

14

15

16                      Deposition of

17              JEANNE ANN BURTON, TRUSTEE

18          Taken on behalf of the Defendants

19            Commencing at 10:09 a.m.

20                   April 20, 2022

21

22

23                     Reported by:

24             Harpeth Court Reporters
                  Franklin, Tennessee
25        Sabrina L. Schneider, LCR No. 455
```

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3         PHILLIP YOUNG, ESQ.
            Thompson Burton, PLLC
 4         One Franklin Park
            6100 Tower Circle, Suite 200
 5         Franklin, Tennessee 37067
            (615) 465-6008
 6         phillip@thompsonburton.com

 7   For the Defendant HAGH LAW, PLLC, and AFSOON HAGH:

 8         CRAIG V. GABBERT, JR., ESQ.
            Bass Berry & Sims
 9         150 Third Avenue South, Suite 2800
            Nashville, Tennessee 37201
10         (615) 742-6277
            cgabbert@bassberry.com

11   For the Defendant MANOOKIAN, PLLC:

12         JOHN SPRAGENS, ESQ.
13         Spragens Law, PLC
            311 22nd Avenue North
14         Nashville, Tennessee 37203
            (615) 983-8900
15         john@spragenslaw.com

16   Also Present:

17         Brian Manookian

18

19

20

21

22

23

24

25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 52 of 205

```
1                    I N D E X

2              INDEX OF EXAMINATIONS
                                        Page
3
   By Mr. Spragens...................................5
4
   By Mr. Gabbert................................116
5
   By Mr. Spragens..............................122
6

7
                  INDEX OF EXHIBITS
8
   Exhibit        Description              Page
9
   No. 1  5/23/18 letter in re: Fitzgerald new
10         Legal Representation and Engagement......45
   No. 2  12/7/18 letter in re: Fitzgerald
11         Withdrawal by Brian Manookian and
          Cummings Manookian......................50
12 No. 3  Plaintiff's Responses to Manookian
          PLLC's First Set of Written Discovery
13        to the Plaintiff........................81
   No. 4  4/19/17 letter in re: Goodwin/Keefer
14        Legal Representation and Engagement......81

15

16

17

18

19

20

21

22

23

24

25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 53 of 205

1          The deposition of JEANNE ANN BURTON, TRUSTEE,

2    was taken on behalf of the Defendants on the 20th day

3    of April, 2022, in the offices of the U.S. Customs

4    House, 701 Broadway, Nashville, Tennessee, for all

5    purposes under the Federal Rules of Civil Procedure.

6          The formalities as to notice, caption,

7    certificate, et cetera, are waived.  All objections,

8    except as to the form of the questions, are reserved

9    to the hearing.

10          It is agreed that Sabrina L. Schneider, being

11    a Notary Public and Court Reporter for the State of

12    Tennessee, may swear the witness, and that the reading

13    and signing of the completed deposition by the witness

14    are reserved.

15

16

17

18

19

20                              * * *

21

22

23

24

25

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 54 of 205

```
 1              JEANNE ANN BURTON, TRUSTEE
 2   was called as a witness, and after having been first
 3   duly sworn, testified as follows:
 4                E X A M I N A T I O N
 5   BY MR. SPRAGENS:
 6   Q.      Good morning, Ms. Burton.
 7   A.      Good morning.
 8   Q.      I'm John Spragens.  We've met before.  And you
 9   understand that you're here today to give a deposition
10   in the adversary proceeding that you filed as trustee
11   for Cummings Manookian, PLLC?
12   A.      Yes.
13   Q.      What is Cummings Manookian, PLLC?
14   A.      It was a professional limited liability
15   company, a law business, a law practice.
16   Q.      And is it currently in operation?
17   A.      No.
18   Q.      When did it cease operations?
19   A.      The date of the filing of the bankruptcy
20   petition.
21   Q.      And do you know what date that was?
22   A.      November 6, 2019.
23   Q.      Are you aware of what operations it was
24   conducting prior to November 6, 2019?
25   A.      Other than a general law practice, the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 55 of 205

```
 1  practice of law.

 2  Q.      Let's take, for example, October of 2019.

 3  What operations was Cummings Manookian, PLLC,

 4  conducting during that time?

 5  A.      I think at that time the Shoemaker case was

 6  ongoing.  I don't think that case had been settled at

 7  that time.

 8  Q.      Had that case been filed as of October 2019?

 9  A.      Yes.

10  Q.      And that's the Shoemaker case you're talking

11  about?

12  A.      Yes.

13  Q.      When was that case filed?

14  A.      It's either February 2019 or February 2018,

15  but I think it was 2019.

16  Q.      And in October of 2019, what -- let me just

17  stop right now.  When I say "Cummings Manookian,"

18  you'll know that I mean Cummings Manookian, PLLC; is

19  that right?

20  A.      Yes.

21  Q.      What was Cummings Manookian doing in October

22  of 2019 on the Shoemaker case?

23  A.      I don't -- I do not know.  Let me think about

24  that.

25  Q.      Sure.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 56 of 205

1  A.      I don't know.  I know we recently got some
2  discovery on that, but I don't know specifically what
3  was going on in that case at that time.
4  Q.      Who was working for Cummings Manookian in
5  October of 2019?
6  A.      Afsoon Hagh was working on that case, and I
7  can't -- are you asking me for Cummings Manookian or
8  all of the lawyers that were working on that case at
9  that time?
10 Q.      Right now I'm just talking about Cummings
11 Manookian.
12 A.      Afsoon Hagh.  And without the date of
13 Mr. Manookian's suspension in front of me -- it was in
14 October of 2019.  I'm sorry.  I get confused on these
15 dates.  Unless Mr. Manookian was suspended at that
16 time, I believe he would have been working on that
17 case.
18 Q.      So as you sit here today, your best
19 recollection is that in October 2019, Mr. Manookian
20 was working for Cummings Manookian?
21 A.      He may have -- he may have already formed
22 Manookian, PLLC, but it's our position that --
23 well, it gets a little -- I know that Mr. Manookian,
24 Manookian, PLLC, as of -- was it August?  Without the
25 dates in front of me -- there is a recently produced

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 57 of 205

1　engagement letter that shows that Manookian, PLLC,

2　had a engagement letter with the plaintiff in the

3　Shoemaker case, and so I think there's still a

4　question about whether or not that ended Cummings

5　Manookian's representation in the case or whether it

6　continued on after that engagement letter.

7　Q.　　In October 2019, who was employed by Cummings

8　Manookian?

9　A.　　Well, it's one of our theories of the case

10　that even though Mr. Manookian was practicing under

11　the name of Manookian, PLLC, and Afsoon Hagh may have

12　been practicing under the name of Hagh Law, that they

13　were still conducting the business of Cummings

14　Manookian.

15　Q.　　In October 2019, did Cummings Manookian make

16　any payments to Afsoon Hagh or Hagh Law?

17　A.　　I do not know.

18　Q.　　In October 2019, did Cummings Manookian make

19　any payments to Manookian, PLLC?

20　A.　　I do not know.  I don't have bank records.

21　Q.　　In October 2019, did Cummings Manookian make

22　any payments to Brian Manookian?

23　A.　　I do not know.  I don't have bank records.

24　Q.　　Do you have any information that Cummings

25　Manookian made any payments to Afsoon Hagh in 2019?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 58 of 205

```
1   A.        I know that Afsoon Hagh, and forgive me if
2   I mispronounce her name, she -- in 2019, she received
3   payment of a portion of the attorney fee in the
4   Fitzgerald case.
5             At the meeting of creditors, I believe that
6   Mr. Manookian testified that Ms. Hagh -- Hagh?
7   Q.        That's how I say it.
8   A.        Okay.  Ms. Hagh worked in the firm but that
9   she was not compensated.
10  Q.        So it's your belief as you sit here today that
11  in 2019, prior to November 6, Afsoon Hagh was employed
12  by Cummings Manookian?
13  A.        Yes.
14  Q.        Do you have any records to suggest that Afsoon
15  Hagh was employed by Cummings Manookian in 2019?
16  A.        No.
17  Q.        Have you endeavored to obtain employment
18  records from the State of Tennessee with respect to
19  Cummings Manookian?
20  A.        No.
21  Q.        Do you know if those records are available?
22  A.        What -- I don't understand what type of
23  records you're referencing.
24  Q.        Well, you're aware that employers pay certain
25  taxes on behalf of employees; is that right?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 59 of 205

```
 1   A.      Correct.

 2   Q.      And they may pay workers' compensation, they

 3   may obtain insurance on behalf of employees as well;

 4   is that right?

 5   A.      Correct.  They can.

 6   Q.      Have you checked with the State of Tennessee

 7   to determine whether Cummings Manookian was paying

 8   taxes on behalf of any employees in 2019?

 9   A.      I have not.

10   Q.      When was Manookian, PLLC, formed?

11   A.      I believe it was 2015, 2017.

12   Q.      Are you giving me two different --

13   A.      Yeah.  I don't remember without looking.  I

14   checked that, but -- and I know I asked Mr. Manookian

15   at the meeting of creditors, but I can't remember if

16   it was in '15 or '17.

17   Q.      A couple of times you've mentioned that you

18   would need to look at something.  What would you look

19   at to refresh your recollection of these dates?

20   A.      The -- what you pull from the secretary of

21   state for -- when you do the business search, that

22   information there, and also the -- I think the meeting

23   of creditors tape or notes.  It's recorded.

24   Q.      Back to Cummings Manookian.  In October of

25   2019, did Cummings Manookian file any cases in that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 60 of 205

1  month?

2  A.      I do not know.

3  Q.      You don't have any evidence that it filed any

4  cases at that time?

5  A.      No.

6  Q.      Did Cummings Manookian send any correspondence

7  in October of 2019?

8  A.      There may have been correspondence sent in

9  the Shoemaker case, but no, I don't know that.  I

10 don't know if Cummings Manookian -- if you're talking

11 about on Cummings Manookian letterhead, if it sent

12 correspondence, I don't know that.

13 Q.      Do you have any evidence of any bank

14 transactions by Cummings Manookian in October of 2019?

15 A.      I do not.  I don't have bank records.

16 Q.      Did Cummings Manookian maintain a website in

17 October of 2019?

18 A.      I do not know that.

19 Q.      Did Cummings Manookian accept any new cases in

20 October of 2019?

21 A.      I do not know.

22 Q.      Did Cummings Manookian purchase anything in

23 October of 2019?

24 A.      I do not know.

25 Q.      Did Cummings Manookian file anything in court

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 61 of 205

1    in October of 2019?

2    A.      I do not know.

3    Q.      What attorneys were working for Cummings

4    Manookian in October of 2019?

5    A.      Afsoon Hagh and Brian Manookian, if it was

6    during a period when he wasn't suspended, under other

7    firm names.

8    Q.      I'm a little confused about when you say that

9    they worked for Cummings Manookian but under other

10   firm names.  Can you explain what you mean by that?

11   A.      Yeah.  That may be more of a legal argument,

12   but one of the causes of action in the complaint is

13   successor liability or just continuation of the

14   business of Cummings Manookian with the same people,

15   same location, same cases, different names.

16   Q.      Was Brian Cummings still involved in Cummings

17   Manookian in October of 2019?

18   A.      If he was not suspended, I would say yes.

19   Q.      I asked about Brian Cummings.

20   A.      Oh, I'm sorry.  No.  I think he withdrew and

21   formed Cummings Law in -- he withdrew and formed

22   Cummings Law, I believe, sometime in 2018.

23   Q.      And you alleged in the complaint that that was

24   in September of 2018.  Does that sound correct to you?

25   A.      I don't know.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 62 of 205

```
1   Q.      So after Mr. Cummings withdrew from Cummings
2   Manookian, he formed a different corporate entity; is
3   that correct?
4   A.      That's correct.
5   Q.      And do you know the name of that entity?
6   A.      I believe it's Cummings Law.
7   Q.      And did Mr. Cummings continue to work on
8   behalf of Cummings Manookian, even though he had
9   formed Cummings Law?
10  A.      I don't -- no, I don't think so, because there
11  were cases that he took with him when he left Cummings
12  Manookian.  And when those cases -- as those cases
13  settled, then there was a portion -- at least during
14  the receivership, there was a portion of the fees that
15  were paid to Cummings Manookian, fees and expenses.
16  Q.      Was Cummings Law a continuation of Cummings
17  Manookian in your view?
18  A.      No.
19  Q.      Why not?
20  A.      Because he always used Cummings Law after --
21  and I can only speak to the cases that were pending
22  during the receivership.  There was a list of about
23  15 cases.  And he took some of those cases and worked
24  on those and -- again, as I said, as they settled out.
25          On the Shoemaker case, when that case was
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 63 of 205

1  filed, he was listed as Brian Cummings of Cummings

2  Law and -- or whatever, the name of his firm, and

3  Afsoon Hagh was as an attorney for Cummings Manookian.

4  He wasn't operating out of the same office space.

5  Everything was separate at that point.  And I think

6  there was some type of withdrawal letter or email from

7  the firm.

8  Q.      So in your mind the distinction between Hagh

9  Law and Manookian, PLLC, when they started their own

10 entities, versus Cummings Law is that they did not --

11 well, let's say one distinction is that they did not

12 send any notice to clients that they were starting

13 their own entities?

14 A.      I don't know whether they did that or not.  I

15 don't know that they did that.

16 Q.      And then it's also your position that they

17 used the same office space as distinct from Cummings

18 Law; is that right?

19 A.      Correct.

20 Q.      And then you made a reference to Ms. Hagh

21 filing something on behalf of Cummings Manookian; is

22 that right?

23 A.      Correct.

24 Q.      Do you know if she filed that or if Brian

25 Cummings filed that?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 64 of 205

1   A.      Both of their names were on that Shoemaker
2   complaint.
3   Q.      And who signed that complaint?
4   A.      I don't recall.
5   Q.      Is it possible that Brian Cummings signed that
6   complaint?
7   A.      It's possible.
8   Q.      And would you expect that if he signed that
9   complaint, that he wrote Ms. Hagh's name on that
10  complaint?
11  A.      I would think he -- I don't know.  I don't
12  know who would have prepared the complaint and who
13  reviewed it before it was filed.  I would think they
14  both would, but I don't know that.
15  Q.      But you understand that when someone signs a
16  complaint, they are the person or entity making the
17  representation to the Court, correct?
18  A.      Yes.
19  Q.      And so if Mr. Cummings signed the complaint
20  and listed Afsoon Hagh at Cummings Manookian, that
21  would have been his representation to the Court, not
22  her representation, right?
23  A.      Correct.
24  Q.      And at the time that that complaint was filed,
25  Mr. Cummings was no longer involved in Cummings

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 65 of 205

```
 1   Manookian, right?

 2   A.      I think that's right.  I think that Shoemaker

 3   complaint was filed in 2019, and he withdrew in '18,

 4   2018.

 5   Q.      And so when he filed that, he was acting on

 6   behalf of Cummings Law; is that right?

 7   A.      Correct.

 8   Q.      Mr. Manookian's law license was suspended in

 9   December 2018; is that correct?

10   A.      Correct.

11   Q.      So as of --

12   A.      What happened in -- I'm not sure about that.

13   Ask me that again.

14   Q.      Mr. Manookian's law license was temporarily

15   suspended in December 2018; is that correct?  And I'm

16   not trying to hide the ball.  I'm reading from

17   Paragraph 10 of your complaint.

18   A.      Okay.  Yes.

19   Q.      So as of that time, Mr. Manookian was no

20   longer acting on behalf of Cummings Manookian; is that

21   right?

22   A.      He would have been suspended from the practice

23   of law and should not have been.

24   Q.      And you don't have any evidence that

25   Mr. Manookian was continuing to act on behalf of
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 66 of 205

1  Cummings Manookian at that time, do you?

2  A.      There's a privilege log that Ronette McCarthy

3  produced that lists communications between her and

4  Brian Manookian after that date, during the period

5  where he was suspended, but obviously we don't have

6  the -- haven't taken her deposition and don't have

7  email addresses or other contact information.

8  Q.      Right.  So you don't have any evidence that he

9  continued to practice law after December 2018, do you?

10  A.      Other than what that privilege log may

11  represent.

12  Q.      And you're aware that when someone is

13  suspended from the practice of law, the Board of

14  Professional Responsibility allows them to transition

15  their files to other attorneys, correct?

16  A.      Yes.

17  Q.      So just because Mr. Manookian had

18  conversations about a case with somebody, that doesn't

19  mean he was engaged in the unauthorized practice of

20  law, does it?

21  A.      I don't -- I don't know.  I don't know.

22  Q.      But it wouldn't be your position in this

23  litigation that he was engaged in the unauthorized

24  practice of law simply because he had a conversation

25  about a case that he had to withdraw from?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 67 of 205

```
 1    A.      Correct.

 2    Q.      And he did, in fact, withdraw as counsel on

 3    December 13th, 2018, from the Fitzgerald case, didn't

 4    he?

 5    A.      He did.  Well, he filed a motion that he was

 6    withdrawing, but there was never an order submitted.

 7    Q.      Did the Tennessee Supreme Court submit an

 8    order that withdrew Mr. Manookian from all of his

 9    cases?

10    A.      I do not know.

11    Q.      Have you made any effort to look at the

12    Supreme Court order dealing with Mr. Manookian's law

13    license?

14    A.      I've read the -- I'm trying to think if I've

15    read the actual order or just the -- I guess what you

16    would call the notice or the summary.

17    Q.      But, I mean, you don't dispute that there is a

18    court order that withdrew Mr. Manookian from his

19    cases, do you?

20    A.      I do not know that.

21    Q.      What's the significance -- I guess the first

22    question is:  So then you don't dispute that, do you?

23    A.      Dispute?

24    Q.      That there was a court order that withdrew

25    Mr. Manookian from his cases by operation of the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 68 of 205

1  Tennessee Supreme Court?

2  A.      I don't know.

3  Q.      Is it your position that because you allege

4  he did not submit a proposed order that he somehow

5  continued to represent clients after December 13,

6  2018?

7  A.      There's one argument that Cummings Manookian

8  didn't withdraw, but in that same -- it's more like --

9  it's entitled a motion.  I think of it more as a

10 notice since there wasn't any order.  But it said that

11 Afsoon Hagh -- Hagh -- excuse me -- would continue to

12 represent the plaintiffs, and in the signature line it

13 had both -- Cummings Manookian and both of their

14 names.

15 Q.      On March 25th, 2019, Ms. Hagh formed Hagh Law;

16 is that correct?

17 A.      Correct.  Well, I'm not sure about that exact

18 date, but I think that's correct.

19 Q.      And she was the sole member of Hagh Law; is

20 that correct?

21 A.      I do not -- I think so, but I don't know that.

22 I don't know that.

23 Q.      Just as a general matter, you're aware that a

24 PLLC has to be formed by professionals; is that right?

25 A.      Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 69 of 205

```
 1  Q.      And in this context that would be attorneys?

 2  A.      Correct.

 3  Q.      And only attorneys can be the members of a

 4  PLLC that is engaged in the practice of law; is that

 5  right?

 6  A.      Ask me that again, please.

 7  Q.      I'll try to phrase it better.  The only people

 8  who can be members of a PLLC engaged in the practice

 9  of law are attorneys; is that right?

10  A.      I don't know that, but I would say that's

11  correct.

12  Q.      When was Cummings Manookian originally formed?

13  A.      It was either 2015 or 2017.  I want to say --

14  I want to say '15, but it could have been -- I think

15  it's '15, but, again, I'm not sure.

16  Q.      As of January 1, 2019, do you agree with me

17  that Cummings Manookian had no members who could

18  practice law?

19  A.      January 1, 2019?  Mr. Manookian was suspended

20  in December of 2019?

21  Q.      '18.

22  A.      '18.  I'm sorry.  And your question is January

23  2019?

24  Q.      Yes, ma'am.

25  A.      And Mr. Cummings had already withdrawn.  No
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 70 of 205

1    members.  I would say that's correct.

2    Q.      And so would you agree with me that without

3    any member authorized to practice law, Cummings

4    Manookian, PLLC, could not have been engaged in the

5    practice of law at that time?

6    A.      I don't -- I don't know the answer to that.  I

7    don't know.  I don't know if the associate in the firm

8    could continue the practice there.

9    Q.      And what associate are you thinking of?

10   A.      Or agent.  Afsoon Hagh or Hagh.

11   Q.      And what's the basis for your understanding

12   that her title was associate?

13   A.      That was just my impression at the meeting of

14   creditors, that she was an associate, that she worked

15   on cases in the firm, that she was the wife of

16   Mr. Manookian, but she was not compensated.

17   Q.      And do you have any evidence that she's ever

18   been a member of Cummings Manookian?

19   A.      No.

20   Q.      In fact, the only people who have ever been

21   members of Cummings Manookian are Brian Cummings and

22   Brian Manookian, correct?

23   A.      To my knowledge.  I don't know that 100

24   percent sure, but to my knowledge, I think that's

25   correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 71 of 205

```
 1   Q.       So you mentioned that you got an impression at
 2   the meeting of creditors that Ms. Hagh was functioning
 3   as an associate for Cummings Manookian; is that
 4   correct?
 5   A.       Yes, that she worked in the firm.
 6   Q.       And what gave you that impression?
 7   A.       That's just my recollection of the testimony
 8   at the meeting of creditors.
 9   Q.       When was the meeting of creditors?
10   A.       It was December -- early December 2019.  It's
11   usually about a month after the petition's filed.
12   Q.       And you're aware that Ms. Hagh formed Hagh
13   Law, PLLC, in March of 2019?
14   A.       I think that's correct.
15   Q.       And you're aware that as of March 2019, she
16   was signing pleadings with the signature block Hagh
17   Law, PLLC?
18   A.       I think maybe sometime in April she was.  I
19   think there were some other pleadings that may have
20   just -- may not have said Afsoon Hagh, but -- it
21   didn't say Cummings Manookian but just Afsoon Hagh
22   and the same address and telephone number as Cummings
23   Manookian.
24   Q.       And what address is that?
25   A.       It's 45 -- I can't remember the entire
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 72 of 205

```
 1   address.  It's 45-something.

 2   Q.      Is it 45 Music Square West?

 3   A.      Yes.

 4   Q.      Do you have any evidence that Ms. Hagh worked

 5   at 45 Music Square West?

 6   A.      That's the address that she used.

 7   Q.      So other than putting that address on filings,

 8   do you have any evidence that she maintained a

 9   physical presence there?

10   A.      I've never seen her there.  My recollection

11   from the meeting of creditors was that she worked at

12   Cummings Manookian, and Cummings Manookian practiced

13   law in that building, that 45 Music.

14   Q.      And your recollection of the meeting of

15   creditors is that someone testified that Ms. Hagh

16   worked at Cummings Manookian?

17   A.      That's my recollection.  Mr. Manookian was

18   the -- was the representative.  I remember he said

19   there was a paralegal and that Ms. Hagh practiced in

20   the firm, worked in the firm, worked on cases.  I

21   can't remember the exact testimony on that.  But that

22   she was not compensated.

23   Q.      And at the time that you heard that testimony,

24   was that describing current events or was it a time in

25   the past?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 73 of 205

1   A.      I don't recall.  I think we were going through
2   the history of the -- I don't recall.  We were going
3   through the history of the firm, like when it was
4   started, who the members were, how many employees did
5   it have, does it have.
6   Q.      And you've never heard anyone say that in 2019
7   Ms. Hagh worked for Cummings Manookian, have you?
8   A.      2019?  I think the receiver -- Phillip Young,
9   as receiver, felt that Ms. Hagh was continuing the
10  practice or working -- working on Cummings Manookian
11  cases.
12  Q.      And what's the basis for your understanding
13  that Mr. Young had that view?
14  A.      Because he had filed attorneys liens on the
15  recoveries in those -- in those cases.
16  Q.      And did you have any understanding as to why
17  Mr. Young, as receiver, believed that Ms. Hagh was
18  acting on behalf of Cummings Manookian in 2019?
19  A.      Well, Cummings Manookian was the only firm
20  that had an engagement letter.  There weren't any
21  other engagement letters.  The motion or the notice
22  that was filed in court said that Afsoon Hagh would
23  be -- would continue working on the case.
24          There were pleadings that were filed by Afsoon
25  Hagh that either used Cummings Manookian or some --

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 74 of 205

1   or, you know, just her name and the address and
2   telephone number and maybe email addresses for
3   Cummings Manookian.
4   Q.      And is everything that you just testified
5   about with regard to 2019?
6   A.      I think it may be that in March or April of
7   2019 that Ms. Hagh started using Hagh Law on her
8   letterhead, sometime around -- around that time, maybe
9   in April.
10  Q.      And in the period between --
11  A.      Excuse me.  I'm sorry.  I didn't mean to
12  interrupt you.  And that had to do with the Fitzgerald
13  case with respect to the -- yeah.  I'm sorry.  That's
14  right.  That was the Fitzgerald case.  I was trying to
15  remember what might have been going on in the
16  Shoemaker case around that time.
17  Q.      In the period between December 13, 2018, and
18  March or April 2019, there were no attorney members of
19  Cummings Manookian who were authorized to practice
20  law; is that right?
21  A.      Between what dates?
22  Q.      December 13, 2018, and March or April of 2019.
23  A.      Members?
24  Q.      Yes, ma'am.
25  A.      Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 75 of 205

```
 1   Q.      Did Cummings Manookian have a contract with
 2   Ms. Hagh to work for a certain period of time?
 3   A.      I do not know.
 4   Q.      Do you know if there was any written agreement
 5   between Cummings Manookian and Ms. Hagh regarding
 6   employment or contract work?
 7   A.      I do not know.
 8   Q.      Is it your position that everything that
 9   Ms. Hagh did in 2019 with respect to the practice of
10   law was on behalf of Cummings Manookian?
11   A.      I think that's a legal conclusion.  But
12   certainly Cummings Manookian had the only engagement
13   letter.  So if Ms. Hagh is going to claim that she did
14   any work on the case apart from Cummings Manookian,
15   it's my understanding that she has to -- that would be
16   some type of equitable argument and she would have to
17   produce time records, which I don't think there are
18   time records, or show the value of her services.
19           And, again, it's -- I think it's more to be
20   revealed by, you know, other discovery in the case and
21   whether or not there was successor liability or just
22   continuation of Cummings Manookian beyond that March
23   -- I think you were talking about a March or April
24   2019 date.
25   Q.      And it's your position that Ms. Hagh and
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 76 of 205

1  Hagh Law, PLLC, are not entitled to the benefit of a

2  separate corporate identity after March 25th, 2019; is

3  that correct?

4  A.      I don't know what you mean by they're not

5  entitled to the benefit.

6  Q.      Well, you would agree with me that PLLC or an

7  LLC is a legal entity that has certain protections

8  under the law?

9  A.      Yes.

10  Q.      And you agree with me that Ms. Hagh formed a

11  PLLC in March of 2019?

12  A.      Correct.

13  Q.      But notwithstanding that, in your view, she's

14  not entitled to the legal protections of a separate

15  corporate entity at that time?

16  A.      And I don't know what you mean by legal

17  protections, but she certainly had the right to form a

18  PLLC.

19  Q.      And she did so?

20  A.      She did.

21  Q.      But you allege that the work that she did

22  during that time period was not on behalf of her PLLC

23  but it was on behalf of Cummings Manookian?

24  A.      Yeah, I think that's the -- that's the

25  question.  She didn't have a separate engagement

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 77 of 205

1  letter with the Fitzgeralds.

2  Q.      And you know that?

3  A.      It's the only one that's been produced to

4  us.  I think there was a -- I think in the Fitzgerald

5  discovery there was an unsigned engagement letter with

6  Hagh Law.

7  Q.      And that was on Hagh Law letterhead?

8  A.      I think it was.  It was just -- you know, that

9  discovery production was recent, and I'm still going

10 through, but I believe -- I believe that's correct.

11 Q.      In Paragraph 17 of your complaint, you state,

12 "Upon information and belief, Afsoon Hagh, now doing

13 business as Hagh Law, continued utilizing Cummings

14 Manookian's office space, Cummings Manookian's

15 furnishings and equipment, Cummings Manookian's

16 telephone numbers and email addresses all to work on

17 Cummings Manookian's files."

18         What's the basis for that allegation?

19 A.      I think that's just facts.  I don't understand

20 your question.

21 Q.      Well, how do you know that she continued using

22 Cummings Manookian's office space, for example?

23 A.      Well, there were pleadings that were being

24 filed, correspondence that listed that as her address.

25 And I think it's a reasonable assumption that if she's

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 78 of 205

```
1   using that as her address, then that is where she's

2   practicing law.

3   Q.      Well, that's a mailing address, correct?

4   A.      It's a physical address, law office address.

5   Q.      Well, if she had listed a PO Box, you would

6   not have assumed that she worked at the post office,

7   correct?

8   A.      Correct.

9   Q.      So just because someone uses an address to

10  receive pleadings doesn't mean that they necessarily

11  work at that address, does it?

12  A.      If it was just a mailing address.  But I know

13  that a law firm operated out of that.

14  Q.      I'm sorry.  Go ahead.

15  A.      I forgot the -- I'm sorry.  Mr. Manookian

16  interrupted, so I lost my train of thought there.  Can

17  you repeat the question?

18  Q.      Sure.  Just for the record, he was whispering

19  to me, and I'm sorry if it distracted you.

20  A.      It was.

21  Q.      She used a mailing address that you were

22  aware that Cummings Manookian had, at which Cummings

23  Manookian had existed.  Is that what you're saying?

24  A.      Correct.

25  Q.      But you don't know that she ever set foot in
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 79 of 205

1    that building, do you?

2    A.      I do not.

3    Q.      And you're aware that other attorneys use that

4    same mailing address to receive mail?

5    A.      I don't know that.

6    Q.      Have you ever seen Rocky McElhaney's name

7    associated with 45 Music Square West?

8    A.      No.

9    Q.      But the basis for your allegation that she

10   continued utilizing Cummings Manookian's office space

11   is solely that she put that address on documents

12   submitted to the Court?

13   A.      Correct.

14   Q.      What's the basis --

15   A.      At this point.  At this point.

16   Q.      And as you sit here today, you haven't

17   identified any other evidence to support that

18   allegation, about her continued use of office space?

19   A.      Other than what we've talked about.

20   Q.      What about your allegation that she continued

21   using Cummings Manookian's furnishings and equipment?

22   What's the basis for that allegation?

23   A.      The same assumption; that if she's using that

24   office space, then there is -- it's an assumption that

25   there's furniture, furnishings, computers, equipment,

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 80 of 205

```
1   that sort of thing in there.  And the receiver --
2   Phillip Young, the receiver, actually went to that
3   office address.
4   Q.      And did he see Ms. Hagh at that office?
5   A.      I do not know.
6   Q.      So like the allegation that she continued
7   using that office space, the allegation that she
8   continued using furnishings and equipment is derived
9   solely from your knowledge that she listed 45 Music
10  Square West on pleadings?
11  A.      Correct.
12  Q.      No other knowledge?
13  A.      Correct.
14  Q.      Can you identify any specific furnishings and
15  equipment that she used at 45 Music Square West?
16  A.      No.
17  Q.      Can you identify the dates that she was using
18  the furnishings and equipment at 45 Music Square West?
19  A.      I don't know when she started working at
20  Cummings Manookian, but I know the building was sold
21  in May of '20 or '21.  '21?  Maybe '21.  So I would
22  think after that date.
23  Q.      But as you sit here today, you don't know that
24  she ever set foot at 45 Music Square West, do you?
25  A.      No.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 81 of 205

```
 1   Q.      The allegation that Ms. Hagh used Cummings
 2   Manookian's telephone numbers and email addresses,
 3   what's your basis for that allegation?
 4   A.      Pleadings and correspondence, emails.
 5   Q.      What email addresses are you referring to
 6   there?
 7   A.      I think it's -- is it afsoon@cm -- I don't
 8   remember.  There's one at cmtriallawyers or something.
 9   I don't remember specifically, but I have seen those
10   email addresses associated with her name that
11   contained some identification of Cummings Manookian in
12   it, CM.
13   Q.      Have you seen her use any other email
14   addresses?
15   A.      Probably, but I don't know that.
16   Q.      Did she have a Hagh Law email address?
17   A.      I would think so.  I think so.
18   Q.      Did she have a tennesseetriallawyers.com email
19   address?
20   A.      I know that I have seen a
21   tennesseetriallawyers but don't know who that's
22   connected to.
23   Q.      And your best recollection of the Cummings
24   Manookian email domain is cmtriallawyers.com; is that
25   correct?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 82 of 205

1  A.      That's one of them, but there may have been

2  afsoon@ -- I'm sorry.  I just don't recall.

3  Q.      Where would you look for that information,

4  about which email addresses she was using, pursuant to

5  your allegation in Paragraph 17?

6  A.      Pleadings and emails.

7  Q.      And do you know what telephone number Ms. Hagh

8  was using that you associated with Cummings Manookian?

9  A.      I can't recite the number to you, but it would

10  be one of -- it was the same number that was on the

11  Cummings Manookian letterhead.

12  Q.      And what dates was she using Cummings

13  Manookian telephone numbers and email addresses?

14  A.      I would -- my recollection is at least up

15  until April -- March/April of 2019.  And, again, I

16  haven't been through all of the discovery.

17  Q.      And the significance of that date in your mind

18  is that's when she started Hagh Law, PLLC?

19  A.      That, and I think after that point there are

20  some -- there are documents that show the Hagh Law and

21  maybe -- but the same address, same telephone number

22  for a while, and then I do think maybe the telephone

23  number changed.  And I can't recall if that was the

24  number that was still associated in some way with

25  Cummings Manookian.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 83 of 205

```
 1   Q.      And then you refer in Paragraph 17 to Cummings

 2   Manookian's client files.  Were those also Cummings

 3   Law's client files, or were some of them also Cummings

 4   Law's client files?

 5   A.      They were -- that referred to that list of

 6   15 or 16 cases at the time the complaint was filed and

 7   cases in which Cummings Manookian had an interest.

 8   Q.      And were those also Hagh Law's client files?

 9   A.      I don't believe so.

10   Q.      Did those files belong to the law firms or to

11   the client?

12   A.      Well, the file belongs to the client.  The

13   cause of action belongs to the client.

14   Q.      You alleged in Paragraph 17 that neither

15   Afsoon Hagh or Hagh Law compensated Cummings Manookian

16   for use of Cummings Manookian property or client

17   files; is that correct?

18   A.      Yes.  Now, client files are -- I'm referring

19   to the attorney fees and expenses that were due, not

20   the -- like, the file itself.

21   Q.      So your view is that the funds that went to

22   Hagh Law should have been paid to Cummings Manookian?

23   A.      Yes.

24   Q.      And then when you refer to property in

25   that paragraph, you're referring to office space,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 84 of 205

```
1   furnishings and equipment, telephone numbers and email
2   addresses?
3   A.      Correct.
4   Q.      And we just discussed what you know about
5   that.
6   A.      Yes, sir.
7   Q.      Has Cummings Manookian ever owned office
8   space?
9   A.      I don't know if it's ever owned office space.
10  Q.      Who owned 45 Music Square West?
11  A.      That's a good question.  It was a little
12  convoluted.  It seems like it was two trusts or two
13  other partnerships that were comprised of Brian
14  Manookian and Brian Cummings, is the best of my
15  recollection.  But I was never -- I never was provided
16  with a copy of the lease to see who the landlord was.
17  But it's some type of -- I don't even remember now the
18  name that's on the tax assessor's records as the
19  owner.
20  Q.      You agree that Cummings Manookian didn't own
21  that building, though?
22  A.      That is correct.
23  Q.      And there's nothing improper or unethical
24  about forming a corporation to own a building, is
25  there?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 85 of 205

```
 1   A.      No.

 2   Q.      It's pretty common, in fact?

 3   A.      I don't know if it's common, but there's

 4   nothing wrong with it.

 5   Q.      You don't take issue with the fact that there

 6   was a different corporate entity that owned 45 Music

 7   Square West?

 8   A.      Correct.

 9   Q.      Do you know if there was a lease between the

10   owner of 45 Music Square West and Cummings Manookian?

11   A.      Mr. Manookian said there was.

12   Q.      Do you know if there was a lease between 45

13   Music Square West and any other entity?

14   A.      No, I do not know that.

15   Q.      You don't have any information that Ms. Hagh

16   ever signed a lease at that building, do you?

17   A.      I do not.

18   Q.      Since you haven't seen the lease, you can't

19   say that Cummings Manookian was entitled to the

20   exclusive use of that property, can you?

21   A.      No, but my recollection is that Mr. Manookian

22   said they had the entire building at the meeting of

23   creditors.

24   Q.      Do you know how many floors that building is?

25   A.      I do not.  I know it's more than one story.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 86 of 205

```
 1   I've seen a picture of it.
 2   Q.     And I guess you never visited the building
 3   yourself?
 4   A.     No.
 5   Q.     But Mr. Young has?
 6   A.     Correct.
 7            MR. SPRAGENS:  We're at a good stopping
 8   point if you want to take a five-minute break, if you
 9   don't mind.
10            MR. YOUNG:  That's fine.
11            (Recess observed.)
12   BY MR. SPRAGENS:
13   Q.     Ms. Burton, we were talking earlier about the
14   furniture at 45 Music Square West.  Do you recall
15   that?
16   A.     Correct.
17   Q.     Do you know who owned the furniture at
18   45 Music Square West?
19   A.     No.  I assumed that the law firm owned it, but
20   I don't know.
21   Q.     You don't have any information telling you --
22   A.     No invoices, anything like that, no.
23   Q.     Do you know whether 45 MSW Partners owned that
24   furniture?
25   A.     I do not know.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 87 of 205

```
 1   Q.      You mentioned Mr. Young's role as receiver in
 2   the, sort of, predecessor to this case.  Do you recall
 3   that?
 4   A.      Correct.
 5   Q.      Did you have any interactions with Mr. Young
 6   when he was the receiver?
 7   A.      No.
 8   Q.      When did you decide to bring this adversary
 9   proceeding?
10   A.      When we were -- and I say "we."  The hearing
11   that I -- after the case was filed and there was a
12   hearing in Lawrenceburg, and I forgot before -- what
13   that judge's name is, but there was an injunction
14   about the monies that the Court had frozen.  And so
15   there was discussion about -- between me and you and
16   Mr. Young and Brian Manookian -- I think Ron Stein was
17   there, but I don't know if he was in the room with us.
18         But we talked about now that the bankruptcy
19   court -- the bankruptcy had been filed, the bankruptcy
20   case would be the proper forum to settle that or make
21   that determination.  And so we negotiated, I guess, on
22   when the state court injunction would expire, and the
23   judge put that in an order.  And we had to get that
24   adversary proceeding filed before that injunction went
25   down in the -- in the adversary and the component of
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 88 of 205

```
 1  it for a turnover of the funds before that injunction
 2  expired.
 3  Q.     At the time of that state court hearing, had
 4  you already engaged Mr. Young as your attorney?
 5  A.     No.
 6  Q.     At what point did you do that?
 7  A.     It was before the adversary was filed, but I
 8  don't remember -- I don't remember the date, but I
 9  don't think it was -- I don't think it was before that
10  hearing in Lawrenceburg.
11  Q.     Do you have a written engagement agreement
12  with Mr. Young?
13  A.     No.
14  Q.     What sets out the terms under which he's
15  representing you in terms of his payment?
16  A.     The motion that's filed with the Court sets
17  out the compensation.
18  Q.     And was it solely your decision to bring it,
19  the adversary proceeding?
20  A.     Yes.
21  Q.     When did you make that decision?
22         MR. YOUNG:  Objection.  Asked and
23  answered.
24  BY MR. SPRAGENS:
25  Q.     You can answer.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 89 of 205

1  A.     When did I make the decision to -- after that

2  court hearing and I knew that the adversary needed to

3  be brought before that injunction expired.

4  Q.     And sometime between that hearing and when the

5  adversary proceeding was filed, you hired Mr. Young as

6  special counsel and sought court approval of that?

7  A.     Correct.

8  Q.     Prior to this case, did you ever work in the

9  same office as Judge Walker prior to his service as a

10  judge?

11  A.     No.  He was in the -- he was in the U.S.

12  Trustee's office.  And the panel trustees are, I guess

13  you would call, private or independent contractors.

14  We're not employees of the U.S. Trustee's office.

15  Q.     Did you have dealings with him when he worked

16  in the U.S. Trustee's office?

17  A.     Occasionally.  He was not -- each trustee is

18  kind of assigned an attorney that oversees them or

19  looks at their cases, you know, and -- but he was

20  not mine.  Maybe every once in a while, if he'd been

21  involved in a Chapter 11 case that got converted to

22  a Chapter 7 case and he'd been the U.S. attorney --

23  U.S. Trustee attorney on that case, then we might have

24  some communication about things that went on in the

25  Chapter 11.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 90 of 205

```
 1   Q.      Did you hear Judge Walker at our last hearing
 2   make a reference to being contacted by members of the
 3   bar about security concerns with respect to
 4   Mr. Manookian?
 5                 MR. YOUNG:  Objection.  Relevance.
 6                 THE WITNESS:  Yes.
 7   BY MR. SPRAGENS:
 8   Q.      Do you know anything about who contacted Judge
 9   Walker?
10   A.      I do not.
11                 MR. YOUNG:  Objection.  Relevance.
12                 THE WITNESS:  I'm sorry.  I do not.
13   BY MR. SPRAGENS:
14   Q.      You identified yourself as someone with
15   personal knowledge of facts in this case; is that
16   correct?
17   A.      As trustee, yes.
18   Q.      And just in broad strokes, can you give me
19   what areas of the case you have personal knowledge
20   about?
21   A.      Just records and matters that are presented
22   to me:  the petition; testimony at the meeting of the
23   creditors; conversations with -- specifically with
24   respect to that adversary proceeding; conversations
25   with the receiver, Mr. Young.  I mean, everything that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 91 of 205

```
 1  I know comes to me secondhand.

 2          And we do some -- I won't call that

 3  investigating in our office, but if we get a business,

 4  we may look at the Secretary of State's records to see

 5  if it was active when it was dissolved, who the

 6  members were.  So it's really just what comes to me

 7  once a case is filed.

 8  Q.      When you say "conversations with the receiver,

 9  Mr. Young," what conversations are you talking about?

10  A.      When the case was filed and I was appointed

11  as trustee, the receiver, you know, contacted me and

12  said:  There's this receivership and, you know, this

13  is what's going on.  Any records that I have, I'll be

14  glad to give those to you.  There's money that's being

15  -- that will be collected that will now come to you in

16  the bankruptcy case, just because that was pretty much

17  going to stop everything in the receivership.

18  Q.      And that was prior to the December 2019

19  hearing in Lawrenceburg that you had those

20  conversations?

21  A.      Correct.

22  Q.      And you found out about the receivership

23  because Mr. Young called you?

24  A.      Correct.

25  Q.      Did he make any suggestions to you about a
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 92 of 205

1  course of action that you might want to pursue?

2  A.    No.  No.  Just kind of informing me.  I mean,

3  I get -- it's not unusual to get those kinds of cases

4  when you get appointed.  No, just that there was a

5  receivership and kind of what the status of that

6  receivership was.

7  Q.    How did you decide to attend the hearing in

8  Lawrenceburg?

9  A.    Well, the automatic stay was in effect, so I

10  wanted to make sure nobody was doing anything that

11  violated the automatic stay, but I was -- I viewed

12  that as a proceeding that was going to safeguard

13  potential assets of the bankruptcy estate.  And I'm

14  okay with that.  You know, sometimes secure creditors

15  will take possession of a vehicle or they'll secure a

16  piece of real estate or whatever.

17      So I just wanted to go to that hearing to --

18  basically to see what was going on, what the judge was

19  going to do.  And I knew a subject of that was going

20  to be the funds that the Court had ordered be held,

21  and I think there was a question of whether that

22  needed to be paid into the court or not.  So I had an

23  interest in seeing what happened to those funds.

24  Q.    Did there come a time when Mr. Young stopped

25  acting as receiver in the state court case?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 93 of 205

```
 1   A.        I think once the bankruptcy -- I would say
 2   once the bankruptcy case was filed and certainly when
 3   he became employed as attorney for the trustee.
 4   Q.        Who appointed Mr. Young as the receiver?
 5   A.        I think the Court did, the state court.
 6   Q.        Do you know which court?
 7   A.        No, I don't.  I don't know what judge that
 8   was.
 9   Q.        Is it your understanding that there was an
10   order appointing him receiver?
11   A.        Correct.
12   Q.        Was there ever an order ending the
13   receivership?
14   A.        I don't know if there is or not.
15   Q.        Did Mr. Young file anything to withdraw his
16   role as receiver or to terminate his role as receiver?
17   A.        I don't -- I don't know.  I don't know that.
18   I think there -- I don't know.
19   Q.        But it's your belief or understanding, at
20   least, that he stopped functioning as receiver when he
21   became special counsel to the trustee?
22   A.        Right.  Or before that, before that date.
23   Q.        And I'm sorry if I asked this already, but was
24   it your idea to hire Mr. Young or did he suggest to
25   you that you might want to hire him?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 94 of 205

```
 1   A.        No.  Mine.  My idea.

 2   Q.        With respect to your knowledge, which is what

 3   got us on to this topic, you don't have any firsthand

 4   knowledge of the facts that are at issue in this case

 5   prior to December of 2019, do you?

 6   A.        Ask me that again, please.

 7   Q.        You don't have any firsthand knowledge or

 8   personal knowledge of the facts in this case prior to

 9   your getting involved in December of 2019, do you?

10   A.        Correct.  Prior to the bankruptcy filing, I

11   was not involved in any way.

12   Q.        So your knowledge is derivative of what

13   Mr. Young told you as receiver, plus the materials and

14   evidence that's been produced in this case so far?

15   A.        Right.  The petition that was filed in the

16   case and the testimony at the meeting of creditors.

17   Q.        I'm going to hand you a letter with the date

18   of May 23rd, 2018, at the top.  And there's an exhibit

19   sticker on it, but that exhibit sticker is not

20   actually relevant to this deposition.

21             MR. SPRAGENS:  So we'll mark that as

22   Exhibit 1.

23             (Marked Exhibit No. 1.)

24   BY MR. SPRAGENS:

25   Q.        Have you seen that letter before?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 95 of 205

```
 1   A.      I have.

 2   Q.      And what is that letter?

 3   A.      It's an engagement letter between Cummings

 4   Manookian and Marty and Melissa Fitzgerald.

 5   Q.      And you don't have any reason to doubt the

 6   authenticity of this letter, do you?

 7   A.      Well, I have seen another engagement letter

 8   where the first page is the same and I believe the

 9   third page is the same, where the second page, second

10   paragraph under Contingency Fees, mentions Ronette

11   McCarthy and her being paid a fee in the case.

12   Q.      And does that mean that you doubt the

13   authenticity of this letter?

14   A.      No.  I believe there was an engagement letter.

15   Q.      Is the other letter that you just described

16   also dated May 23rd, 2018?

17   A.      It is.  It has the same change in the date and

18   initial, and the signatures look the same.  The date's

19   the same.

20   Q.      So the other version of the letter that you've

21   seen has a different Page 2?

22   A.      Correct.

23   Q.      But both versions of that letter have the same

24   paragraphs on Page 3 under Termination of Professional

25   Relationship, correct?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 96 of 205

```
 1   A.      I believe so.

 2   Q.      And this letter is an agreement between

 3   Cummings Manookian and Marty and Melissa Fitzgerald?

 4   A.      Correct.

 5   Q.      And on May 23rd of 2018, Mr. Manookian had the

 6   authority to enter into this agreement on behalf of

 7   Cummings Manookian, correct?

 8   A.      Correct.

 9   Q.      And as of that date, he was a member of

10   Cummings Manookian?

11   A.      Correct.

12   Q.      And you agree that that letter is a binding

13   contract between Cummings Manookian and the

14   Fitzgeralds?

15   A.      Correct.

16   Q.      And in the second paragraph on Page 3 of

17   this letter, it says, "You have the right to change

18   attorneys to another attorney or firm at any time by

19   sending us a letter to that effect.  This right to

20   discharge this firm as your representative requires

21   that you remain responsible for all costs and expenses

22   incurred prior to receipt of your letter.

23           "If you terminate the representation before

24   the conclusion of the matter, we will additionally be

25   entitled to receive, from the proceeds of any
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 97 of 205

1  recovery, a reasonable fee for the work we have

2  performed based upon the amount of time required, the

3  complexity of the matter, the time frame within which

4  the work was performed, our experience, ability,

5  reputation, the responsibility involved, and the

6  results obtained."

7          Did I read that paragraph correctly?

8  A.      Yes.

9  Q.      And then the next paragraph says, "We may

10  choose to withdraw from representing you and request

11  in writing that you obtain another attorney or firm to

12  represent you.  A withdrawal by this firm does not

13  relieve you of the responsibility to pay advanced

14  costs."

15          Did I read that correctly?

16  A.      Yes.

17  Q.      So you would agree with me that this letter

18  states that in the event Cummings Manookian withdraws

19  from a representation -- or from this representation

20  with the Fitzgeralds, it is entitled to recover its

21  costs; is that correct?

22              MR. YOUNG:  Objection to the extent it

23  calls for a legal conclusion, but you can answer.

24              THE WITNESS:  I do think its entitled to

25  costs, but I think it's silent -- I think where you're

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 98 of 205

1  going is about the fees, and I think it's silent as

2  to that.  And also where it says, "We say choose to

3  withdraw from representing you," I don't know that --

4  the facts under which Brian Manookian withdrew were

5  not of his own choosing.  And it's our position, my

6  position, that Afsoon Hagh continued to represent the

7  Fitzgeralds.

8  Q.      You agree with me that the first paragraph

9  that I read entitles Cummings Manookian to receive an

10  attorney's fee in the event the Fitzgeralds terminate

11  the relationship, right?

12              MR. YOUNG:  Object to the extent it calls

13  for a legal conclusion.

14              THE WITNESS:  Correct.

15  BY MR. SPRAGENS:

16  Q.      But that language does not appear in the next

17  paragraph which spells out the parties' rights in the

18  event Cummings Manookian chooses to withdraw; is that

19  correct?

20  A.      Correct.

21  Q.      You don't dispute that this letter was binding

22  on Cummings Manookian at the time that the agreement

23  was entered into, do you?

24  A.      No, I don't dispute that.

25  Q.      Let's look at another exhibit.  I just handed

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 99 of 205

1  you a letter dated December 17, 2018, which we will

2  mark as Exhibit 2 to this deposition.  Do you see

3  that?

4  A.      Yes.

5              (Marked Exhibit No. 2.)

6  BY MR. SPRAGENS:

7  Q.      This is a letter sent by Mr. Manookian on

8  behalf of Cummings Manookian to the Fitzgeralds; is

9  that correct?

10  A.      That's what it purports to be, yes.

11  Q.      And this letter was produced to the receiver

12  prior to the bankruptcy being filed; is that correct?

13  A.      I think so.  I don't know about that.  I know

14  Mr. Manookian gave me a copy of this.

15  Q.      Are you aware whether Mr. Young had a copy of

16  this letter when he was serving as receiver?

17  A.      I think so, but I'm not sure.

18  Q.      And this letter -- well, do you dispute that

19  this letter was sent to Mr. and Mrs. Fitzgerald?

20  A.      I don't know if it was or not.

21  Q.      Do you see that it has Mr. Manookian's

22  signature on it?

23  A.      Correct.

24  Q.      And in this letter he informs the Fitzgeralds

25  that he's been suspended from the practice of law

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 100 of 205

1   and that he and Cummings Manookian are required to
2   withdraw from the representation; is that correct?
3   A.      That's what it says, yes.
4   Q.      And that's because Brian Cummings was no
5   longer with Cummings Manookian and Brian Manookian was
6   suspended from the practice of law, right?
7   A.      I don't know why.  I'm sorry.  Ask that
8   question again.
9   Q.      Well, is it your understanding that as of
10  December 7th, 2018, Cummings Manookian would be
11  required to withdraw from representing the Fitzgeralds
12  because there were no members of Cummings Manookian
13  with an active law license?
14          MR. YOUNG:  Object to the extent it calls
15  for a legal conclusion.
16          THE WITNESS:  And I don't know about
17  that.  I know that Brian Manookian had to withdraw.
18  Whether Cummings Manookian had to withdraw, I'm not --
19  I don't know.  And I think they must have thought they
20  didn't because Afsoon Hagh continued representation of
21  the Fitzgeralds.
22  BY MR. SPRAGENS:
23  Q.      You don't dispute that as of December 7th,
24  2018, Mr. Manookian had the authority to bind Cummings
25  Manookian, do you?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 101 of 205

```
 1   A.      I don't know.

 2   Q.      Well, you know that in December of 2018 he was

 3   a member of Cummings Manookian, right?

 4   A.      Yes, sir, he was.  He was.  I don't remember

 5   what his actual suspension date was, but I know that

 6   he was required to inform clients of his suspension.

 7   Q.      And my question is:  Wouldn't you agree

 8   with me that Mr. Manookian, as a member of Cummings

 9   Manookian, was able to bind Cummings Manookian to an

10   agreement as of December 2018?

11   A.      I don't know the answer to that.

12   Q.      And why not?

13   A.      Because I don't know the answer to that.

14   Q.      Well, a minute ago we talked about the May

15   2018 letter in which you agreed Mr. Manookian could

16   enter into an agreement on behalf of Cummings

17   Manookian, right?

18   A.      Right.

19   Q.      So here we are on December 7, 2018.  He's sent

20   a letter.  And he has the authority to bind Cummings

21   Manookian as of that date, too, doesn't he?

22   A.      I don't know.  He was the only member of

23   Cummings Manookian at that -- at that time.

24   Q.      And you would agree with me that a member can

25   bind a PLLC?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 102 of 205

```
 1   A.       Yes.  Yes.

 2   Q.       So in December of 2018, as the sole member of

 3   Cummings Manookian, Mr. Manookian had the capacity to

 4   make agreements on behalf of Cummings Manookian; is

 5   that right?

 6   A.       I think he was.  I don't know that this was an

 7   agreement.

 8   Q.       Well, you see here, the second paragraph

 9   of this letter says, "Pursuant to our legal

10   representation and engagement agreement" -- do you

11   understand that to refer to the May 23rd, 2018,

12   letter?

13   A.       Yes.

14   Q.       -- "Cummings Manookian is entitled to

15   reimbursement of certain advanced costs and expenses

16   in this case.  I estimate those costs and expenses to

17   be less than $3,000.  Because Cummings Manookian is

18   withdrawing from this matter, it will not be entitled

19   to any portion of an attorney's fee and specifically

20   disclaims the same under the terms of our prior

21   engagement agreement.  You may provide this letter to

22   any future attorneys representing you in this case as

23   confirmation of the same."

24           Did I read that correctly?

25   A.       Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 103 of 205

1   Q.      And so this letter is invoking the last

2   provisions of the May 23rd, 2018, attorney-client

3   agreement; is that right?

4   A.      Well, I think that client agreement was silent

5   on whether or not Cummings Manookian would be entitled

6   to a fee.

7   Q.      I understand that that's your position.  But

8   Cummings Manookian said it wasn't entitled to a fee in

9   2018, correct?

10  A.      Correct.

11  Q.      And Mr. Manookian had the authority to make

12  that decision on behalf of Cummings Manookian in

13  December of 2018, did he not?

14  A.      Correct.

15  Q.      So as of December 7th, 2018, Cummings

16  Manookian disclaimed any entitlement to fees in the

17  Fitzgerald matter, correct?

18  A.      That's what the letter states.  I never was

19  furnished with any proof that the Fitzgeralds received

20  this letter.

21  Q.      So if Mr. Fitzgerald testifies that he

22  received this letter, would that satisfy you that

23  Cummings Manookian claimed any fee in the Fitzgerald

24  case on December 7, 2018?

25  A.      I don't know.  It will depend on what

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 104 of 205

1  Mr. Fitzgerald has to say about that.  I would like to

2  see the certified -- signed, certified mail receipt.

3  And regardless of what the letter says, the motion

4  that was filed with the court said that Brian

5  Manookian was withdrawing but that Afsoon Hagh was

6  going to continue to represent the plaintiffs, and

7  that was signed by Mr. Manookian and it had Afsoon

8  Hagh's name on it and the Cummings Manookian

9  information and name.

10  Q.      But you don't disagree with me that in

11  December 2018, Cummings Manookian wrote that it

12  disclaimed any fee in the Fitzgerald case?

13  A.      Brian Manookian did, yes.

14  Q.      And Brian Manookian spoke for Cummings

15  Manookian when he did that, correct?

16  A.      Correct.

17  Q.      And shortly after that date, there were no

18  licensed attorneys as member of Cummings Manookian,

19  correct?

20  A.      No.  Well, I would say that -- well, no,

21  that's not correct, I don't think, because I think

22  Brian Manookian was still a member of Cummings

23  Manookian.  He was just suspended temporarily, and

24  then later he was reinstated.  But I think he remained

25  a member of Cummings Manookian, but he was suspended.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 105 of 205

```
1   His law license was suspended.

2   Q.      Right.  So he did not have an active law

3   license at that time?

4   A.      Correct.

5   Q.      And therefore, soon after this letter was

6   sent, there were no members of Cummings Manookian with

7   an active law license?

8   A.      Active, correct.

9   Q.      But it's your position in this case that

10  Cummings Manookian did not withdraw from representing

11  the Fitzgeralds in December 2018?

12  A.      Correct.

13  Q.      You'd agree with me, based on the way you

14  described the notice of withdrawal mentioning that

15  Ms. Hagh was going to continue to work on it, that it

16  was silent about the firm that she was affiliated

17  with?

18  A.      The signature block on that pleading was

19  Cummings Manookian.

20  Q.      And was that pleading Cummings Manookian's

21  withdrawal?

22  A.      It was Brian Manookian's withdrawal.

23              MR. SPRAGENS:  I think we can put that

24  the exhibit aside now.

25  BY MR. SPRAGENS:
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 106 of 205

1  Q.      With respect to the allegations in your
2  complaint, you allege that Afsoon Hagh, Hagh Law, and
3  Manookian, PLLC, converted property; is that right?
4  A.      Correct.  That was -- yes.
5  Q.      And what's the property that you allege was
6  converted or wrongfully appropriated?
7  A.      Office space, furnishings, intellectual
8  property like emails, telephone numbers, and then
9  fees that were -- I don't know that that would be
10 considered under the property part, but the fees that
11 I claim are due to Cummings Manookian.
12 Q.      And the sole source of information for that
13 allegation is the pleadings that Ms. Hagh signed?
14 A.      Correct.
15 Q.      Did Manookian, PLLC, have a bank account?
16 A.      Yes.  Yes.
17         I'm sorry.  Manookian, PLLC?
18 Q.      Yes, ma'am.
19 A.      I don't know.
20 Q.      Who do you anticipate will have more
21 information about the facts that underlie your claim
22 for conversion?
23 A.      Brian Manookian, Afsoon Hagh, Brian Cummings.
24 And my attorney may have an idea that there are more,
25 but those are the ones that I can think of.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 107 of 205

1  Q.      And before you filed this complaint, did you

2  attempt to talk with anybody who might have more

3  information about the conversion to get that

4  information?

5  A.      Only the receiver -- or the person who had

6  served as receiver.

7  Q.      So the receiver, Mr. Young, is the source of

8  all your knowledge about the first claim in your

9  complaint?

10          MR. YOUNG:  Objection.  I don't think

11  that's what she testified to.

12          THE WITNESS:  What was the question

13  again?

14  BY MR. SPRAGENS:

15  Q.      The receiver, Mr. Young, was the source of all

16  the factual information that underlies the conversion

17  claim in your complaint?

18  A.      That, and the petition and the testimony at

19  the meeting of creditors.

20  Q.      Do you know if Mr. Young tried to get that

21  information from Mr. Manookian, Mr. Cummings or

22  Ms. Hagh when he was serving as receiver?

23  A.      I know that during the receivership he had

24  conversations with Mr. Manookian and Mr. Cummings,

25  maybe even Mr. Hammervold, but that wouldn't -- that

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 108 of 205

```
 1   probably wouldn't have anything to do with this, but I
 2   don't know about Afsoon Hagh.
 3   Q.      And it was Mr. Young, when serving as
 4   receiver, who developed this understanding that there
 5   had been some conversion that had taken place; is that
 6   right?
 7   A.      Yes.
 8   Q.      And did he tell you that in the conversations
 9   that you had after you were appointed trustee?
10   A.      Yes.  And when I had employed him as special
11   counsel and we were discussing filing the complaint
12   and what would be in the -- you know, what our
13   possible causes of action were.
14   Q.      But in that first conversation where he called
15   you up and he said, I'm the court-appointed receiver
16   in this case and here's what's gone on, he basically,
17   more or less, told you that there had been this
18   conversion that had taken place?
19   A.      We really didn't talk about anything in detail
20   about that, just that the case was filed and I was
21   appointed the trustee.  He had information because he
22   was receiver in a case that involved the debtor.
23   Q.      At what point did he tell you that he believed
24   that Ms. Hagh was continuing to practice law on behalf
25   of Cummings Manookian?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 109 of 205

```
 1   A.      After the case was filed, when we were
 2   discussing the complaint, the receivership proceeding
 3   and the complaint.
 4   Q.      And he drafted the complaint, right?
 5   A.      He did.
 6   Q.      With respect to the second claim for relief,
 7   State Law and Fraudulent Transfer, you allege that
 8   Ms. Hagh, Hagh Law, and Manookian, PLLC, wrongfully
 9   took the property of Cummings Manookian in attempt to
10   hinder, delay, and defraud creditors of Cummings
11   Manookian; is that right?
12   A.      Right.
13   Q.      And the property that you're talking about
14   there is the property that you discussed earlier,
15   specifically intellectual property, furniture, case
16   files.  What else?
17   A.      Correct.
18   Q.      Office space?
19   A.      Correct.
20   Q.      Anything different about the property in that
21   count from what we discussed earlier?
22   A.      No.
23   Q.      And, again, with respect to this count, you
24   don't have independent knowledge, other than from
25   Mr. Young, about the facts in this -- that underlie
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 110 of 205

1  the fraudulent transfer claim, do you?

2  A.      I know that the settlement funds from the

3  Fitzgerald case were transferred to Afsoon Hagh or

4  were paid out to Hagh Law -- I'm sorry I keep

5  mispronouncing that -- Hagh Law, and I know that from

6  the receivership pleadings that I was looking at

7  before that hearing in Lawrenceburg.

8  Q.      And those would be pleadings that Mr. Young

9  drafted?

10  A.      Correct.  And the responses to those.

11  Q.      And it's Mr. Young who decided what claims

12  would be brought in this case?

13  A.      We discussed those.  I mean, some of them

14  are -- you know, yes, that's the purpose of having an

15  attorney, you know, what the facts bear out and what

16  the causes of action would be, but I could see that

17  there was potentially a fraudulent conveyance action.

18  Q.      Based on what?

19  A.      That there were funds to which -- or accounts

20  receivable to which Cummings Manookian was entitled

21  that were transferred or conveyed to another --

22  another party.  And that doesn't necessarily mean that

23  the recipient did anything wrong or illegal.  It's

24  just that that's a provision of the bankruptcy

25  fraudulent transfers.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 111 of 205

1   Q.      But you developed the understanding that

2   Cummings Manookian was entitled to those funds from

3   Mr. Young?

4               MR. YOUNG:  Objection.  Attorney-client

5   privilege.  We're getting awfully close now.  She's

6   talked about -- I was already retained when this

7   complaint was drafted.  So I'm saying attorney-client

8   privilege and instruct her not to answer.

9   BY MR. SPRAGENS:

10  Q.      Okay.  Don't tell me anything that Mr. Young

11  told you as your attorney, but in those conversations

12  that you had with Mr. Young prior to becoming your

13  attorney, you developed an understanding that Cummings

14  Manookian was entitled to these funds?

15  A.      Yes.  In talking to Steve Lefkovitz, who was

16  the debtor's bankruptcy attorney, I asked about those

17  funds, and that's when I was told that those funds

18  weren't property of the bankruptcy estate, and

19  Mr. Manookian also told me that, what his position

20  was.

21  Q.      So Mr. Manookian, as the sole member of

22  Cummings Manookian, and Mr. Lefkovitz, as the attorney

23  for Cummings Manookian, both told you that that was

24  not Cummings Manookian's property, correct?

25  A.      That's what they were claiming.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 112 of 205

```
 1   Q.      That's what they told you?

 2   A.      Yes.  Yes.

 3   Q.      And Mr. Young, as receiver, said it was

 4   Cummings Manookian's property?

 5   A.      He believed it was.

 6   Q.      With respect to the state law and federal

 7   fraudulent transfer claims, what are the fraudulent

 8   transfers that are at issue?

 9   A.      Specifically at the -- well, at the time that

10   that complaint was filed, the Fitzgerald funds and

11   then also the Shoemaker funds.  There were other --

12   yeah, those.  Because the other cases, I believe

13   Mr. Cummings was handling those and had paid either --

14   well, for the ones that are in the complaint, would

15   be handing Cummings Manookian's portion over to the

16   trustee.

17   Q.      And that was with respect to Fitzgerald at

18   the time the complaint was filed and subsequently

19   Shoemaker?

20   A.      Right.  I knew Shoemaker was out there that

21   hadn't been settled.  I knew those two cases were out

22   there that were originally Cummings Manookian cases

23   that had not been settled.

24   Q.      The fourth claim for relief is Tortious

25   Interference with Contract.  Tell me your
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 113 of 205

1  understanding of that allegation, please.

2  A.      That to the extent that -- or Cummings

3  Manookian was entitled to the attorney fees, and

4  specifically I think that was speaking to the

5  Fitzgerald case -- were entitled to the fees by virtue

6  of the engagement letter, and to the extent that

7  Brian Manookian or Afsoon Hagh interfered with that

8  contractual agreement to breach or to break that

9  contract or make others think that there was no longer

10 an agreement.

11 Q.      So, you know, Brian Manookian is not a party

12 to this case, right?

13 A.      No, he is not.

14 Q.      And, in fact, you didn't bring this claim

15 against Manookian, PLLC, only against Afsoon Hagh and

16 Hagh Law, correct?

17 A.      No.  Manookian, PLLC, is listed as a

18 defendant.

19 Q.      Right.  But the tortious interference with

20 contract claim is just against Afsoon Hagh and Hagh

21 Law, right?

22 A.      That may be right.  I think it's listed

23 underneath each count.

24 Q.      And you say that "Afsoon Hagh and Hagh Law

25 coerced the Fitzgerald case defendants from remitting

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 114 of 205

1  to Cummings Manookian $1.35 million in attorney's

2  fees."

3  A.      When that case settled, I think there was

4  discussion about the payment of those -- of the

5  settlement proceeds.  And those proceeds ended up

6  being paid to -- were instructed -- I think the order,

7  the settlement order was changed to show Afsoon Hagh,

8  Hagh Law, as the attorney for the plaintiff, and the

9  settlement proceeds were to be paid or were paid to

10 Afsoon Hagh.

11 Q.      When you say the order was changed, you're not

12 saying that there was funny business/meddling with the

13 Court order?

14 A.      No, no.  Mr. Meisner, I believe, was

15 instructed to change the order.

16 Q.      Because Mr. Meisner, as far as you know,

17 thought that Ms. Hagh and Hagh Law were representing

18 the Fitzgeralds, right?

19 A.      Apparently not.  And, again, this is discovery

20 that I'm just seeing, but there was an email where --

21 and I think it was Brian Manookian who emailed and

22 said the order looks fine but it needs to be changed

23 to show that Afsoon Hagh is attorney for the

24 plaintiffs.  And I haven't seen the order, so --

25 before or after, so I don't -- I don't know what it

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 115 of 205

1  said before.  I don't know what it said before.

2  Q.      Over a year before you filed this complaint,

3  Mr. Manookian, on behalf of Cummings Manookian, had

4  withdrawn the firm from that representation, correct?

5  A.      I'm sorry.  Ask me that again.

6  Q.      Over a year before you filed this complaint,

7  Mr. Manookian had sent that letter withdrawing

8  Cummings Manookian from representing the Fitzgeralds,

9  correct?

10  A.      I don't know if he sent that letter, but there

11  is -- I've seen the letter.

12  Q.      And at the time you filed this case, you knew

13  about that letter, did you not?

14  A.      Yes.

15  Q.      So at the time you filed this case, you were

16  aware that Mr. Manookian had written a December 2018

17  letter withdrawing Cummings Manookian from

18  representing the Fitzgeralds?

19  A.      I knew there was a letter and I knew when it

20  was dated, but I don't know anything beyond that.

21  Q.      When you referred to the engagement agreement

22  in Paragraphs 57 to 61 of the complaint, which are the

23  tortious interference paragraphs, you're referring to

24  what we looked at earlier today as Exhibit 1, correct?

25  A.      I'm sorry.  Ask me that again.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 116 of 205

```
 1   Q.      When you use the term "the engagement

 2   agreement" with the Fitzgerald plaintiffs, you're

 3   referring to what we looked at earlier in this

 4   deposition, Exhibit 1?

 5   A.      Correct, the engagement letter with the

 6   Fitzgeralds, yes.

 7   Q.      But you don't mention the December letter in

 8   this complaint anywhere, do you?

 9   A.      No.

10   Q.      Does Ms. Hagh represent any clients through

11   Hagh Law, in your view, or has all of Hagh Law's work

12   been done on behalf of Cummings Manookian?

13   A.      I think we have alternative theories on that.

14   Are you -- and you're talking about the Fitzgeralds or

15   the -- or the Shoemaker case?  Is that what you're --

16   Q.      I just mean in general.  Generally speaking,

17   is 100 percent of Hagh Law's work on behalf of

18   Cummings Manookian?

19   A.      I would say no.

20   Q.      And how do you know --

21   A.      And I don't know that because -- I guess I'll

22   say I don't know that because I don't know what other

23   cases she's had or worked on.

24   Q.      And how do you determine what work by Hagh Law

25   is on behalf of Cummings Manookian and what is on
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 117 of 205

1  behalf of Hagh Law?

2  A.      I think that's what we're in the process

3  of determining.  You know, there's -- there are

4  engagement letters for both of those cases with

5  Cummings Manookian.  And at some point Afsoon Hagh

6  did form a PLLC -- I think it's been administratively

7  dissolved now -- and in some pleading -- and at some

8  point started using "Hagh Law" on her signature lines

9  and emails.  But sometime prior to that, maybe after

10 that, it was just Afsoon Hagh with the Cummings

11 Manookian address and information.

12 Q.      So in your mind when Ms. Hagh uses "Hagh Law"

13 on a pleading, that's on behalf of Hagh Law?

14 A.      Yes.

15 Q.      And then when she is silent about her

16 affiliation, you believe that there she's working on

17 behalf of Cummings Manookian?

18 A.      It could be, yes.

19 Q.      It could be?

20 A.      Yes, in those cases.

21 Q.      When you say "those cases," what do you mean?

22 A.      Fitzgerald case and the Shoemaker case is the

23 only cases I know about.

24 Q.      So if Ms. Hagh went back and forth between

25 using no affiliation and then using Hagh Law and then

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 118 of 205

1  using no affiliation again, in your view she was

2  wearing different hats at that time?

3  A.     It's very confusing.  Yes.

4  Q.     But yes, that's your view?

5  A.     Yes.

6              MR. SPRAGENS:  Let's take another quick

7  break and hopefully we won't need to be here all day.

8              (Recess observed.)

9  BY MR. SPRAGENS:

10 Q.     Ms. Burton, in Paragraph 23 of your complaint,

11 there's a list of cases.  Do you remember that list?

12 A.     Correct.

13 Q.     Are you still seeking fees in all of these

14 cases on behalf of Cummings Manookian?

15 A.     I think I've received -- I've received funds

16 -- besides Fitzgerald and Shoemaker, I've received

17 funds, I think, in five of those cases through

18 Mr. Cummings.  There's a couple that did not produce

19 anything, and there are three -- I don't remember

20 which three, but there are three that I'm checking on

21 now to see if there are going to be any fees out of

22 that case.

23 Q.     Do you need a copy of this list?

24 A.     Sure.

25 Q.     There's the complaint, Paragraph 23.  Can you

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 119 of 205

1  identify which cases Cummings Manookian is owed money

2  in from the defendants?

3  A.     The Fitzgerald case and the Shoemaker case.

4  And there are three other cases, but I couldn't tell

5  you, without looking at my Form-1 that I keep in the

6  bankruptcy case, what other three that I haven't

7  received money in or that I haven't marked that

8  there's no money to be pursued in those cases.  I

9  do think in Manookian versus Pennsylvania Higher

10 Education, et al., I've marked that one off of my

11 list.

12 Q.     There were no money damages in that case to

13 begin with, were there?

14 A.     I don't remember.  This was on the list of

15 cases that were being pursued in the receivership.

16 I think this list was provided by Mr. Cummings and

17 Mr. Manookian.  I think there were other cases, maybe,

18 in that receivership that were Hammervold cases, but

19 obviously none of those -- or -- I won't say none of

20 those, but the ones that were strictly Hammervold

21 cases were not included in that list.

22 Q.     Well, this is a list that Mr. Young gave you,

23 correct?

24 A.     That's correct.  And that -- Mr. Cummings, I

25 believe, also had a list of that, of those cases.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 120 of 205

```
1    Q.      Did you do any independent investigation,
2    other than accepting the list from Mr. Young, to
3    determine what cases Cummings Manookian was owed a fee
4    in?
5    A.      No, other than looking at the bankruptcy
6    petition and questioning Mr. Manookian at the meeting
7    of creditors.
8    Q.      Did you ask Mr. Manookian about these cases in
9    Paragraph 23 at that hearing?
10   A.      No.  I didn't specifically have the -- I don't
11   think I had the list at that time.
12   Q.      But Mr. Young had that list, right?
13   A.      Correct.
14   Q.      And you had already talked to Mr. Young at
15   that time?
16   A.      At the time that the complaint was filed, when
17   I employed him.
18   Q.      And you had also --
19   A.      But I knew that he had been collecting cases.
20   Q.      In the Manookian v. Pennsylvania Higher
21   Education case, what do you believe that Cummings
22   Manookian was owed in that case?
23   A.      I think now I don't -- there wasn't anything
24   owed in that case.  It was on -- it was on the list
25   that I received.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 121 of 205

```
 1  Q.      And this is the list from Mr. Young?

 2  A.      Correct.

 3  Q.      But that Manookian case should not be on that

 4  list anymore?

 5  A.      I'd have to look at my form, at my Form-1 and

 6  what my notes say about that, but it's possible that

 7  that -- there was no recovery in that case, or it

 8  wasn't worth pursuing any longer or -- I mean, I just

 9  don't recall.

10  Q.      Did you do any investigation to determine

11  whether Cummings Manookian was entitled to a fee in

12  these cases?

13  A.      Not any independent investigation.

14  Q.      You just relied on Mr. Young?

15  A.      Right.  And Mr. Cummings.

16  Q.      So it's not your testimony that Mr. Cummings

17  identified all of these cases?

18  A.      No.  No.

19  Q.      And you cannot remember which three cases,

20  other than Shoemaker and Fitzgerald, you're continuing

21  to seek fees in?

22  A.      I do not.

23  Q.      Is that something that you could tell us after

24  this deposition?

25  A.      Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 122 of 205

```
 1   Q.      And will Mr. Young have that information when
 2   we take his deposition?
 3   A.      I don't think so.  I think I'll have to follow
 4   up with Mr. Cummings.
 5   Q.      To determine which three cases you're still
 6   seeking fees in?
 7   A.      Right.  Right.  I think those are cases that
 8   he is handling to which Cummings Manookian is entitled
 9   to some portion of the fees or expenses.
10   Q.      Was Mr. Cummings involved in that Manookian v.
11   Pennsylvania Higher Education case?
12   A.      I do not know.
13   Q.      When did you realize that that Manookian v.
14   Pennsylvania Higher Education case should not be
15   included in the list of cases that the trustee is
16   seeking to recover in?
17   A.      I don't know without -- I don't know.
18   Q.      What do you know about the Bailey v. HCA case?
19   A.      Not anything, other than it's a case -- and
20   I don't even know if I received money in that case
21   without looking at my Form-1.  But to answer you
22   generally, and if you want to go through each one of
23   them -- I mean, obviously the majority of those, my
24   understanding is that they're medical malpractice or
25   personal injury cases.  I know Lattimore, Black,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 123 of 205

1 Morgan & Cain is an accounting firm.  But these were

2 the list of existing cases that Cummings Manookian had

3 an interest in.

4         And that's what you do as a trustee.  You

5 investigate the assets, and sometimes you pursue

6 certain assets, sometimes you don't pursue them,

7 whether because there's not anything there or it's not

8 financially worth it.

9 Q.      But these are cases that Mr. Young asserted

10 Cummings Manookian had an interest in when he was the

11 receiver; is that correct?

12 A.      This was -- I believe this was his -- you'd

13 have to ask Mr. Young about that, but they were the

14 cases in which I think the receiver was investigating.

15 They include cases where attorney liens had been

16 filed.

17 Q.      Do you know what Cummings -- what was Cummings

18 Manookian's entitlement to fees in the Wheeler Bonding

19 Company case?

20 A.      I do not know.

21 Q.      All right.  Let me hand you Exhibit 3, which

22 are your interrogatory responses in this case.

23 A.      Yes, sir.

24 Q.      Can you turn to the last page and verify that

25 that's your signature.  Sorry.  It's not quite the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 124 of 205

1  last page.

2  A.      Page 10.  Yes, that is my signature.

3  Q.      And did you provide the information that was

4  used to respond to these interrogatories?

5  A.      I did.  I discussed these with my attorney.

6  Q.      Well, I don't want to know any attorney-client

7  communications, but if you look at Interrogatory

8  Number 3, it asks you to identify any matter in which

9  you allege Cummings Manookian is entitled to an

10 attorney's fee, cost or monies of any kind.  And you

11 responded with an objection and then by reproducing

12 that same list that appears in the complaint; is that

13 correct?

14 A.      Correct.

15 Q.      But it's now your position that Cummings

16 Manookian is not entitled to a fee in all of these

17 cases; is that right?

18 A.      At the time that the complaint was filed,

19 there was reason to believe that Cummings Manookian

20 was.

21 Q.      What was that reason?

22 A.      They were being pursued by the receiver in the

23 receivership.

24 Q.      So the sole basis for this information in your

25 interrogatory response is that when Mr. Young was

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 125 of 205

1  serving as receiver, he asserted an entitlement to

2  fees on behalf of Cummings Manookian in these cases?

3  A.      Correct.  And we went over those, and I have a

4  spreadsheet that talks about what the cases were about

5  and who the attorneys were.

6  Q.      So is it --

7  A.      And it may be, I think, on my Form-1 -- when

8  Mr. Manookian is saying that one of these cases was

9  a Hammervold case, I believe now that the Form-1 that

10 contains this list says there's no value to that.

11       And there may even be a note that says that

12 was a Hammervold case, but I'm not sure about that.

13 Or there may be ones that were on the receiver's list

14 that we didn't put into the complaint because Cummings

15 Manookian wasn't involved.

16       But to the best of my information at the time

17 that the complaint was filed, these were the causes of

18 action that it was believed that Cummings Manookian

19 could have an interest in.

20 Q.      But at the time that you responded to this

21 interrogatory, you knew that it didn't have an

22 interest in Wheeler Bonding Company v. Parts, didn't

23 you?

24 A.      Again, I'll just have to look at my Form-1 to

25 see.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 126 of 205

```
 1   Q.      Fair to say that in responding to this
 2   interrogatory, you just copied and pasted the same
 3   list that's been put into the complaint?
 4   A.      I won't say that.  I know we talked about
 5   these.
 6   Q.      You would agree with me it's the same font in
 7   the complaint and in your interrogatory responses,
 8   which is not a Times New Roman font like the rest of
 9   the material?
10   A.      I don't know.  It looks a little smaller and
11   darker, but it's the same list.  That is the same
12   list.
13   Q.      And, in fact, it was copied and pasted
14   probably from a spreadsheet, right?
15   A.      I don't know.
16   Q.      Did you do it?
17   A.      I didn't prepare the responses.  We talked
18   about it.  The responses were prepared, and I reviewed
19   it and asked questions and made changes.
20   Q.      When you say that there was a case that was a
21   Hammervold case, you're referring to Mr. Hammervold
22   who had his own law firm; is that right?
23   A.      That's correct.  I believe that.
24   Q.      And that was Hammervold, PLC, I believe?
25   A.      I think that -- I don't know.  Hammervold Law,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 127 of 205

1 Hammervold, PLC. I'm not sure.

2 Q.     And you don't allege that Hammervold, PLC, was

3 a continuation of Cummings Manookian or an alterego of

4 Cummings Manookian, do you?

5 A.     No.

6 Q.     And why not?

7 A.     I don't believe he was ever an employee or

8 member of Cummings Manookian. I think they worked on

9 cases together.

10 Q.     And you agree with me that Afsoon Hagh was not

11 an employee of Cummings Manookian either?

12 A.     I don't know that.

13 Q.     What percentage of the fees are you seeking in

14 the cases in which you're seeking fees on behalf of

15 Cummings Manookian?

16 A.     In the Fitzgerald case, 100 percent of the

17 fees. In the Shoemaker case, you know, based on the

18 recent discovery, I don't know that -- I don't think

19 it's 100 percent in the Shoemaker case because there

20 were other engagement letters in that -- in that case.

21 I guess we'll formulate or decide that when discovery

22 is complete.

23 Q.     So what are you referring to that makes the

24 Shoemaker case different from the Fitzgerald case?

25 A.     There's only -- only Cummings Manookian has a

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 128 of 205

1   engagement letter in the Cummings Manookian -- in the

2   Fitzgerald case.

3   Q.      And only Cummings Manookian has a withdrawal

4   letter in the Fitzgerald case, too, correct?

5   A.      A withdrawal letter?  I think that's -- there

6   is -- I've seen the letter, yes.  Yes.

7   Q.      What do you need to do to determine what

8   percentage of the Shoemaker fee that Cummings

9   Manookian is entitled to?

10  A.      Well, there could be a number of ways, I

11  guess.  There could be a simple -- simple -- well, I

12  don't think it would be simple, but a computation of

13  the number of months that the case was with Cummings

14  Manookian before another attorney took that case.

15          I think it will depend a lot on the

16  depositions and what Mr. Manookian and Ms. Hagh's

17  testimony is, and possibly John Edwards, about their

18  engagement and what they have to support -- well, they

19  do have engagement letters.

20  Q.      So you're going to be relying on the testimony

21  of Mr. Manookian, Ms. Hagh, and possibly John Edwards

22  to determine what percentage of the fee Cummings

23  Manookian is entitled to in the Shoemaker case?

24  A.      And I would have to consult with my attorney,

25  but the counsel for the defense in that case.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 129 of 205

```
 1  Q.       What role did they play in deciding allocating
 2  a fee among plaintiffs' firms?
 3  A.       Well, we may want to ask them about who --
 4  just like we did with Meisner, you know, who were the
 5  communications with, who was working on the case.
 6  Q.       As between Mr. Edwards and Ms. Hagh?
 7  A.       And Brian Cummings.  Mr. Manookian, maybe.  I
 8  think he worked on that case at some point.
 9  Q.       The fees that you're entitled to or that
10  you're asserting an entitlement to, those are monies
11  that the client has recovered, correct?
12  A.       Ask me that again.  I think that's a real
13  simple answer, but --
14  Q.       Yeah, that's right.  It's just as simple as it
15  can be.
16  A.       Yeah.  A contingent fee.
17  Q.       Right.  But that money that you're seeking
18  to recover from Cummings Manookian, from a legal
19  standpoint, it's the client's money that they have
20  signed an agreement with their attorneys to pay?
21  A.       Right.  Right.
22  Q.       Do you have any written contracts between
23  Cummings Manookian and any of the defendants in this
24  case?
25  A.       I'm sorry.  Ask me that again.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 130 of 205

```
 1   Q.      Do you have any written contracts between
 2   Cummings Manookian and Manookian, PLLC, Hagh Law or
 3   Afsoon Hagh?
 4   A.      No.
 5   Q.      And the contracts on which you base Cummings
 6   Manookian's entitlement to fees are contracts between
 7   Cummings Manookian and the clients; is that right?
 8   A.      Correct.
 9   Q.      And the clients can agree to pay other
10   attorneys as well, if they so choose?
11   A.      Yes.
12   Q.      Let me show you a letter dated April 19, 2017.
13              MR. SPRAGENS:  Let's mark the
14   interrogatories Exhibit 3.
15              And we'll mark as Exhibit 4 the April 19,
16   2017, letter.
17              (Marked Exhibit No. 3.)
18              (Marked Exhibit No. 4.)
19   BY MR. SPRAGENS:
20   Q.      Do you see that?
21   A.      Yes.
22   Q.      And that is an attorney-client agreement
23   between Cummings Manookian and Mr. Goodwin and
24   Mr. Keefer; is that correct?
25   A.      Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 131 of 205

```
 1    Q.      And that agreement is signed by Brian
 2    Cummings; is that correct?
 3    A.      Yes, on behalf of Cummings Manookian.
 4    Q.      So at the time that this agreement was signed,
 5    Mr. Cummings had the authority to bind Cummings
 6    Manookian, correct?
 7    A.      Yes.
 8    Q.      And much like the representation agreement we
 9    looked at earlier, this is a representation agreement
10    between clients and the law firm of Cummings
11    Manookian, correct?
12    A.      Yes.
13    Q.      Do you know which matter this representation
14    agreement relates to?
15    A.      Shoemaker versus Vanderbilt.
16    Q.      Do you know the amount -- do you know if
17    there's been a settlement reached in that case?
18    A.      Yes, there has been a settlement.
19    Q.      Do you know the amount of that settlement?
20    A.      I do not.
21    Q.      Under the Client and Scope of Representation
22    section on Page 1, the second paragraph says, "All
23    work on this matter by Cummings Manookian, our firm,
24    will be done by Brian Cummings or Brian Manookian."
25            Did I read that correctly?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 132 of 205

1   A.      Yes.

2   Q.      And that is part of the agreement between

3   Cummings Manookian and Mr. Goodwin and Mr. Keefer?

4   A.      Yes.

5   Q.      There's no mention of Afsoon Hagh in that

6   paragraph, is there?

7   A.      No.

8   Q.      And if Afsoon Hagh did work on behalf of

9   Cummings Manookian, that would have violated that

10  agreement, correct?

11  A.      If she was an associate or an employee of the

12  firm and worked on it, I don't know if that would be

13  seen as a violation.  I guess that's a legal

14  conclusion.

15  Q.      Well, you agree with me that it says, "All

16  work on this matter by our firm, Cummings Manookian,

17  will be done by Brian Cummings or Brian Manookian,"

18  correct?

19  A.      Yes.

20  Q.      So if she did work on the matter, that would

21  be inconsistent with that representation, correct?

22  A.      Not that I know how all firms work, but

23  normally the engagement letter will list the primary

24  attorneys that are going to be responsible for the

25  case.  But, I mean, it says what it says.  I don't

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 133 of 205

1    know what that -- beyond that.

2    Q.    And what it says is that all the work on the

3    case will be done by Brian Cummings or Brian

4    Manookian, correct?

5    A.    Yes.

6    Q.    Did there come a time that Cummings Manookian

7    withdrew from representing Mr. Keefer and Mr. Goodwin?

8    A.    I think there is some motion for withdrawal in

9    that case maybe by Mr. Manookian.  I think I've seen

10   something on that recently.

11   Q.    And Mr. Cummings withdrew previously, correct?

12   A.    Yes, yes.  That's correct.

13   Q.    And Mr. Manookian also withdrew?

14   A.    I think that's correct.

15   Q.    And Cummings Manookian itself withdrew from

16   representing them, correct?

17   A.    I don't remember what the withdrawal on that

18   case said.

19   Q.    But if there was no attorney with an active

20   law license, Cummings Manookian could not, as a matter

21   of law, continue to represent these clients, correct?

22   A.    I would say that that's correct.  I think

23   there were engagement letters with other lawyers that

24   did not include the Cummings Manookian lawyers.

25   Q.    Are you aware of any other written contract

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 134 of 205

1  between Cummings Manookian and Mr. Goodwin and

 2  Mr. Keefer?

 3  A.      Cummings Manookian and -- no.

 4  Q.      And is this April 2017 letter the basis for

 5  your claim that Cummings Manookian is entitled to fees

 6  in the Fitzgerald case -- excuse me -- Shoemaker case?

 7  A.      Yes.

 8  Q.      And that's the sole basis for the entitlement

 9  fees?

10  A.      Yes.  Unless there's some equitable right to

11  fees.

12  Q.      But with respect to the claims that you've

13  made in this case, they all spring from this April

14  2017 agreement?

15  A.      Correct.  Yes, sir.

16  Q.      Okay.  So this letter sets forth Cummings

17  Manookian's entitlement to funds from the client; is

18  that correct?

19  A.      From the client, if they receive a settlement,

20  judgment or an award.

21  Q.      That's right.  So this is an agreement wherein

22  the law firm agrees to perform services for the client

23  and the client agrees to pay the law firm a portion of

24  the funds that get recovered; is that right?

25  A.      Correct.  Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 135 of 205

```
 1   Q.      And those are the only two parties to this
 2   agreement; it's Cummings Manookian and -- I suppose
 3   three parties -- Mr. Goodwin and Mr. Keefer, correct?
 4   A.      Yes.
 5   Q.      Looking at Page 3 of this letter, do you see
 6   the last section where it says, "Mediation and binding
 7   arbitration of any attorney-client disputes"?
 8   A.      Yes.
 9   Q.      And do you agree with me that the paragraph
10   under that heading states that "In order to resolve
11   any dispute under this agreement, you must first go to
12   mediation for a good-faith attempt at resolving the
13   dispute"?
14   A.      I see that paragraph, yes.
15   Q.      And then "If mediation does not resolve the
16   dispute, any ongoing disputed issues must be submitted
17   for final disposition by an agreed-to arbitrator for
18   binding arbitration."  Is that correct?
19   A.      Correct.
20   Q.      And so the last sentence says, "Consequently,
21   neither the client nor the attorneys in this
22   attorney-client relationship can file litigation over
23   or about any alleged or real dispute within the
24   attorney-client relationship and the forum for any
25   such dispute must first be a good-faith mediation and
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 136 of 205

1    then binding arbitration."

2         Did I read that correctly?

3    A.    Yes.

4    Q.    Have you, on behalf of Cummings Manookian,

5    attempted to engage in a good-faith mediation about

6    this contract?

7    A.    A mediation, no.

8    Q.    And have you, on behalf of Cummings Manookian,

9    submitted any dispute arising from this contract to an

10   arbitrator?

11   A.    No.

12   Q.    Why haven't you done that?

13   A.    Well, I don't think we're in a dispute with

14   Mr. Keefer about the -- what fees Cummings Manookian

15   are entitled to.

16   Q.    The nature of your claims in this case is that

17   Mr. Keefer should be paying Cummings Manookian funds

18   rather than paying another entity funds, correct?

19   A.    Funds have already been paid.  Well, no.  Let

20   me think about that.  I'm listening to Mr. Manookian

21   over here.  I know that -- yeah, that's right.  The

22   funds have been paid.  They have been paid.

23   Q.    But you are seeking, on behalf of Cummings

24   Manookian, to -- you're attempting to lay claim to

25   some of Mr. Keefer's money, correct?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 137 of 205

```
 1    A.      Some of the attorney fee portion of the
 2    settlement, yes.
 3    Q.      And that attorney's fee portion of the
 4    settlement is determined by this contract, correct?
 5    A.      Correct.
 6    Q.      And under the terms of this contract, any
 7    dispute arising from the contract has to be taken to
 8    mediation and then arbitration, correct?
 9    A.      I still think this has to do with a dispute
10    between the client and the attorney.  And this dispute
11    is between attorney firms, law firms.
12    Q.      Have you ever made any demand on Mr. Keefer?
13    A.      No.
14    Q.      Why haven't you done that?
15    A.      Well, the settlement in this was only
16    recently, I understand, and the monies had already
17    been paid by the time I knew anything about that.  I
18    think they had already been paid to Mr. Edwards, I
19    believe.
20    Q.      What about in the Fitzgerald case?  Have you
21    made any demand on Mr. Fitzgerald for a portion of the
22    fee?
23    A.      No.
24    Q.      And if Mr. Fitzgerald directed that a portion
25    of the fee be paid to Cummings Manookian, would that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 138 of 205

1 | resolve your dispute in the Fitzgerald case?

2 | A.      I guess it would depend on what portion of the

3 | fees he directed to be paid to Cummings Manookian.

4 | Q.      But you would agree with me that neither

5 | Mr. Fitzgerald nor Mr. Keefer have approved any

6 | payment to Cummings Manookian, would you not?

7 | A.      I have -- I don't know.  I have seen -- I

8 | haven't seen any distribution signed by Mr. Keefer for

9 | the Shoemaker case.  I know Cummings Manookian wasn't

10 | paid any money.  On the Fitzgerald case, I believe the

11 | funds were -- Mr. Manookian instructed Mr. Meisner to

12 | pay those funds to Hagh Law and that the order should

13 | state that.

14 |         But I have seen a -- what I would call a

15 | distribution statement signed by Mr. -- I don't know

16 | if it was just -- I guess both the Fitzgeralds -- I'm

17 | not sure -- I can't remember -- authorizing that the

18 | funds be paid to Hagh Law.  But I think that may have

19 | been after the funds had already been distributed.

20 | But I'm still looking at all of that.

21 | Q.      In any event, that was after the December 2018

22 | withdrawal letter that we looked at earlier today,

23 | correct?

24 | A.      Yes.

25 | Q.      You've asserted that Cummings Manookian is

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 139 of 205

```
 1   entitled to 100 percent of the fee in the Fitzgerald
 2   case; is that right?
 3   A.      Yes.
 4   Q.      And so you allege that all of the legal work
 5   that was done in that case was done by Cummings
 6   Manookian?
 7   A.      Yes.
 8   Q.      And then with respect to the Shoemaker case,
 9   what work did Cummings Manookian do on the Shoemaker
10   case?
11   A.      I don't know specifically what work they did.
12   I know the complaint was filed by Brian Cummings and
13   Afsoon Hagh -- Afsoon Hagh for Cummings Manookian.
14   Q.      And is that the pleading we talked about
15   earlier where we agreed that Mr. Cummings drafted that
16   complaint?
17   A.      I don't think we agreed he drafted that
18   complaint.  He signed the complaint.
19   Q.      Do you know who drafted the complaint?
20   A.      I do not.
21   Q.      Will you be asking Ms. Hagh if she drafted the
22   complaint?
23   A.      I assume so.
24   Q.      Have you asked Mr. Cummings about that?
25   A.      No.  I assume he'll be asked that in his
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 140 of 205

1  deposition.

2  Q.      And before you filed this adversary

3  proceeding, did you contact Mr. Cummings to find out

4  who had done what work in that case?

5  A.      No.

6  Q.      Why not?

7  A.      Well, we were under a time crunch, for one

8  thing, but I -- I don't think there was any -- I

9  assumed there was not any dispute with Mr. Cummings

10 about whether Cummings Manookian was entitled to any

11 fees in the Shoemaker case.

12 Q.      But if you wanted to figure out how much of

13 the fee in Shoemaker Cummings Mankookian was entitled

14 to, wouldn't you want to talk to the attorney who did

15 work on behalf of Cummings Manookian?

16 A.      Well, once the adversary proceeding was filed,

17 then I'm relying on working with my attorney, and I

18 don't know if I can say anymore about that.

19 Q.      But to your knowledge, Mr. Young has not

20 called Mr. Cummings to try to find out what percentage

21 of the fee Cummings Manookian should be entitled to in

22 Shoemaker?

23 A.      I believe that Mr. Cummings is working off --

24 and I may be wrong about this -- is working off the

25 original Cummings Manookian engagement letter.  And we

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 141 of 205

1  had an agreement with Mr. Cummings that any cases that
2  he worked on, we would decide the fee.
3         The percentage fees would be decided according
4  to the agreement that the members had.  At Cummings
5  Manookian, there was a formula for what the fees would
6  be, and that's the way the fees were determined that
7  I've received from Mr. Cummings in the bankruptcy
8  case.
9  Q.     And have you used that formula in the
10 Fitzgerald case?
11 A.     No.
12 Q.     Why haven't you done that?
13 A.     I don't think that Mr. Cummings -- that's a
14 good question.  I don't think Mr. Cummings claims any
15 fees in the Fitzgerald case.  I'm not aware that he
16 does.
17 Q.     What about in the Shoemaker case?
18 A.     Yes, he does.
19 Q.     And did you use that formula in the Shoemaker
20 case?
21 A.     Use the formula how?  I haven't made a full
22 decision on how much Cummings Manookian should be
23 entitled to in the Shoemaker case, but, you know, it
24 would -- it just depends.
25 Q.     And what is going to determine how much you

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 142 of 205

1  claim Cummings Manookian is entitled to in the

2  Shoemaker case?

3  A.      After we complete discovery and I discuss it

4  with my attorney, then I'll make a decision.

5  Q.      And is it based on the number of hours that

6  were done -- put into the case by attorneys at the

7  various firms?

8  A.      No.  I think it would be part of a contingency

9  based on the original -- on the Cummings Manookian

10  engagement letter and how long Cummings Manookian was

11  attorney for the plaintiffs in the case before another

12  attorney firm took over representation.

13  Q.      So in your view it's based on the length of

14  time that Cummings Manookian was representing them

15  before another firm came in to represent them?

16  A.      Based on the -- based on the engagement letter

17  and my understanding of how that works.

18  Q.      Does it impact your view of how much Cummings

19  Manookian is entitled to whether no work was done over

20  a period of time?  Meaning, isn't it more than just

21  how long they represent them but also what work is

22  done during that representation?

23  A.      I think -- well, I know that that is if you're

24  seeking equitable right to a fee, then I believe it's

25  the value of the services, but I think it does -- the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 143 of 205

1  number of hours figure into that somehow.

2  Q.     Do you have personal experience with

3  contingency fee litigation?

4  A.     Not where I've represented.  I'm trying to

5  think.  No.  I mean, obviously I have bankruptcy

6  cases where debtors have causes of action, and they've

7  already employed attorneys or I employ those attorneys

8  or employ new attorneys to represent the estate on the

9  same contingency fee basis.

10 Q.     With respect to this April 2017 engagement

11 letter with Mr. Goodwin and Mr. Keefer, this has the

12 same termination of professional relationship language

13 in it that the Fitzgerald engagement letter has,

14 correct?

15 A.     What date did you say?  April -- you said

16 April 17th?

17 Q.     I'm looking at the April 2017 letter that's in

18 front of you.

19 A.     Oh, April of 2017.  April 19, 2017.  Yes.

20 Q.     Yes.  And at the bottom of Page 2 and top

21 of Page 3, you'll agree that this has the same

22 termination of professional relationship clause that

23 the Fitzgerald agreement has?

24 A.     Yes.

25 Q.     And that's the one where it informs the client

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 144 of 205

1  that if the client fires them, the attorneys may be
2  able to seek some portion of the attorney's fee, and
3  then it says if we withdraw, we will seek our costs,
4  we will recover our costs, correct?
5  A.      It just says -- it's silent on that, but it
6  does say it doesn't relieve you of the responsibility
7  to pay costs.
8  Q.      Right.  And it doesn't say anything about fees
9  there.
10  A.      No.
11  Q.      But your position on behalf of Cummings
12  Manookian is that even though these clauses are silent
13  about fees, that Cummings Manookian has the right to
14  take fees from its clients, even though it didn't say
15  anything about that in the contract?
16  A.      I think it may depend on the situation.  And
17  even in Shoemaker, I don't think we know all of the --
18  all of the workings of that, as to what the client --
19  why the client chose to enter into a engagement letter
20  with Manookian, PLLC, and then with John Edwards.
21  Q.      Well, you understand, ma'am, that one of the
22  reasons for the requirement of a written engagement
23  letter in a contingency fee case is a concern that
24  lawyers may take advantage of clients who are not
25  sophisticated and so they need to memorialize the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 145 of 205

```
 1  agreement in writing and spell everything out and have
 2  it signed by the client, correct?
 3  A.      Correct.
 4  Q.      And the position you're taking in this case,
 5  on behalf of a law firm, is that even though there's
 6  no reference to attorney's fees in the Shoemaker or
 7  Fitzgerald engagement agreement, that a law firm is
 8  entitled to take attorney's fees out of a settlement,
 9  correct?
10  A.      I'm sorry.  Ask me that question again.
11  Q.      The position that you're taking in this case,
12  on behalf of a law firm, is that even though the
13  engagement letter is silent about the ability to
14  collect attorney's fees from a client in the event of
15  a withdrawal, that the law firm is entitled to take
16  those fees out of the client's settlement.  That's
17  your position?
18  A.      There may be a dispute that arises about that,
19  but I think depending on the situation of why they
20  withdrew -- you know, say if there was some misconduct
21  on the part of the client or that sort of thing, but I
22  think it would just depend on why there was a
23  withdrawal.
24  Q.      But, I mean, the position you're taking in
25  this case is that after a withdrawal, you're asserting
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 146 of 205

1 that Cummings Manookian has the ability to claim
2 attorney's fees in these two cases, correct?
3 A.    I think for the time that they represented --
4 or because they had an engagement letter and they
5 represented the plaintiff, I think they would have a
6 right to attorney fees -- a portion of the attorney
7 fees.
8 Q.    Even though they didn't put that language in
9 the engagement agreement, correct?
10 A.    (Pause.)
11 Q.    I'm sorry.  Correct?
12 A.    I'm sorry.  I got distracted by Mr. Manookian
13 so I forgot what your question was.
14 Q.    My question is:  You're taking the position in
15 this case that even though the engagement agreement
16 between Cummings Manookian and the clients in
17 Fitzgerald and Shoemaker does not specify, in contrast
18 to the prior paragraph, that the firm may collect
19 attorney's fees in the event it withdraws, the
20 position you're taking is that it is entitled to do
21 that, right?
22 A.    I think it could, depending on the situation.
23 Q.    Have you done anything to look into whether
24 the position you're taking in this case is consistent
25 with the rules of professional conduct governing

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 147 of 205

```
 1   lawyers?

 2   A.      No.

 3   Q.      Are you going to do that?

 4   A.      I will.

 5   Q.      So you will commit to retaining an expert to

 6   see if the position you're taking in this case is an

 7   ethical position for a lawyer to take?

 8   A.      If that's what I need to do, I will do that.

 9   Q.      Do you think that's what you need to do?

10   A.      I don't know without consulting with my

11   attorney.

12           MR. GABBERT:  Is that Exhibit 4?  Did we

13   list that Exhibit 4?

14           MR. SPRAGENS:  Yes, that's Exhibit 4.

15   BY MR. SPRAGENS:

16   Q.      With respect to the Shoemaker settlement --

17   and we can set aside that exhibit for now -- were you

18   involved in the settlement negotiations that ended the

19   Shoemaker case?

20   A.      No.

21   Q.      Was Cummings Manookian involved in that

22   conversation at all?

23   A.      I do not think so, no.

24   Q.      So it's fair to say that Cummings Manookian

25   did not secure the settlement in the Shoemaker case,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 148 of 205

1   is it not?

2   A.     Well, I think that depends on -- they weren't

3   involved when there was the settlement, but I would

4   think that from the beginning to the ending of the

5   case, everybody's working toward some result, whether

6   it's a settlement or a trial.

7   Q.     There came a time where Cummings Manookian no

8   longer had any attorneys and didn't participate in any

9   settlement discussion, correct?

10   A.     I think that's correct.

11   Q.     And then Mr. Edwards got involved in the case?

12   A.     Correct.

13   Q.     And do you know what the highest offer in the

14   Shoemaker case was while Cummings Manookian was

15   involved in the case?

16   A.     I do not.

17   Q.     Have you asked Mr. Cummings about that?

18   A.     No.

19   Q.     Do you know if Mr. Young has done that?

20   A.     I don't know.

21   Q.     Well, is knowing what the highest offer that

22   was on the table when Cummings Manookian was involved

23   in the case, is that relevant to your decision about

24   what portion of the fee in Shoemaker Cummings

25   Manookian is entitled to?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 149 of 205

```
 1   A.      I haven't evaluated that yet, so I don't know.

 2   Q.      Are you going to try to find out that

 3   information?

 4   A.      Yes.  We've still got depositions, other

 5   depositions to take.

 6   Q.      So you'll be asking what the best offer that

 7   was on the table when Cummings Manookian was involved

 8   in the Shoemaker case was?

 9   A.      If that's relevant to deciding what fee that

10   Cummings Manookian is entitled to.

11   Q.      And do you think that that's relevant as the

12   trustee for Cummings Manookian?

13              MR. YOUNG:  Objection to the extent it

14   calls for a legal conclusion.

15              THE WITNESS:  I don't know.

16   BY MR. SPRAGENS:

17   Q.      You're a lawyer, right?

18   A.      That's correct.

19              MR. SPRAGENS:  Let's just take a

20   five-minute break, if you don't mind.  I might be

21   nearing the end here.

22              (Recess observed.)

23   BY MR. SPRAGENS:

24   Q.      Ms. Burton, I wanted to talk a little bit

25   about the Shoemaker case with you.  Do you recall
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 150 of 205

1   whether Mr. Cummings signed that complaint on behalf

2   of Cummings Law or Cummings Manookian?

3   A.      The Shoemaker complaint?

4   Q.      Uh-huh.

5   A.      I think it was -- the Shoemaker complaint, I

6   think, was -- he signed on behalf of Cummings Law or

7   whatever his other law firm was.

8   Q.      It was after he had left Cummings Manookian?

9   A.      Correct.

10  Q.      And the work he did at Cummings Law was not on

11  behalf of Cummings Manookian, correct?

12  A.      Correct.  Correct.

13  Q.      There's no alterego or continuation theory

14  with respect to what Mr. Cummings was doing at

15  Cummings Law, correct?

16  A.      No.

17  Q.      And then your basis for asserting that

18  Ms. Hagh was acting on behalf of Cummings Manookian is

19  that on the complaint it does not list -- or it lists

20  her as associate with Cummings Manookian; is that

21  correct?

22  A.      It lists her and Cummings Manookian, being at

23  Cummings Manookian, or however you would say that.

24  Q.      Well, when you say "being at Cummings

25  Manookian," do you mean that it said Cummings

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 151 of 205

1 | Manookian under her name or --

2 | A.      I believe that's right.  I believe that's

3 | correct.

4 | Q.      Do you know if Cummings Manookian paid the

5 | filing fee in that case?

6 | A.      I think they paid the -- I think the filing

7 | fee was paid.

8 | Q.      By Cummings Manookian?

9 | A.      I don't -- I don't know who paid the filing

10 | fee.

11 | Q.      Do you know if Cummings Manookian advanced any

12 | costs in that case?

13 | A.      In which case?

14 | Q.      In the Shoemaker case.

15 | A.      I do not know.  No, I don't know.

16 | Q.      Would you agree with me that the costs in that

17 | case were over $100,000?

18 | A.      That's what I was told.

19 | Q.      By whom?

20 | A.      Mr. Young through -- there was $100,000

21 | that was paid, I think, to Afsoon Hagh out of the

22 | settlement to pay expenses.  We were informed of that

23 | by Mr. Gabbert, and we asked for evidence of what was

24 | paid.

25 | Q.      And Cummings Manookian did not advance any of

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 152 of 205

1    those $100,000, did they?

2    A.      I don't know.  But it didn't receive any

3    reimbursement of any fees.

4    Q.      And you're not claiming any on its behalf, are

5    you?

6    A.      I don't know.  I don't think we have records

7    to see what -- we don't have bank records for Cummings

8    Manookian to know.

9    Q.      As far as you know, sitting here today, the

10   over $100,000 that was paid was paid by Hagh Law out

11   of a Hagh Law bank account?

12   A.      I don't know that.  I just know that there

13   were $100,000 worth of expenses that we were informed

14   -- that 100,000 of the proceeds that Mr. Gabbert was

15   holding was going to be paid to Afsoon Hagh to pay

16   expenses in Shoemaker.

17   Q.      And did some portion of the expenses in that

18   case go to Brian Cummings?

19   A.      I don't know.  I don't know.

20   Q.      You have control over Cummings Manookian's

21   accounts right now; is that right?

22   A.      I have control over the Cummings Manookian

23   bankruptcy bank account.

24   Q.      You did not authorize any advanced costs in

25   the Shoemaker case on behalf of Cummings Manookian,

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 153 of 205

```
 1   did you?
 2   A.       No.
 3   Q.       And you're not -- therefore, you're not
 4   seeking recovery of any costs that you've authorized,
 5   correct?
 6   A.       That the bankruptcy estate made, no.
 7   Q.       And the rest of the costs, to your knowledge,
 8   were advanced either by Hagh Law or Cummings Law; is
 9   that correct?
10   A.       I don't know.  I don't know, like, at the
11   beginning of the case who advanced what, what costs.
12   Q.       In your time as the trustee for Cummings
13   Manookian, did you offer to pay any expenses in the
14   Shoemaker case?
15   A.       No.
16   Q.       Why didn't you do that?
17   A.       Well, I think there was a dispute about
18   whether Cummings Manookian was entitled to -- I mean,
19   from the very beginning, Mr. Manookian has taken the
20   position that Cummings Manookian isn't entitled to any
21   fees.  But we weren't requested -- the bankruptcy
22   estate didn't receive any requests to advance any
23   expenses.
24   Q.       But fair to say that since you've been the
25   trustee for Cummings Manookian, you have not -- the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 154 of 205

```
 1  firm has not participated in the Shoemaker case during
 2  that time period, has it?
 3  A.      The bankruptcy estate?
 4  Q.      Yes.
 5  A.      Correct.
 6  Q.      And Cummings Manookian hasn't done anything in
 7  the Shoemaker case since the time you've been the
 8  trustee of the bankruptcy estate?
 9  A.      Correct.
10  Q.      What was the last act that Cummings Manookian
11  did in the Shoemaker case?
12  A.      I don't know.
13  Q.      Do you know any work that Cummings Manookian
14  did in the Shoemaker case?
15  A.      I know that the -- obviously, the -- of
16  course, I'm assuming from the engagement letter to the
17  filing of the complaint, that there was work done on
18  that by Cummings Manookian.  Cummings Manookian, based
19  on the signature on that complaint, was involved in
20  the complaint.
21          Beyond that, I know we've gotten, recently,
22  some discovery and I'm still going through that.  But
23  other than that, I don't know anything.  I don't think
24  I know anything specifically.
25  Q.      On what date was the Shoemaker case filed, as
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 155 of 205

1  best you recall?

2  A.     I think it was in -- is it 2018?  It was after

3  Mr. Manookian was suspended the first time, I believe,

4  so it was after that date.  I can't remember if that

5  was '18 or '19.  But yeah.

6  Q.     Maybe I can help you jog your memory a little.

7  Do you recall that he sent that withdrawal letter

8  December of 2018?  And so I'll suggest to you that I

9  think that case was filed February 2019.

10 A.     That's correct.

11 Q.     At that time, there were no members of

12 Cummings Manookian that had an active license to

13 practice law, correct?

14 A.     Correct.

15 Q.     Because Mr. Manookian, at that point, was the

16 only member of Cummings Manookian, and he did not have

17 an active law license?

18 A.     Correct.

19 Q.     Do you recall whether the Court ordered an

20 amended complaint be filed in the Shoemaker case?

21 A.     I don't know.

22 Q.     So you don't know if the operative complaint

23 in the case was the same one that you're describing

24 that Mr. Cummings and Ms. Hagh filed?

25 A.     I do not know.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 156 of 205

1 Q.      You would agree that at the time the Shoemaker

2 case was settled, it was settled based on the then

3 operative complaint, not a prior complaint, right?

4 A.      I would say so, yes, unless those two were

5 taken together.  I don't know.  But I would say the

6 amended complaint.

7 Q.      So the case that was settled was the case that

8 was filed in the amended complaint?

9 A.      I don't know.

10 Q.      But you would agree that whatever the

11 operative complaint was, that was the case that was

12 settled, correct?

13 A.      I don't know what all was included in that

14 amended complaint, if it added or dropped or -- I

15 don't know -- restated.  It may say in there --

16 sometimes they say we adopt and restate.  I just don't

17 know.  I don't think I've seen that.

18 Q.      Have you read all of the pleadings in the

19 Shoemaker case?

20 A.      No, I have not.

21 Q.      Have you read any of the pleadings in the

22 Shoemaker case?

23 A.      Yes.

24 Q.      Which ones?

25 A.      I believe I've read the complaint in the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 157 of 205

1  Shoemaker case.

2  Q.    And was that the initial complaint that you've

3  been talking about earlier that Mr. Cummings and

4  Ms. Hagh filed?

5  A.    I don't recall whether it said amended or not.

6  I'd have to go back and look.

7  Q.    And it had Mr. Cummings' signature on it,

8  right?

9  A.    It did.

10 Q.    Have you read anything other than that

11 complaint in the Shoemaker case?

12 A.    I don't think so.

13 Q.    Do you know how many depositions were taken in

14 that case?

15 A.    I do not.

16 Q.    Have you read any of the deposition

17 transcripts in that case?

18 A.    I have not.  I don't know that we've been

19 provided with any of those.

20 Q.    Have you gone on to CaseLink to look at the

21 file for that case?

22 A.    No.

23 Q.    Do you know how many pleadings there -- or how

24 many entries there are in the docket?

25 A.    No.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 158 of 205

```
1   Q.       Any reason that you haven't tried to educate
2   yourself about the Shoemaker case?
3   A.       No.
4   Q.       It's fair to say that you, on behalf of
5   Cummings Manookian, were not actively participating in
6   the Shoemaker case?
7   A.       Correct.
8   Q.       And you don't know what, if any, work Cummings
9   Manookian did on that case at the beginning, do you?
10  A.       No.
11  Q.       You know that they signed up the client and
12  then, at some point, Mr. Cummings and Ms. Hagh filed a
13  complaint?
14  A.       Correct.
15  Q.       And that's the substance and extent of your
16  knowledge on the Shoemaker case?
17  A.       Yes, unless there were other pleadings that
18  Ms. Hagh signed that had the Cummings Manookian
19  information on it, but I don't recall if there were
20  any.
21  Q.       Is it possible that the only pleadings that
22  you would be reading in that case are the ones that
23  Ms. Hagh filed that you allege supports your theory of
24  the case?
25  A.       Ask me -- I'm sorry.  Ask me that question
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 159 of 205

1  again.

2  Q.      Is it possible that the only pleadings that

3  you have been reading in Shoemaker are the ones that

4  in your view or Mr. Young's view support your alterego

5  or continuation liability theory in this case?

6  A.      I don't know what Mr. Young thinks about that,

7  but, you know, for me it was a case in which Cummings

8  Manookian had a engagement letter and worked on for

9  some period of time and -- before another firm had

10 an engagement letter.  And based on that, it's my

11 understanding that Cummings Manookian has a right to a

12 fee in that case.

13 Q.      But the work that you did -- the work that

14 you're aware of in that case is strictly signing up

15 the client in terms of what Cummings Manookian did,

16 correct?

17 A.      I don't know what all is included.  I'm the

18 bankruptcy trustee.  But I don't know.

19 Q.      You know that they signed up the client and

20 then time passed, and you're assuming that they did

21 some work during that time period on the case?

22 A.      I would think they had to before the complaint

23 was filed.

24 Q.      But you don't know that Cummings Manookian

25 drafted the complaint, do you?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 160 of 205

```
 1   A.      Drafted the complaint?  No.

 2   Q.      Right.  And you do agree that at the time the

 3   case settled, Cummings Manookian was no longer

 4   representing the client in that Shoemaker case?

 5                MR. YOUNG:  Objection.  Asked and

 6   answered.

 7                THE WITNESS:  I believe that's correct,

 8   because I think it was settled after the bankruptcy

 9   petition was filed.

10   BY MR. SPRAGENS:

11   Q.      And as you sit here today, you're not prepared

12   to testify what portion of the Shoemaker fee Cummings

13   Manookian is entitled to?

14   A.      No.

15   Q.      And are you seeking to recover some funds from

16   Manookian, PLLC, with respect to the Shoemaker fee?

17   A.      I don't know that they've -- I don't know that

18   they've received any of the settlement proceeds in the

19   -- it's my understanding that Mr. -- I'm sorry.  Back

20   up.

21           I don't know that Manookian, PLLC, has

22   received any funds from the settlement of that case.

23   It's my understanding that after John Edwards was

24   paid some amount, the funds were being held in

25   Mr. Gabbert's trust account.  But I think it's still
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 161 of 205

1   up in the air about whether or not Manookian, PLLC,
2   claims a portion of that for attorney fees in that
3   case.
4   Q.      And as it stands right now, that fee is still
5   -- it's still the client's money; isn't that the case?
6   A.      I don't know how that is considered.  It's
7   been -- it's paid.  The clients don't have it.  The
8   attorneys -- Mr. Gabbert has the fees.  And the
9   attorneys are -- you know, Mr. Cummings is claiming
10  the interest in those fees.  So I think it's a matter
11  between the attorneys now.
12  Q.      And you agree that with respect to the
13  Shoemaker case, Hagh Law is entitled to some portion
14  of that fee?
15  A.      I think that's correct.  Well, I know that
16  there is a Manookian, PLLC, engagement letter that in
17  that first paragraph, it says that you're represented
18  by Manookian, PLLC.  But in the paragraph that usually
19  says, within that firm, who's working on the cases, it
20  says Brian Manookian and Afsoon Hagh, and I think it
21  mentions both of the law firm names.
22  Q.      So it says Hagh Law in that --
23  A.      In that letter.  Somewhere in that letter it
24  does.  And in the contingency -- yeah, the contingency
25  part in that letter it mentions Cummings Law, Brian

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 162 of 205

1    Cummings.

2    Q.    So based on that letter with the
3    representation about Hagh Law in it, do you agree that
4    Hagh Law is entitled to some portion of the Shoemaker
5    fee?

6    A.    I don't know, but I would say -- well, yes.
7    Yes.  I was going to say I don't know, but I know Hagh
8    Law claims an interest in those -- those fees, and I
9    don't know whether it can be argued that she did or
10   didn't have an engagement letter, but she is -- her
11   firm is mentioned in that letter.

12   Q.    And do you recall that there was another
13   engagement letter in that case, the one that
14   Mr. Edwards signed along with Ms. Hagh?

15   A.    Yes.  And Mr. Manookian also signed that, but
16   I think it's a waiver or something.

17   Q.    So that letter governs the distribution of the
18   attorney's fee in that case, correct?

19   A.    That's the question, isn't it?  But yes,
20   that's another engagement letter.

21   Q.    And you don't disagree that Afsoon Hagh and
22   Hagh Law did perform substantial work on the Shoemaker
23   case?

24   A.    I don't know about substantial work, but they
25   were lawyers in the firm -- in that firm.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 163 of 205

```
 1   Q.      If you went on CaseLink and looked through the
 2   docket and you saw a bunch of pleadings by Ms. Hagh
 3   and were aware of court appearances by Ms. Hagh, would
 4   that satisfy you that Ms. Hagh and Hagh Law did
 5   substantial work in that case?
 6   A.      I think that and her deposition, what she says
 7   in her deposition.
 8   Q.      With respect to the Fitzgerald case, do you
 9   agree that Afsoon Hagh personally performed
10   substantial work on that case?
11   A.      I don't -- I don't know.
12   Q.      But you are aware that she sent letters and
13   signed pleadings and did work on that case, aren't
14   you?
15   A.      I have signed pleadings.  I don't know that I
16   have letters.
17   Q.      Do you know whether Ms. Hagh drafted and
18   argued the motion for summary judgment in that case?
19   A.      My recollection is there is a motion for
20   summary judgment in that case that was filed by Afsoon
21   Hagh but with Cummings Manookian.
22   Q.      Okay.  And do you know, regardless of the
23   entity -- I'm not really concerned about that at this
24   moment.  Do you know whether she went and argued that
25   motion in court?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 164 of 205

```
1    A.        I do not know.

2    Q.        Do you have any reason to dispute that she

3    personally invested a lot of time and energy working

4    on the Fitzgerald matter?

5    A.        I don't know.

6    Q.        But if she testifies that she did, you'll --

7    you'll believe that?

8    A.        Yes, unless -- yes.

9    Q.        But you're asserting 100 percent fee

10   entitlement by Cummings Manookian in that case,

11   correct?

12   A.        Correct.

13   Q.        So are you going to pay Ms. Hagh for the time

14   she spent working, you allege, on behalf of Cummings

15   Manookian?

16   A.        I haven't thought about that.

17   Q.        I mean, somehow she's got to get paid for the

18   work she did, right?

19   A.        I guess she would have to file a claim in the

20   bankruptcy court.

21   Q.        As the employee, in your view, of the debtor?

22   A.        Possibly.  I just haven't thought about that.

23   Q.        And under your reading of the situation, the

24   only way that Ms. Hagh gets paid for the work she did

25   is if she files a claim as an employee of Cummings
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 165 of 205

1  Manookian to get paid; is that right?

2  A.     Well, if the fee belongs to Cummings

3  Manookian.  I guess it just depends on what her

4  compensation was when she was employed by Cummings

5  Manookian.

6  Q.     And do you know whether she was ever

7  compensated by Cummings Manookian?

8  A.     Mr. Manookian said she was not, that she was

9  not.

10  Q.     So your view of the situation is that Ms. Hagh

11  did a lot of free work, legal work, for Cummings

12  Manookian and never got paid and you're going to keep

13  not paying her?

14  A.     I don't know that.  I don't know if she did

15  free work.

16  Q.     Isn't it possible that she just ran her own

17  law firm and it was called Hagh Law and she is

18  entitled to part of that fee?

19  A.     It could be.

20         MR. SPRAGENS:  All right.  I don't have

21  anything further right now.  I don't know if

22  Mr. Gabbert has any questions.

23                E X A M I N A T I O N

24  BY MR. GABBERT:

25  Q.     Do you have any evidence whatsoever that --

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 166 of 205

1  and I'm going to talk about Ms. Hagh.  And when I

2  refer to Ms. Hagh, I'm talking about Hagh, and Hagh

3  Law.  Okay?

4  A.      Okay.

5  Q.      Do you have any evidence whatsoever that Hagh

6  or Hagh Law took any furniture, property of any kind

7  whatsoever, from the debtor?

8  A.      No.

9  Q.      Do you have any evidence that she was ever a

10  member of the debtor?

11  A.      No.

12  Q.      Do you have evidence that she performed work

13  on behalf of the debtor after Mr. Manookian's

14  suspension?

15  A.      In --

16  Q.      On behalf of the debtor, I'm talking about.

17  A.      She was listed as the attorney in the

18  complaint, the Shoemaker complaint that was filed.

19  Q.      As part of Cummings Manookian or her

20  separately?

21  A.      Part of Cummings Manookian.  And then in the

22  Fitzgerald case -- I have to get that back in my head

23  about when Mr. Manookian was suspended.  October of --

24          MR. MANOOKIAN:  I'll just put on the

25  record, I wrote the letter to the Fitzgeralds.  My

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 167 of 205

```
 1   recollection is I waited until the very last day.
 2   The Tennessee Supreme Court -- I was temporarily
 3   suspended.  They then stayed the suspension for some
 4   period of time and then lifted the stay.  And so by
 5   December 7th of 2018, I was effectively suspended from
 6   the practice of law.
 7                THE WITNESS:  After December of '18,
 8   there was the pleading that was filed that said
 9   Mr. Manookian was withdrawing from the case but Afsoon
10   Hagh would continue representing the plaintiffs.
11                I believe there was -- there may have
12   been some communication with Ronette McCarthy during
13   the pendency of the Fitzgerald case, and then we
14   already talked about -- and I think there may have
15   been other pleadings in the Fitzgerald case that
16   either stated Cummings Manookian or Afsoon Hagh with
17   the Cummings Manookian address, telephone, all of
18   that.  And then we talked about the filing of the
19   Shoemaker complaint, that she was listed as an
20   attorney with the --
21   BY MR. GABBERT:
22   Q.      But she wasn't a signatory on that?
23   A.      Pardon me?
24   Q.      But she wasn't a signatory on that?
25   A.      I don't think so.  I think Cummings Manookian
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 168 of 205

1  -- I mean -- I'm sorry -- Brian Cummings signed that

2  pleading.

3  Q.      After the filing of bankruptcy, Cummings

4  Manookian had nothing -- no involvement whatsoever in

5  any of those cases, right?

6  A.      Correct.

7  Q.      Okay.  And you have no evidence of what

8  Cummings Manookian did prior to the filing of

9  bankruptcy in these cases?

10  A.      The pleadings that I've seen and the emails

11  and document preparation.  But personally, do I know?

12  No.

13  Q.      Okay.  So you don't know -- I mean, you're

14  just talking about these documents you're talking

15  about, right?

16  A.      Right.

17  Q.      Okay.  The work that was done on these cases

18  prior to the bankruptcy, do you have evidence of what

19  work she did prior to that and what her relationship

20  was, whatsoever, with the firm, the debtor?

21  A.      I think we have some through discovery, what

22  we've received in discovery.

23  Q.      Okay.  But nothing separate from that?

24  A.      No.

25  Q.      Do you have any evidence whatsoever that she

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 169 of 205

```
 1  basically has ever used the offices on that address
 2  other than as a mailing address?
 3  A.      No.
 4  Q.      Okay.
 5  A.      I think there can be a reasonable inference or
 6  an assumption, but I think Mr. --
 7  Q.      That's all you have?  That's all you have?
 8  A.      Yes, sir.  Yes, sir.
 9  Q.      You are assuming that she used it?
10  A.      Yes.
11  Q.      Do you consider Cummings, LLC, to be in any
12  way related to the debtor, other than the fact that he
13  was a member of both?
14  A.      No.
15  Q.      Do you have any claim whatsoever that Hagh Law
16  is in any way associated with the debtor?
17  A.      Unless under the theory that it was just a
18  continuation of the debtor.  But Hagh Law was a
19  separate LLC.  It was formed.
20  Q.      What do you mean by "continuation of the
21  debtor"?
22  A.      The successor liability where the -- Brian
23  Manookian and Afsoon Hagh, and I think you're just
24  asking me about her, basically continued doing the
25  same work for the same clients at the same.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 170 of 205

```
1   Q.      Everybody practices law, right?

2   A.      Pardon me?

3   Q.      Everybody practices law, all of these people

4   practice law?

5   A.      Yes.

6   Q.      So if they continue practicing law, then

7   that's related to the debtor?

8   A.      In some instances with that -- with those

9   cases.

10  Q.      Do you have any evidence that she ever

11  received any payment whatsoever from the debtor?

12  A.      I do not.  We were never furnished with bank

13  records that we requested.

14  Q.      Do you have any --

15  A.      Well, I take that -- well, I don't know that

16  you would consider that from the debtor, but she did

17  receive settlement proceeds, part of the settlement

18  proceeds, attorney fee, in the Fitzgerald case.

19  Q.      Uh-huh.  And she was involved in the

20  Fitzgerald case, right?

21  A.      Yes.

22  Q.      So whatever relationship she had, if she had

23  an entitlement to it as part of the fee, she could

24  have the fee for whatever work she did, right?

25  A.      I'm sorry.  Ask me that --
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 171 of 205

```
 1   Q.      Whatever her percentage was, her agreement was
 2   with the debtor if she got that part of the fee?
 3   A.      I think the reason she got that part of the
 4   fee in the Fitzgerald matter was the receiver only
 5   needed a certain amount to pay the creditor for which
 6   he had been appointed receiver, so anything in excess
 7   of that, at that time, was -- there wasn't a claim for
 8   Cummings Manookian.
 9   Q.      And that receiver is in the room today, right?
10   A.      Yes.
11   Q.      Okay.
12           MR. YOUNG:  I don't think I have anything
13   else right now.
14           MR. SPRAGENS:  I just have a couple of
15   quick follow-ups.
16                E X A M I N A T I O N
17   BY MR. SPRAGENS:
18   Q.      Ms. Burton, what damages did Cummings
19   Manookian experience as a result of any defendant
20   using a phone number or email address that belonged to
21   Cummings Manookian?
22   A.      Ask me that again.
23   Q.      What damages did Cummings Manookian suffer as
24   a result of any defendant using a phone number or an
25   email address or a mailing address that, according to
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 172 of 205

```
1   your allegation at least, associated with Cummings
2   Manookian?
3   A.      Well, at some point, if they were using
4   Cummings Manookian's space, phone numbers, email
5   addresses, if they weren't paying the bills or
6   compensating for the use of those, but I do not know a
7   dollar amount.
8   Q.      And that's all, if they were using the space,
9   for example, and they were not authorized to?
10  A.      Or even if they were -- they had permission to
11  if Cummings Manookian was paying.  And I don't think
12  they actually paid the lease payments.  I think they
13  paid the mortgage.  They paid the mortgage payments.
14  Q.      Cummings Manookian paid the mortgage payments
15  on behalf of 45 MSW Partners?
16  A.      I think Mr. Manookian testified that in
17  lieu of paying the rent to the landlord, who was
18  Mr. Manookian and Mr. Cummings in different positions,
19  and then them paying the mortgage, they made payments
20  directly to the mortgage company.  That's my
21  recollection.
22  Q.      So as you sit here today, you can't identify
23  any damages that Cummings Manookian actually
24  experienced as a result of the use of the address,
25  email address, phone number?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 173 of 205

1  A.      No, unless that's somehow related to the

2  attorney fees that they should have been entitled to

3  that they didn't get paid.  But just the use of the --

4  you know, of the space, I don't know.  I don't know

5  the amount of any damages.

6  Q.      And with respect to the Shoemaker case,

7  Cummings Manookian didn't have any lawyers on staff at

8  the time that case was filed, did it?

9  A.      I believe it did because the case listed --

10 the complaint listed Afsoon Hagh being at Cummings

11 Manookian.

12 Q.      So you believe she was an employee of Cummings

13 Manookian at the time this was filed?

14 A.      She was at Cummings Manookian in some

15 capacity.

16 Q.      And your basis for that is that she used that

17 address?

18 A.      And her name was on the complaint.

19 Q.      You've mentioned, by the way, a few times

20 the initial creditors meeting in this case when

21 Mr. Manookian spoke.

22 A.      Yes.

23 Q.      Do you have a transcript of that meeting?

24 A.      I don't have a transcript, but there is a --

25 they record those, and the U.S. trustees maintain the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 174 of 205

1  recording.

2  Q.    And when was the last time you listened to the

3  recording of that meeting?

4  A.    Long enough that my Dropbox has -- because

5  I wanted to go back and listen to it again in

6  preparation for this, and it's already expired, so I

7  would have to request it again.

8  Q.    Would that be back when the complaint was

9  filed?  Is that when you think you listened to it

10  last?

11  A.    I don't know that I would have listened to

12  it -- I don't know when I last listened to it, because

13  that was pretty close -- the complaint was filed

14  pretty close in time to the meeting of creditors.  So

15  I don't know that I would have gone back and listened

16  to that in preparation for the complaint.

17  Q.    Do you have a recollection of actually

18  listening to it sometime other than when you heard it

19  in person?

20  A.    Yes.

21  Q.    But you don't know when that is?

22  A.    I don't.  I don't.

23  Q.    The Shoemaker case went on for a couple of

24  years after it was filed, correct?

25  A.    Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 175 of 205

1    Q.      And throughout that time, even you would
2    concede that Ms. Hagh was signing pleadings using
3    "Hagh Law."
4    A.      I believe that's correct.  We just recently
5    received the discovery.  But yes, I think that's
6    correct.
7    Q.      But you didn't hire any lawyers to work for
8    Cummings Manookian in that case, did you?
9    A.      No.
10   Q.      Any reason why not?
11   A.      Because there were already -- I think Cummings
12   Manookian was out of that case by the time that the
13   bankruptcy petition was filed, and it couldn't, any
14   longer, operate.
15   Q.      Why couldn't it operate?
16   A.      It wasn't an operating Chapter 7 and wasn't
17   filed that way.  And Mr. Manookian says that it was
18   not operating at the date, petition date.
19   Q.      And without a lawyer as a member, it couldn't
20   even be a PLLC in good standing, could it?
21   A.      I don't know.
22   Q.      Have you read the statute about professional
23   limited liability corporations, companies?
24   A.      Not recently, no.
25   Q.      All right.  But Cummings Manookian couldn't

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 176 of 205

1  participate in the Shoemaker case because it didn't
2  have any lawyers after those first couple of filings
3  that you contend were --
4  A.      If it didn't have any lawyers, then obviously
5  it wasn't participating.
6  Q.      When was the last time that you or Mr. Young,
7  to your knowledge, spoke to Brian Cummings about the
8  matters that have to do with this case?
9  A.      It's been a while since I have talked to
10 Mr. Cummings, because it's back when we -- I'm trying
11 to think how long I received any money.  But it's been
12 a while since I've talked to Mr. Cummings.
13 Q.      Do you know if Mr. Young has talked to him
14 since you have?
15 A.      I think he has.
16 Q.      Do you know when that was?
17 A.      No.
18 Q.      Was it in the last three months, do you think?
19 A.      I think they have talked, because there's a --
20 you know, a dispute about what Mr. Cummings is
21 claiming out of the Shoemaker fees.
22 Q.      As trustee for Cummings Manookian, what's your
23 position on what Mr. Cummings and his firm are
24 entitled to in the Shoemaker case?
25 A.      I don't know at this point.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 177 of 205

```
 1   Q.        Will it be an equivalent amount to what you

 2   say Cummings Manookian is entitled to, or will it be

 3   more or less?

 4   A.        Well, he had left -- he had withdrawn and left

 5   Cummings Manookian, and the complaint -- he filed --

 6   was involved in the filing of the complaint.  I guess

 7   it depends on if we look at that percentage, you know,

 8   that there was an agreement of how the percentage was

 9   claimed, and I guess up until he withdrew.  He

10   withdrew from that case.

11   Q.        And you go by the passage of time when you try

12   to figure out how much the various firms are entitled

13   to?

14   A.        I think that's what the member agreement --

15   that was the formula or however you would -- the

16   process for if one partner withdrew and, depending on

17   who took the case, when there was a recovery in that

18   case, how the fee would be split among those lawyers.

19   Q.        Do you have a copy of the operating agreement?

20   A.        I think we do because we filed a motion in the

21   bankruptcy case asking as the cases that Mr. Cummings

22   was working on -- as those were being settled, we were

23   using that formula, and we asked the Court to approve,

24   so we didn't have to go in each time, just approve how

25   the attorney fees that were awarded, how they would be
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 178 of 205

```
 1    split between Cummings Manookian and Cummings Law.
 2    Q.       If that agreement wasn't filed on the docket
 3    and you haven't produced it to us yet, would you
 4    produce it to us?
 5    A.       Yes.  I think -- yes.
 6                 MR. SPRAGENS:  That's all I have right
 7    now.  Thank you very much for your time.
 8                 MR. GABBERT:  I'm fine.
 9                 FURTHER DEPONENT SAITH NOT.
10                 (Proceedings concluded at 2:20 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 179 of 205

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I, Sabrina L. Schneider, Notary Public and

 4    Licensed Court Reporter, do hereby certify that I

 5    recorded to the best of my skill and ability by

 6    machine shorthand all the proceedings in the foregoing

 7    transcript, and that said transcript is a true,

 8    accurate, and complete transcript to the best of my

 9    ability.

10          I further certify that I am not an attorney

11    or counsel of any of the parties, nor a relative or

12    employee of any attorney or counsel connected with the

13    action, nor financially interested in the action.

14

15          SIGNED this 4th day of May, 2022

16

17

18          Sabrina Schneider
            Sabrina L. Schneider, LCR
19          Notary Public, State of Tennessee
            My Commission Expires: 5/9/2022
20
      Tennessee LCR No. 455
21    Expires: 6/30/2022

22

23

24

25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002    Doc 188-2    Filed 06/24/22    Entered 06/24/22 22:49:12    Desc
Exhibit Exhibits to Statement of Undisputed Material Facts    Page 180 of 205

```
 1                    E R R A T A

 2
        I, JEANNE ANN BURTON, TRUSTEE, having read the
 3   foregoing deposition, Pages 1 through 129, taken April
     20, 2022, do hereby certify said testimony is a true
 4   and accurate transcript, with the following changes
     (if any):
 5
     PAGE LINE      SHOULD HAVE BEEN
 6
 7   ____ ____      _____

 8   ____ ____      _____

 9   ____ ____      _____

10   ____ ____      _____

11   ____ ____      _____

12   ____ ____      _____

13   ____ ____      _____

14   ____ ____      _____

15   ____ ____      _____

16   ____ ____      _____

17   ____ ____      _____

18   ____ ____      _____

19
                    _____
20                  JEANNE ANN BURTON, TRUSTEE

21

22

23

24   _____
     Notary Public
25   My Commission Expires:_____
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 181 of 205





(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 186 of 205



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | |
| | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## DECLARATION OF BRIAN MANOOKIAN

Pursuant to 28 U.S. Code § 1746, I, Brian Manookian, declare as follows:

1.      I am an adult over the age of eighteen and am competent to make this declaration.  I have personal knowledge of the matters stated herein.

2.      Cummings Manookian was formed as a professional limited liability company to provide legal services.

3.      Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

4.      Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

1

5.     Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

6.     Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

7.     Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

8.     The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

9.     The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

10.    The CM Engagement Agreement did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

11.    Brian Cummings withdrew from Cummings Manookian effective September of 2018.

12.    Brian Manookian was suspended from the practice of law effective December of 2018.

13.    By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.

2

14. On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

15. Exhibit 2 is a genuine copy of the attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.

16. On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

17. On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.

18. The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

19. The Fitzgerald Engagement Agreement is a binding contract upon Cummings Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

20. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

21. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

22. The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

3

23.     The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

24.     On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

25.     On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

26.     Exhibit 3 ("the Fitzgerald Withdrawal Letter") is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

27.     The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

28.     The Fitzgerald Withdrawal Letter was received by Marty and Melissa Fitzgerald.

29.     The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

30.     The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

31.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

32.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

4

33. The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

34. The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

35. Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds dated December 7, 2018.

36. On April 19, 2017, Cummings Manookian entered into an Agreement with Brett Keefer whose terms are contained in Exhibit 1 ("the Shoemaker Engagement Agreement.")

37. Exhibit 1 is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

38. The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

39. The Shoemaker Engagement Agreement is a binding contract upon Cummings Manookian and Brett Keefer.

40. The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

41. The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

Case 3:20-ap-90002   Doc 188-2   Filed 06/24/22   Entered 06/24/22 22:49:12   Desc
Exhibit Exhibits to Statement of Undisputed Material Facts   Page 201 of 205

42. The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

43. Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

44. The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

45. Cummings Manookian withdrew from representing Brett Keefer.

46. Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate.

47. As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

48. As of January 1, 2019, Cummings Manookian had no employees.

49. The lawsuit in the Shoemaker matter was filed on February 11, 2019.

50. On February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

51. On February 11, 2019, Cummings Manookian had no employees.

52. No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

53. No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

54. Cummings Manookian did not even correspond or communicate with Brett Keefer in 2019, 2020, or 2021.

6

55.     In the cases in which Cummings Manookian represented clients, Cummings Manookian did not own the client file or the cause of action.

56.     Cummings Manookian never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time.

57.     Manookian PLLC has never received any property of any kind belonging to Cummings Manookian.

58.     Cummings Manookian has never transferred any property of any kind to Manookian PLLC.

59.     Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.

60.     Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.

61.     Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

62.     Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

63.     Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

I declare under penalty of perjury that the foregoing to true and correct. Executed on June 24, 2022

_____
Brian Manookian

7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

## DECLARATION OF AFSOON HAGH

Pursuant to 28 U.S. Code § 1746, I, Afsoon Hagh, declare as follows:

1.      I am an adult over the age of eighteen and am competent to make this declaration.  I have personal knowledge of the matters stated herein.

2.      The Shoemaker Case ultimately settled in 2021.

3.      Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.

4.      Cummings Manookian has never transferred any property of any kind to the Hagh Parties.

1

5.    The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.

6.    The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.

7.    The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.

8.    Hagh Law never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

I declare under penalty of perjury that the foregoing to true and correct. Executed on June 24, 2022

**Afsoon Hagh**