# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | |
| | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## [PROPOSED] ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS ON ALL CLAIMS

Defendants' Motion for Summary Judgment on all claims is before the Court. For the reasons stated below, Defendants' Motion is granted in its entirety.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

This is an adversary proceeding brought by Trustee Jeanne Ann Burton (the "Trustee" or "Ms. Burton") on behalf of Cummings Manookian PLC ("CM" or "Cummings Manookian"). Cummings Manookian was a law firm that filed for Chapter 7 Bankruptcy in 2019.

On January 8, 2020, the Trustee instituted this action against Hagh Law, PLLC, Afsoon Hagh, and Manookian PLLC (collectively, the "AP Defendants") asserting seven

separate claims for relief: conversion; state law fraudulent transfer; avoidance and recovery of fraudulent transfer; tortious interference with contract; successor liability and alter ego; turnover; and declaratory judgment.  D.E. 1.

On October 29, 2021, the Court entered a Pretrial Order setting written discovery and deposition deadlines, as well as dates by which dispositive motions, responses to dispositive motions, and replies to dispositive motions were to be filed.  D.E. 93.  The Order required that "all dispositive motions shall be filed no later than June 24, 2022.  All responses to the dispositive motions are to be filed no later than July 8, 2022.  All replies are to be filed no later than July 15, 2022." *Id*. at Paras. 3-5.

On March 3, 2022, Manookian PLLC served its Second Set of Requests for Admission on the Trustee containing eighty-three separate factual matters requiring the Trustee to admit or deny the truthfulness thereof.

On March 28, 2022, the Court entered an order on Defendant Manookian PLLC's Motion to Compel Responses to Requests for Admission.  D.E. 143.  The Court ruled that "[t]he Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission no later than June 1, 2022." *Id*. at Para 5.  Thus, the Trustee was afforded a full 90 days in which to respond rather than the 30 days provided by Fed. R. Civ. Pro. 36(a)(3).

On April 11, 2022, the Trustee filed her first motion to continue depositions and other discovery deadlines.  D.E. 147.  The Trustee requested an expedited hearing "on or before April 15, 2022 to continue certain depositions and pretrial deadlines."

On April 14, 2022, the Court denied the Trustee's first motion seeking to alter discovery and pretrial deadlines.  D.E. 149.  The Court explicitly held that "the applicable Rules and Orders of this Court regarding discovery are in full force and effect." *Id*. at Para. 2.

On May 19, 2022, the Defendants filed an unopposed motion to extend the deadlines for three specific third-party depositions. D.E. 167. The Defendants further stated that "[r]escheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order." *Id.* at Page 1. The Parties submitted a proposed order attempting to extend the discovery deadline until June 30, 2022, as well as attempting to continue the dispositive motion, response, and reply deadlines to July 29, 2022; August 12, 2022; and August 19, 2022, respectively. D.E. 168.

On May 25, 2022, the Court, via docket order, directed the Parties to a prior order which already permitted parties to make limited scheduling changes to third-party depositions. D.E. 171. The Court then specifically denied the Parties' Motion to move the discovery cut-off and declined to alter the deadlines relative to dispositive motions, stating that "the Submitted order at Docket Number 168 will not be entered by the Court as the related motion is denied." *Id.* Thus, the dispositive motion and reply deadlines of June 24, 2022 and July 8, 2022, were again affirmed and emphasized by the Court.

On June 1, 2022, the Trustee failed to respond to Manookian, PLLC's Second Set of Requests for Admission as required by Court Order dated March 28, 2022 at D.E. 143. Pursuant to Fed. R. Civ. Pro. 36(a)(3), all of the matters posed within the Second Set of Requests for Admission were therefore conclusively admitted. Although Fed. R. Civ. Pro. 36(b) permits withdrawal or amendment of admissions in certain circumstances and upon motion to the Court, the Trustee never filed any such motion to withdraw or amend her admissions.

On June 24, 2022, the AP Defendants collectively moved for summary judgment on all claims asserted by the Trustee in this matter. D.E. 188-1. Defendants' Motion was accompanied by a comprehensive Memorandum of Law and a detailed twenty-three-page Statement of Undisputed Material Facts, comprised of eighty (80) separate factual assertions, each of which was accompanied by citation to the record. D.E. 188-2. The Trustee did not file any dispositive motion, herself, by the June 24, 2022 deadline.

On June 28, 2022, following Defendants' filing of their Motion for Summary Judgment, the Trustee filed an "Expedited Motion to Schedule Status Conference." D.E. 189. The grounds for the Motion, according to the Trustee, were that:

> "[T]he Plaintiff needs clarification from the Court on certain pretrial scheduling matters, including whether the Defendants have properly filed a motion for summary judgment, when the Court expects the Plaintiff to respond to that motion for summary judgment, when the Court expects the parties to answer and/or supplement prior answers to written discovery, and when the Court expects any party to file dispositive motions." *Id.* at Para. 2.

The Trustee's "Expedited Motion to Schedule Status Conference" was filed despite the existing Pretrial Order clearly laying out all such deadlines, and despite multiple orders from the Court declining to alter those deadlines. *See, e.g.,* D.E. 93 (setting comprehensive pretrial deadlines for written discovery, depositions, dispositive motions, responses to dispositive motions, and replies to responses to dispositive motions); D.E. 149 (denying the Trustee's first attempt to modify pretrial deadlines, including those related to dispositive motions); D.E. 171 (rejecting the Parties' joint attempt to modify pretrial deadlines, including those related to dispositive motions, responses and replies).

On June 28, 2022, the Court entered an Order granting the Trustee's Motion to Schedule an Expedited Status Conference and setting the requested pretrial conference for July 13, 2022. D.E. 191.

On June 29, 2022, during a hearing in this matter, the Court reiterated that it would entertain the Trustee's request for an expedited pretrial conference to notwithstanding a pending motion to disqualify the judge.

On June 30, 2022, and despite the Court's willingness to schedule a hearing in order to provide "clarification" on pretrial deadlines, the Trustee withdrew her Expedited Motion to Schedule Status Conference, and further requested that the Court cancel the pretrial conference set for July 13, 2022. D.E. 197.

On July 1, 2022, the Court entered a Docket Entry noting that the Plaintiff's motion for an expedited status conference to "clarify" the existing pretrial deadlines had been "properly withdrawn via Notice." D.E. 200.

On July 8, 2022, the deadline for responses to dispositive motions, the Trustee failed to file any response to the Defendants' Motion for Summary Judgment on All Claims. The Trustee failed to respond to any of the factual assertions in Defendants' Statement of Undisputed Material Facts. And the Trustee failed to file any motion under Fed. R. Civ. Pro. 56(d) showing by affidavit or declaration that, for specified reasons, she was unable to present facts essential to justify opposition to Defendants' Motion for Summary Judgment.

Defendants' Motion for Summary Judgment on All Claims is thus unopposed, and the material facts specified by Defendants are undisputed.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of "summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 Advisory Committee's Note.  A genuine issue of material fact exists only where a reasonably jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Mere allegations of a factual dispute between the parties will not suffice to defeat a properly supported summary judgment motion. *Id.*

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). The moving party satisfies this burden "by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Id.* (citation and internal quotation marks omitted).

When the moving party meets this burden, the party that opposes the motion must come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986).  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)

"The Sixth Circuit has consistently explained that '[f]ailure by a [party] to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is addressed.'" *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 775 (S.D. Ohio 2021), reconsideration denied, No. 1:17-CV-406, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021). "Because [the non-moving party] failed to designate specific facts creating a material issue in response to [the moving party's] motion, the district court properly granted [the moving party's] summary judgment motion." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 201 (6th Cir. 2018). Moreover, Local Rule 56.01(f) of the Middle District of Tennessee expressly provides that, "[i]f a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment."

## III.  FINDINGS OF FACT

The Court makes the following findings of fact, all of which are contained within Defendants' unopposed Statement of Undisputed Material Facts and which are cited to the record in this matter.

### A. Cummings Manookian

Cummings Manookian is a now-defunct law firm that was formed as a professional limited liability company.[1]  It was comprised of two members: Brian Cummings and Brian Manookian, and it specialized in representing Plaintiffs in medical malpractice actions.[2]

---

[1] Defendants' Joint Statement of Undisputed Material Facts, ¶ 1.
[2] *Id.* at ¶ 2-3.

The firm primarily accepted cases on a contingency fee basis whereby Cummings Manookian would only be paid if it recovered money for its client.[3]

As part of its operations, Cummings Manookian entered into written engagement agreements with its clients that laid out the duties and rights of both parties to the contract.[4] Those contracts took a standard form and generally did not vary from cases to case ("the CM Engagement Agreement").[5]

Representations by Cummings Manookian did not always proceed to completion of a case, and the CM Engagement Agreement included terms laying out the parties' rights in the event that the client terminated Cummings Manookian, as well as for instances where Cummings Manookian withdrew from the engagement.[6] In the event that the client fired Cummings Manookian, the firm would be contractually entitled to its expenses as well as a portion of any ultimate attorney's fee.[7] In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client would not be required to pay Cummings Manookian an attorney's fee.[8]

The firm was relatively short-lived. It was founded in 2015.[9] Brian Cummings withdrew from the firm in September of 2018.[10] Brian Manookian was suspended from the practice of law in December of the same year.[11] By January 1, 2019, Cummings

---

[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 5.
[5] *Id.* at ¶ 6.
[6] *Id.* at ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.
[9] Deposition of Trustee Jeanne Anne Burton, Page 20:12-15.
[10] Joint Statement of Undisputed Material Facts, ¶ 10.
[11] *Id.* at ¶ 11.

Manookian had no employees and no members or partners with an active license to practice law.[12]

### B. The Fitzgerald Case

On May 23, 2018, Cummings Manookian entered into an engagement agreement to represent Marty and Melissa Fitzgerald in an action against a truck driver who struck their daughter causing her death ("the Fitzgerald Engagement Agreement").[13] The agreement was signed by Brian Manookian who had the authority to enter into the contract on behalf of Cummings Manookian.[14]

The Fitzgerald Engagement Agreement was drafted by Cummings Manookian and it bound the firm, as well as Marty and Melissa Fitzgerald, to its terms.[15] The contract stated that if the Fitzgeralds terminated Cummings Manookian, the firm would be entitled to a portion of any recovered settlement in the form of an attorney's fee.[16] Conversely, if Cummings Manookian withdrew from the representation, it would only be entitled to repayment of advanced expenses.[17]

On December 7, 2018, Brian Manookian wrote to the Fitzgeralds advising them that as a result of his recent suspension he and Cummings Manookian were required to withdraw from the representation (Brian Cummings had left the firm by that time).[18] Mr. Manookian requested that the Fitzgeralds obtain another attorney or firm to represent them, and confirmed that because the firm was withdrawing it would not be entitled to

---

[12] *Id.* at ¶ 12.
[13] *Id.* at ¶ 13; Fitzgerald Engagement Agreement.
[14] Joint Statement of Undisputed Material Facts, ¶ 15-16.
[15] *Id.* at ¶ 17-18.
[16] *Id.* at ¶ 20.
[17] *Id.* at ¶ 21-22.
[18] *Id.* at ¶ 23-28; Fitzgerald Withdrawal Letter.

any portion of an attorney's fee in the matter.[19]  The letter itself stated that Cummings Manookian expressly and specifically disclaimed any attorney's fee arising out of the Fitzgerald lawsuit.[20]

Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee.[21]  The Trustee herself conceded this fact under oath and in response to Requests for Admission.[22]

### C. The Shoemaker Case

On April 19, 2017, Cummings Manookian entered into an engagement agreement to represent Brett Keefer, as next of kin and administrator to Chesta Shoemaker's estate, in a medical malpractice action arising out of Ms. Shoemaker's death at Vanderbilt University Medical Center ("the Shoemaker Engagement Agreement").[23]  The Shoemaker Engagement Agreement was drafted by Cummings Manookian and it bound both the firm and Mr. Keefer to its terms.[24]

In identical language as the Fitzgerald Agreement, the contract with Mr. Keefer provided for the repayment of costs and division of attorney's fees in the event that the relationship ended prior to the conclusion of the lawsuit.[25]  In the event that Brett Keefer terminated Cummings Manookian, the firm would be entitled to an attorney's fee in

---

[19] Joint Statement of Undisputed Material Facts, ¶ 29, 32.
[20] *Id.* at ¶ 33-34.
[21] *Id.* at ¶ 30-31.
[22] *Id.* at ¶ 32-34.
[23] *Id.* at ¶ 35-36; Shoemaker Engagement Agreement.
[24] Joint Statement of Undisputed Material Facts, ¶ 37-38.
[25] *Id.* at ¶ 40-41; Shoemaker Engagement Agreement.

Case 3:20-ap-90002   Doc 204   Filed 07/15/22   Entered 07/15/22 10:33:38   Desc Main
Document     Page 10 of 25

addition to its advanced expenses.[26]  If Cummings Manookian withdrew, on the other hand, it would only receive back the money it had paid to prosecute the matter with no additional payment in the form of an attorney's fee.[27]

Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law.[28]  Indeed, the Complaint in the matter was ultimately filed by Mr. Cummings' successor firm, Cummings Law, on February 11, 2019.[29]  By that time, Cummings Manookian had no members or partners who were permitted to practice law, and it had no employees.[30]

As a result, Cummings Manookian never advanced a penny in furtherance of the matter such that it would be entitled to repayment.[31]  Likewise, no attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian;[32] no attorney ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian;[33] and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian.[34]

The Shoemaker case ultimately settled years later in 2021.[35]  Cummings Manookian had no role in litigating the matter or negotiating the settlement.[36]  To the

---

[26] Joint Statement of Undisputed Material Facts, ¶ 40.
[27] *Id.* at ¶ 41, 43.
[28] *Id.* at ¶ 44, 48-51.
[29] *Id.* at ¶ 48, 51.
[30] *Id.* at ¶ 49-50.
[31] *Id.* at ¶ 42.
[32] *Id.* at ¶ 52.
[33] *Id.* at ¶ 53.
[34] *Id.* at ¶ 54.
[35] *Id.* at ¶ 55.
[36] *Id.* at ¶ 44, 48-51; 56.

contrary, the lawsuit was filed in 2019 and Cummings Manookian never again corresponded or communicated with the client, Brett Keefer, after 2018.[37]

### D. Cummings Manookian's General Property Claims Asserted by the Trustee

The Trustee has made a number of allegations in which she variously asserts that Cummings Manookian owned client files, causes of action, furnishings, equipment, or property of other kinds.[38] The Trustee has likewise alleged that the Defendants used, utilized, or took improper control over that property.[39] The Trustee has additionally accused the Defendants of tortiously interfering with Cummings Manookian's business relationships.[40]

In the cases where Cummings Manookian represented clients it did not own the client file, and it did not own cause of action.[41] Cummings Manookian never owned any real property, and it did not own the office property at 45 Music Square West where it operated for a period of time.[42]

#### i. *Manookian PLLC*

Defendant Manookian PLLC has never received any property of any kind belonging to Cummings Manookian, and Cummings Manookian has never transferred any property of any kind to Manookian PLLC.[43] Likewise, Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.[44]

---

[37] *Id*. at ¶ 57.
[38] *See, e.g.*, Complaint, at ¶ 43.
[39] *See, e.g.*, Complaint, at ¶ 47.
[40] *See, e.g.*, Complaint, at ¶ 59.
[41] *Id*. at ¶ 58.
[42] *Id*. at ¶ 59.
[43] *Id*. at ¶ 60-61.
[44] *Id*. at ¶ 62.

Case 3:20-ap-90002   Doc 204   Filed 07/15/22   Entered 07/15/22 10:33:38   Desc Main
Document     Page 12 of 25

Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.[45]  Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.[46] Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.[47]  Finally, Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[48]

### ii.    *Afsoon Hagh and Hagh Law PLLC*

Neither Afsoon Hagh nor Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.[49]  Cummings Manookian has never transferred any property of any kind to the Hagh Parties.[50]  The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.[51]

The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.[52]  The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.[53]  Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[54]

---

[45] *Id.* at ¶ 63.
[46] *Id.* at ¶ 64.
[47] *Id.* at ¶ 65.
[48] *Id.* at ¶ 66.
[49] *Id.* at ¶ 67.
[50] *Id.* at ¶ 68.
[51] *Id.* at ¶ 70.
[52] *Id.* at ¶ 71.
[53] *Id.* at ¶ 72.
[54] *Id.* at ¶ 73.

# IV. CONCLUSIONS OF LAW

**A. Cummings Manookian is not entitled to any portion of the Fitzgerald Fee and certainly not from these Defendants. Defendants are entitled to summary judgment on any such claims.**

The undisputed material facts establish that Cummings Manookian entered into a contract with the Fitzgeralds that laid out the rights and responsibilities of the parties in the event that the relationship ended prior to the conclusion of a lawsuit. The contract provided that the relationship was terminated by the Fitzgeralds, Cummings Manookian would be entitled to some portion of an attorney's fee in addition to repayment of advanced expenses. Conversely, if Cummings Manookian were to withdraw from the representation, the law firm would only receive back the money it had paid to prosecute the case without any further payment of an attorney's fee.

The Fitzgeralds did not terminate Cummings Manookian. Rather, Cummings Manookian withdrew from the representation prior to its conclusion and without securing any recovery for its clients. Mr. Manookian, on behalf of Cummings Manookian, wrote the Fitzgeralds on December 7, 2018 advising them that he and Cummings Manookian, specifically, were withdrawing from the representation. He expressly and unambiguously disclaimed any payment of an attorney's fee to Cummings Manookian, and he advised the Fitzgeralds they would need to obtain another lawyer and law firm to represent them. The Trustee concedes all of these facts, and, moreover, she concedes Mr. Manookian had the authority to speak on behalf of Cummings Manookian as its sole remaining member.

Cummings Manookian's withdrawal alone is dispositive as to its attempt to recover an attorney's fee in that case. Mr. Manookian's December 7, 2018 letter waiving and disclaiming any fee – nearly a year prior to Cummings Manookian's petition for bankruptcy – is doubly so.

The undisputed material facts confirm that Cummings Manookian is not entitled to any attorney's fee from the Fitzgeralds under the very terms of the contract the firm itself drafted. Moreover, the Adversary Defendants have no contract with Cummings Manookian, and there is simply no cognizable theory of recovery consistent with the undisputed facts of this matter that would allow Cummings Manookian to recover an attorney's fee from the Defendants where Cummings Manookian is prohibited contractually from recovering one from the Fitzgeralds.

Cummings Manookian drafted and entered into a contract that by its own terms does not provide an attorney's fee where the law firm withdraws. Cummings Manookian then withdrew and announced, in writing, its waiver and disclaimer of any attorney's fee. The Trustee's attempt now, years later, to recover monies to which she is not entitled and which were expressly disclaimed is without merit. There is no genuine issue of disputed material fact on this topic. Defendants are entitled to summary judgment as to any and all of Trustee's claims seeking any portion of the Fitzgerald recovery.

**B. Cummings Manookian is not entitled to any portion of the Shoemaker Fee, and certainly not from these Defendants. Defendants are entitled to summary judgment on any such claims.**

The same undisputed facts preclude Cummings Manookian from receiving any portion of the Shoemaker recovery. The law firm entered into an engagement agreement, which it drafted, that specifically lays out the division of expenses and attorney's fees in the event that the relationship did not endure to the conclusion of the action. That contract expressly provides that where the client terminates Cummings Manookian, the firm would be entitled to an attorney's fee in addition to repayment of its expenses. If Cummings Manookian were to withdraw, however, it would only receive repayment of the

money it advanced to prosecute the case. Once again, Cummings Manookian withdrew from the representation.

The undisputed facts highlight the egregiousness of the Trustee's claims with respect to the Shoemaker claim. *By the time the lawsuit was filed, Cummings Manookian no longer had any members or partners who could practice law, and it had no employees.* Indeed, Cummings Manookian had fully stopped communicating with the client months prior to the initiation of the suit, and it never again corresponded with the client during the years the matter was being litigated.

Cummings Manookian is not entitled to a fee from the client, and, therefore, cannot be entitled to a fee from these Defendants who have no obligation, contractual or otherwise, to that firm. The undisputed facts demonstrate that Cummings Manookian is not entitled to any portion of a fee in the Shoemaker case, under the very terms it drafted, and certainly not from these Defendants. Defendants are entitled to summary judgment as to any and all of Trustee's claims seeking any portion of the Shoemaker recovery.

**C. Defendants are entitled to summary judgment on the Trustee's Claims of Conversion.**

To prevail on a claim of conversion, the Plaintiff must prove "[1] the appropriation of another's property to one's own use and benefit, [2] by the intentional exercise of dominion over it, [3] in defiance of the true owner's rights." *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

There is no genuine issue of material fact as to the Trustee's claims for conversion. The Trustee herself has now conceded that she has no evidence or bases for her allegations. The entirety of those allegations is contained at Paragraphs 43 and 44 of her

Complaint, and they are entirely contradicted by the Trustee's own testimony. The Complaint alleges, in relevant part, as follows:

> 43. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.
>
> 44. More specifically, Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

These Defendants have testified they have never received, appropriated, or exercised control over any property belonging to Cummings Manookian; and the Trustee has now admitted the same. Manookian PLLC, for its part, has never utilized any leased premises, furniture, equipment, or intellectual property whatsoever, and has never even had a bank account such that it could receive attorney's fees or reimbursed expenses. And the Trustee has refused to specifically identify any such property.

With respect to the Hagh Parties, the Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.[55] The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[56] The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music

---

[55] Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.
[56] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.

Square West.[57]  The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[58]  The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[59]  The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[60]  And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[61]

Finally, and entirely dispositively as to her claim of conversion against the Hagh Parties, the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.[62]  As such, there is no genuine issue of disputed fact as the Adversary Defendants are entitled to summary judgment on Trustee's claim of conversion.

### D. Defendants are entitled to summary judgment on the Trustee's Claims of Fraudulent Transfer.

The Trustee has additionally alleged a state law claim of fraudulent conversion. She has done so in the most vague and non-specific way possible, declining to even identify the property she alleges was transferred.  Her allegations from the Complaint are contained entirely in Paragraphs 47 and 48, which are reproduced here in full.

---

[57] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[58] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[59] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[60] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[61] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[62] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

> 47. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.
>
> 48. Afsoon Hagh, Hagh Law and Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

The Tennessee Uniform Fraudulent Transfers Act is contained at Tenn. Code Ann. § 66-3-305 which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor... if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor."

Here, none of the Defendants have made or incurred a transfer on behalf of Cummings Manookian, nor has the Trustee ever articulated with even the slightest specificity what property was transferred, when, or by whom. Defendants have negated an essential element of the Trustees' claim through the Declarations of Brian Manookian and Afsoon Hagh which establish that none of the Defendants have ever received a transfer from Cummings Manookian or made a transfer to Cummings Manookian. The Defendants are thus entitled to summary judgment.

**E. Defendants are entitled to summary judgment on the Trustee's Claims of Avoidance and Recovery of Fraudulent Transfer.**

The Trustee has additionally alleged a skeletal claim of Avoidance and Recovery of Fraudulent Transfer entirely upon information and belief.

> 51.    Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers from CM for the purposes of hindering, delaying, and defrauding creditors.
>
> 52.    Further, on information and belief, Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers form CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

In the ensuing years since the filing of her Complaint, the Trustee has declined to disclose the bases for such information and belief. As with her duplicative claim of fraudulent transfer, an essential element of Trustee's claim is negated by the Declarations of Brian Manookian and Afsoon Hagh. Simply put, none of the Defendants have ever made a transfer to Cummings Manookian, received a transfer from Cummings Manookian, or transferred any property belonging to Cummings Manookian. Having made no transfer of any kind, the Defendants have certainly not made a fraudulent transfer. The undisputed facts require entry of summary judgment on this claim.

**F. Defendants are entitled to summary judgment on the Trustee's Claims of Tortious Interference with Contract.**

Tortious interference with contract requires five elements: (1) a prospective relationship with an identifiable class of third persons; (2) that Defendant knew of the relationship; (3) that Defendant intended to cause the termination of the business relationship; (4) that Defendant acted with "improper motives" or employed "improper means"; and (5) damages caused by the interference." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1019–20 (M.D. Tenn. 2018).

The Trustee's claim of tortious interference with contract is similarly deficient on its face and made "upon information and belief." The allegations are contained at Paragraphs 58 and 59 of the Complaint and state, in their entirety:

> 58. CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case. More specifically, CM had an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.
>
> 59. Upon information and belief, Afsoon Hagh and Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

But the undisputed facts, as laid out exhaustively in the Factual section above, show that Cummings Manookian *terminated its own contract* with the Fitzgeralds by withdrawing from the representation and expressly disclaiming any attorney's fee. The Trustee's allegation "upon information and belief" that the Defendants "coerced" the

Fitzgeralds from remitting a fee that Cummings Manookian itself disclaimed in writing is both nonsensical and made in utter bad-faith. It is axiomatic that a party cannot interfere with a contract that has already been terminated and no longer exists. Defendants are entitled to summary judgment on Trustee's claim for tortious interference with contract.

### G. Defendants are entitled to summary judgment on the Trustee's Claims of Successor Liability and Alter Ego.

Under Tennessee law, a successor entity is a mere continuation if: "1) the predecessor transferred its assets to the successor, 2) the successor company pays less than adequate consideration for the assets, 3) the successor company continues the predecessor's business, 4) both companies share one common officer who was instrumental in the transfer, and 5) the predecessor company is left incapable of paying its creditors" *RXAR Co., LLC v. Rheumatology Assoc., P.A.*, 2017 U.S. Dist. LEXIS 64354 (M.D. Tenn. 2017).

Here, the undisputed facts, as testified to and conceded by the Trustee establish that there simply was no transfer of any asset from Cummings Manookian to any of the Defendants; moreover, the Trustee has disclaimed even the general allegations comprising her claim of successor liability as stated in its entirety in Paragraph 65 of her Complaint.

> 65. Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM. They occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

The Trustee has now conceded that Cummings Manookian does not own "client files" or causes of action.  With respect to Manookian PLLC, that entity has never utilized any leased premises, furniture, or equipment.

With respect to the Hagh Parties, the Trustee now admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[63]  The Trustee concedes that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[64]

Entirely contrary to her allegations in the Complaint, the Trustee has admitted that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[65]  The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[66]  In fact, the Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[67]  And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[68]  Finally, <u>the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian</u>.[69]

---

[63] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[64] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[65] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[66] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[67] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[68] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[69] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

Case 3:20-ap-90002   Doc 204   Filed 07/15/22   Entered 07/15/22 10:33:38   Desc Main
Document      Page 23 of 25

Defendants are again entitled to summary judgment having negated the essential elements of the Trustee's claim for successor liability and alter ego.

## V.     <u>ORDER</u>

The Defendants have demonstrated that there is no genuine dispute as to any material fact as to all of Trustee's claims, and that the Defendants are entitled to a judgment as a matter of law. Moreover, Plaintiff Trustee has failed to oppose, in any form, Defendants' Motion for Summary Judgment or dispute, in any manner, the material facts set forth by the Defendants.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on All Claims in this matter is **GRANTED, IN FULL**.

Date: July 15, 2022

Submitted for entry by:

<u>*/s/ John Spragens*</u>
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC, Brian Manookian, Hagh Law, PLLC, and Afsoon Hagh*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed July 15, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*