IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS AFSOON HAGH, HAGH LAW,
PLLC AND MANOOKIAN PLLC'S JOINT MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Comes now Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian,

PLC and Plaintiff herein ("Trustee" or "Plaintiff"), and for her objection to Defendants

Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC's Joint Motion for Summary

Judgment and Memorandum in Support Thereof (the "Motion") (Doc. 188), states as

follows:

**INTRODUCTION**

The Motion is both premature and unsupported. It is premature because it was filed

before the conclusion of discovery. As has been well documented by other pleadings filed

in this case (including a pending Motion to Compel), the Defendants by and through

counsel John Spragens (who purports in the Motion to represent all Defendants, contrary

to filed notices of appearance in this case) sought to delay and ultimately prevent discovery in this case. Every pretrial order issued by this Court in this case set deadlines for filing and responding to motions for summary judgment *after* the close of discovery. Discovery has yet to be completed in this case and, thus, the Motion is premature.

The Motion is also unsupported, both procedurally and factually. The Motion was purportedly filed on behalf of all Defendants (Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC) by John Spragens, who has entered a notice of appearance and has repeatedly appeared on behalf of Manookian PLLC in this matter. Afsoon Hagh and Hagh Law, PLLC are represented by separate counsel – Craig Gabbert, who has filed a notice of appearance and made numerous appearances on their behalf. Mr. Gabbert did not sign the Motion, he did not file a statement joining in the Motion, nor was Mr. Spragens substituted as counsel for Afsoon Hagh and Hagh Law, PLLC prior to the filing of the Motion. As such, the Motion cannot be deemed a proper request on behalf of represented parties Afsoon Hagh and Hagh Law, PLLC.

Neither is the Motion factually supported. The Motion rests primarily upon: (1) requests for admission which the Defendants ask the Court to deem admitted, despite timely denials by the Trustee; and (2) conclusory statements made in affidavits of Brian Manookian and Afsoon Hagh which are largely contradicted by other evidence discovered in this case. In fact, the evidence produced in this case to date (though discovery is incomplete) shows that the Trustee, not the Defendants, is entitled to summary judgment on several counts in the Complaint.[1] The uncontroverted evidence not only fails to support the Defendants' Motion, it affirmatively proves that the Motion must be denied.

---

[1] As indicated in a notice filed by the Trustee on July 29, 2022 (Doc. 216), the Trustee expects to file a motion for partial summary judgment at the conclusion of discovery in this matter.

## **FACTS**

In support of their Motion, the Defendants rely upon a number of "undisputed" facts that are, in reality, very much in dispute.  The Defendants filed this Motion before the Trustee had responded to Manookian PLLC's Second Set of Requests for Admission to the Plaintiff ("Second RFA"), and before she had revised her responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("First RFA").[2]  Accordingly, the Defendants' reliance on many allegedly "undisputed" facts is misplaced.

Attached hereto as Exhibit 1 are the Trustee's responses to the Defendants' Joint Statement of Undisputed Facts, which illustrate that many of the facts upon which the Defendants rely are disputed.  Attached as Exhibit 2 and Exhibit 3, respectively, are the Plaintiff's Second Amended Responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("Responses to First RFA") and the Plaintiff's Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to the Plaintiff ("Responses to Second RFA"), both of which were served on Manookian PLLC on July 1, 2022.

As demonstrated by the Trustee's responses to the Statement of Undisputed Facts and her Responses to First RFA and Responses to Second RFA, many material facts upon which the Motion is based are disputed.  For example:

- The Motion states: "In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client

---

[2] As extensively briefed elsewhere in this case and no doubt well known to the Court by this point, the parties agreed to extend the date by which the Trustee was to respond to the Second Set of Requests for Admission and was to update her discovery from June 1, 2022 to July 1, 2022.  This was done as an accommodation to the Defendants, who asked that certain depositions be postponed due to their travel.

would not be required to pay Cummings Manookian an attorney's fee." Motion, p. 4. The Motion more specifically claims that the Fitzgerald and Shoemaker engagement letters provided that Cummings Manookian was not entitled to fees if it withdrew. Motion, pp. 5, 7. For these statements, the Defendants rely upon a declaration of Brian Manookian, Responses to First RFA 25, the Fitzgerald Engagement Agreement, and the Shoemaker Engagement Agreement. However, the Trustee's Responses to First RFA deny these assertions, citing to the provisions in the engagement letters themselves. The engagement letters between the Debtor and the Fitzgerald and Shoemaker clients, which are attached hereto as collective Exhibit 4, show that the engagement letters are silent on payment of fees when Cummings Manookian withdrew from representation. Further, as discussed below, the Trustee disputes that the Debtor actually withdrew from any representation.

- The Motion states, "By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law." Motion, p.5. It reiterates that statement, later alleging that the Debtor had no members with an active law license and no employees on February 11, 2019. Motion, p. 7. For that statement, the Defendants rely upon a declaration of Brian Manookian, Responses to Second RFA 21, 23, 25, and 27, and a portion of the Trustee's deposition. While the Trustee admitted in Responses to Second RFA 21 and 25 that the Debtor had no partners or members with an active law license as of January 1, 2019 and that it had no

salaried employees as of that date, she denied that it had no employees to the extent that word means "agent" of the firm. The proof shows that Afsoon Hagh was an employee or agent of the Debtor in that she received healthcare insurance and malpractice insurance benefits from the Debtor and she had full access to the Debtors' confidential electronic files, which only employees had. Transcript of Deposition of Brian Cummings, attached hereto as Exhibit 5, pp. 42:21-43:1; 44:10-44:20; 92:25-94:5. After January 1, 2019, the proof shows that Ms. Hagh filed pleadings on behalf of the Debtor; she used the Debtor's mailing address, telephone number, and email address after that date; and she continued working on behalf of clients pursuant to the terms of the Debtor's engagement letters with those clients. See selected pleadings from the Fitzgerald matter, attached hereto as Exhibit 6 and selected pleadings from the Shoemaker matter, attached hereto as Exhibit 7. See also Transcript of the Deposition of Afsoon Hagh, attached hereto as Exhibit 8[3], p. 44:14-44:17 (admitting that Hagh Law, PLLC had no signed engagement letter with the Fitzgeralds); 2021 engagement letter between Hagh Law, PLLC and Shoemaker plaintiffs, attached hereto as Exhibit 12[4] (showing that Afsoon Hagh and Hagh Law,

---

[3] The Trustee will be filing a motion to file the Deposition of Afsoon Hagh under seal. The Defendants asked that the deposition transcript be marked "confidential". It is the Trustee's understanding that the Defendants' position is that some of her testimony may be subject to attorney-client and/or work product privilege. The Defendants have a copy of this transcript and are not prejudiced by the request to late-file this exhibit under seal.

[4] Exhibit 12 is a letter dated April 26, 2021 to Brett Keefer on Hagh Law letterhead, that contains the "Re" line: Updated Legal Representation and Engagement. This document has been marked as confidential by the Defendants. As such, the Trustee will be filing a motion to file this exhibit under seal. The Defendants have a copy of this letter and are not prejudiced by the request to late-file this exhibit under seal.

PLLC operated under the terms of the Cummings Manookian engagement letter between 2018-2021).

- The Motion states, "Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee." Motion, p. 6. The Motion further claims that the Trustee has admitted that fact. Id. For support, the Defendants rely upon the declaration of Brian Manookian, Responses to Second RFA 70, 71, 84, 85, and 86, and excepts from the Trustee's deposition. The proof shows otherwise. While the Trustee admits that Mr. Manookian (on behalf of the Debtor) drafted a letter to the Fitzgeralds on December 7, 2018 evidencing an intent to withdraw and purportedly waiving rights to the payment of fees, the Responses to Second RFA 70 and 71 deny that the Debtor in fact withdrew. In fact, documents filed by both Brian Manookian and Afsoon Hagh after December 7, 2018 in the Fitzgerald case demonstrate that the Debtor never withdrew as the Fitzgeralds' counsel. Attached hereto as collective <u>Exhibit 6</u> are selected pleadings from that case that show that Brian Manookian represented to the court that Afsoon Hagh, whom he listed as a Cummings Manookian attorney, would continue representing the Fitzgeralds and the Ms. Hagh did, in fact, continue to represent the Fitzgeralds after December 7, 2018 on behalf of Cummings Manookian (as demonstrated by her signature block). Furthermore, without the testimony of Mr. Fitzgerald, the Trustee cannot say whether the December 7, 2018

letter was ever delivered to him nor whether there were subsequent conversations with Mr. Fitzgerald clarifying or negating the message of the letter.

- Likewise, with regard to the Shoemaker case, the Defendants allege that the Debtor withdrew from representing the plaintiffs at an early stage. The Motion states, "Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law." Motion, p. 7. It goes on, "[n]o attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian; no attorney ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian; and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian." Id. at pp. 7-8. To support these statements, the Defendants rely upon the declaration of Brian Manookian, Responses to Second RFA 13, 23, 27, 48, 49, and 53, along with a brief portion of the transcript from the Trustee's deposition. In the Responses to Second RFA 23, 27, 48, 49 and 53, the Trustee denies all relevant portions of these allegations. In fact, the pleadings filed in the Shoemaker case itself shows that Afsoon Hagh made an appearance on behalf of the plaintiffs in the Shoemaker case, as an attorney of Cummings Manookian. Attached hereto as Exhibit 7 is a copy of the complaint filed in the Shoemaker case, in which Afsoon Hagh's Cummings Manookian signature block plainly appears. Moreover, none of the Defendants have ever produced any correspondence

with the Shoemaker plaintiffs in which Cummings Manookian allegedly notified them of the firm's withdrawal.

- The Motion next makes some claims about Manookian PLLC's use of the Debtor's property which are very much disputed: "Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian." Motion, p. 9 (citing only the declaration of Brian Manookian as support). "Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian." Id. (citing the declaration of Brian Manookian as support). The evidence proves these statements to be untrue. Manookian PLLC utilized the office space located at 45 Music Square West, Nashville, Tennessee (the former location of the Debtor) as evidenced by its letterhead, shown in the letter attached hereto as Exhibit 9. In its use of the office space at 45 Music Square West, Manookian PLLC also used the office furniture and equipment owned by the Debtor. Brian Cummings testified that Cummings Manookian made substantial purchases of office furnishings (see Brian Cummings Deposition Transcript, Exhibit 5, pp. 25:1-25:25; 102:11-103:16), which is verified by the personalty tax returns of Cummings Manookian (see attached Exhibit 10) and by invoices supplied by Brian Cummings as a late-filed exhibit to his deposition. See attached Exhibit 11. Those exhibits show that Cummings Manookian owned approximately $75,000 of personal property, which were utilized by Manookian PLLC when it occupied the office space at 45 Music Square

West.  Manookian PLLC also used the telephone numbers 615-266-3333 and 615-266-0250 (as seen in <u>Exhibit 9</u>[5]), that Brian Cummings testified were Cummings Manookian telephone numbers and for which he thought Cummings Manookian paid the telephone bill.  Brian Cummings Deposition Transcript, <u>Exhibit 5</u>, pp. 34:19-36:7.

- Similarly, the Motion makes statements about the use of certain property by Afsoon Hagh and Hagh Law, PLLC which are controverted by the evidence. The Defendants contend: "Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian."  Complaint, p. 9.  "The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian."  Id at p. 10.  "Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian."[6]  Id.  The Defendants rely exclusively upon the declaration of Afsoon Hagh as support for these statements.  The evidence, however, contradicts each of these statements.  Afsoon Hagh (individually and on behalf of Hagh Law) received at least $590,000.00 in proceeds from the Fitzgerald settlement which the Trustee believes belongs to the Debtor's estate.  See Exhibit H to Docket No. 2, showing that Afson

---

[5] Exhibit 9 is a letter dated August 23, 2019 to Brett Keefer on Manookian PLLC letterhead, that contains the "Re" line: Updated Legal Representation and Engagement.  This document has been marked as confidential by the Defendants.  As such, the Trustee will be filing a motion to file this exhibit under seal. The Defendants have a copy of this letter and are not prejudiced by the request to late-file this exhibit under seal.

[6] Interestingly, the Motion alleges only that "Hagh Law" (as opposed to the "Hagh Parties") never used the Debtor's property.  Apparently, even the Defendants do not contend that Afsoon Hagh never used property belonging to the Debtors.

9

Hagh and Hagh Law were ordered to hold in trust only $760,000 of the $1,350,000 received from the Fitzgerald settlement. The pleadings filed by Ms. Hagh after the suspension of Mr. Manookian's law license demonstrate that she was using office space (at least as a mailing address), telephone numbers, and email addresses that belonged to the Debtor. See Exhibits 6 and 7. Hagh Law, PLLC likewise used office space (at least for a mailing address) that belonged to the Debtor, as demonstrated by its letterhead. See Exhibit 12. Thus, each of these statements contained in the Motion are refuted by the evidence.

In addition to its mischaracterization of facts and its misrepresentation of which of those facts are uncontested, the Motion also omits a number of highly relevant facts that were discovered during the formal discovery that has taken place to date. Following the withdrawal of Brian Cummings from the Debtor's membership, Brian Manookian and Afsoon Hagh continued the Debtor's operations. While the Defendants claim that Afsoon Hagh was never an "employee" of the Debtor, the evidence clearly and unequivocally shows that she was an agent of the firm. The Debtor's engagement letters held Ms. Hagh out as one of Cummings Manookian's attorneys (see Fitzgerald Engagement Letter, Exhibit 6); the Debtor held Ms. Hagh out as "Senior Attorney" in its marketing efforts (see Lawyers.com Listing, attached hereto as Exhibit 13); Ms. Hagh was granted unlimited access to the firm's confidential electronic files (see Exhibit 5, Brian Cummings Deposition Transcript, pp. 92:25-94:5); and she received health insurance benefits and malpractice insurance benefits (see id, pp. 42:21-43:1; 44:10-44:20).

When Mr. Manookian was suspended from the practice of law in December 2018, the Debtor's business continued on unfettered. Ms. Hagh continued using the Debtor's name, email address, mailing address and telephone number (Exhibits 6 and 7), and she continued filing pleadings in cases on behalf of Cummings Manookian (Id). In fact, other than pro bono clients, Ms. Hagh to this day has not filed a complaint for a client that originated from any source other than Cummings Manookian. (Exhibit 8, Hagh Deposition Transcript pp. 25:24-26:16). Ms. Hagh even continued operating under the terms of the engagement letters executed with Cummings Manookian through at least 2021. Deposition Transcript of Afsoon Hagh, Exhibit 8, p. 44:14-44:17; Exhibit 12. Ronette McCarthy, who was the referring attorney in the Fitzgerald case, testified that the Fitzgerald plaintiffs were told that it would be business as usual despite Mr. Manookian's suspension. See Ronette McCarthy Deposition Transcript, attached hereto as Exhibit 14, pp. 54:21-55:2.

Thus, after Mr. Manookian was suspended from the practice of law, Afsoon Hagh continued representing Cummings Manookian's clients, from Cummings Manookian's offices, utilizing Cummings Manookian's email address and telephone numbers, pursuant to the terms of Cummings Manookian's engagement agreements. A few months later, she formed Hagh Law PLLC and Mr. Manookian formed Manookian PLLC, but nothing changed: same lawyers, same clients, same offices, same furniture and equipment, and same telephone numbers (but with new law firm names).

## STANDARD FOR SUMMARY JUDGMENT

A court may grant summary judgment on a matter only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." *Fed. R. Civ. P 56(a)*. Fed. R. Civ. P. 56 is made applicable in these proceedings pursuant to Fed. R. Bankr. P. 7056.

At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Hargrave v. Radbill*, 2013 Bankr. LEXIS 2883 (Bankr. N.J. 2013) (citing *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J. 2003). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

## APPLICATION

The Court should deny the Defendants' Motion for three reasons: (1) the Trustee cannot present facts essential for a complete and thorough opposition to the Motion until she has been given time to complete discovery; (2) Afsoon Hagh and Hagh Law, PLLC have not properly moved the Court for summary judgment; and (3) the uncontroverted facts of this case do not support the Defendants' request for summary judgment.

### A.  The Court Should Dismiss the Motion Pursuant to FRCP 56(d).

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides in part:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. Pro. 56(d).  Attached hereto as <u>Exhibit 15</u> is the affidavit of Jeanne Ann Burton, Trustee and Plaintiff in this matter.  As demonstrated by the affidavit, it is necessary for the Trustee to depose Marty Fitzgerald in order to appropriately respond to

the Defendants' Motion.  Burton Affidavit ¶ 3.  The Trustee explains in her affidavit why

Mr. Fitzgerald's testimony is essential to responding to the Motion:

> More specifically, this deposition is necessary for me to discover whether Mr. Fitzgerald was informed by any of the Defendants (in writing or orally) that Cummings Manookian, PLC intended to withdraw from representing him and his wife in a wrongful death suit, whether any of the Defendants instructed him to hire new counsel, whether he in fact interviewed new counsel, and what (if anything) he was told about the future involvement of Cummings Manookian, PLC, Afsoon Hagh, Hagh Law, PLLC and/or Manookian PLC in his lawsuit. These facts are potentially relevant in responding to portions of the Motion.  Moreover, this deposition is necessary in order for me to respond to Paragraph 27 of the Defendants' Joint Statement of Undisputed Material Facts.

Burton Affidavit ¶ 4.

Ms. Burton further explained the good faith steps she took to conduct this

deposition prior to the filing of the Motion:

> I took every reasonable step possible to take Mr. Fitzgerald's deposition prior to the July 29, 2022 deadline for filing motions for summary judgment and before the August 12, 2022 deadline for filing responses thereto.  On May 5, 2022, my counsel issued a subpoena for Mr. Fitzgerald's testimony on May 27, 2022 at my request.  No timely objection was filed to that first subpoena.  The week before that deposition was to occur, counsel for the Defendants asked me to reschedule all third-party depositions, including Mr. Fitzgerald's, because Brian Manookian and Afsoon Hagh were scheduled to be out of state.  As an accommodation, I agreed to reschedule the depositions so long as other pretrial deadlines were likewise rescheduled.  The Defendants agreed.  I then directed my counsel to issue another subpoena for Mr. Fitzgerald's testimony, which was served on Mr. Fitzgerald on June 7, 2022.  That subpoena required Mr. Fitzgerald's appearance at a rescheduled deposition via Zoom on June 24, 2022.  On June 21, 2022, Attorney John Spragens sent an email to my counsel objecting to the subpoena on behalf of Mr. Fitzgerald.  On July 22, 2022, I filed a motion to compel Mr. Fitzgerald's compliance with the subpoena. The Court has not set a hearing to consider the motion to compel.

Burton Affidavit ¶¶ 5-7.

The Trustee's affidavit is sworn before a notary public, signed under penalty of perjury, sets forth the reason why Mr. Fitzgerald's deposition is needed in order to respond to this Motion, and details the steps taken by the Trustee to timely take that deposition. The affidavit meets all requirements of Rule 56(d) and the cases interpreting it.  *See CareToLive v. FDA,* 631, F.3d 336, 345 (6th Cir. 2011).  Having produced an affidavit that satisfied Rule 56(d), the Court may: (1) deny the Motion; (2) defer ruling on the Motion; (3) allow the Trustee adequate time to complete discovery; or (4) issue any other appropriate order.  Because the deposition of Marty Fitzgerald was delayed, and ultimately blocked, with the assistance of Defendants and their counsel, the Trustee would ask the Court to simply deny the Motion.  Alternatively, the Trustee would ask that Court to set the deadline for responding to the Motion, thereby allowing the Trustee to amend this Objection, approximately thirty days after the close of discovery (which is a date yet to be determined).

### B.  Afsoon Hagh and Hagh Law, PLLC are not Proper Parties to the Motion.

The Motion was not properly filed by Afsoon Hagh and/or Hagh Law, PLLC and the Court should therefore deny those parties' request for summary judgment.  The Motion is styled "Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC's Joint Motion for Summary Judgment and Memorandum in Support Thereof".  Doc. 188, p.1. The first sentence of the Motion reads, "Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC move for summary judgment on all claims in this matter."  Id.  The pleading was signed by attorney John Spragens as follows:

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and
Brian Manookian*

*Co-counsel for Afsoon Hagh and Hagh
Law PLLC for purposes of Summary
Judgment only*

Id at p. 21. The joint statement of facts filed contemporaneously with the Motion was styled, "Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC's Joint Statement of Undisputed Facts". Doc. 188-1, p. 1. Its first sentence reads, "Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC submit this Statement of Undisputed Material Facts in Support of their Joint Motion for Summary Judgment." Id. In John Spragens' signature on the Joint Statement of Undisputed Facts, he did not purport to be representing either Afsoon Hagh or Hagh Law, PLLC:

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and
Brian Manookian*

Id at p. 23.

John Spragens has appeared on multiple occasions on behalf of Defendant Manookian PLLC (and more recently has alleged to appear on behalf of Brian Manookian, who has no standing in this adversary proceeding). Craig Gabbert has filed a notice of appearance, and has continuously signed pleadings and made court appearances, on behalf of both Afsoon Hagh and Hagh Law, PLLC. *See* Doc. 28. While Mr. Spragens purports to have filed the Motion as "Co-counsel for Afsoon Hagh and Hagh Law, PLLC for purposes of Summary Judgment only", he has not substituted himself as counsel in place of Mr. Gabbert. Mr. Gabbert did not sign the Motion on behalf of Afsoon Hagh and Hagh Law, PLLC, nor did Mr. Gabbert file a joinder on their behalf.

Fed. R. Civ. P. 11(a) states that, "Every pleading, written motion, and other paper must be **signed by at least one attorney of record in the attorney's name**—or by a party personally if the party is unrepresented. . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." (emphasis added). This rule is mandatory and "courts must strike unsigned documents unless the filing party promptly corrects them." *Marcure v. Lynn*, 992 F.3d 625, 627 (7th Cir. 2021). Furthermore, the purpose of the signature requirement is "to hold [the] attorney of record who signs his individual name to strict accountability." *United States use of Foster Wheeler Corp. v. American Surety Co.*, 25 F. Supp. 225, (D.N.Y. 1938).

When there are multiple parties involved in the litigation it is vital that each party signs the pleadings and motions submitted to the court. "In pro se action involving several individual plaintiffs, each individual plaintiff was required to sign complaint, and needed to represent and appear on behalf of themselves in case; **plaintiffs were each required to sign all pleadings and papers submitted to court, in manner consistent with their**

**obligations under Fed. R. Civ. P. 11**." G4 Concept Mktg. v. Mastercard Int'l, 670 F. Supp. 2d 197, 2009 U.S. Dist. LEXIS 109212 (W.D.N.Y. 2009) (emphasis added).

Here, because Afsoon Hagh or Hagh Law, PLLC have separate counsel of record, Mr. Spragens lacked authority to submit a motion on behalf of those parties under FRCP 11(a). Accordingly, the Court should disregard the Motion as it pertains to Afsoon Hagh and Hagh Law, PLLC. Alternatively, because Mr. Spragens did not purport to represent Afsoon Hagh and Hagh Law, PLLC in the filing of the Statement of Undisputed Facts, the Court should strike that pleading as to Afsoon Hagh and Hagh Law, PLLC, leaving their portions of the Motion without factual support.

### C. The Undisputed Facts of this Case do not Warrant Summary Judgment in Favor of the Defendants.

Even if the Court were to consider the Motion at this time, despite Rule 56(d) and Rule 11(a), the Defendants are not entitled to summary judgment. At best for the Defendants, there are disputed facts that require a trial to determine their validity and relevance; at worst for the Defendants, the undisputed facts actually point to summary judgment in favor of the Trustee.

As noted above, the Defendants' Motion is highly dependent on alleged "admissions" by the Trustee which were not admitted. The Defendants also conspicuously avoid state court pleadings that they themselves filed, documents they maintained, their own testimony, and the testimony of Brian Cummings, a former partner in the Debtor's business. When given access to a full view of the facts, instead of the Defendants' mischaracterized "facts", it is obvious that the Defendants are not entitled to summary judgment on any count in the Trustee's Complaint.

1. <u>The facts show that the Trustee does have a claim to the Fitzgerald fees.</u>

Cummings Manookian had a valid engagement letter with Mr. and Ms. Fitzgerald to represent them in a wrongful death suit. <u>Exhibit 4.</u> In fact, Cummings Manookian had the *only* valid engagement letter to represent them in that suit. Transcript of Deposition of Afsoon Hagh, <u>Exhibit 8</u>, p. 44:14-44:17.

Tennessee Supreme Court Rule 8, Rule 1.5 requires that, for a lawyer or law firm to collect a contingency fee in the state of Tennessee, the "contingent fee agreement **shall be in a writing signed by the client** and shall state the method by which the fee is to be determined." Tenn. Sup. Ct. R. 8, Rule 1.5(c) (emphasis added). The Fitzgerald plaintiffs signed only one contingency fee agreement – one with the Debtor, Cummings Manookian. Therefore, only the Debtor has a legal claim to a contingency fee in the case; any other party claiming a portion of the fee must prove that they are equitably entitled to a portion of the fee payable to the Debtor based upon the reasonable value of their services. *See Johnson v. Hunter,* 2001 Tenn. App. LEXIS 795, *9, *18-19 (Tenn. Ct. App. 2001).

Further, the pleadings in the Fitzgerald case itself clearly demonstrate that Cummings Manookian provided services to the plaintiffs in that case. The case was filed by Cummings Manookian and, when Brian Manookian's license was suspended, he notified the court that Afsoon Hagh would continue representing the plaintiffs. <u>Exhibit 6</u> That notice was signed by Brian Manookian, but included Afsoon Hagh's name in the signature block as an attorney with Cummings Manookian. Id. In fact, Afsoon Hagh continued filing documents in the name of Cummings Manookian, utilizing Cummings Manookian's email address, mailing address, and telephone number. Id. At some point,

Afsoon Hagh dropped the Cummings Manookian firm name but never filed a notice of substitution of counsel, address change, nor did she obtain a new engagement agreement with the Fitzgeralds. Transcript of Deposition of Afsoon Hagh, <u>Exhibit 8</u>, pp. 44:14-44:17; 66:10-66:25.

These facts are more than sufficient to support the claim that the Trustee is entitled to recover the Fitzgerald legal fees.

2. <u>The facts show that the Trustee does have a claim to the Shoemaker fees.</u>

Similarly, the Trustee is entitled to recover some portion of the Shoemaker fees, but the Court must conduct a hearing to determine what amount is owing to the Debtor's estate. Like the Fitzgerald case, the Shoemaker plaintiffs signed a written engagement letter with Cummings Manookian. <u>Exhibit 4.</u> Months later, they signed an engagement letter with Manookian PLLC, though Manookian PLLC has disclaimed any interest in those fees. <u>Exhibits 9 and 12.</u> Years later, they signed an engagement letter with Hagh Law, PLLC, apparently at the behest of John Edwards, the newly retained co-counsel for the Shoemaker plaintiffs. <u>Exhibit 12.</u>

Like the Fitzgerald case, the complaint lists Cummings Manookian as counsel of record. <u>Exhibit 7.</u> Again, Afsoon Hagh used Cummings Manookian's name, mailing address, email address, and telephone number for some time and never filed a notice of substitution of counsel or even an address change. Id.

On these facts, the Court must determine what fees are payable to the Debtor, versus what fees may be payable to co-counsel Hagh Law, Cummings Law, and John Edwards. However, there are ample disputed facts to warrant a hearing on that matter.

3. <u>The facts support the Trustee's claim for conversion.</u>

There are simple facts that create a triable cause of action for conversion. For example, without any payment, Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC used, to the exclusion of other parties, the office space, furniture and equipment, telephone numbers, and email addresses of the Debtor. In fact, none of these assets have been turned over to the Trustee. Furthermore, with respect to Afsoon Hagh and Hagh Law, PLLC, they have received at least $590,000 in funds from the Fitzgerald case settlement that legally and rightfully belongs to Cummings Manookian's estate pursuant to the written and signed engagement letter. Summary judgment is also inappropriate as to this cause of action.

4. <u>The facts support the Trustee's claim for fraudulent transfer under both state and bankruptcy law.</u>

The evidence supporting the Trustee's claims for fraudulent transfer is substantially similar to the evidence that supports her cause of action for conversion. All of the assets detailed in the paragraph above were taken at a time when Cummings Manookian was insolvent, or the transfer of those assets rendered it insolvent. Furthermore, the timing of the transfer, the formation of the new firm entities, and the imposition of sanctions against Cummings Manookian (as evidenced by the documents attached to Claim No. 5 in this Court's file) are sufficient to create a triable question regarding the Defendants' intent to hinder, delay or defraud creditors.

5. <u>The Trustee agrees to dismiss the claim for tortious interreference with contract.</u>

The Trustee does not intend to pursue her the fourth claim for relief in her Complaint, a claim for tortious interference. Based upon the discovery completed to date,

and as more fully explained elsewhere herein, the evidence shows that the agreement between the Debtor and the Fitzgerald plaintiffs was never terminated. Brian Manookian and Afsoon Hagh continued providing services (albeit allegedly through their new entities, Manookian PLLC and Hagh Law, PLLC) consistent with the engagement letter between the Fitzgerald parties; that engagement agreement was never cancelled nor was a new engagement agreement entered into between the Fitzgeralds and Manookian PLLC or Hagh Law, PLLC. Manookian PLLC and Hagh Law, PLLC were mere continuations of the Debtor; they serviced the same clients as the Debtor, with the same attorneys, from the same location, with the same telephone numbers, with the same email addresses, utilizing the same furniture and equipment. After discovery, the Trustee has determined that those new entities did not necessarily "interfere" with the Debtor's contract with the Fitzgeralds; rather, they simply fulfilled the Debtor's duties to the Fitzgeralds as a continuation of the Debtor. Accordingly, the Trustee abandons this cause of action and agrees to its dismissal.

  6. <u>The facts support the Trustee's claims for successor liability and alter ego.</u>

   The Trustee believes that all of her causes of action have validity, but this is perhaps the strongest of them. Tennessee recognizes the traditional rule that when one company transfers some or all of its assets to another company the successor is not liable for the debts of the predecessor except under certain enumerated circumstances. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3CV, 2011 WL 1330777, at 13 (Tenn. Ct. App. Apr. 8, 2011). Under the traditional rule, the circumstances under which a successor corporation may be held liable for the debts of the predecessor are: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is

merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts....(5) the absence of adequate consideration for the sale or transfer. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3CV, 2011 WL 1330777, at 13 (Tenn. Ct. App. Apr. 8, 2011).

In this case, Manookian PLLC and Hagh Law, PLLC were the <u>mere continuation</u> of the Debtor, thus creating successor liability. A corporation will be deemed a mere continuation of the previous corporation and, therefore, liable for the previous corporation's obligations if: (1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the previous corporations business; (4) both corporations share at least one common officer who was instrumental in the transfer; and (5) the previous corporation is left incapable of paying its creditors. *Precision Gears, Inc. v. Safari Enterprises, LLC*, No. 3:22-MC-00005, 2022 WL 2654231, at 4 (M.D. Tenn. July 8, 2022).   Each of these factors is met in this case.

Manookian PLLC and Hagh Law, PLLC are also the alter egos of the Debtor.  In Tennessee, a corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors; however, a corporation's separate identity may be disregarded or pierced "upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *S. Steel & Concrete, Inc. v. S. Steel & Constr., LLC*, No. W202000475COAR3CV, 2022 WL 1115033, at 8 (Tenn. Ct. App. Apr. 14, 2022). Furthermore, the determination of whether to disregard the corporate fiction depends on the special circumstances of each case, and the matter is particularly within the discretion

of the trial court. *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985).

No one factor is conclusive in determining whether to disregard a corporate entity; rather, Tennessee courts rely upon a combination of factors ("Allen Factors") in deciding to disregard the corporate veil. *S. Steel & Concrete, Inc.* at 8. These factors are: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms-length relationships among related entities. *Id.* at 8; *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984).

In *S. Steel & Concrete, Inc.*, the court found that two construction companies were the alter-egos of each other. 2022 WL 1115033 at 11. In applying the *Allen* factors, the court found that the companies used the same location as a workspace and contact address. *Id.* at 10. The companies also used the same bank and insurance company (describing the use of the same office or business location"). *Id.* Next, when SS Construction ultimately stopped doing business in 2016, SS Concrete assumed the remaining work on the FedEx Project and used the equipment, employees, and supervision

previously used by SS Construction (describing the employment of the same employees or attorneys). *Id.* Additionally, the court also noted that the companies had a subcontract agreement where SS Concrete would subcontract back to SS Construction. *Id.* Moreover, both companies shared a "key employee" who made the significant management and contracting decisions for both companies, and even simultaneously served in his managerial role for both companies for a period of time (describing the use of the corporation as an instrumentality or business conduit for an individual or another corporation). *Id.* Accordingly, the court concluded that the two companies were one and the same, and therefore were alter egos. *Id.* at 11.

In this case, Brian Manookian and Afsoon Hagh were the two key employees of the Debtor; they are also the key employees (and, indeed, the only employees) of Manookian PLLC and Hagh Law, PLLC. The Debtor operated at 45 Music Square West, Nashville, Tennessee, as did Manookian PLLC and Hagh Law, PLLC. The new firm worked on the Debtor's cases, with Afsoon Hagh even admitting that her only paying litigation cases were those that originated with the Debtor. For at least some period of time, Manookian PLLC and Hagh Law, PLLC utilized the Debtor's telephone numbers and email addresses. Neither Manookian PLLC nor Hagh Law, PLLC gave any consideration to the Debtor for the use of its property. Finally, the two new firms even operated under the terms of the Debtor's engagement letters in some cases.

Far beyond being entitled to summary judgment, the undisputed facts of this case establish presumptively that Hagh Law, PLLC and Manookian PLLC are the mere continuation and the alter ego of Cummings Manookian, PLC.

## **CONCLUSION**

For the reasons set forth herein, the Trustee prays that this Court deny the Defendants' Motion and grant any other further relief that the Court deems equitable and appropriate under the circumstances.

Dated this 12ᵗʰ day of August, 2022

<div style="margin-left:40%">

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (Tn. Bar No. 21078)
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Phone: 615-465-6015
phillip@thompsonburton.com

Special Counsel for the Trustee

</div>

## **Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein, including counsel for the Defendants.

This 12ᵗʰ day of August, 2022.

<div style="margin-left:40%">

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

</div>