

# IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

MARTY FITZGERALD and MELISSA
FITZGERALD, individually, as husband
and wife, and on behalf of their deceased
child, MEGAN FITZGERALD,

    Plaintiffs,

v.

JAMES WOODROW OSBORN and
OSBORN ENTERPRISES, INC., II, and
OSBORN ENTERPRISES, INC., III,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED

DEC 1 3 2018

Debbie McMillan Barrett
Circuit Court

NO. 2018-311
JURY DEMAND

---

## MOTION TO WITHDRAW

---

Pursuant to Section 28 of Rule 9 of the Tennessee Supreme Court, Brian Manookian moves

to withdraw as counsel in this matter. Afsoon Hagh continues to represent the Plaintiffs.

Respectfully submitted,

Brian P. Manookian, #26455
Afsoon Hagh, #28393
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(615) 266-3333 (phone)
(615) 266-0250 (fax)

*Attorneys for the Plaintiffs*

1

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, a true and correct copy of the foregoing was proved by US Mail to the following:

Steve Meisner
Brewer Krause Books & Chastain
545 Mainstream Drive
Nashville, Tennessee 37228
T: 615.630.7727
F: 615.256.8985
smeisner@bkblaw.com

Brian P. Manookian

2

FILED
WILLIAMSON COUNTY
CIRCUIT COURT

2019 JAN 22 PM 3: 54

ENTERED _____

ORIGINAL

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

MARTY FITZGERALD and MELISSA
FITZGERALD, individually, as husband
and wife, and on behalf of their deceased
child, MEGAN FITZGERALD,

    Plaintiffs,

v.

JAMES WOODROW OSBORN and
OSBORN ENTERPRISES, INC., II, and
OSBORN ENTERPRISES, INC., III,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 2018-311
JURY DEMAND

COPY

---

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AND COMPARATIVE FAULT

---

Comes now Plaintiffs, Marty Fitzgerald and Melissa Fitzgerald, by and through counsel, and pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, and hereby move this Court for an order granting summary judgment against Defendant James Osborn in favor of the Plaintiffs on the issues of Defendant Osborn's liability and Defendant's Osborn's comparative fault defense.

The Plaintiffs would show that there is no genuine issue as to any material fact and that they are entitled to summary judgment against Defendant Osborn on the issue of liability and comparative fault as a matter of law.

The Plaintiffs rely upon their Memorandum of Law, their Rule 56.03 Statement of Undisputed facts, and the exhibit(s) thereto, all filed contemporaneously with this Motion.

Respectfully submitted,

Afsoon Hagh #28393
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(T) 615.266-3333
(F) 615.266-0250
afsoon@cummingsmanookian.com

*Attorney for the Plaintiffs*

## REQUEST FOR HEARING

PURSUANT TO RULE 5.03(b) OF THE LOCAL RULES OF COURT, THE PLAINTIFFS HEREBY MOVE THIS COURT FOR A DATE CERTAIN FOR HEARING OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT.

## CERTIFICATE OF SERVICE

I certify that on January 22, 2019, a true and correct copy of this document was provided by U.S. Mail, postage pre-paid and facsimile to the following:

Mr. Steve Meisner
Brewer Krause Books & Chastain
545 Mainstream Drive
Nashville, Tennessee 37228
T: 615.630.7727
F: 615.256.8985

*Attorney for the Defendants*

Afsoon Hagh

2

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

FILED
WILLIAMSON COUNTY

2019 JAN 22 PM 3: 54

ENTERED _____

COPY

| | |
|---|---|
| MARTY FITZGERALD and MELISSA FITZGERALD, individually, as husband and wife, and on behalf of their deceased child, MEGAN FITZGERALD, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) NO. 2018-311 ) JURY DEMAND |
| JAMES WOODROW OSBORN and OSBORN ENTERPRISES, INC., II, and OSBORN ENTERPRISES, INC., III, | ) ) ) ) |
| Defendant. | ) ) |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY AND COMPARATIVE FAULT

---

The Plaintiffs, Marty Fitzgerald and Melissa Fitzgerald, by and through undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Partial Summary Judgment on the Issues of Liability and Comparative Fault.

### INTRODUCTION

This is a clear-liability wrongful death case. Defendant James Osborn admits that he is responsible the death of the Decedent, Megan Fitzgerald:

Q.  You killed Megan Fitzgerald.  Correct?

A.  Yes.

Q.  You are responsible for Megan Fitzgerald's death.  Correct?

A.  Yes.[1]

---

[1] Osborn Depo. Pg. 10:13-17.

The Decedent, Megan Fitzgerald, was the seventeen (17) year old daughter of Plaintiffs Marty and Melissa Fitzgerald.[2] On May 9, 2018, Megan Fitzgerald was bicycling when Defendant Osborn approached her in his truck and ran her over, thereby causing her death.

The pleadings and discovery in this case have shown that there is no genuine of material fact that the Defendant is legally 100% at fault for Megan Fitzgerald's death. As such, the Plaintiffs ask this Court to enter summary judgment in favor of the Plaintiffs on this issue.

Entry of partial summary judgment in favor of the Plaintiffs on liability is proper under Tenn. R. Civ. P. 56.01. The relief sought by Plaintiffs will serve the interest of judicial economy by permitting the Parties to focus their proof, and the jury's attention, on the only genuinely disputed issue at trial: the amount and extent of damages Defendant Osborn caused when he ran over and killed Megan Fitzgerald on May 9, 2018.

## SUMMARY JUDGMENT STANDARD

A claimant may move for summary judgment as soon as thirty (30) days after service of the Complaint. Tenn. R. Civ. P. 56.01. Summary judgment "shall be rendered" in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Byrd v. Hall*, 847 SW 2d 208, 211 (Tenn. 1993). The purpose of Rule 56 is to provide a means for accelerating litigation of issues that are not disputed, or which cannot be genuinely disputed by the parties. *Byrd*, 847 SW 2d at 210.

---

[2] Plaintiffs' Statement of Undisputed Material Facts, ¶ 1 (hereinafter "P's SUMF, ¶ "); Answer ¶ 1.

Summary judgment motions are often used to determine "whether a defendant owes a duty to a plaintiff in a particular circumstance because questions involving the existence and extent of one's legal duty to prevent harm to others is a question of law for the courts." *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003). Although the elements of "breach" and "causation" are typically questions of fact requiring trial by a jury, "these questions may be decided at the summary judgment stage if the evidence is uncontroverted and if the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion." *Rains*, 124 S.W.3d at 588.

Since the Plaintiffs have the burden to prove the prima facie elements of liability (duty, breach and causation), the Plaintiffs must present affirmative evidence to establish these elements. *See Byrd*, 847 SW 2d at 215, n. 5. Once this occurs, the burden of production shifts to Defendant Osborn to show that a genuine dispute of material fact exists as to one or more of these elements. *Id.*

The portion of this motion for partial summary judgment directed towards Defendant Osborn's comparative fault defense is governed by Tenn. Code Ann. § 20-16-101. As to Defendant's affirmative defense(s), the Plaintiffs need only show that Defendant's evidence is insufficient and the Defendant must come forward with sufficient evidence to show a genuine issue of material fact for trial. *Id.*

## STATEMENT OF FACTS

On May 9, 2018, Megan Fitzgerald was riding her bicycle on the right-hand side of a straight part of Coleman Road in Franklin, Williamson County, Tennessee.[3] There was nothing illegal, improper or inappropriate about the fact or manner that Megan Fitzgerald was riding a bicycle on Coleman Road in May of 2018.[4]

---

[3] P's SUMF ¶ 2; Answer ¶ 12; Osborn Depo. p. 20:19.
[4] P's SUMF ¶ 3; Osborn Depo. p. 10:18-11:12.

On the same day and at the same time, Defendant James Osborn ("Osborn") was traveling in his truck on Coleman Road.[5]

Osborn approached Megan Fitzgerald from behind and struck her with his truck while she was on her bike.[6] The Accident Report provided the following demonstrative of the collision:



There is no dispute that Megan Fitzgerald's death was caused by Defendant Osborn striking her with his truck.[7]

Defendant Osborn also admits that he is 100% responsible for Megan Fitzgerald's death.[8] During his deposition, Osborn testified as follows:

Q.     You killed Megan Fitzgerald. Correct?

A.     Yes.

Q.     You are responsible for Megan Fitzgerald's death. Correct?

A.     Yes.

*****

[5] P's SUMF ¶ 4; Answer ¶ 11.
[6] P's SUMF ¶ 5; Answer ¶ 12.
[7] P's SUMF ¶ 6; Answer, ¶¶ 5, 14, 16, 27, 31.
[8] P's SUMF ¶¶ 7-8; Osborn Depo. pp. 10:13-17; 63:15-17.

Q.    Do you take responsibility for what occurred?

A.    100%[9]

Defendant Osborn admitted during his deposition that there was no excuse for his conduct that led to Megan Fitzgerald's death.[10] He testified as follows:

Q.    ...There is no excuse for your conduct that led to Megan Fitzgerald's death. Correct?

A.    Yes.[11]

Defendant Osborn clearly should have seen Megan Fitzgerald on the road, but he did not.[12] Nothing about the weather, road conditions, or anything else outside of Osborn's control prevented him from seeing Megan Fitzgerald on May 9, 2018.[13]

If Defendant Osborn had been paying attention and had seen Megan Fitzgerald, he could have passed her in a safe manner without striking her.[14] However, Defendant Osborn took no action to try to avoid striking Megan Fitzgerald with his truck.[15]

When Defendant Osborn was approaching Megan Fitzgerald to pass her, Tennessee law *required* him to provide her at least three (3) feet of clearance.[16] The purpose of this requirement under Tennessee law was for her safety – to protect bicyclists against the risk of the motorist striking the bicyclist.[17] Defendant Osborn violated this safety rule: he did not give Megan Fitzgerald three (3) feet of space as his truck passed and collided with her on May 9, 2018.[18]

---

[9] P's SUMF ¶ 8; Osborn Depo. pp. 10:13-17; 63:15-17.
[10] P's SUMF ¶ 9; Osborn Depo. p. 12:10-15.
[11] P's SUMF ¶ 10; Osborn Depo. p. 12:10-15.
[12] P's SUMF ¶ 11; Osborn Depo. pp. 23:10-14; 24:9-13.
[13] P's SUMF ¶ 12; Osborn Depo. pp. pp. 22:10-23:9, 23:10-14; 24:9-13.
[14] P's SUMF ¶ 14; Osborn Depo. p. 56:9-57:10.
[15] P's SUMF ¶ 13; Osborn Depo. p. 32:22-33:3.
[16] P's SUMF ¶ 15; Tenn. Code Ann. § 55-8-175(c)(2); Osborn Depo. p. 69:4-15.
[17] P's SUMF ¶ 16; Osborn Depo. p. 70:10-15.
[18] P's SUMF ¶ 17; Osborn Depo. p. 70:16-22.

Despite pleading comparative fault in his Answer, Defendant Osborn does not blame Megan Fitzgerald "at all" for her death.[19] During his deposition, Defendant Osborn testified:

> Q. Do you take responsibility for what occurred?
>
> A. 100%
>
> Q. You don't blame Megan Fitzgerald at all for what occurred, do you?
>
> A. No. Not at all.[20]

Coleman road is not unsuitable for bicycle traffic.[21] Defendant Osman admits that Megan Fitzgerald was not doing anything wrong by bicycling on Coleman Road at the time.[22] On this point, Osborn testified:

> Q. It's not your position that Megan Fitzgerald should not have been bicycling on Coleman Road at the time and in the manner she was doing so on May 9, 2018. Correct?
>
> A. No, I'm not saying she was doing anything wrong.
>
> Q. You don't blame Megan Fitzgerald at all for what occurred, do you?
>
> A. No. Not at all.[23]

Likewise, Defendant Osborn does not blame the Plaintiffs "at all" for their daughter, Megan Fitzgerald's death.[24]

## ARGUMENT

To prevail on a negligence claim, a plaintiff must prove the elements of (1) duty, (2) breach and (3) causation. *King v. Anderson Cnty,* 419 S.W.3d 232, 246-47 (Tenn. 2013). The Court should grant summary judgment in favor of the Plaintiffs because there can be no dispute as to any of these elements of the Plaintiffs' negligence / wrongful death claim against Defendant Osborn.

---

[19] P's SUMF ¶ 18; Osborn Depo. p. 61:15-20.
[20] P's SUMF ¶ 19; Osborn Depo. p. 61:15-20.
[21] P's SUMF ¶ 21; Osborn Depo. p. 10:11-11:12.
[22] P's SUMF ¶ 22; Osborn Depo. p. 66:7-13-19.
[23] P's SUMF ¶ 23; Osborn Depo. p. 66:7-13-19.
[24] P's SUMF ¶ 20; Osborn Depo. p. 62:7-12.

## I.   The Plaintiffs are Entitled to Summary Judgment on the Element of Duty.

With respect to the element of duty, it is undisputed that Defendant Osborn owed a duty to the Decedent during the time in question to exercise due care and to follow traffic laws, including the statutory requirement that motorists such as Defendant Osborn provide at least three (3) feet of clearance when overtaking a bicycle on the road.

Duty is a question of law for the court to determine. *Rains*, 124 S.W.3d at 588. In Tennessee, the existence and scope of a defendant's duty may arise from the common law and/or by statute. *Id.* at 588-591.

Under the common law, every driver on any road in Tennessee owes a duty of care to others on or near the road to drive with due care. The Tennessee Pattern Jury Instructions describe this duty as follows:

> Each driver is under a duty to maintain a reasonably safe rate of speed; to keep the automobile [vehicle] under reasonable control; to keep a proper lookout under the existing circumstances; to see and be aware of what is in that driver's view; [and] to use reasonable care to avoid an accident [and to obey the traffic laws].

T.P.I.-CIVIL 5.0l, Duty of Driver, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 5.01 (2015 ed.).

Tennessee law also imposes a statutory duty on motorists, including the Defendant, with respect to the exact situation at issue in this case. Motorists like Defendant Osborn must provide bicyclists, like the Decedent, at least three (3) feet of clearance when overtaking a bicycle. [25]

On May 9, 2018, Tenn. Code Ann. § 55-8-175(c)(2) required as follows:

> The operator of a motor vehicle, when overtaking and passing a bicycle proceeding in the same direction on the roadway, shall leave a safe distance between the motor vehicle and the bicycle of not less than three feet (3') and shall maintain the clearance until safely past the overtaken bicycle.

This statutory requirement is known as "Jeff Roth and Brian Brown Bicycle Protection Act of 2007." Tenn. Code Ann. § 55-8-175(c)(1). Both Jeff Roth and Brian Brown were hit and killed

---

[25] P's SUMF ¶ 15; Tenn. Code Ann. § 55-8-175(c)(2); Osborn Depo. p. 69:4-15.

from passing motorists while bicycling. This statute was specifically enacted to to protect bicyclists like them, and like Megan Fitzgerald from being hit by motorists like Defendant Osborn.[26]

In his Answer, Defendant Osborn admits that he had a duty to other individuals on the road on May 9, 2018, including bicyclists such as Megan Fitzgerald, (1) to follow the traffic laws; and (2) to exercise due care to avoid causing injuries to others. Answer, ¶ 28. In his deposition, Defendant Osborn specifically agreed that he had a duty to provide a bicyclist such as Megan Fitzgerald at least three (3) feet when passing:

> Q: Having observed and passed hundreds of bicyclists on the road over the last decade in Williamson County in your motor vehicle, you were aware of the risk of failing to leave enough room for a bicyclist as you passed them. Correct?
>
> A: Yes. Three feet.
>
> Q: You're aware that you're required to provide three feet as you pass a bicyclist. Correct?
>
> A: Yes.
>
> Q: You were aware of that on May 9, 2018, and before that time. Correct?
>
> A: Yes.[27]

As a matter of law – and undisputed fact – Defendant Osborn owed a duty to the Decedent on May 9, 2018 to exercise due care to avoid causing the Megan Fitzgerald injuries, and this duty required the Defendant to provide the Megan Fitzgerald at least three (3) feet when he approached her bicycling while he was in his truck on Coleman Road. As such, this Court should enter summary judgment in favor of the Plaintiffs on the element of duty.

---

[26] P's SUMF ¶ 16; Osborn Depo. p. 70:10-15.
[27] Deposition of Osborn, p. 69:4-15 (emphasis added).

## II.    The Plaintiff is Entitled to Summary Judgment on the Element of Breach.

The evidence also supports only one conclusion as to the element of "breach" in this case. The Defendant failed to exercise due care as a matter of law – and undisputed fact – when he hit and killed Megan Fitzpatrick on May 9, 2018.

The Plaintiffs are entitled to summary judgment of the element of breach because (a) Defendant Osborn was negligent *per se* in violation of Tenn. Code Ann. § 55-8-175(c)(2) when he struck Megan Fitzgerald; and (b) Defendant Osborn admits he was responsible for causing Megan Fitzgerald's because he should have seen her bicycling and has no excuse for striking her.

### a.    The Defendant was Negligent *Per Se* (as a Matter of Law) because He Failed to Provide the Decedent at Least Three (3) Feet When Overtaking Her, in Violation Tenn. Code Ann. § 55-8-175(c)(2).

The doctrine of negligence *per se* "enables the courts to mold standards of conduct in penal statutes into rules of civil liability." *Rains,* 124 S.W.3d at 589. When a defendant is negligent *per se,* the defendant is "negligent as a matter of law." *Id.* "[A] person whose conduct is negligent *per se* cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances." *Id.* For the doctrine of negligence *per se* to apply, the following conditions must be present:

a.    There must be a causal connection between the statutory violation and the injury; and

b.    The plaintiff must be a person whom the law was intended to protect/benefit.

*Bennett v. Putnam County,* 47 S.W.3d 438 (Tenn. App. 2000); *Alex v. Armstrong,* 215 Tenn. 276, 385 S.W.2d 110 (1964).

Tenn. Code Ann. § 55-8-175(c)(2) satisfies these requirements because its requirement that motorists give bicyclists at least three (3) feet of clearance exists precisely to protect bicyclists like Megan Fitzgerald from the exact type of hazard and injury she ultimately sustained.[28]

---

[28] P's SUMF ¶ 16; Osborn Depo. p. 70:10-15.

Defendant Osborn is negligent as a matter of law because Tenn. Code Ann. § 55-8-175(c)(2) required him to give Megan Fitzgerald at least (3) feet of clearance when he approached her on Coleman Road on May 9, 2018,[29] but he failed to do so.[30]

### b. Defendant Osborn is Negligent as a Matter of Undisputed Fact because he Has No Excuse for his Conduct and Admits that He is Responsible for Her Death.

Defendant Osborn also agrees – as a matter of undisputed material fact – that he was responsible for Fitzgerald's death, including because he has no excuse for not seeing and not striking Megan Fitzgerald on May 9, 2018.

During his deposition, Defendant Osborn admitted that he is 100% responsible for Megan Fitzgerald's death.[31] Defendant Osborn was correct on this point.

Tennessee law recognizes a presumption that a motorist exercising reasonable care should be able to avoid a collision with a vehicle ahead of him/her unless that vehicle stops suddenly and unexpectedly. *Ewing v. Birthright*, 60 Tenn. App. 454, 460 (Tenn. Ct. App. 1969).

That was the situation in this case. Defendant Osborn approached Megan Fitzgerald from behind and struck her.[32] There were no extraordinary circumstances excusing this conduct.

Tennessee drivers have a duty "to see and be aware of what is in that driver's view." T.P.I.-CIVIL 5.01, Duty of Driver, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 5.01 (2015 ed.). Defendant Osborn breached this duty because he failed to see Megan Fitzgerald in his plain view before he ran her over.[33] He has no excuse for this,[34] including because nothing about the weather, road conditions or anything else outside of Osborn's control prevented or obstructed him from seeing Megan Fitzgerald on May 9, 2018 as he approached her and just ran her over.[35]

---

[29] P's SUMF ¶ 15; Tenn. Code Ann. § 55-8-175(c)(2); Osborn Depo. p. 69:4-15.
[30] P's SUMF ¶ 17; Osborn Depo. p. 70:16-22.
[31] P's SUMF ¶¶ 7-8; Osborn Depo. pp. 10:13-17; 63:15-17.
[32] P's SUMF ¶ 5; Answer ¶ 12.
[33] P's SUMF ¶ 11; Osborn Depo. pp. 23:10-14; 24:9-13.
[34] P's SUMF ¶ 9; Osborn Depo. p. 12:10-15.
[35] P's SUMF ¶ 12; Osborn Depo. pp. pp. 22:10-23:9, 23:10-14; 24:9-13.

Defendant Osborn could have and should have seen Megan Fitzgerald on the road and maneuvered his truck in a safe manner without striking her.[36] Instead, he took no action to try to avoid striking Megan Fitzgerald as he approached and ultimately ran her over.[37]

Even without the specific guidance of Tenn. Code Ann. § 55-8-175(c)(2), it remains clear from the Defendant Osborn's own admissions that he breached his duty to exercise reasonable care when he failed to see and ran over Megan Fitzgerald on May 9, 2018.[38]

### III.     The Plaintiff is Entitled to Summary Judgment on Causation.

This Court should enter summary judgment in favor of the Plaintiffs on the element of causation because Defendant Osborn admits that he caused Megan Fitzgerald's death.[39] He repeatedly admitted this in his Answer,[40] as well as in his deposition:

> Q.     You struck Megan Fitzgerald on Coleman Road on May 9, 2018 with your truck. Correct?
>
> A.     Yes.
>
> Q.     You don't deny that striking Megan Fitzgerald with your truck on May 9, 2018 caused her death. Correct?
>
> A. No, I don't deny that.[41]

There can be no dispute that causation was "proximate" because Defendant Osborn was specifically aware that motorists need to give bicyclists sufficient clearance so they are not injured in a collision.[42]

---

[36] P's SUMF ¶ 14; Osborn Depo. p. 56:9-57:10.
[37] P's SUMF ¶ 13; Osborn Depo. p. 32:22-33:3.
[38] P's SUMF ¶ 17; Osborn Depo. p. 70:16-22.
[39] P's SUMF ¶ 6; Answer, ¶¶ 5, 14, 16, 27, 31.
[40] Answer, ¶¶ 5, 14, 16, 27, 31.
[41] Osborn Depo. p. 17:12-18.
[42] P's SUMF ¶ 16; Osborn Depo. p. 70:10-15.

## IV. The Plaintiffs are Entitled to Summary Judgment on the Defendant Osborn's Comparative Fault Defense.

Defendant Osborn's Answer asserts comparative fault against Megan Fitzgerald. Answer, p. 5, ¶ 1. In support of this defense, Defendant summarily alleges: "Ms. Fitzgerald was riding a bike on a road unsuitable for bicycle traffic without appropriate safety equipment or clothing."

In his deposition, Defendant Osborn admitted that his comparative fault defense has no merit. Defendant Osborn testified that he does <u>not</u> blame Megan Fitzgerald "at all" for her death.[43] He admitted that he is 100% responsible and she is 0% responsible:

Q.  Do you take responsibility for what occurred?

A.  100%

Q.  You don't blame Megan Fitzgerald at all for what occurred, do you?

A.  No. Not at all.[44]

Defendant Osman admitted that Megan Fitzgerald was not doing anything wrong by bicycling on Coleman Road at the time, including the "manner she was doing so":

Q.  It's not your position that Megan Fitzgerald should not have been bicycling on Coleman Road at the time and in the manner she was doing so on May 9, 2018. Correct?

A.  No, I'm not saying she was doing anything wrong.

Q.  You don't blame Megan Fitzgerald at all for what occurred, do you?

A.  No. Not at all.[45]

Defendant Osborn also admitted that the Plaintiffs are not responsible "at all" for their daughter's untimely death.[46]

---

[43] P's SUMF ¶ 18; Osborn Depo. p. 61:15-20.
[44] P's SUMF ¶ 19; Osborn Depo. p. 61:15-20.
[45] P's SUMF ¶ 22-23; Osborn Depo. p. 66:7-13-19.
[46] P's SUMF ¶ 20; Osborn Depo. p. 62:7-12.

Regarding the specific allegation that Coleman Road was "unsuited" for bicycle traffic, Defendant Osborn disagreed in his deposition, admitting it was "entirely appropriate" for Megan Fitzgerald to be riding her bicycle on Coleman Road on May 9, 2018.[47]

Likewise, Defendant Osborn does not have any evidence to support a defense of comparative fault against Megan Fitzgerald based on a supposed failure to wear a helmet.[48]

Since no evidence supports Defendant Osborn's comparative fault defense as against the Decedent or the Plaintiffs, the Court should grant summary judgment in favor of the Plaintiffs on that issue. [49]

## CONCLUSION

For the foregoing reasons, the Plaintiffs, Marty Fitzgerald and Melissa Fitzgerald, respectfully request that this Court grant their Motion for Partial Summary Judgment and enter judgment in Plaintiffs' favor on the issue of Defendant Osborn's liability for their deceased daughter's wrongful death, including Defendant Osborn's comparative fault affirmative defense.

---

[47] P's SUMF ¶ 21; Osborn Depo. p. 10:11-11:12.
[48] P's SUMF ¶ 24-25.
[49] P's SUMF ¶ 20; Osborn Depo. p. 62:7-12.

Respectfully submitted,

Afsoon Hagh, #28393
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(T) 615.266-3333
(F) 615.266-0250
afsoon@cummingsmanookian.com

*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 22, 2019, a true and correct copy of this document was provided by U.S. Mail, postage pre-paid and facsimile to the following:

Mr. Steve Meisner
Brewer Krause Books & Chastain
545 Mainstream Drive
Nashville, Tennessee 37228
T: 615.630.7727
F: 615.256.8985

*Attorney for the Defendants*

Afsoon Hagh

14

FILED
WILLIAMSON COUNTY
CIRCUIT COURT

2019 JAN 22 PM 3:54

ENTERED_____

ORIGINAL

| | |
|---|---|
| MARTY FITZGERALD and MELISSA FITZGERALD, individually, as husband and wife, and on behalf of their deceased child, MEGAN FITZGERALD,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES WOODROW OSBORN and OSBORN ENTERPRISES, INC., II, and OSBORN ENTERPRISES, INC., III,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

NO. 2018-311
JURY DEMAND

COPY

---

### PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY AND COMPARATIVE FAULT

---

Pursuant to Tenn. R. Civ. P. 56.03, the Plaintiffs, Marty Fitzgerald and Melissa Fitzgerald, hereby submit this Statement of Undisputed Material Facts in support of their Motion for Partial Summary Judgment on the Issues of Liability and Comparative Fault.[1]

The following undisputed facts are material to Plaintiffs' entitlement to partial summary judgment on the issues of liability and Defendant Osborn's comparative fault defense:

    1) On May 9, 2018, Megan Fitzgerald was the seventeen (17) year-old daughter of Marty and Melissa Fitzgerald.

        <u>Source</u>: Answer, ¶ 1.

        <u>RESPONSE</u>:

---

[1] A copy of Defendant Osborn's deposition is attached hereto as **Exhibit 1**.

2) **On May 9, 2018, Megan Fitzgerald was riding her bicycle on the righthand side of a straight part of Coleman Road in Franklin, Williamson County, Tennessee.**

   <u>**SOURCE**</u>: Answer ¶ 13; Osborn Depo. p. 20:18-21:11.

   <u>**RESPONSE**</u>:

3) **There was nothing illegal, improper or inappropriate about Megan Fitzgerald riding a bicycle on Coleman Road in May of 2018.**

   <u>**SOURCE**</u>: Osborn Depo. p. 10:18-11:12.

   <u>**RESPONSE**</u>:

4) **On the same day and at the same time James Osborn was traveling in a truck the same direction (westbound) on Coleman Road on May 9, 2018.**

   <u>**SOURCE**</u>: Answer, ¶ 11.

   <u>**RESPONSE**</u>:

5) **Osborn approached Megan Fitzgerald from behand and struck her with his vehicle while she was on her bike.**

   <u>**SOURCE**</u>: Answer, ¶ 12; Osborn Depo. p. 17:12-18.

   <u>**RESPONSE**</u>:

6) **Megan Fitzgerald's death was caused by Defendant Osborn striking her with his truck.**

   <u>**SOURCE**</u>: Answer, ¶¶ 5, 14, 16, 27, 31; Osborn Depo. p. 17:12-18.

   <u>**RESPONSE**</u>:

7) **Osborn admits that he is 100% responsible for Megan Fitzgerald's death.**

   <u>**SOURCE**</u>: Osborn Depo. pp. 10:13-17; 63:15-17.

   <u>**RESPONSE**</u>:

2

8) During his deposition, Osborn testified as follows:

        Q.     You killed Megan Fitzgerald. Correct?

        A.     Yes.

        Q.     You are responsible for Megan Fitzgerald's death. Correct?

        A.     Yes.

*****

        Q.     Do you take responsibility for what occurred?

        A.     100%

<u>SOURCE</u>: Osborn Depo. p. 10:13-17; 63:15-17

<u>RESPONSE</u>:

9) Osborn admitted during his deposition that there was no excuse for his conduct that led to Megan Fitzgerald's death.

<u>SOURCE</u>: Osborn Depo. p. 12:10-15.

<u>RESPONSE</u>:

10) During his deposition, Osborn testified as follows:

        Q.     ...There is no excuse for your conduct that led to Megan Fitzgerald's death. Correct?

        A.     Yes.

<u>SOURCE</u>: Osborn Depo. p. 12:10-15.

<u>RESPONSE</u>:

11) Osborn states that he did not see Megan Fitzgerald on the road, but he admits that he "should" have seen her.

<u>SOURCE</u>: Osborn Depo. pp. 23:10-14; 24:9-13.

<u>RESPONSE</u>:

3

12) Nothing about the weather, road conditions or anything else outside of Osborn's control prevented or obstructed Defendant from seeing Megan Fitzgerald on May 9, 2018.

**SOURCE:** Osborn Depo. pp. 22:10-23:9, 23:10-14; 24:9-13.

**RESPONSE:**

13) Osborn took no action to try to avoid striking Megan Fitzgerald with his truck.

**SOURCE:** Osborn Depo. p. 32:22-33:3.

**RESPONSE:**

14) If Osborn had been paying attention and had seen Megan Fitzgerald, he could have passed her in a safe manner without striking her.

**SOURCE:** Osborn Depo. p. 56:9-57:10

**RESPONSE:**

15) When Osborn was approaching Megan Fitzgerald on her bicycle to pass her, Tennessee law *required* him to provide her at least three (3) feet.

**SOURCE:** Tenn. Code Ann. § 55-8-175(c)(2); Osborn Depo. p. 69:4-15.

**RESPONSE:**

16) The purpose of the requirement under Tennessee law for motorists to provide bicyclists at least three (3) feet is to protect the bicyclist against the risk of the motorist striking the bicyclist.

**SOURCE:** Osborn Depo. p. 70:10-15.

**RESPONSE:**

4

17) Defendant Osborn did not give Megan Fitzgerald three (3) feet of space as his truck passed and collided with her on May 9, 2018.

**SOURCE:** Osborn Depo. p. 70:16-22.

**RESPONSE:**

18) Defendant Osborn does not blame Megan Fitzgerald "at all" for her death.

**SOURCE:** Osborn Depo. p. 61:15-20.

**RESPONSE:**

19) During his deposition, Defendant Osborn testified as follows:

Q.  Do you take responsibility for what occurred?

A.  100%

Q.  You don't blame Megan Fitzgerald at all for what occurred, do you?

A.  No. Not at all.

**SOURCE:** Osborn Depo. p. 61:15-20.

**RESPONSE:**

20) Defendant Osborn does not blame the Plaintiffs "at all" for Megan Fitzgerald's death.

**SOURCE:** Osborn Depo. p. 62:7-12.

**RESPONSE:**

21) Coleman Road is not unsuitable for bicycle traffic.

**SOURCE:** Osborn Depo. p. 10:11-11:12.

**RESPONSE:**

5

22) Defendant Osman admitted that Megan Fitzgerald was not doing anything wrong by bicycling on Coleman Road at the time.

**SOURCE:** Osborn Depo. p. 66:13-19.

**RESPONSE:**

23) During his deposition, Osborn testified as follows:

> Q.     It's not your position that Megan Fitzgerald should not have been bicycling on Coleman Road at the time and in the manner she was doing so on May 9, 2018. Correct?
>
> A.     No, I'm not saying she was doing anything wrong.
>
> Q.     You don't blame Megan Fitzgerald at all for what occurred, do you?
>
> A.     No. Not at all.

**SOURCE:** Osborn Depo. p. 66:13-19.

**RESPONSE:**

24) Defendant Osborn does not have any information to believe that Megan Fitzgerald was not wearing a helmet on May 9, 2018.

**SOURCE:** Answer, ¶ 9.

**RESPONSE:**

25) Even if Megan Fitzgerald was not wearing a helmet on May 9, 2018, Defendant Osborn cannot say whether it would have affected the outcome in any way.

**SOURCE:** Osborn Depo pp. 64:16-65:9.

**RESPONSE:**

6

Respectfully submitted,

Afsoon Hagh, #28393
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(T) 615.266-3333
(F) 615.266-0250
afsoon@cummingsmanookian.com

*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 22, 2019, a true and correct copy of this document was provided by U.S. Mail, postage pre-paid and facsimile to the following:

Mr. Steve Meisner
Brewer Krause Books & Chastain
545 Mainstream Drive
Nashville, Tennessee 37228
T: 615.630.7727
F: 615.256.8985

*Attorney for the Defendants*

Afsoon Hagh

7

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

| | | |
|---|---|---|
| MARTY FITZGERALD and MELISSA FITZGERALD individually, as Husband and wife, and o/b/o their deceased child, MEGAN FITZGERALD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 2018-311 |
| v. | ) ) | (JURY DEMAND) |
| JAMES OSBORN, OSBORN ENTERPRISES, INC., II and OSBORN ENTERPRISES, INC., III, | ) ) ) ) | COPY |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Come now the Plaintiffs' and submit the following Responses to Defendants' Statement of Material Facts in support of their Motion for Partial Summary Judgment.

1.      This is a wrongful death action arising out of an automobile that occurred on May 9, 2018. (Complt. ¶¶ 1, 8-14.)

**RESPONSE:**

**Admitted.**

2.      Megan Fitzgerald ("Megan") was riding a bicycle on Coleman Road at the same time Defendant Osborn was traveling in the same direction heading toward his residence located at 3235 Kennard Springs Road in Franklin, Tennessee. (Complt. ¶¶ 2, 8-14; EXHIBIT 1 - Osborn Res. Interrog. No. 8.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

3.      Prior to the accident, Mr. Osborn was working in the morning, had lunch with his wife and was headed home for the day. (EXHIBIT 1 - Osborn Res. Interrog. No. 8.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

4.      At the time of the accident, Mr. Osborn was driving his personal vehicle, a Silverado pick-up truck registered and titled in his name. (EXHIBIT 7 – Title to Vehicle, Osborn Res. RFP; Plfs. Res. Request Admissions; Police Report.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

5.      In addition to Plaintiffs' claims for negligence and negligence *per se*, Plaintiffs also assert "recklessness and punitive damages" and that the "Osborn Enterprises" are "vicariously liable" for the conduct of Mr. Osborn.  In this regard, Plaintiff asserts the following:

> The Osborn Enterprises are vicariously liable for the negligent driving of their owner, director, agent, employee, and/or servant, Defendant James Osborn who was acting within the scope of his agency with the Osborn Enterprises at the time he struck Megan Fitzgerald.

> (Complt. ¶ 30.)

**RESPONSE:**

**Admitted.**

6.      Defendants deny Mr. Osborn was acting in the course and scope of his employment at the time of the accident. (Complt. ¶ 30.)

2

**RESPONSE:**

**Denied. The citation to the record does not support the purported fact.**

7.     In response to Defendant's Interrogatories, Plaintiffs stated the following:

Regarding the allegations in paragraph six (6) of your Complaint, please state every basis upon which you claim Osborn Enterprises, Inc. II and/or Osborn Enterprises, Inc., III is vicariously liable for the actions of James Osborn.

**ANSWER:**

James Osborn was acting within the course and scope of his employment at the time he struck Megan with his truck. This has been expressly confirmed by Erie Insurance on behalf of the Osborn Enterprises (including Honda of Cool Springs, the name under which it does business), who within days of the incident, began contacting us asking us to speak with them about Megan's death and to provide the Osborn Enterprises with Megan's confidential medical records in order to evaluate a settlement and mediation.

To our knowledge, the truck with which James Osborn struck Megan Fitzgerald was not owned by Osborn Enterprises, but by James Osborn individually. Erie Insurance has nevertheless repeatedly confirmed that James Osborn's act and conduct in striking Megan with his personal truck is a "covered event" under the Osborn Enterprises' commercial policy. Under a standard hired, non-owned vehicle, Commercial Policy or rider, James Osborn would only be covered by the Osborn Enterprises Commercial Policy if he had been acting in the course and scope at the time of the wreck. Erie Insurance, on behalf of Osborn Enterprises, has confirmed to our attorney that this was the case. This is an admission of vicarious liability on behalf of Osborn Enterprises.

(EXHIBIT 2 - Plf. Res. Interrog. No 30.)

**RESPONSE:**

**Admitted.**

8.     The Osborn Enterprises do business as "Honda of Cool Springs." (EXHIBIT 3-

Osborn Dep. 12:17-21.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

3

9.      Mr. Osborn owns 50% of the Osborn Enterprises.  (EXHIBIT 3- Osborn Dep. 12:22-25.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

10.     On the date of the accident, Mr. Osborn left work at approximately 11:30 a.m. to have lunch with his wife. (EXHIBIT 3 - Osborn Dep. 13:1-14:6-12.)

**RESPONSE:**

**Admitted.**

11.     Prior to the accident, Mr. Osborn left lunch at noon and drove from Cool Springs to his personal residence in Franklin, Tennessee. (EXHIBIT 3 - Osborn Dep. 15:6-16.)

**RESPONSE:**

**Denied. Mr. Osborn left lunch 15-20 minutes after 12. See, Osborn Depo.15:11-12.**

12.     After lunch on the date of the incident, Mr. Osborn's plans for the remainder of the afternoon consisted of house related activities. (EXHIBIT 3 - Osborn Dep. 15:13-17:11.)

**RESPONSE:**

**The Plaintiff does not have sufficient information to admit or deny, therefore it is denied.**

13.     Mr. Osborn was driving his personal vehicle to his residence when the incident occurred.  (EXHIBIT 1 - Osborn Res. Interrog. No. 15.)

**RESPONSE:**

**Admitted.**

14.     Tara Seaborn was a passenger in a vehicle behind Mr. Osborn before the accident. (EXHIBIT 4 - Seaborn Dep. 6-10.)

4

**RESPONSE:**

Denied. Tara Seaborn was a passenger in a vehicle behind another vehicle that was directly behind Mr. Osborn's truck. See, Seaborn Depo. 10:13-15.

15.     Ms. Seaborn testified all the vehicles traveling the speed limit, including the vehicle driven by Mr. Osborn. (EXHIBIT 4 - Seaborn Dep. 10:10-23.)

**RESPONSE:**

Objection – lack of foundation and improper lay opinion testimony under Tenn. R. Evid. 701. There are two methods of determining another car's speed: (1) clocking with a radar device; and (2) pacing. Pacing requires a trained motorist to follow a suspected speedster for a sufficient distance at a constant speed, and then using his/her own speedometer to estimate the speed of the violator. There is no foundation that Ms. Seaborn was employing either of these methods on the day in question, much less, employing them in a manner consistent with the predicates of Tenn. R. Evid. 702-703 for her opinion to be admissible.

16.     Mr. Osborn did not attempt to brake or swerve prior to the accident. (EXHIBIT 4 - Seaborn Dep. 11:14-12:24.)

**RESPONSE:**

Admitted.

17.     Megan was not wearing a helmet or other typical safety gear typically worn by "bicycle people." (EXHIBIT 4 - Seaborn Dep. 38:4-39:10.)

**RESPONSE:**

It is admitted Megan was not wearing a helmet. However, this fact is not material. The Defendant has not and cannot show how Megan's wearing or not wearing helmet would have affected whether Defendant Osborn ran her over, or otherwise somehow serves to excuse Defendant Osborn's role in causing Megan's death. Osborn Depo pp. 64:16-65:9. The Defendant has admitted that Megan's injuries were caused by the collision and has not introduced any medical proof that Megan would have survived being hit by a car that made no effort to brake if she had been wearing a helmet. Otherwise, the statement is impermissibly vague, and not supported by admissible record proof. The cited testimony is improper opinion testimony and, in any event, does not establish that Megan was not wearing any "other safety gear typically worn by 'bicycle people.'" Even if this fact could be established from the cited testimony, it would not be not material. The Defendant has not and cannot show how Megan's

5

wearing or not wearing some other unspecified "other safety gear" would have affected whether Defendant Osborn ran her over, or otherwise somehow serves to excuse Defendant Osborn's role in causing Megan's death.

18.     In observing Mr. Osborn's vehicle, Ms. Seaborn testified Mr. Osborn was not driving in any erratic or unusual manner, having no difficulties navigating his vehicle within his lane of traffic, did not cross over the center lane into oncoming traffic, veer off onto the shoulder of the road or otherwise behave in any unusual manner prior to the accident. (EXHIBIT 4 - Seaborn Dep. 40:3-25.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only. Ms. Seaborn testified that Defendant did not *appear* to be driving in an erratic or unusual manner from her vantage point. This fact is not material because it does not establish that the Defendant somehow complied with the standard of care applicable to him when he overtook and ran over Megan on the day in question.

19.     Ms. Seaborn testified Coleman Road was not suitable for bicycle traffic because, in her words:

It's curvy; there are no shoulders; there is not a bike lane; it's unpredictable how fast anyone would be going down that road; it's a side road; I've been, you know, passed by cars going way too fast; I drive on it all the time; there's no good shoulder; I mean, just no.

(EXHIBIT 4 - Seaborn Dep. 41:1-11.)

**RESPONSE:**

The Plaintiffs do not deny that Ms. Seaborn testified, in part, as Defendant block-quoted. However, Plaintiffs deny Defendant's characterization of this testimony as evidence that "Coleman Road was not suitable for bicycle traffic," including for the following reasons:

1. Any opinion by Ms. Coleman that the Coleman road was not suitable for bicycle traffic is improper opinion testimony.
2. Nothing about the road prevented the Defendant from seeing Megan Fitzgerald and not running her over on May 9, 2018. Osborn Depo. p. 22:21-23:1.

6

3. According to the Defendant himself, Coleman Road is not unsuitable for bicycle traffic. Osborn Depo. p. 10:11-11:12, 66:13-19.
4. Defendant has conceded that Megan Fitzgerald has a legal right to ride her bicycle on Coleman Road. Defendant's Response to P's SUMF ¶ 6.

20. Based on Ms. Seaborn's observations, there was no indication Mr. Osborn intentionally struck Megan. (EXHIBIT 4 - Seaborn Dep. 43:2-22.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only that Ms. Seaborn testified she did not believe Mr. Osborn intentionally struck Megan. However, this "fact" is neither admissible, nor material to Plaintiffs' Motion for Partial Summary Judgment.

21. Mr. Osborn admitted he made no attempt to pass Megan because he did not see her until just prior to impact - it was too late to avoid the collision. (EXHIBIT 3 - Osborn Dep. 24:14-18.)

**RESPONSE:**

It is denied that Mr. Osborn was not "overtaking and passing" Megan for purposes of Tenn. Code Ann. § 55-8-175(c)(2) when he approached her from behind and struck her on May 9, 2018, including because "Overtake" means "to come or catch up with in a course of motion," *Ringwald v. Beene*, 92 S.W.2d 411, 413 (Tenn. 1935), and "Pass" means "to move in a path so as to approach and continue beyond something."[1] Defendant Osborn admitted that he did not comply with Tenn. Code Ann. § 55-8-175(c)(2):

Mr. Manookian:    You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct?

Mr. Osborn:    That is correct. I didn't.[2]

22. Mr. Osborn did not attempt to overtake and pass Megan. (EXHIBIT 3 - Osborn Dep. 24:14-18.)

---

[1] Merriam Webster's Dictionary, attached as Exhibit 1 hereto.
[2] Osborn Depo, p. 70:16-22.

7

**RESPONSE:**

It is denied that Mr. Osborn was not "overtaking and passing" Megan for purposes of Tenn. Code Ann. § 55-8-175(c)(2) when he approached her from behind and struck her on May 9, 2018, including because "Overtake" means "to come or catch up with in a course of motion," *Ringwald v. Beene*, 92 S.W.2d 411, 413 (Tenn. 1935), and "Pass" means "to move in a path so as to approach and continue beyond something."[3] Defendant Osborn admitted that he did not comply with Tenn. Code Ann. § 55-8-175(c)(2):

| Mr. Manookian: | You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct? |
| --- | --- |
| Mr. Osborn: | That is correct. I didn't.[4] |

23.    Mr. Osborn could not testify why he did not see Megan. (EXHIBIT 3 - Osborn Depo. 23:10-18.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

24.    Mr. Osborn noted, however, that there was a strong sun glare on his windshield that may have affected his ability to see. (EXHIBIT 3 - Osborn Dep. 21:25-22:8; 65:11-23.)

**RESPONSE:**

Denied. Defendant Osborn rejected the notion that he could not see Megan Fitzgerald due to it being too bright out. Osborn Depo, p. 23:10-14.

25.    Mr. Osborn surrendered his vehicle and gave a written statement to the police following the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 6.)

**RESPONSE:**

Denied.

---

[3] Merriam Webster's Dictionary, attached as Exhibit 1 hereto.
[4] Osborn Depo, p. 70:16-22.

8

26.     Prior to the incident, he had only been involved in two (2) motor vehicle accidents: one in 1999 and the second approximately five (5) years prior to the accident at issue. (EXHIBIT 1 - Osborn Res. Interrog. No. 9.)

**RESPONSE:**

**Objection, this fact is improper character evidence. *See* Tenn. R. Evid. 404. Further, denied as stated. *See*, Def's Exhibit 1: Mr. Osborn only recalls having been involved in two motor vehicle incidents prior to the incident that is the subject of this action. Additionally, this fact is not material because it does not mean that the Defendant was not negligent on May 9, 2018.**

27.     There is no evidence Mr. Osborn consumed alcohol prior to the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 11.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

28.     Mr. Osborn had no prior difficulties operating the vehicle he was driving on the date of the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 14.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

29.     There is no evidence Mr. Osborn was talking or texting on his phone at the time the incident occurred. (EXHIBIT 1 - Osborn Res. Interrog. 19-20.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

30.     No criminal charges have been brought against Mr. Osborn arising out of the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 27.)

9

**RESPONSE:**

Denied. *See*, Defs' Exhibit 1: The criminal investigation is still pending.

31. Coleman Road is dangerous for bicyclists because it is a hilly, curvy, country road with no shoulder for bicycle traffic. (EXHIBIT 3 - Osborn Dep. 9:6-25; EXHIBIT 4 - Seaborn Dep. 19:8-18.)

**RESPONSE:**

Denied.

32. Coleman Road is simply not suitable for bicycle traffic. (EXHIBIT 4 - Seaborn Dep. 41:1-11.)

**RESPONSE:**

Denied, including for the following reasons:

1. Any opinion by Ms. Coleman that the Coleman road was not suitable for bicycle traffic is improper opinion testimony.
2. Nothing about the road prevented the Defendant from seeing Megan Fitzgerald and not running her over on May 9, 2018. Osborn Depo. p. 22:21-23:1.
3. According to the Defendant himself, Coleman Road is not unsuitable for bicycle traffic. Osborn Depo. p. 10:11-11:12, 66:13-19.
4. Defendant has conceded that Megan Fitzgerald has a legal right to ride her bicycle on Coleman Road. Defendant's Response to P's SUMF ¶ 6.

33. Megan's parents were surprised she had gone so far on Coleman Road. (EXHIBIT 5 - Melissa Fitzgerald Dep. 19:17-24; EXHIBIT 6 - Marty Fitzgerald Dep. 36-40.)

**RESPONSE:**

This is not a material fact. The referenced testimony is not supported by the cited depositions; however, Melissa Fitzgerald testified at 19:12: "I was surprised she had gone that far."

34. Megan was not an avid bicyclist. (EXHIBIT 5 - Melissa Fitzgerald Dep. 19:17-24; EXHIBIT 6 - Marty Fitzgerald Dep. 36-40.)

10

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only. This is not a material fact, including because the issue is that Defendant did not see the Decedent and ran her over from behind. Megan Fitzgerald was not responsible for her death because she rode her bicycle without being an "avid bicyclist."

35.   At the time of the accident, Megan was not riding as close as possible to the right side of the road and was not wearing a safety helmet or appropriate clothing to warn others of her presence on the road. (EXHIBIT 3 - Osborn Dep. 27:14-16; 31:6-15; 61:23-62:6; EXHIBIT 4 - Seaborn Dep. 16:12-16; 38:13-29:4; EXHIBIT 5 - Melissa Fitzgerald Dep. 8:17-25; EXHIBIT 6 - Marty Fitzgerald Dep. 83:13-16.)

**RESPONSE:**

It is admitted that Megan was not wearing a helmet. All other facts are denied because they are not supported by the cited testimony. Megan Fitzgerald was riding her bicycle in the middle of the day. There is no evidence about clothing she should have been wearing to make herself more visible in those conditions. Defendant Osborn's testimony that Megan was not riding as close as possible to the right side of the road is negated by his claim that he did not see her until he struck her. Osborn Deposition, p. 54:20-55:3.

11

Respectfully submitted,

Afsoon Hagh, B.P.R. 028393
45 Music Square West
Nashville, Tennessee 37203
(615) 549-5519 telephone
(615) 266-0250 facsimile
afsoon@cummingsmanookian.com
*Attorney for the Plaintiffs*

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the Plaintiffs' Responses to Defendants' Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment has been served by e-mail and facsimile upon the following on this 19th day of March, 2019:

**STEVEN J. MEISNER**
**CAROLINE C. MILLER**
Attorney for James Osborn,
Osborn Enterprises, Inc., II and Osborn Enterprises, Inc., III
**BREWER KRAUSE BROOKS &**
**CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228-1209
E-mail: smeisner@bkblaw.com

AFSOON HAGH

13

# Definition of pass

------------------------------------------------------------

🕸 merriam-webster.com/dictionary/pass

## pass

<u>verb</u>
\ 'pas 🔊 \
passed; passing; passes

(Entry 1 of 4)

<u>intransitive verb</u>

1

2a : to go away : <u>DEPART</u> the fright passes almost immediately— Fred Majdalany
b : <u>DIE</u> —often used with *on* Her parents have passed on.
3a : to move in a path so as to approach and continue beyond something : move past
especially : to move past another vehicle going in the same direction glowered at the
other driver as we passed

b : to run the normal course
—used of time or a period of time the hours pass quickly

4a : to go or make one's way through

allow no one to pass

b : to go uncensured, unchallenged, or seemingly unnoticed

let the remark pass

5 : to go from one quality, state, or form to another

passes from a liquid to a gaseous state

6a : to sit in inquest (see <u>INQUEST sense 1</u>) or judgment
b(1) : to render a decision, verdict, or opinion

the court passed on the legality of wiretapping

(2) : to become legally rendered

judgment passed for the plaintiff

> **EXHIBIT**
> **1**

7 : to go from the control, ownership, or possession of one person or group to that of another

the throne passed to the king's son title passes to the buyer upon payment in full

8a : <u>HAPPEN</u>, <u>OCCUR</u> commenting freely on the transactions as they pass— W. L. Sperry
b : to take place or be exchanged as or in a social, personal, or business interaction

words passed

9a : to become approved by a legislature or body empowered to sanction or reject

the proposal passed

b : to undergo an inspection, test, or course of study successfully

took the examination and passed

10a : to serve as a medium of exchange

b : to be accepted or regarded

drivel that passes for literature

c : to identify oneself or be identified as something one is not

tried to pass as an adult Mom could pass as my sister

11a obsolete : to make a pass (see <u>PASS entry 3 sense 5</u>) in fencing
b : to throw or hit a ball or puck to a teammate
—often used with *off* took the ball and quickly passed off to a teammate

12a(1) : to decline to bid, double, or redouble in a card game

Her bridge partner passed.

(2) : to withdraw from the current poker pot

b : to let something go by without accepting or taking advantage of it

thanks for the offer, but I'll pass —often used with *on* passed on the cheesecake

<u>transitive verb</u>

1 : to go beyond: such as

a : <u>SURPASS</u>, <u>EXCEED</u> passes all expectations
b : to advance or develop beyond

Case 3:20-ap-90002    Doc 217-6    Filed 08/12/22    Entered 08/12/22 18:28:11    Desc
Exhibit 6    Page 40 of 78

c : to go past (one moving in the same direction)

passed a slower moving car

2a : to go by : proceed or extend beyond

pass the school on their way to work

(2) : to omit a regularly scheduled declaration and payment of (a dividend)

3a : to go across, over, or through : CROSS
b : to live through (something, such as an experience or peril) : UNDERGO
c : to go through (something, such as a test) successfully

passed the final exams of his courses

4a : to secure the approval of

the bill passed the Senate

b : to cause or permit to win approval or legal or official sanction

pass a law

c : to give approval or a passing grade to

pass the students
5a : to let (time or a period of time) go by especially while involved in a leisure activity

I'll read to pass the time

b : to let go unnoticed : OVERLOOK, DISREGARD his commander quietly passed his likes or dislikes— George Meredith
6a : PLEDGE had passed his word that he would repay the debt
b : to transfer the right to or property in

pass title to a house

7a : to put in circulation

pass bad checks

b(1) : to transfer or transmit from one to another

pass the salt passing the savings on to customers

(2) : to relay or communicate (something, such as information) to another

c : to cause or enable to go : <u>TRANSPORT</u> waited till the soldiers and wounded were all passed over— Walt Whitman

d : to throw or hit (a ball or puck) especially to a teammate

—often used with *off* passed the ball off to his teammate

8a : to pronounce (something, such as a sentence or opinion) especially judicially

passed sentence on the convicted man

b : <u>UTTER</u> passed a cutting remark

9a : to cause or permit to go past or through a barrier

passed the detectives to view the crime scene

b : to move or cause to move in a particular manner or direction

passed my hand over my face pass the rope through the loop

c : to cause to march or go by in order

pass the troops in review

10 : to emit or discharge from a bodily part and especially the bowels

11a : to give a base on balls to

passed two batters

b : to hit a ball past (an opponent) in a game (such as tennis)

pass muster
: to gain approval or acceptance

His cooking could *pass muster* in an expensive French restaurant.

pass the buck
: to shift a responsibility to someone else

Stop trying to *pass the buck* and take responsibility for what you did.

pass the hat
: to take up a collection for money

*passed the hat* for families affected by the disaster

pass the time of day

: to exchange greetings or engage in pleasant conversation

*passed the time of day* with friends in the park

pass

<u>noun (1)</u>
Definition of *pass* (Entry 2 of 4)

1 : a means (such as an opening, road, or channel) by which a barrier may be <u>passed</u> or access to a place may be gained especially : a low place in a mountain range
2 : a position to be held usually against odds

pass

<u>noun (2)</u>
Definition of *pass* (Entry 3 of 4)

1 : <u>REALIZATION</u> brought his dream to pass

3 : a usually distressing or bad state of affairs

what has brought you to such a pass?

4a : a written permission to move about freely in a place or to leave or enter it

b : a written leave of absence from a military post or station for a brief period

c : a permit or ticket allowing free transportation or free admission

5 archaic : a thrust or lunge in fencing

6a : a transference of objects by sleight of hand or other deceptive means

b : a moving of the hands over or along something

7 archaic : an ingenious sally (as of wit)

8 : the passing of an examination or course of study also : the mark or certification of such passing

9 : a single complete mechanical operation also : a single complete cycle of operations (as for processing, manufacturing, or printing)

10a(1) : a transfer of a ball or a puck from one player to another on the same team

(2) : a ball or puck so transferred

b : <u>PASSING SHOT</u>
11 : <u>BASE ON BALLS</u>

12 : an election not to bid, bet, or draw an additional card in a card game

13 : a throw of dice in the game of craps that wins the bet for the shooter

14 : a single _passage_ or movement (as of an airplane) over a place or toward a target
b : a sexually inviting gesture or approach

16 : PASE
pass

abbreviation
Definition of _pass_ (Entry 4 of 4)

passenger

## Other Words from _pass_

Verb

passer noun

## Synonyms for _pass_

Synonyms: Verb

Visit the Thesaurus for More 🔊

## Examples of _pass_ in a Sentence

Verb

The boat was too tall to _pass_ beneath the bridge.
A flock of geese were _passing_ overhead.
See More

## First Known Use of _pass_

Verb

13th century, in the meaning defined at intransitive sense 1

Noun (1)

14th century, in the meaning defined at sense 1

Noun (2)

15th century, in the meaning defined at sense 1

# History and Etymology for *pass*

**Verb and Noun (2)**

Middle English, from Anglo-French *passer*, from Vulgar Latin *\*passare*, from Latin *passus* step — more at pace

**Noun (1)**

Middle English, from Anglo-French *pas*, from Latin *passus*

## Learn More about *pass*

**From the Editors at Merriam-Webster**

### Keeping Up with 'Passed' and 'Past'

**More Definitions for *pass***

pass

*verb*

## English Language Learners Definition of *pass*

: to move past someone or something

: to move past someone or something that is moving more slowly in the same direction

: to move or go into or through a particular place

See the full definition for *pass* in the English Language Learners Dictionary

pass

verb

\ 'pas _\

passed; passing

## Kids Definition of *pass*

(Entry 1 of 3)

1 : MOVE entry 1 sense 1, PROCEED The airplane *passed* out of sight.

7/10

2 : to go away

The pain will soon *pass*.

3 : to go by or move past

*Pass* that car.

4 : to go or allow to go across, over, or through

They let me *pass*.

5 : to transfer or throw to another person

Please *pass* the salt. *Pass* me the football!

6 : to go successfully through an examination or inspection

7 : to cause or permit to elapse

We *passed* the time playing cards.

8 : <u>HAPPEN sense 1</u> The day *passed* without any problems.
9 : to move from one place or condition to another

The business has *passed* to new ownership.

10 : to be or cause to be approved

The Senate *passed* the bill.

11 : to be or cause to be identified or recognized

She tried to *pass* for an expert.

12 : <u>DIE entry 1 sense 1</u>
pass away
: <u>DIE entry 1 sense 1</u>
pass out
: to become unconscious : <u>FAINT</u>
pass up
: to let go by : <u>REFUSE</u> It was an offer too good to *pass up*.
Other Words from *pass*

passer noun

pass

<u>noun</u>
Kids Definition of *pass* (Entry 2 of 3)

1 : an opening or way for going along or through

2 : a gap in a mountain range

pass

<u>noun</u>
Kids Definition of *pass* (Entry 3 of 3)

1 : the act or an instance of moving

The plane made two *passes* over the area.

2 : the act or an instance of throwing or transferring (as a ball) to another person

3 : a written permit to go or come

I got some movie *passes* for my birthday.

4 : <u>SITUATION sense 1</u> Things have come to a strange *pass.*
pass

<u>transitive verb</u>
\ 'pas  \

# Medical Definition of *pass*

pass

<u>intransitive verb</u>

# Legal Definition of *pass*

1a : to issue a decision, verdict, or opinion

the Supreme Court passed on a statute

b : to be legally issued

judgment passed by default

2 : to go from the control, ownership, or possession of one person or group to that of another

title passes to the buyer

<u>transitive verb</u>

1 : to omit a regularly scheduled declaration and payment of (a dividend)

2a : to get the approval of

the bill passed the House

b : to give approval or legal sanction to

the House passed the bill

3 : to transfer the right to or interest in

the sale passes the title to the goods

4 : to put in circulation

pass bad checks — compare <u>UTTER</u>
5 : to pronounce (as a sentence or judgment) judicially

Comments on *pass*

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

<u>Merriam-Webster unabridged</u>

MARTY FITZGERALD and MELISSA
FITZGERALD, individually, as husband
and wife, and on behalf of their deceased
child, MEGAN FITZGERALD,

    Plaintiffs,

v.

JAMES WOODROW OSBORN and
OSBORN ENTERPRISES, INC., II, and
OSBORN ENTERPRISES, INC., III,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
**WILLIAMSON COUNTY**

2019 MAR 19 PM 2: 24

ENTERED

**NO. 2018-311**
**JURY DEMAND**

COPY

---

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY AND COMPARATIVE FAULT

---

The Plaintiffs, Marty Fitzgerald and Melissa Fitzgerald, by and through undersigned

counsel, respectfully submit this Reply in support of their Motion for Partial Summary Judgment

on the Issues of Liability and Comparative Fault.

### ARGUMENT

**I.**     **Plaintiffs are Entitled to Partial Summary Judgment on the Issue of Liability.**

The Plaintiffs are entitled to partial summary judgment on the issue of liability because

there are no genuine disputes of fact material to the issues of breach of duty or causation. As a

matter of law and/or undisputed fact, Defendant Osborn breached a duty and caused Megan

Fitzgerald's death when he approached her from behind and drove into her without braking.

1

### a. The Plaintiffs are Entitled to Summary Judgment on the Issue of Breach of Duty.

#### i. The Defendant was *Per Se* Negligence because his Undisputed Conduct Violated Tenn. Code Ann. § 55-8-175(c)(2) as a Matter of Law.

A defendant is negligent *per se*, and "negligent as a matter of law," when the defendant's conduct violates a statute that existed to protect the plaintiff/decedent from suffering the manner and type of harm for which the plaintiff is seeking redress.

The Plaintiffs' Motion for Partial Summary Judgment detailed the reasons that the "Jeff Roth and Brian Brown Bicycle Protection Act of 2007" existed to protect Megan Fitzgerald from the exact manner and type of injury she sustained and to proscribe the Defendants undisputed conduct at issue in this case.

Tenn. Code Ann. § 55-8-175(c)(2) provides: "The operator of a motor vehicle, when overtaking and passing a bicycle proceeding in the same direction on the roadway, shall leave a safe distance between the motor vehicle and the bicycle of not less than three feet (3') and shall maintain the clearance until safely past the overtaken bicycle."

In his Response, the Defendant concedes: "the 'Jeff Roth and Brian Brown Bicycle Protection Act of 2007' was enacted to protect bicyclists from accidents that occur when vehicles do not give adequate space while attempting to pass bicyclists on the road." Response, pp. 8-9. But incredibly, the Defendant claims he did not violate Tenn. Code Ann. § 55-8-175(c)(2) because he did not see Megan when he approached her from behind and drove into her. Response, p. 9. The Defendant claims this means he did not attempt to "overtake and pass" Megan, such that Tenn. Code Ann. § 55-8-175(c)(2) does not apply. This argument cannot be supported by either the plain language or intent of Tenn. Code Ann. § 55-8-175(c)(2).

2

Statutory interpretation is an issue of law appropriate for summary judgment. When interpreting a statute, courts must apply its "plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). "If the language of the statute is ambiguous, the court must examine the entire statutory scheme and the relevant legislative history to ascertain and give effect to the legislative intent." *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003).

"Overtake" means "to come or catch up with in a course of motion." *Ringwald v. Beene*, 92 S.W.2d 411, 413 (Tenn. 1935). "Pass" means "to move in a path so as to approach and continue beyond something."[1]

It is apparent that the Defendant Osborn "overtook and passed" Megan Fitzgerald on May 9, 2018 because it is undisputed both Defendant and Megan were traveling in the same direction on the same stretch of road when the Defendant approached, hit, and continued *past* her in his vehicle. P's SUMF ¶¶ 4-5. To his credit, Defendant Osborn admitted that he did not comply with Tenn. Code Ann. § 55-8-175(c)(2) in his deposition:

| | |
|---|---|
| Mr. Manookian: | You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct? |
| Mr. Osborn: | That is correct. I didn't.[2] |

### ii. The Defendant Has Not Produced Any Admissible Evidence Demonstrating a Genuine Dispute of Fact on the Breach of Duty Issue.

The Plaintiffs are also entitled to summary judgment on the breach of care issue because reasonable minds cannot disagree that Defendant Osborn breached his common law duty to

---

[1] Merriam Webster's Dictionary, attached as Exhibit 1 hereto.
[2] Osborn Depo, p. 70:16-22.

3

exercise reasonable care to avoid causing injuries to others when driving his car on Coleman Road on May 9, 2018.

The Defendant fails to address that Tennessee law recognizes a presumption that a motorist exercising reasonable care should be able to avoid a collision with a vehicle ahead of him/her unless that vehicle stops suddenly and unexpectedly, *Ewing v. Birthright*, 60 Tenn. App. 454, 460 (Tenn. Ct. App. 1969), and fails to offer evidence that might cause a reasonable fact-finder to determine that Defendant was exercising reasonable care.

Tennessee drivers have a duty "to see and be aware of what is in that driver's view." T.P.I.-CIVIL 5.01, Duty of Driver, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 5.01 (2015 ed.). Defendant Osborn breached this duty because he should have, but did not see Megan Fitzgerald in his plain view before he ran her over:

> Mr. Manookian: I'm asking you whether or not you concede that you should have seen [Megan Fitzgerald on her bicycle on May 9, 2018.
>
> Mr. Osborn: I probably should have seen her, but I didn't.[3]

The Defendant attempts to obfuscate this straightforward and on-point testimonial admission by intimating that the road and possible "glare" on his windshield excused Defendant Osborn's failure to "see and be aware of" Megan Fitzgerald bicycling on the road in front of him, but the record evidence simply is not supportive.

Defendant Osborn testified that nothing about the road itself interfered with him seeing Megan Fitzgerald on May 9, 2018:

> Mr. Manookian: And there was nothing about the road, itself, that would have interfered with you seeing Megan Fitzgerald on her bicycle on May 9, 2018. Correct?

---

[3] Osborn Depo. p. 24:9-1 (emphasis added). In his Response to P's SUMF ¶ 11, Defendant misstates the record testimony, claiming "Mr. Osborn could not say one way or another whether he 'should' have seen Megan Fitzgerald."

4

Mr. Osborn:     I don't think the road was a factor in me not seeing her.[4]

Mr. Osborn also directly testified that he had "no explanation" for why he did not see Megan Fitzgerald before striking her, and he specifically declined to testify that he did not see Megan due to excessive brightness or glare:

Mr. Manookian:     Is it your testimony that it was actually too bright on May 9, 2018?

Mr. Osborn:     I really don't know why I didn't see her quicker than I did. I don't have an explanation for that. I don't know.[5]

### b. The Plaintiffs are Entitled to Summary Judgment on the Issue of Causation.

The Plaintiffs are entitled to partial summary judgment on the issue of causation because the Plaintiffs have presented uncontroverted proof that the Defendant's conduct caused Megan Fitzgerald's death, and the Defendant has not identified or produced any record evidence demonstrating a genuine dispute of fact material to this issue.

Plaintiffs' Undisputed Material Fact #6 was that "Megan Fitzgerald's death was caused by Defendant Osborn striking her with his truck." Plaintiffs supported this statement with direct judicial admissions from Defendants' Answer (*see e.g.*, ¶5 "Defendants admit Ms. Fitzgerald died because of the accident"), as well as an on-point testimonial admission from Defendant Osborn's deposition:

Q.     You struck Megan Fitzgerald on Coleman Road on May 9, 2018 with your truck. Correct?

A.     Yes.

Q.     You don't deny that striking Megan Fitzgerald with your truck on May 9, 2018 caused her death. Correct?

A.     No, I don't deny that.[6]

---

[4] Osborn Depo. p. 22:21-23:1.
[5] Osborn Depo. p. 23:10-14.
[6] Osborn Depo. p. 17:12-18.

5

Responding to SUMF #6, Defendant admitted: "Defendant admits the accident caused Megan's injuries and death," but then purported to qualify it with a series of non-responsive and unsupported statements relating to to the independent issue of Defendant's comparative fault affirmative defense. While this Court should also grant partial summary judgment in favor of the Plaintiffs on the Defendant's comparative fault defense (for the reasons discussed in Section II below), a potential factual issue as to Defendant's comparative fault affirmative defense does not impede Plaintiffs' entitlement to judgment on the causation element of their prima facie case.

## II. Plaintiffs are Entitled to Partial Summary Judgment on Defendant's Comparative Fault Defense.

Since the Defendant has the burden to establish the elements of his comparative fault affirmative defense at trial, the Defendant must "put up or shut up" by producing sufficient evidence to support each element of his comparative fault defense. Tenn. Code Ann. § 20-16-101. It is not sufficient for the Defendant to simply challenge the sufficiency of Plaintiffs' efforts to negate that defense. *See id.*

The Plaintiff is entitled to partial summary judgment because the Defendant directly admitted in his deposition that he is 100% at fault for Megan Fitzgerald's death, and the Defendant has not produced evidence demonstrating that anything Megan Fitzgerald caused the Defendant to strike and kill her with his vehicle.

During his deposition, Defendant Osborn testified that he was 100% responsible for striking and killing Megan Fitzgerald:

Q.    Do you take responsibility for what occurred?

A.    100%

Q.    You don't blame Megan Fitzgerald at all for what occurred, do you?

6

A.    No. Not at all.[7]

This proof alone satisfied Plaintiffs' initial burden of production and required Defendant Osborn to come forward with sufficient evidence to support every element of his comparative fault defense against Megan Fitzgerald.

The Defendant's Response to Plaintiff's Motion for Partial Summary Judgment does not establish any evidentiary basis upon which a reasonable fact-finder could apportion fault to Megan Fitzgerald.

Defendant first argues that Megan should be blamed for the Defendant striking and killing her because Coleman Road was "simply not suitable for bicycle traffic." This comparative fault defense has no merit in light of Defendant's admission that Megan had a legal right to ride her bicycle on Coleman Road as a matter of law. Defendant's Response to P's SUMF, ¶ 3. A motorist who approaches and runs over a bicyclist cannot assert comparative fault against that bicyclist simply for being on a road when it is lawful for the bicyclist to use that road:

> Two other fundamental principles defeat Mills' alternative ground for the submission of a comparative fault instruction. By statute, a bicyclist in Iowa is subject to the rules of the road and "has all the rights and duties . . . applicable to the driver of a vehicle." Iowa Code § 321.234(2). Mills attempts to fault Vasconez for riding on a county road instead of a bike path, riding alone (thereby reducing his visibility), and riding in a westerly direction near sunset. However none of this conduct is illegal. And ascribing negligence to such choices would be ludicrous if applied to any other motorist. Given the legislative policy implicit in section 321.234(2), we find no basis for the claim that such choices constitute negligence for a bicyclist.

> Second, Vasconez was entitled to assume that others using the road would obey the law until the circumstances reasonably revealed otherwise. Iowa R. App. P. 6.14(6)(i). Under the law, Vasconez was entitled to assume that a vehicle approaching him from behind would see him and respond appropriately. Mills testified that there were no vehicles coming toward her in the opposite lane that would have impeded her ability to easily pass Vasconez, had she seen him. Under these facts, Vasconez had no reason—or duty—to take evasive action.

---

[7] P's SUMF ¶ 19; Osborn Depo. p. 61:15-20.

7

The district court aptly summed up the record and the law this way:

The only evidence is that plaintiff was riding a bicycle on a road and that's all. There is no evidence that the plaintiff did anything other than ride his bike on a sunny day in a westerly direction. That, to me, does not present substantial evidence on which to base [a] comparative fault instruction with respect to liability.

We agree with the court's conclusion and, accordingly, reject Mills' claim for reversal on this ground.

*Vasconez v. Mills*, 651 N.W.2d 48, 52–53 (Iowa 2002).

As in *Vasconez*, Megan Fitzgerald had the legal right to ride her bicycle on Coleman Road. Megan not only had the right to be on Coleman road, approaching motorists were required to give her at least three (3) feet clearance when overtaking and passing. Tenn. Code Ann. § 55-8-175(c)(2). As such, it was even more reasonable for Megan Fitzgerald to assume that a vehicle approaching her from behind would see her and respond appropriately.

Additionally, Defendant Osborn conceded that nothing about the road itself prevented him from seeing Megan Fitzgerald and not running her over:

| Mr. Manookian: | And there was nothing about the road, itself, that would have interfered with you seeing Megan Fitzgerald on her bicycle on May 9, 2018. Correct? |
| Mr. Osborn: | I don't think the road was a factor in me not seeing her.[8] |

Defendant also argues that Megan can be blamed for the Defendant striking and killing her on the basis that Megan was "not wearing appropriate safety clothing to alert vehicle operators of her presence on the road." This argument has absolutely no merit, including because Megan was riding her bicycle in the middle of the day. While bike riders might, for example, wear reflective clothing when riding in the dark, the Defendant has not and cannot identify what clothing Megan

---

[8] Osborn Depo. p. 22:21-23:1.

8

had a duty to wear during the middle of the day on May 9, 2018 to alert the Defendant to her presence, so that he would not strike and kill her with his vehicle.

Finally, while the Defendant argues in his brief that Megan can be blamed for the Defendant striking and killing her because she was not wearing a helmet, no evidence supports this defense. The Defendant has not and cannot show how Megan's wearing or not wearing a helmet would have affected whether Defendant Osborn ran her over in his vehicle. The Defendant conceded that he could not say one way or the other whether wearing a helmet would have affected the outcome for Megan in any way. P's SUMF ¶ 25. The Defendant has not introduced any medical proof that Megan would have survived being hit by a car. The Defendant's testimony that a helmet "may have" changed the outcome is not admissible and not sufficient to establish a comparative fault defense blaming Megan for her death.

### III.  Plaintiffs' Motion for Partial Summary Judgment Should Not be Denied or Postponed Due to Tenn. R. Civ. P. 56.07.

The Plaintiffs' Motion for Partial Summary Judgment should not be denied or postponed due to a claimed need for additional discovery because the Defendant has not shown a specific inability to "present by affidavit facts essential to justify the opposition" in the manner required by Tenn. R. Civ. P. 56.07.

Once a movant files a properly-supported motion for summary judgment, the non-moving party "must set forth *specific facts* showing that there is a genuine issue of material fact for trial." *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993) (emphasis in original). The non-moving party must identify *specific facts* that are (a) genuinely disputed and (b) material to resolution of each element of liability. TENN. R. CIV. P. 56.04. The Defendant *cannot* rely on the pleadings to show these facts are genuinely disputed, but must either produce affidavit testimony, or explain why

9

additional targeted discovery is necessary to substantiate those specific facts. *See Byrd*, 847 S.W.2d at 210-211; TENN. R. CIV. P. 56.07.

Under Tenn. R. Civ. P. 56.07, a non-moving party has the burden to "explain[] the necessity for further discovery." *McCarley v. West Quality Food Service*, 960 SW 2d 585, 588 (Tenn.1998). Tennessee and federal courts recognize that an opposition to summary judgment based on Rule 56.07, or its federal equivalent, Rule 56(f), must *affirmatively* identify the *specific* facts that a party will substantiate through discovery and explain how such discovery will ultimately permit the party to create a genuine issue of disputed *material* fact:

> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where, as here, a party fails to carry his burden under Rule 56(f), postponement of a ruling on a 357*357 motion for summary judgment is unjustified.

*Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F. 2d 289, 297 (8th Cir. 1975). The non-moving party must "identify what, if any, facts [a]re within [another party's] exclusive control and how, if at all, discovery would assist them in bringing those facts to light." *Id.*

An affidavit demonstrating a need for further discovery must 1) identify the specific discovery that the party contends is necessary, 2) explain why the discovery has not been conducted, and 3) show how the discovery bears upon the issues presented by the motion for summary judgment. A plaintiff must "identify what, if any, facts [a]re within [another party's] exclusive control and how, if at all, discovery would assist them in bringing those facts to light." *Willmar Poultry*, 520 F. 2d at 297. An affidavit fails this requirement if it contains "general and conclusory statements regarding the need for more discovery." *Ironside v. Simi Valley Hosp.*, 188

10

F. 3d 350, 354 (6th Cir. 1999).. A party is required to demonstrate the "adequacy of the efforts to obtain an opposing affidavit after the summary judgment motion was filed." *Grisham v. McLaughlin*, 2006 WL 1627274, *7, No. M2004-1662-COA-R3-CV (Tenn. Ct. App. June 12, 2006) (emphasis added). The affidavit must describe the steps the non-moving party has "taken to obtain the desired information pursuant to the discovery procedures under the Rules." *Ironside*, 188 F. 3d at 294. Defendant must also demonstrate how the additional discovery will permit the Defendant to create a material issue of disputed fact. *Ironside*, 188 F. 3d at 354 ("The court did not abuse its discretion in granting the motion for summary judgment before plaintiff completed discovery. Plaintiff's affidavit . . . does not show how an extension of time would have allowed information related to the truth or falsity of the letter to be discovered.").

The Defendant has not complied with the specific requirements of Rule 56.07, but rather, appears to be relying on Rule 56.07 as a generic fallback if Defendant's proof is deemed to be insufficient. Mr. Meisner's affidavit does not identify any specific facts "essential" to Defendant's opposition to summary judgment that the Defendant has not been able to present in the exercise of reasonable diligence. Instead, Mr. Meisner indicates that Defendant wishes to depose Madison Heathcock, Ronald Hurst, and Josh Balboa "to fully understand the facts and circumstances leading up to the accident." Mr. Meisner does not indicate how these individual's testimony might bear upon any specific fact that could be material to issues presented in Plaintiffs' Motion, only that "their testimony will undoubtedly affect liability in this case." Mr. Meisner also indicates that Defendant has retained an "accident reconstructionist expert," but does not explain why Defendant was unable to produce an affidavit from this retained expert, or why an affidavit from this expert is necessary to create a genuine dispute of some specific fact that would be material to one or more issue(s) raised by Plaintiff's Motion.

11

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

_Afsoon Hagh, B.P.R. 028393_
45 Music Square West
Nashville, Tennessee 37203
(615) 549-5519 telephone
(615) 266-0250 facsimile
afsoon@cummingsmanookian.com

*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the Plaintiffs' ~~Responses to Defendants' Additional Statement of Undisputed Material Facts in Support of their Opposition to Plaintiffs'~~ Reply in Support of their Motion for Partial Summary Judgment has been served by e-mail and facsimile upon the following on this 19th day of March, 2019:

**STEVEN J. MEISNER**
**CAROLINE C. MILLER**
Attorney for James Osborn,
Osborn Enterprises, Inc., II and Osborn Enterprises, Inc., III
**BREWER KRAUSE BROOKS &**
**CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228-1209
E-mail: smeisner@bkblaw.com

AFSOON HAGH

12

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

MARTY FITZGERALD and MELISSA ) 
FITZGERALD Individually, as )
Husband and wife, and o/b/o their )
deceased child, MEGAN FITZGERALD, )
)
    Plaintiffs, )
)    NO. 2018-311
v. )
)    (JURY DEMAND)
JAMES OSBORN, OSBORN )
ENTERPRISES, INC., II and )
OSBORN ENTERPRISES, INC., III, )
)
    Defendants. )

---

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Comes now the Plaintiffs, by and through the undersigned counsel, and pursuant to Rule 56 of the Tennessee Rules of Civil Procedure and in opposition to Defendants' Motion for Partial Summary Judgment responds as follows:

## I.   SUMMARY JUDGMENT STANDARD

This case is governed by the legislative summary judgment standard set forth by our legislature at Tenn. Code Ann. § 20-16-101.

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; Byrd v. Hall, 84 S.W.2d 208, 214 (Tenn. 1993). In Byrd, the Tennessee Supreme Court set out the basic principles involved in determining whether a motion for summary judgment should the granted. The

moving party has the ultimate burden of persuading the Court that there are no disputed, material facts creating a genuine issue for trial and that he is entitled to a judgment as a matter of law. Byrd, 84 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the non-moving party to show that a genuine issue of material fact exists. Id. To meet its burden of production and shift the burden to the non-moving party, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense. Id. at 215 n.5.

Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 88 (Tenn. 2000); McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998).

The Tennessee Supreme Court in McCleran v. Mid-South Stone, Inc;, 695 S.W.2d 181,182 (Tenn. 1985) held that if material facts are not in dispute, and it is apparent from the record that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id at 181. Summary Judgment is appropriate when the facts and legal conclusions drawn from the facts reasonably permit only one conclusion. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995).

## II. LAW AND **ARGUMENT**

A. **Defendants' Motion for Partial Summary Judgment on the Issue of vicarious liability should be denied because a genuine dispute regarding a material fact- whether Osborn was acting in the course and scope of his employment- exist.**

The Plaintiffs' do not dispute that Mr. Osborn testified:

1) He concluded his work activities at the time he hit Megan Fitzgerald;

2

2)  Osborn Enterprises owns Hondo of Cool Springs;

3)  Osborn owns 50% of Osborn Enterprises.

Defendants' did not provide any testimony, by affidavit or otherwise, from Osborn Enterprises, Inc., II and/or Osborn Enterprises, Inc., III (collectively "Osborn Enterprises"), Hondo of Cool Springs, the other 50% stake owner of Osborn Enterprises or from Mr. Osborn to (1) establish that Mr. Osborn was not acting in the course and scope of his employment; (2) establish that Mr. Osborn is authorized to speak on behalf of Osborn Enterprises; (3) establish that Mr. Osborn is authorized to speak on behalf of Hondo of Cool Springs;(4) establish that Mr. Osborn was not on the business of Osborn Enterprises and/or Hondo of Cool Springs at the time of the incident; (5) establish Mr. Osborn's role and duties with Osborn Enterprises and Hondo of Cool Springs such that he was not on their business at the time of the incident.

The only proof in the record that Mr. Osborn was not acting in the course and scope of his employment is his testimony that he was on his was home for the day when the incident occurred.  That testimony alone does not establish that Mr. Osborn was not acting in the course and scope of his employment. Even more, a jury may consider Mr. Osborn's credibility on self-serving testimony and may reject that assertion. Therefore, at this time, Defendants' Motion for Partial Summary Judgment on the issue of acting in the course and scope of his employment should be denied.

3

**B.** **Defendant Osborn's Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages should be denied because Mr. Osborn's testimony and admissions establish he was reckless on May 9, 2018.**

Punitive damages are awarded to punish wrongful conduct and to deter others from engaging in similar conduct in the future. Flax v. DamlerChrysler Corp., 272 S.W. 3d 521 (Tenn. 2008). In 1992, the Tennessee Supreme Court set forth circumstances in which punitive damages could be awarded and prescribed procedures to assure that punitive damages were not arbitrarily awarded. Hodges v. S.C. Toof & Co., 833, S.W.2d 896 (Tenn. 1992).

These procedures include: (1) a bifurcated trial, (2) a heightened burden of proof, (3) specific instructions, and (4) independent judicial oversight over punitive damage awards. A party seeking punitive damages must present "clear and convincing evidence" that the defendant's acts were intentional, fraudulent, malicious or reckless. Hodges, at 901.

A person acts recklessly, when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. Id. (citing T.C.A. 39-11-302(c)(1991)).Therefore, to succeed on a punitive damages claim based on a defendant acting recklessly, the jury must have a firm believe or conviction regarding the truth of the facts sought to be established.

The clear and convincing standard is easily met in this case because James Osborn admitted that on May 9, 2018:

4

A. He knew the rules of the road;

B. He had more knowledge than members of the general public about the rules and laws related to the operation of motor vehicles;

C. He was aware the law required him to leave three (3) feet of space as he passed a bicyclist;

D. He was aware of the risk associated with failing to leave enough for a bicyclist when passing;

E. He was aware the risk in failing to abide by the rule to leave three (3) feet of space as he passed a bicyclist is that he could strike the bicyclist.

Specifically, Mr. Osborn testified as follows:

Q: Having observed and passed hundreds of bicyclists on the road over the last decade in Williamson County in your motor vehicle, you were aware of the risk of failing to leave enough room for a bicyclist as you passed them. Correct?

A: Yes. Three feet.

Q: You're aware that you're required to provide three feet as you pass a bicyclist. Correct?

A: Yes.

Q: You were aware of that on May 9, 2018 and before that time. Correct?

A: Yes.

Q: Because of your position and employment in the power-sports industry, you are more aware than, probably, members of the general public about rules and laws related to the operation of motor vehicles, motorcycles, ATVs, and jet skis. Correct?

A: Yeah, I'm pretty knowledgeable about it. Fairly knowledgeable.

Q: You knew of the risk of failing to provide the required 3 feet of space as you pass a bicyclist on May 9, 2018. Correct?

5

MR. MEISNER: Objection. Form.

THE WITNESS: I'm aware of the rule, yes.

Q: And you are aware of the risk inherent in failing to abide by that rule. Correct?

A: Yeah, I'm — yes.

Q: The risk in failing to abide by the rule to leave 3 feet of space as you pass a bicyclist is that you could strike the bicyclist. Correct?

A: Well, if you don't give them 3 feet, yes; that's correct.

Q: You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct?

MR. MEISNER: Objection to form.

THE WITNESS: That is correct. I didn't.

(Osborn Depo. 67:24-69:13)

Based on Mr. Osborn's testimony and admissions, he was aware at the time of conduct, May 9, 2018, that the risk of someone getting hurt as a result of failing to abide by the rules of the road in giving Megan Fitzgerald three (3) feet of space as he passed her bicycle was great. Further, Mr. Osborn repeatedly testified that he could not explain why he struck Megan Fitzgerald with his truck or how he could have failed to see her. As a result, he has affirmatively declined to take a position on that point and a jury may decide, in his absence of testimony, whether his conduct was merely negligent or rises to the level or recklessness. Defendant Osborn's candid acknowledgment that he is unable to take a position on that point renders him incapable of securing summary judgment on the same. Mr. Osborn's testimony and admissions create a genuine dispute of a material fact, namely, whether his conduct was reckless.

6

## III.  CONCLUSION

Based on the foregoing, the Plaintiffs' respectfully request this Court deny Defendants' Motion for Partial Summary Judgment on the issue of vicarious liability and punitive damages.

Respectfully submitted,

Afsoon Hagh, B.P.R. 028393
45 Music Square West
Nashville, Tennessee 37203
(615) 549-5519 telephone
(615) 266-0250 facsimile
afsoon@cummingsmanookian.com

*Attorney for the Plaintiffs*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the Plaintiffs' Responses to Defendants' Motion for Partial Summary Judgment has been served by e-mail and facsimile upon the following on this 19th day of March, 2019:

**STEVEN J. MEISNER**
**CAROLINE C. MILLER**
Attorney for James Osborn,
Osborn Enterprises, Inc., II and Osborn Enterprises, Inc., III
**BREWER KRAUSE BROOKS &**
**CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228-1209
E-mail: smeisner@bkblaw.com

AFSOON HAGH

8

FILED
WILLIAMSON COUNTY
CIRCUIT COURT

2019 MAR 19 PM 2: 24

ENTERED_____

COPY

## IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE
## AT FRANKLIN

MARTY FITZGERALD and MELISSA ) 
FITZGERALD individually, as )
Husband and wife, and o/b/o their )
deceased child, MEGAN FITZGERALD, )
)
      Plaintiffs, )
)    NO. 2018-311
v. )
)    (JURY DEMAND)
JAMES OSBORN, OSBORN )
ENTERPRISES, INC., II and )
OSBORN ENTERPRISES, INC., III, )
)
      Defendants. )

## PLAINTIFFS' RESPONSES TO OSBORN'S STATEMENT OF ADDITIONAL FACTS IN SUPPORT OF HIS OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

    Comes now Plaintiffs', by and through counsel, pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, and hereby submits the following responses to Defendants Osborn's additional facts in opposition to Plaintiffs' Motion for Partial Summary Judgment:

    1.    This is a wrongful death action arising out of an automobile accident that occurred on May 9, 2018. (Complt. ¶¶ 1, 8-14.)

    **RESPONSE:**

    **Admitted.**

    2.    Megan Fitzgerald ("Megan") was riding a bicycle on Coleman Road at the same time Defendant Osborn was traveling in the same direction heading toward his residence located at 3235 Kennard Springs Road in Franklin, Tennessee. (Complt. ¶¶ 2, 8-14; EXHIBIT 1 - Osborn Res. Interrog. No. 8.)

    **RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

3.      Prior to the accident, Mr. Osborn was working in the morning, had lunch with his wife and was headed home for the day. (EXHIBIT 1 - Osborn Res. Interrog. No. 8.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

4.      At the time of the accident, Mr. Osborn was driving his personal vehicle, a Silverado pick-up truck registered and titled in his name. (EXHIBIT 6 – Title to Vehicle, Osborn Res. RFP; Plfs. Res. Request Admissions; Police Report.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

5.  Tara Seaborn was a passenger in a vehicle behind Mr. Osborn before the accident. (EXHIBIT 3 - Seaborn Dep. 6-10.)

**RESPONSE:**

Denied. Tara Seaborn was a passenger in a vehicle behind another vehicle that was directly behind Mr. Osborn's truck. See, Seaborn Depo. 10:13-15.

6.      Ms. Seaborn testified all the vehicles were traveling the speed limit, including the vehicle driven by Mr. Osborn. (EXHIBIT 3 - Seaborn Dep. 10:10-23.)

**RESPONSE:**

Objection – lack of foundation and improper lay opinion testimony under Tenn. R. Evid. 701. There are two methods of determining another car's speed: (1) clocking with a radar device; and (2) pacing. Pacing requires a trained motorist to follow a suspected speedster for a sufficient distance at a constant speed, and then using his/her own speedometer to estimate the speed of the violator. There is no foundation that Ms. Seaborn was employing either of these methods on the day in question, much less, employing them in a manner consistent with the predicates of Tenn. R. Evid. 702-703 for her opinion to be admissible.

2

7. Mr. Osborn did not attempt to brake or swerve prior to the accident. (EXHIBIT 3 - Seaborn Dep. 11:14-12:24.)

**RESPONSE:**

**Admitted.**

8. Megan was not wearing a helmet or other safety gear typically worn by "bicycle people." (EXHIBIT 3 - Seaborn Dep. 38:4-39:10.)

**RESPONSE:**

**It is admitted Megan was not wearing a helmet. However, this fact is not material. The Defendant has not and cannot show how Megan's wearing or not wearing helmet would have affected whether Defendant Osborn ran her over, or otherwise somehow serves to excuse Defendant Osborn's role in causing Megan's death. Osborn Depo pp. 64:16-65:9. The Defendant has admitted that Megan's injuries were caused by the collision and has not introduced any medical proof that Megan would have survived being hit by a car that made no effort to brake if she had been wearing a helmet. Otherwise, the statement is impermissibly vague, and not supported by admissible record proof. The cited testimony is improper opinion testimony and, in any event, does not establish that Megan was not wearing any "other safety gear typically worn by 'bicycle people.'" Even if this fact could be established from the cited testimony, it would not be not material. The Defendant has not and cannot show how Megan's wearing or not wearing some other unspecified "other safety gear" would have affected whether Defendant Osborn ran her over, or otherwise somehow serves to excuse Defendant Osborn's role in causing Megan's death.**

9. In observing Mr. Osborn's vehicle, Ms. Seaborn testified Mr. Osborn was not driving in any erratic or unusual manner, having no difficulties navigating his vehicle within his lane of traffic, did not cross over the center lane into oncoming traffic, veer off onto the shoulder of the road or otherwise behave in any unusual manner prior to the accident. (EXHIBIT 3 - Seaborn Dep. 40:3-25.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only. Ms. Seaborn testified that Defendant did not *appear* to be driving in an erratic or unusual manner from her vantage point. This fact is not material because it does not establish that the Defendant somehow complied with the**

3

standard of care applicable to him when he overtook and ran over Megan on the day in question.

10.     Ms. Seaborn testified Coleman Road was not suitable for bicycle traffic because, in her words:

It's curvy; there are no shoulders; there is not a bike lane; it's unpredictable how fast anyone would be going down that road; it's a side road; I've been, you know, passed by cars going way too fast; I drive on it all the time; there's no good shoulder; I mean, just no.

(EXHIBIT 3 - Seaborn Dep. 41:1-11.)

**RESPONSE:**

**The Plaintiffs do not deny that Ms. Seaborn testified, in part, as Defendant block-quoted. However, Plaintiffs deny Defendant's characterization of this testimony as evidence that "Coleman Road was not suitable for bicycle traffic," including for the following reasons:**
1. **Any opinion by Ms. Coleman that the Coleman road was not suitable for bicycle traffic is improper opinion testimony.**
2. **Nothing about the road prevented the Defendant from seeing Megan Fitzgerald and not running her over on May 9, 2018. Osborn Depo. p. 22:21-23:1.**
3. **According to the Defendant himself, Coleman Road is not unsuitable for bicycle traffic. Osborn Depo. p. 10:11-11:12, 66:13-19.**
4. **Defendant has conceded that Megan Fitzgerald has a legal right to ride her bicycle on Coleman Road. Defendant's Response to P's SUMF ¶ 6.**

11.     Based on Ms. Seaborn's observations, there was no indication Mr. Osborn intentionally struck Megan. (EXHIBIT 3 - Seaborn Dep. 43:2-22.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only that Ms. Seaborn testified she did not believe Mr. Osborn intentionally struck Megan. However, this "fact" is neither admissible, nor material to Plaintiffs' Motion for Partial Summary Judgment.**

12.     Mr. Osborn admitted he made no attempt to pass Megan because he did not see her until just prior to impact – it was too late to avoid the collision. (EXHIBIT 2 - Osborn Dep. 24:14–18.)

4

**RESPONSE:**

It is denied that Mr. Osborn was not "overtaking and passing" Megan for purposes of Tenn. Code Ann. § 55-8-175(c)(2) when he approached her from behind and struck her on May 9, 2018, including because "Overtake" means "to come or catch up with in a course of motion," *Ringwald v. Beene*, 92 S.W.2d 411, 413 (Tenn. 1935), and "Pass" means "to move in a path so as to approach and continue beyond something."[1] Defendant Osborn admitted that he did not comply with Tenn. Code Ann. § 55-8-175(c)(2):

Mr. Manookian:    You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct?

Mr. Osborn:    That is correct. I didn't.[2]

13.    Mr. Osborn did not attempt to overtake and pass Megan. (EXHIBIT 2 - Osborn Dep. 24:14-18.)

**RESPONSE:**

It is denied that Mr. Osborn was not "overtaking and passing" Megan for purposes of Tenn. Code Ann. § 55-8-175(c)(2) when he approached her from behind and struck her on May 9, 2018, including because "Overtake" means "to come or catch up with in a course of motion," *Ringwald v. Beene*, 92 S.W.2d 411, 413 (Tenn. 1935), and "Pass" means "to move in a path so as to approach and continue beyond something."[3] Defendant Osborn admitted that he did not comply with Tenn. Code Ann. § 55-8-175(c)(2):

Mr. Manookian:    You did not give Megan Fitzgerald 3 feet of space as your car passed and collided with her on May 9, 2018. Correct?

Mr. Osborn:    That is correct. I didn't.[4]

14.    Mr. Osborn could not testify why he did not see Megan. (EXHIBIT 2 - Osborn Depo. 23:10-18.)

**RESPONSE:**

---

[1] Merriam Webster's Dictionary, attached as Exhibit 1 hereto.
[2] Osborn Depo, p. 70:16-22.
[3] Merriam Webster's Dictionary, attached as Exhibit 1 hereto.
[4] Osborn Depo, p. 70:16-22.

5

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

15.     Mr. Osborn noted, however, that there was a strong sun glare on his windshield that may have affected his ability to see. (EXHIBIT 2 - Osborn Dep. 21:25-22:8; 65:11-23.)

**RESPONSE:**
**Denied. Defendant Osborn rejected the notion that he could not see Megan Fitzgerald due to it being too bright out. Osborn Depo, p. 23:10-14.**

16.     Mr. Osborn surrendered his vehicle and gave a written statement to the police following the incident.  (EXHIBIT 1 - Osborn Res. Interrog. No. 6.)

**RESPONSE:**

**Denied.**

17.     Prior to the incident, he had only been involved in two (2) motor vehicle accidents: one in 1999 and the second approximately five (5) years prior to the accident at issue. (EXHIBIT 1 - Osborn Res. Interrog. No. 9.)

**RESPONSE:**
**Objection, this fact is improper character evidence.** *See* **Tenn. R. Evid. 404. Further, denied as stated.** *See,* **Def's Exhibit 1: Mr. Osborn only recalls having been involved in two motor vehicle incidents prior to the incident that is the subject of this action. Additionally, this fact is not material because it does not mean that the Defendant was not negligent on May 9, 2018.**

18.     There is no evidence Mr. Osborn consumed alcohol prior to the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 11.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.

6

19.     Mr. Osborn had no prior difficulties operating the vehicle he was driving on the date of the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 14.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

20.     There is no evidence Mr. Osborn was talking or texting on his phone at the time the incident occurred. (EXHIBIT 1 - Osborn Res. Interrog. 19-20.)

**RESPONSE:**

**Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only.**

21.     No criminal charges have been brought against Mr. Osborn arising out of the incident. (EXHIBIT 1 - Osborn Res. Interrog. No. 27.)

**RESPONSE:**

**Denied.**

22.     Coleman Road is dangerous for bicyclists because it is a hilly, curvy, country road with no shoulder for bicycle traffic. (EXHIBIT 2 - Osborn Dep. 9:6-25; EXHIBIT 3 - Seaborn Dep. 19:8-18.)

**RESPONSE:**

**Denied.**

23.     Coleman Road is simply not suitable for bicycle traffic. (EXHIBIT 3 - Seaborn Dep. 41:1-11.)

**RESPONSE:**

**Denied, including for the following reasons:**
1. **Any opinion by Ms. Coleman that the Coleman road was not suitable for bicycle traffic is improper opinion testimony.**

7

2. Nothing about the road prevented the Defendant from seeing Megan Fitzgerald and not running her over on May 9, 2018. Osborn Depo. p. 22:21-23:1.
3. According to the Defendant himself, Coleman Road is not unsuitable for bicycle traffic. Osborn Depo. p. 10:11-11:12, 66:13-19.
4. Defendant has conceded that Megan Fitzgerald has a legal right to ride her bicycle on Coleman Road. Defendant's Response to P's SUMF ¶ 6.

24. Megan's parents were surprised she had gone so far on Coleman Road. (EXHIBIT 4 - Melissa Fitzgerald Dep. 19:17-24; EXHIBIT 5 - Marty Fitzgerald Dep. 36-40.)

**RESPONSE:**

This is not a material fact. The referenced testimony is not supported by the cited depositions; however, Melissa Fitzgerald testified at 19:12: "I was surprised she had gone that far."

25. Megan was not an avid bicyclist. (EXHIBIT 4 - Melissa Fitzgerald Dep. 19:17-24; EXHIBIT 5 - Marty Fitzgerald Dep. 36-40.)

**RESPONSE:**

Pursuant to T.R.C.P 56.03, Admitted for purposes of ruling on the motion for summary judgment only. This is not a material fact, including because the issue is that Defendant did not see the Decedent and ran her over from behind. Megan Fitzgerald was not responsible for her death because she rode her bicycle without being an "avid bicyclist."

26. At the time of the accident, Megan was not riding as close as possible to the right side of the road and was not wearing a safety helmet or appropriate clothing to warn others of her presence on the road. (EXHIBIT 2 - Osborn Dep. 27:14-16; 31:6-15; 61:23-62:6; EXHIBIT 3 - Seaborn Dep. 16:12-16; 38:13-29:4; EXHIBIT 4 - Melissa Fitzgerald Dep. 8:17-25; EXHIBIT 5 - Marty Fitzgerald Dep. 83:13-16.)

**RESPONSE:**

It is admitted that Megan was not wearing a helmet. All other facts are denied because they are not supported by the cited testimony. Megan Fitzgerald was riding her bicycle in the middle of the day. There is no evidence about clothing she should have

been wearing to make herself more visible in those conditions. Defendant Osborn's testimony that Megan was not riding as close as possible to the right side of the road is negated by his claim that he did not see her until he struck her. Osborn Deposition, p. 54:20–55:3.

Respectfully submitted,

Afsoon Hagh, B.P.R. 028393
45 Music Square West
Nashville, Tennessee 37203
(615) 549–5519 telephone
(615) 266-0250 facsimile
afsoon@cummingsmanookian.com
*Attorney for the Plaintiffs*

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the Plaintiffs' Responses to Defendants' Additional Statement of Undisputed Material Facts in Support of their Opposition to Plaintiffs' Motion for Partial Summary Judgment has been served by e-mail and facsimile upon the following on this 19th day of March, 2019:

**STEVEN J. MEISNER**
**CAROLINE C. MILLER**
Attorney for James Osborn,
Osborn Enterprises, Inc., II and Osborn Enterprises, Inc., III
**BREWER KRAUSE BROOKS &**
**CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228-1209
E-mail: smeisner@bkblaw.com

AFSOON HAGH