Charles M. Walker
U.S. Bankruptcy Judge
Dated: 4/5/2023



## IN THE UNITED STATTES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No: 3:19-bk-07235 |
| Cummings Manookian, PLLC, | ) Chapter 7 |
| | ) Honorable Charles M. Walker |
| Debtor. | ) |
| _____ | ) |
| | ) |
| Jeanne Ann Burton, Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proceeding: 3:20-ap-90002 |
| | ) |
| Hagh Law, PLLC; Afsoon Hagh; and | ) |
| Manookian PLLC | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER DENYING MOTION TO DISQUALIFY
## BANKRUPTCY JUDGE CHARLES WALKER

THIS MATTER came before the Court for an evidentiary hearing[1] on April 4, 2023. At

that time, Counsel for the Plaintiff and Counsel for Defendants and Brian Manookian[2] appeared

and were heard. When counsel for the Movants sought to call his first witness, Trustee's counsel

---

[1] The hearing was set to afford the opportunity for the movants to prosecute their motion either by introduction of evidence and/or argument. "The purpose of an evidentiary hearing is to permit both parties to present their cases and to challenge the other side's case in court and on the record."
*In re McCashen*, 339 B.R. 907, 908 (Bankr. N.D. Ohio 2006)
[2] John T. Spragens and Craig V. Gabbert, Jr. for Hagh Law PLLC and Afsoon Hagh. Mr. Spragens also appeared on behalf of Manookian PLLC and Brian Manookian as Movants.

1

objected on the grounds that Movants filed their Witness list in violation of Local Rule 9014-1.[3] The Court sustained the objection and no witnesses were presented per that oral ruling. The Court then heard argument from both sides, and for the following reasons, the Motion to Disqualify is DENIED.

The Motion to Disqualify

Brian Manookian, a non-party to this action,[4] and Manookian PLLC (hereinafter "Movants"), seek to have the sitting judge in this case recused for *ex parte* communications and extrajudicial research regarding this case. The bases for this motion lie in statements made by Trustee's counsel during a deposition[5] on April 12, 2022[6], and those made in Judge Charles M. Walker's decision regarding discovery disputes that were the subject of a March 17, 2022 hearing.

This motion alleges that *ex parte* communications about Brian Manookian made to the Court were improper *ex parte* conversations requiring Judge Walker to recuse himself for

---

[3] Local Rule 9014 provides in relevant part: (1) Pretrial Court Filings. In addition to the initial disclosures that may be invoked by paragraph (2) below, and regardless of whether such pretrial disclosure process has been invoked,
every party shall file with the court and provide to every other party by noon 2 business days prior to the hearing the following information regarding evidence it may present at a hearing or trial (other than solely for impeachment purposes):
      (a) The name, address and telephone number of each witness the party expects to present or may call if the need arises;
      (b) A copy of the transcript of testimony or affidavit of any witness whose testimony will be offered in that form;
      (c) A list and copy, with appropriate identification, of each document or other exhibit a party expects to offer or may offer as evidence. (For any matter to be heard in the Nashville Division, the exhibits shall be filed and exchanged utilizing the court's Electronic Evidence Submission Application pursuant to the Electronic Evidence Procedures.) . . .
[4] Sole member of the Debtor and of Defendant, Manookian PLLC
[5] Philip Young, Trustee's counsel in this matter, also served as the receiver in a related state court case.
[6] Although the referenced communication is referred to in footnote #2 of the motion and the transcript attached, the communication is repeatedly referred to as a communication with chambers. Mr. Young states that he spoke with Judge Walker's courtroom deputy-at-the-time, an employee of the Clerk of Court. No reference, allegation, or argument appears in the motion regarding any *ex parte* communication between Mr. Young and chambers staff.

2

violating 28 U.S.C. §§ 455(a) and (b)(1), and the Code of Conduct for Federal Judges.[7] Specifically, the motion refers to Judge Walker's statements on the record in open court, with all parties' counsel present, regarding calls to the court from lawyers expressing their discomfort if Mr. Manookian were to appear at hearings and depositions in this case. Transcript, P.84. Movants allege that Judge Walker "engaged in multiple prohibited *ex parte* communications about Brian Manookian and this proceeding with 'at least two [unidentified] lawyers' while this action has been pending." ECF 161, P1. It appears the allegation of "multiple . . . at least two [unidentified] lawyers" includes a conversation the Trustee's attorney had with a courtroom deputy.[8]

Movants go on to accuse Judge Walker of failing to notify the parties of "its repeated conversations" alleging that the Court only did so much later to justify a ruling regarding the location of depositions, and movants were not afforded the opportunity to respond. Additionally, movants state that these communications had a "corrosive effect on the Court" which has only recently become clear. *Id.* at P.2.

The motion goes on to assert that Judge Walker's statements regarding Mr. Manookian's "past behavior before tribunals" indicates that the judge has engaged in extrajudicial research and has formed a bias against Mr. Manookian as a result – also requiring recusal. *Id.* The motion quite emphatically states that "No court has ever found that he [Mr. Manookian] acted even remotely inappropriately, much less in a physically threatening manner, during a deposition – nor, crucially, does the record in this case support such a finding." *Id* at P6.

---

[7] See § 20:118.25. Ethics and Code of Conduct for Federal Judges, 6 Pat. L. Fundamentals § 20:118.25 (2d ed.).
[8] The Trustee's attorney is identified in the motion at FN 2.

3

Co-counsel for Defendants Afsoon Hagh and Hagh Law PLLC filed a response joining in the motion. In this response (ECF 173), those Defendants question the Court's Order setting this motion for evidentiary hearing (ECF 165)[9] "when the person holding the most pertinent factual information to resolve this motion is the Court, in terms of the contents of the *ex parte* communications bearing on safety issues." Id at P2. The Plaintiff/Trustee also filed a response, emphasizing that the communications at issue although *ex parte*, were permissible. ECF 174.

<u>Recusal Standards</u>

Fed. R. Bankr. P. 5004(a) mandates that a bankruptcy judge shall be governed by 28 USC § 455 and disqualified from presiding over a proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case. 28 U.S.C. § 455 provides the legal standards for disqualification of a Judge from a proceeding: 28 U.S.C. § 455(a) and 28 U.S.C. §455 (b)(1). [10]

1. Mandatory Recusal under 28 U.S.C. §455(a)

The relevant sections of 28 U.S.C. 455 require that a judge be disqualified if there exists a reasonable question as to his impartiality. 28 U.S.C. § 455(a). Specifically:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> **(b)** He shall also disqualify himself in the following circumstances:
> **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> 28 U.S.C.A. § 455 (West)

"A violation of § 455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an

---

[9] ECF 165 set the motion for evidentiary hearing on June 29, 2022. That hearing was canceled pending resolution of the Appeal of this Court's order at ECF 178
[10] For the purposes of this Order, only the relevant sections of 28 U.S.C. 455 will be discussed. Additionally, 28 U.S.C. § 455(d)(1) provides terminology infra.

4

appearance of partiality...." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850

(1988). Scienter of the Judge is not required for a violation of § 455(a). *Id.* at 859. "[S]ection

455(a) was intended to establish an objective test." *Health Services Acquisition Corp. v.

Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986). Judges must recuse themselves if a reasonable,

objective person, knowing all of the circumstances, would question the judge's impartiality.

*Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990).

While this statute imposes a duty to recuse where grounds exist, there is also a duty not to

do so if no cause is shown. *In re Fowler,* No. 01-10615, 2004 Bankr. LEXIS 67 at *10 (Bankr.

E.D. Ky. Jan 29, 2004) (citing *Computer Dynamics, Inc.*, 253 B.R. 693, 698 (E.D. Va. 2000)).

Since the standard is objective, "the judge need not recuse himself based on the 'subjective view

of a party' no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592,

599 (6th Cir. 1990) (citing *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988), cert. denied,

488 U.S. 1018, 109 S. Ct. 816, 102 L. Ed. 2d 805 (1989). In fact, "there is as much obligation

upon a judge not to recuse himself when there is no occasion as there is for him to do so when

there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988)

(quoting *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir. 1961))."

2. Mandatory Recusal under 28 U.S.C. §455(b)(1)

A Judge shall disqualify himself "where he has a personal bias or prejudice concerning a

party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28

U.S.C. § 455(b)(1)

a. Personal bias or prejudice

Personal bias is prejudice emanating from a source other than participation in the

proceedings or prior contact with related cases. *Wheeler v. Southland Corp.*, 875 F.2d 1246,

5

1251 (6th Cir. 1989) (citing *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir. 1985), *cert. denied*, 475 U.S. 1016, 89 L. Ed. 2d 312, 106 S. Ct. 1198 (1986)).  Disqualifying prejudice or bias must ordinarily be personal or extrajudicial. *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989).  Predilections resulting from the record and/or proceedings before the judge, do not constitute bias unless they display such a high degree of favoritism or antagonism as to make fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 555 (1994).  A judge's conduct must be "so extreme as to display clear inability to render fair judgment" to be characterized as bias or prejudice.  *Id* at 551.

Moreover, a judge is charged with efficient and justiciable case administration. This sometimes means navigating potential difficulties between the parties, as well as ensuring that all proceedings are conducted fairly and do not put any party participating in the proceeding in a position of concern or discomfort. "A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's ordinary efforts at courtroom administration -- remain immune." *Id* at 556.

Under § 455(b)(1), **t**he issue to be determined is whether the judge retains bias or prejudice as to a particular party or has knowledge of disputed facts.  *In re AVN Corp.,* No. 98-20098-L, 1998 WL 35324198 at *3 (Bankr. W.D. Tenn. Dec. 8, 1998).  A judge should not recuse himself if his alleged personal bias stems from the facts the judge learned when participating in the case in his judicial capacity.  *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983).  "Under § 455(b)(1), as under § 455(a), inferences drawn from prior judicial determinations concerning a party in the case in which recusal is sought are insufficient because it is the duty of the judge to rule upon issues of fact and law and questions of conduct which form part of the proceedings before him." *In re AVN* at *3.  The United States Supreme Court

6

has emphasized that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky* at 555.

### b. Personal knowledge of disputed evidentiary facts

'[P]ersonal knowledge' is "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." KNOWLEDGE*, Black's Law Dictionary (11th ed. 2019). Therefore, when it is clear that the facts at issue were gleaned from the court record, including court filings and proceedings before the judge, and thereby not from extrajudicial sources, the judge need not, and should not, recuse himself. *United States v. Baker*, 441 F. Supp. 612, 618 (M.D.Tenn. 1977). See also *Liteky* at 551 ("[N]ot subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings.")

### 3. Code of Conduct for Federal Judges[11]

The Code of Conduct for Federal Judges sets forth the obligations and constraints imposed upon federal judges. This Code of Conduct is not a suggestion or a guideline, it contains provisions that are to be adhered to in an effort to maintain the integrity of the judiciary and cultivate confidence in the judicial process. The relevant provisions or Canons are set forth below:

> ### *Canon 3: A Judge Should Perform the*
> ### *Duties of the Office Fairly, Impartially and Diligently*
>
> The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:
> (A) *Adjudicative Responsibilities*.
> - [.]..

---

[11] Hereinafter "Code of Conduct"

- (4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:
  - (a) initiate, permit, or consider *ex parte* communications as authorized by law;
  - (b) when circumstances require it, permit *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication; . . .
- (C) *Disqualification*.
- (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:
  - (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

§ 20:118.25. Ethics and Code of Conduct for Federal Judges, 6 Pat. L. Fundamentals § 20:118.25 (2d ed.)

Canon 3C of the Code of Conduct mirrors § 455. The statutory provision is binding on the courts as law applicable to whether recusal is required. "The substantially identical canon provision is a subset of a code of judicial obligations that are ethically binding." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1080 (6th Cir. 2015).

"Based on Canon 2 of the Code of Judicial Conduct which states that '[a] judge should avoid impropriety and the appearance of impropriety in all his activities' § 455(a) provides that a 'judge . . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *Securities Investor Protection Corp. v. Bell & Beckwith*, 28 B.R. 285, 288, (Bankr. N.D. Ohio 1983).

*4. ExParte* Communications

A. Definition

Black's Law Dictionary defines "*ex parte* communication" as "A communication between counsel or a party and the court when opposing counsel or party is not present." COMMUNICATION, Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary further defines "*ex parte*" as "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest; of, relating to, or involving court action taken or received by one party without notice to the other." EX PARTE, Black's Law Dictionary (11th ed. 2019)

B. *Ex Parte* and the Code of Conduct:
Communication Regarding Scheduling is Allowable.

The Code of Conduct for Federal Judges discusses *ex parte* communications in Canon 3(A) stating specifically that "*except as set out below*, a judge should not initiate, permit, or consider *ex parte* communications." (emphasis added). Then below, Canon 3 states "A judge may (b) when circumstances require it, permit *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication." Code of Conduct Canon 3(A)(4)(b). Additionally, Canon 3 states that "[i]f a judge receives an *unauthorized ex parte* communication bearing on the substance of the matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." Id. (emphasis added).

The 6th Circuit in *Gerber v. Veltri* verified that a communication between Judge and counsel for limited, administrative purposes was not prohibited by Canon 3(A)(4)(b):

> "When circumstances require it, Canon 3(A)(4)(b) 'permit[s] *ex parte* communication for scheduling, administrative, or emergency purposes,' but only 'if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication.' Judge Zouhary's discussion with defense counsel was for these limited, administrative purposes. What is more, plaintiff identifies no advantage that defendant received as a result of the communication."
> *Gerber v. Veltri*, 702 Fed. App'x. 423, 433 n.7 (6th Cir. 2017).

C. *Ex parte* communications on the record provide
all parties meaningful opportunity to address.

Disclosing *ex parte* communications on the record and before counsel allows for any objections and affords all parties the opportunity to correct any errors which may have resulted. See *Moore v. Mitchell,* No. 1:00-CV-023, 2007 WL 4754340, at *30 (S.D. Ohio Feb. 15, 2007) (citations omitted).

As described by other Bankruptcy Courts and as noted in Black's Law Dictionary, "the term '*ex parte*' includes in the definition: 'a judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, *and without notice to,* or contestation by, any person adversely interested.'" (emphasis supplied). *Attorney Registration & Disciplinary Com. of Supreme Court of Illinois v. Betts*, 143 B.R. 1016, 1019 (Bkrtcy.N.D.Ill. 1992) (quoting *Black's Law Dictionary,* (6th ed. 1990)).

Discussion

The movants here rely on three immaterial facts to support their request for disqualification: (1) the calls to the court by two lawyers advising of their concerns for their safety regarding Brian Manookian, (2) Mr. Young's communication with a courtroom deputy

regarding the same concerns; and (3) Judge Walker's statement on the record regarding Mr. Manookian's behavior in other tribunals.

Movants argue that Judge Walker received numerous phone calls from attorneys informing the court that there existed a restraining order against Mr. Manookian put in place by an attorney for one of the creditors of the case and that those calls were impermissible *ex parte* communications that prejudiced the judge against Mr. Manookian. The motion alleges that Mr. Young also contacted the judge regarding the same situation.

In fact, Judge Walker did not refer to his personal receipt of any calls regarding the case. He did refer to the court receiving communication from lawyers about Mr. Manookian, but at no time did Judge Walker indicate that any material issue was the topic of an *ex parte* communication, nor did he state that there was any *ex parte* communication involving himself or any chambers staff:

> [.] . . and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, . . .
> Transcript at p. 84

Despite accusations to the contrary, Judge Walker fully explained on the record the effect those calls had on his view of the matter before him:

> . . . and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties.
> Transcript at p. 85

The Court is charged with the integrity of the record. Part of maintaining that integrity involves courts calling for parties to articulate matters on the record. It is also important to note that the record contains past rulings made by a tribunal in the proceeding, or in the case of bankruptcy, an adversary to the proceeding. Moreover, Courts communicate with the parties to an action via the record. That is why this Court disclosed the *ex parte* communications from

counsel regarding the restraining order against Mr. Manookian on the record in open Court. That is the way courts disclose these things.

Although the motion states that the movants were never able to respond to the *ex parte* representations or even make a record regarding those allegedly improper communications, when given the opportunity, Mr. Spragens merely objected to the depositions being held at the courthouse:

> MR. SPRAGENS: That's fine, Your Honor. And just for the record, I'll preserve my objection to that. And I heard Mr. Gabbert object to it earlier, as well.
> THE COURT: Okay. Well, if the parties can't agree, you know, you still have the opportunity to agree on a location.
> MR. SPRAGENS: Sure.
> Transcipt at p.83

> MR. SPRAGENS: Well, and, you know, my office is just down the street and parking is free. There's no security issue. I don't think that there's any record that would support that there is a security issue in this ordinary bankruptcy case involving professional lawyers on all sides. So this proposal was presented to me. I said I disagreed with it. And Mr. Young said, well, we'll take it up with the Court. So, you know, in my view, this is the departure from the norm, not the other way around.
> Transcript at p. 84

Mr. Spragen's disagreement that there was a security issue was heard and considered by the court because it is the responsibility of the judge to consider any issues brought before him that would impact the integrity of the judicial process. Mr. Spragen's opinion, however, does not trump a state court judge who found there to be a threat such that a restraining order was issued. Security is one of the issues Judge Walker is charged with addressing. Doing so in an abundance of caution does not indicate overreach or prejudice, but instead indicates his diligence in protecting the parties and the veracity of the proceedings.

The third occurrence that movants insist requires disqualification stems from Judge Walker's comments regarding Mr. Manookian's behavior before other tribunals. Although

movants insist that there is nothing in the record regarding information that would support these comments, movants would be dead wrong.

On November 18, 2019, the Trustee filed an *Application and Notice to Employ Thompson Burton PLLC as Special Counsel* to the Trustee in the main bankruptcy case. See 3:19-bk-07235, ECF 6. Brian Manookian, acting *pro se*[12], filed an objection to the application. The Court conducted a hearing on December 17, 2019 at which time both parties appeared and presented argument. The Court took the matter under advisement, entering *Order Regarding Trustee's Application and Notice to Employ Thompson Burton PLLC as Special Counsel for the Estate and Allowing the Trustee Until December 24, 2019 to File Supplemental Application and Supporting Affidavit to Specifically Detail the Scope of Work and Provide Details and Full Disclosure of Any Current or Potential Conflicts that May Exist*. ECF 20. On December 21, 2019, the Trustee filed a *Supplemental Brief/Memorandum in Support of the Application to Employ Special Counsel*. ECF 21. Exhibit A to that filing was a copy of a *Motion to Subject Property, Issue Writs of Execution and Distrings/Fieri Facias, Appoint Receiver and Grant Injunctive Relief as filed in the Circuit Court of Williamson County, Tennessee*, filed on April 25, 2019. *Id*. at Ex. A. The motion included the following relevant statements:

> 5. After a series of hearings and follow-up motions that spanned more than two years, Judge Binkley of this Court found that Mr. Manookian had knowingly, willfully, and intentionally violated the Protective Order and, inter alia attempted "to mislead the Court from uncovering his violations of the Court's Orders by any means necessary.". . [.]
> 6. Finding that Messrs. Manookian and Hammervold had (a) abused the discovery process, (b) failed to maintain candor with this court, (c) continuously violated the Agreed Protective Order, and (d) attempted to defaud the court for over two years, this Court imposed monetary sanctions on Mr. Manookian . . [.]

---

[12] Brian Manookian was acting in his capacity as owner of the Debtor, Cummings Manookian, PLLC. He was not acting as an attorney representing himself as the owner due to his disbarment by the Tennessee Supreme Court.

13

Additionally, on page 14 of the referenced motion, there is an entire section entitled MR. MANOOKIAN'S HISTORY OF VIOLATING COURT ORDERS in which Mr. Young, as potential Receiver, illustrates Mr. Manookian's behavior in other tribunals by recounting sanctions imposed against him by federal and state courts for:

- Acting in bad faith and disrupting the litigation process

- Engaging in a pattern of obfuscation

- Failure to provide credible explanations

- Engaging in conduct that essentially amounted to a flouting of the Court's Orders

- Repeatedly ignoring the clear directives of the Court

- *Conducting himself in a reckless manner* (emphasis added)

Mr. Manookian prosecuted his objection to the Application but did not at any time contest any supplement to the application that contained information about his behavior before other courts.

In the same vein, during the March 17, 2022 hearing, Mr. Spragens at no time expressed any concern or asked even one question regarding the issue of the *ex parte* communications or any alleged extrajudicial inquiry, despite numerous opportunities to address these alleged egregiously prejudicial acts. In fact. Judge Walker expressed his objective approach to the situation by pointing out that it would protect all parties from any uncomfortable situation or any accusation, as well as aid in the expeditious and efficient administration of discovery:

> And to eliminate any of those perceptions, and to protect everyone against
> any allegations of bad behavior, misbehavior, or perceived misbehavior, it
> makes sense to do them here in an environment where no one can get your
> client further down a rabbit hole of he did this or he did that, that we're in a
> neutral environment, which affords certain protections. And if nothing else,
> in terms of everybody's on their best behavior.
> Transcript at p. 85

And so the Court's going to make that determination, that the depositions, unless the parties can agree, will be held here in the courthouse. And as a matter of fact, again, there will be some method available to reach the Court if during those depositions we have further issues with discovery.
Transcript at p. 86

Moreover, despite alleging a "corrosive effect on the Court," movants point to no other prejudice to Mr. Manookian than the location of the depositions. There was no accusation linked to any ruling on a material issue, no objection overruled that hindered or impaired the movant's rights in this matter, and in fact, no instance of prejudice against the movants was articulated at all. The prejudice alleged from these three occurrences  was that the depositions in this case were conducted in the courthouse. The location of depositions is an administrative issue, not a material issue. It does not impact the issues before the Court. Although Movants insist that requiring the depositions to be held in the courthouse reflects the presence of the Court's prejudice against Mr. Manookian, what it more reasonably reflects is the judge's familiarity with the case. The hearing on March 17, 2022 involved cross-motions to compel and reflected the biggest issue so far in this adversary: discovery. In fact, the case is comprised mostly of three years of discovery disputes, with rulings reflecting the Court's stamina for fairness and justiciable administration of the case.

Moreover, none of these issues are material to the case. Material to the logistics of the case, sure, but given the inability of these parties and these witnesses to conduct discovery without disagreeing about every little detail, it was necessary for the judge to rule on all of the discovery matters and to do so in an equitable, fair and reasonable manner – and that he did. The judge's directions and rulings regarding the exhausting number disclosure disputes were clearly issued so as to prevent all involved from becoming hostages of the discovery process.

The expectation of lawyers in the discovery process, as reflected in the applicable rules, is to conduct themselves in a professional, civil, and agreeable manner in order to resolve the

case, either on the merits or by settlement. The contentious nature of these discovery proceedings are a beast – one might say a gorilla - with which the Court has tamed as best as possible.

Furthermore, this Court never had to rely on extrajudicial research. The record contains the rulings from other tribunals that have found Mr. Manookian to have acted in bad faith, engaged in a pattern of obfuscation, and conducted himself in a reckless manner. Specifically, a Williamson County judge found that Mr. Manookian had knowingly, willfully, and intentionally violated a Protective Order and then attempted to mislead that court about the violation.  That judge found Mr. Manookian's behavior regarding discovery matters to be so egregious that he imposed significant monetary sanctions against him. All of this is part of the record of *this* case.

Additionally, *this* Court did not find that Mr. Manookian posed a threat. That was a conclusion found by the state court that issued the restraining order. This Court simply sought to honor that order – as federal courts do with most state court orders – and protect the integrity of these proceedings. Further, Movants neglect to mention that this judge emphasized that having the depositions in the courthouse protected everyone, including Mr. Manookian.

Conclusion

Therefore, although the Movants express their perceptions of bias and prejudice, the record does not support that as a reasonable view. The record shows not only evenhanded judgment in this proceeding, but also illustrates this Court's  elevated patience with a painful number of discovery disputes, including the one that is the catalyst to this motion.  Since any *ex parte* communication was permissible in that it was not material but concerned security and administrative procedures within the Court, and because no extrajudicial research was conducted to impair this Court's impartiality, it is mandatory that the motion to disqualify be denied. Since

there was no reasonable possibility that the sitting judge's objectivity and neutrality has been compromised, it is incumbent that he remain on the case

Therefore, for the reasons stated above, IT IS HEREBY ORDERED that the Motion to Disqualify is DENIED.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS
INDICATED AT THE TOP OF THIS PAGE***

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.