```
                   UNITED STATES BANKRUPTCY COURT
                MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)


                                       .
IN RE:                                 .  Case No. 3:19-bk-07235
                                       .  Chapter 7
CUMMINGS MANOOKIAN, PLLC,              .
                                       .
              Debtor.                  .
                                       .
                                       .
                                       .
. . . . . . . . . . . . . . . . .      .
JEANNE ANN BURTON,                     .  Adv. No. 3:20-ap-90002
                                       .
              Plaintiff,               .
                                       .
v.                                     .  701 Broadway
                                       .  Nashville, TN 37203
HAGH LAW PLLC, et al.,                 .
                                       .  Tuesday, April 4, 2023
              Defendants.    .         .  8:03 a.m.
. . . . . . . . . . . . . . . . .      .

   TRANSCRIPT OF MOTION TO RECUSE JUDGE CHARLES M. WALKER [161]
            BEFORE THE HONORABLE CHARLES M. WALKER
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Plaintiff:
                        Thompson Burton PLLC
                        By:  PHILLIP G. YOUNG, ESQ.
                        One Franklin Park
                        6100 Tower Circle, Suite 200
                        Franklin, TN 37067
                        (615) 465-6008

APPEARANCES CONTINUED.

Audio Operator:         Alison DeVore, ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

APPEARANCES (Continued):

For the Defendants:

Spragens Law PLC
By:  JOHN T. SPRAGENS, ESQ.
311 22nd Avenue North
Nashville, TN 37203
(615) 983-8900

Bass, Berry & Sims PLC
By:  CRAIG VERNON GABBERT, JR., ESQ.
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6277

1      (Proceedings commence at 8:03 a.m.)

2      THE COURTROOM DEPUTY:  All rise.  The United States

3  Bankruptcy Court for the Middle District of Tennessee is now in

4  session.  The Honorable Charles M. Walker presiding.

5      THE COURT:  Good morning.  Please take your seats.

6      THE COURTROOM DEPUTY:  Your Honor, we're here on Case

7  20-90002, Burton v. Hagh Law, PLLC.

8      THE COURT:  All right.  Mr. Spragens, your motion.

9      MR. SPRAGENS:  Yes, Your Honor.  Your Honor, as the

10  Court knows, excuse me, we're here today on a motion to recuse

11  the Court from proceeding -- presiding over this matter.  I'd

12  be happy to reserve argument for the end, if that's okay with

13  the Court, and just go ahead and put on a witness.

14      THE COURT:  Proceed.

15      MR. YOUNG:  Your Honor, at this time I'm going to

16  lodge an objection to any witnesses or exhibits being offered

17  because of failure to comply with Rule 9014-1.  That rule

18  requires any witness and exhibit list to be filed by noon on

19  the second business day prior to a hearing.  That would have

20  been Friday at noon.

21      In this case, no witness and exhibit list was filed

22  until yesterday at about 10:30, and even then it didn't comply

23  with the rule in that there was no substance of testimony

24  listed.  So we would object to the presentation of any

25  witnesses or exhibits in this case.

1          THE COURT:  Okay.  Mr. Spragens, response?

2          MR. SPRAGENS:  Your Honor, it is true that we filed

3    our exhibit list inside of two business days prior to this

4    morning's hearing, and I apologize to the Court for that.  That

5    was an oversight on our part.  I thought that the substance of

6    the testimony that we were expecting to offer was well known to

7    everyone since we had put it in the briefing.  I didn't think

8    there were any surprises there.

9          So I would ask the Court to let me call Mr. Young to

10   testify about the limited topic of his conversations with the

11   Court or the Court staff, for purposes of today's evidentiary

12   hearing.

13         THE COURT:  All right.  Mr. Young?

14         MR. YOUNG:  Yes, Your Honor.

15         THE COURT:  Do you still have an objection to

16   offering that limited scope?

17         MR. YOUNG:  I do, Your Honor, because Rule 9014-1

18   wasn't complied with, and the Local Rules are here for a

19   reason.  The Court's order specifically directed the parties to

20   comply with all federal rules and all local rules.  The Court

21   put that in the order itself scheduling this hearing.  So we

22   would have an objection, and if the Court is going to allow me,

23   I also want to -- is going to allow testimony on my part, I

24   want to talk about Rule 3.7 of the Rules of Professional

25   Conduct as well regarding my participation in the hearing, if

1 the Court's inclined to allow that testimony.

2 MR. SPRAGENS: Your Honor, could I just briefly

3 respond to that?

4 THE COURT: Yes.

5 MR. SPRAGENS: I haven't heard any articulation of

6 prejudice. I do apologize for failing to follow the local

7 rule, but I -- since we've talked about this subject now for

8 several months, and we briefed the testimony that we're seeking

9 from Mr. Young previously, I don't think there's any unfair

10 surprise. And I don't think that the very limited nature of

11 the testimony we're seeking, you know, there's any prejudice

12 from filing the list 26 hours in advance of the hearing instead

13 of 48 hours on business days.

14 THE COURT: Well, I guess here's the question. Since

15 you've already got Mr. Young's deposition, that's been

16 submitted in the record already, what new is to be gained by

17 further testimony from Mr. Young covering the same ground? Why

18 not just proceed with your argument?

19 MR. SPRAGENS: Well, I would be inclined to ask Mr.

20 Young if he stands by all the testimony in that deposition,

21 just to confirm that. I would certainly be prepared to impeach

22 him with that testimony if he changes his responses, you know,

23 typical of any courtroom testimony.

24 Beyond that, if the Court declines to let Mr. Young

25 testify today, we do have his deposition transcript, and I

1    would ask the Court to take judicial notice of it.

2          THE COURT:  Okay.

3          MR. YOUNG:  And we would have no objection to the

4    entry of that deposition testimony.

5          THE COURT:  All right.  Well, this one is an

6    interesting case, as all parties are aware.  The fact that this

7    case was scheduled last week, so there was an actual additional

8    week to file and comply with all the rules, makes the Court

9    hesitant to extend further grace in this matter.  So the Court

10   is going to sustain the objection lodged by the trustee's

11   counsel, and you may proceed with your argument.  And,

12   obviously, the Court's well aware of the issues.  Mr. Young has

13   given his deposition.  So you're welcome to proceed.

14         MR. SPRAGENS:  Your Honor, the next matter with

15   respect to argument is how -- how I might inquire about the

16   Court's knowledge of ex parte communications between Mr. Young

17   and the Court's office, or the Court's staff.

18         As you know, we attempted to notice your deposition

19   to try to find out what you knew.  You quashed that subpoena.

20   I've tried to list you again as a witness today because we're

21   in a tough situation here as a litigant who is -- I'm trying to

22   find out about ex parte communications between some outside

23   attorneys and the Court, and we don't know what's been said.

24   We don't know who said them.  So --

25         THE COURT:  I think you do know.  You took

1  Mr. Young's deposition, and you have exactly what you have that

2  led to you filing the motion in the first place.  You have my

3  statements on the record.  You may proceed however you like,

4  but the Court doesn't have any knowledge other than what you've

5  already been given.

6       MR. SPRAGENS:  Okay.  Well, if that's the Court's

7  statement on the matter, I appreciate it.  Your Honor,

8  my -- I'll just argue and let you know the way we look at this

9  issue in this case.

10       THE COURT:  And let me clarify.  When you say "we,"

11  Mr. Gabbert, are you joined in with this argument in full or

12  partially?

13       MR. GABBERT:  I'm supporting the motion, Your Honor.

14       THE COURT:  Okay.

15       MR. SPRAGENS:  So, Your Honor, the fact is this

16  Court, in setting up the logistics of depositions, which

17  ordinarily would be occurring at my office when I'm putting

18  forward a witness -- that's routine in my practice.  You know,

19  I've got parking places.  I've got a conference room, and we

20  have depositions there on a weekly or every other weekly basis.

21  You know, Mr. Young made a representation at a hearing that he

22  was not comfortable with that deposition being set in my

23  conference room and with Mr. Manookian testifying there.

24       We stood at this podium and had a discussion about

25  that, and the Court undertook to address the hundred pound

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2225)

1  gorilla in the room, that's the Court's language, and what the

2  Court said was that my client's "past behavior before the

3  tribunals -- I've had at least two lawyers call the Court and

4  say they don't feel comfortable if your client is going to

5  appear and you know the Court takes those concerns very

6  seriously and makes no conclusion on whether they're valid.

7  They are perceptions which drive behaviors of other parties."

8      That was the first I had ever learned or, you know,

9  my client had ever learned about contact from outside lawyers

10 with the Court about whether Mr. Manookian posed a safety risk

11 or whether other people felt uncomfortable, whatever that

12 means, appearing with him in this court.  We endeavored to

13 learn more about that.  I did ask Mr. Young those questions

14 during his deposition.  I learned about one contact that Mr.

15 Young had had, and that was at the outset of this whole

16 proceeding.

17      Mr. Young testified, on Page 44 of his deposition,

18 that he called this Court's Courtroom Deputy to alert her to

19 the fact that a creditor's lawyer had an order of protection.

20 And he, Mr. Young, represented that this was a logistical

21 question about an order of protection that Dan Puryear had and

22 that he was contacting the Court about that.  He testified he

23 believed that the person he spoke to was Lauren, the courtroom

24 reputy, and the record speaks for himself -- itself that he did

25 not file a motion about this issue.  He did not alert me at any

1  time.  The first we learned about this contact was when the

2  Court mentioned it, assuming the Court is talking about the

3  same telephone call that Mr. Young testified about.

4       So there was an ex parte communication specifically

5  about the safety risk posed by my client.  That was how we

6  started this case, and I first learned about that when the

7  Court mentioned it sua sponte in endeavoring to build a record

8  sua sponte to justify holding depositions in this courthouse

9  instead of in the ordinary course at my office.  So to me, that

10  contact is troubling.  That contact was not disclosed by the

11  Court.  It was not disclosed by Mr. Young, and I learned about

12  it in this courtroom from this Court's, you know, statements on

13  the record.

14       Then there has been apparently another -- you know,

15  you said at least two.  I don't know who the second phone call

16  was.  I don't know what attorney called.  I don't know if it

17  was Mr. Puryear or somebody else, but there have been

18  apparently two phone calls to the Court or its personnel about

19  my client, and the Court formed enough of a view about

20  Mr. Manookian that it departed from the ordinary course in how

21  depositions were to be conducted.

22       I would add that those depositions were completely

23  uneventful.  We all sat in those -- in those rooms down the

24  hall and, you know, I can't prove the counterfactual, but

25  that's how they would have been if they were held at my office

1  too.  I have every reason --

2          THE COURT:  Well, you can't prove that, can you?

3          MR. SPRAGENS:  No, I can't, Your Honor.

4          THE COURT:  Were other depositions taken here in the

5  courthouse?

6          MR. SPRAGENS:  Yes, Your Honor.

7          THE COURT:  So it wasn't just Mr. Manookian's

8  deposition?

9          MR. SPRAGENS:  That's right.  You ordered that all

10  depositions would be taken in the courthouse based on the

11  finding that Mr. Manookian posed some sort of a risk to other

12  parties.  That's my recollection.  I think that was the basis

13  for your ruling.

14          So the -- the issue here is we know about one contact

15  that is, I think, very prejudicial to my client.  I think the

16  fact that we departed from the ordinary course demonstrates

17  that it has tainted the Court's view of my client.  Your

18  comments about his behavior toward the tribunals and other

19  lawyers calling, I believe that that gives a reasonable

20  observer a basis to question this Court's impartiality.

21          And to this day, I don't know about the second

22  contact.  I know that there's been another attorney who's

23  called your chambers, and I don't know who it was.  I don't

24  know what they said, and this Court never came out and

25  disclosed that to us until it served the interest of the ruling

1  that the Court was making. It never disclosed it on the

2  record. It never said I think everyone just needs to know

3  about this. And, certainly, Mr. Young never disclosed his

4  contact to us, didn't get me on the phone to call the Court.

5  And there was nothing emergent about the phone call. It could

6  have been done through the ordinary adversary process. It

7  could have been put on the docket.

8        So in our view, the two contacts, the failure to

9  disclose the contacts, the departure from the ordinary course,

10  all provides a reasonable basis to suggest that this Court's

11  impartiality can be questioned. It is not to say that this

12  Court is a, you know, biased tribunal. It's not to say that

13  this Court is unfair, and I make no judgments about this

14  Court's, you know, fairness or decency. It's, obviously, not

15  fun to have to come stand here and argue this motion in front

16  of you. However, the standard is an objective standard. It is

17  would a reasonable observer question this Court's impartiality,

18  and I think given the multiple contacts, the lack of

19  disclosure, and the fact that the litigation somewhat sua

20  sponte departed from the ordinary course suggests that a

21  reasonable observer would raise those questions.

22        So that's why we've asked this Court to recuse

23  itself. It shouldn't slow down the litigation. There are

24  other bankruptcy judges in this courthouse who can pick right

25  back up where we left off. If they have formed views of

1  Mr. Manookian, by reading news articles or other interactions

2  they've had with lawyers in the community, they can disclose

3  them.  We can figure out what to do about them, and we can find

4  a bankruptcy judge who doesn't have any knowledge or

5  prejudgment of Mr. Manookian's character or his propensity for

6  some sort of unspecified misconduct.

7           Finally, I would just point out that I don't think

8  there is anything in the record that suggests that he's ever

9  behaved in any sort of dangerous or threatening way in front of

10 a court or in a deposition.  I would just note that for the

11 record.  So if Your Honor has any questions, I'm happy to

12 answer them.  I appreciate the hearing.

13          THE COURT:  Well, are there any documents that have

14 filed in this case from other tribunals?

15          MR. SPRAGENS:  I'm not sure I understand what the

16 Court is asking.

17          THE COURT:  Just that.  There are documents that have

18 been filed on the record in this case from other tribunals.

19 Could that possibly be a way that a court might find out about

20 what's going on in a case?

21          MR. SPRAGENS:  If you're talking about the Williamson

22 County Court in front of Judge Binkley, is that the -- I'm

23 sorry, Your Honor.  I can't -- it feels a little bit like law

24 school where I don't know the answer that you're looking for

25 here, so --

          1            THE COURT:  I'm not looking for an answer at all,

          2    Mr. Spragens.  I -- and disregard -- disregard the question.

          3            MR. SPRAGENS:  Okay.  I mean, to me I don't know

          4    anything in the record in this case that demonstrates some sort

          5    of misconduct toward a tribunal.  If the Court is suggesting

          6    that it contacted another judge to ask about Mr. Manookian, or

          7    something like that, you know, I think that that's also

          8    improper and an ex parte communication.  So I'd love to hear

          9    about that if that is what we're getting at here.

          10           THE COURT:  That's not what we're getting at.  So any

          11   other argument?

          12           MR. SPRAGENS:  No, Your Honor.  Thank you.

          13           THE COURT:  All right.  Anything, Mr. Gabbert?

          14           MR. GABBERT:  No, Your Honor.

          15           THE COURT:  All right.  Mr. Young?

          16           MR. YOUNG:  Your Honor, Phillip Young on behalf of

          17   the trustee.  I'm going to keep this very brief because this

          18   isn't our motion, and the motion seeks relief that's not

          19   directly related to the trustee's case.  I'll only note really

          20   two things just for the record.

          21           I don't think that scheduling depositions at the

          22   courthouse is a departure from the ordinary course.  Trustees

          23   depose people at the courthouse all the time.  We discussed

          24   that at this status conference.

          25           I also would note that the Chase -- the orders that

1　gave rise to the Chase claim, that's what we've referred to it,

2　so the Williamson County orders have in fact been filed in this

3　case on multiple occasions by multiple parties, and I

4　don't -- I think that could certainly form the basis of the

5　Court's opinion about other tribunals.

6　　　　We filed a response in this case at Docket Number

7　174.  The purpose of that response was just to clarify some of

8　the facts and to clarify the law and the issues related to the

9　motion.  But unless the Court has further questions of me,

10　we'll just rely on that response.

11　　　　THE COURT:  All right.  No questions.

12　　　　MR. GABBERT:  Just for the record, I've been

13　practicing in this court for 40 years, over 40 years.  This is

14　the first case I have ever had that depositions have been

15　required at the courthouse without any explanation except that.

16　　　　THE COURT:  All right.  Anything else?

17　　　　MR. SPRAGENS:  No, Your Honor.  We'll rest on our

18　brief and the argument presented today.

19　　　　MR. YOUNG:  Nothing else, Your Honor.

20　　　　THE COURT:  All right.  The Court will take a short

21　recess, and I will rule from the bench.

22　　　　THE COURTROOM DEPUTY:  All rise.

23　　　(Recess taken at 8:19 a.m.)

24　　　(Proceedings resumed at 9:17 a.m.)

25　　　　THE COURTROOM DEPUTY:  All rise.

1          THE COURT:  Please take your seats.  All right.  We

2    are here in the Burton v. Hagh, Case Number 20-90002, motion to

3    disqualify.  I will read an oral ruling from the bench at this

4    time.  Court would like to thank counsel for the briefings and

5    the arguments in this case.

6          This matter is before the Court today to address

7    Defendant's motion to disqualify the presiding judge from the

8    case pursuant to 28 U.S.C. Sections 455(a) and (b)(1), and the

9    Code of Conduct for Federal Judges.  Mr. Gabbert advised the

10   Court that he joins in the motion on behalf of the Defendants,

11   Afsoon Hagh and Hagh Law.

12         We opened today with the objection of the trustee to

13   the presentation of any witnesses or evidence based on the

14   motion -- on the movant's failure to comply with Local Rule

15   9014-1.  Mr. Spragens apologized to the Court and stated that

16   there was no prejudice from the filing of the witness list a

17   mere 26 hours prior to the hearing.  That argument begs the

18   question then why have a rule.  The rules are in place to

19   maintain the balance and integrity of these proceedings.  That

20   is why the Court ordered compliance with all applicable federal

21   and local rules in the order setting this hearing.

22         It is also important to note that upon Mr. Gabbert's

23   motion the afternoon before the original hearing, this matter

24   was continued with no witness list filed prior to that hearing

25   or in the week after.  And, finally, as Mr. Gabbert so

1   graciously reminded the Court, he has been practicing in this

2   Court for 40 years.  So the rules and procedures are not

3   unknown to him.  They should, in fact, be second nature.

4   Therefore, the objection to the presentation of witnesses and

5   evidence is sustained.

6          As for the motion, movants allege the -- that

7   impermissible ex parte communications have occurred between the

8   Judge, the Judge's chamber staff, and third parties, as well as

9   Plaintiff's attorney, and this Court failed to disclose these

10  communications.  They also allege that the judge conducted an

11  independent investigation involving extra judicial research

12  into matters regarding Brian Manookian, and these allegations

13  have resulted in a prejudice against Mr. Manookian.

14         Although it appears that it is an impermissible

15  stretch to accuse a sitting judge of having direct

16  conversations with third parties, as well as conducting an

17  investigation regarding a person who is not a party to any case

18  before him, the movants insist that the allegations are so

19  egregious that disqualification is the only judicial -- the

20  only judiciable outcome of their motion.

21         The accusations here are that the judge is prejudice

22  against a potential witness in this adversary proceeding.  The

23  accusations are based on various fragments and snippets, both

24  on and off the record, all attributed to the judge in some

25  convoluted way and that somehow these allegations pieced

1  together, like letters cut from a magazine for a ransom note,

2  contains some legitimacy simply because Mr. Manookian says they

3  do.  The motion is rife with language and projections crafted

4  to incite indignation.  But Mr. Manookian is mistaken to think

5  that such presentation lends legitimacy to an argument relying

6  on a reasonable belief.

7       He is also mistaken to think his judgment rules the

8  day.  Although his belief is the subject of the motion, that

9  belief is also subject to a test for reasonableness.  The

10  determination he seeks is an objective one.  In other words, it

11  is not legitimate simply because he believes it.  It is only

12  valid if a reasonable person would believe the same thing.

13       28 U.S.C. Section 455(a) states any United States

14  judge shall disqualify himself in any proceeding in which his

15  impartiality might reasonably be questioned.  28 U.S.C. Section

16  455(b)(1) states that a judge shall disqualify himself where he

17  has a personal bias or prejudice concerning a party, or

18  personal knowledge of disputed evidentiary facts concerning the

19  proceedings.  Canon 3(c) of the Code of Conduct for Federal

20  Judges is almost identical to 28 U.S.C. Section 455, requiring

21  a judge to remove themselves from a case if there is a

22  reasonable appearance of impartiality, personal bias or

23  prejudice, or personal knowledge of a disputed evidentiary

24  fact.

25       The record, for those of you who might need a

1  refresher, is established by either communicating with the

2  Court while the Court is in session, or by filing something on

3  the Court docket.  The Court is charged with the integrity of

4  the record.  Part of maintaining that integrity involves

5  court -- courts calling for parties to articulate matters on

6  the record.  It is also important to note that the record

7  contains past rulings made by a tribunal in the proceedings, or

8  in the case of a bankruptcy, an adversary to the proceeding.

9  Moreover, courts communicate with the parties to an action via

10  the record.  That is why this Court disclosed the ex parte

11  communications from counsel, regarding the restraining order

12  against Mr. Manookian, on the record in open court.  That is

13  why courts disclose these things.

14       Extrajudicial research, on the other hand, would be

15  information garnered through means other than reading the

16  record.  As independent investigation presumably falls under

17  the category of extrajudicial research, it also would require a

18  source outside the record.  In the matter before us, the record

19  extends back to November 6, 2019, and contains the 168 docket

20  entries in the main bankruptcy case, as well as the 225 docket

21  entries in this adversary proceeding.  Although the movants

22  insist that the judge has been prejudiced against

23  Mr. Manookian, the record reflects no such prejudice.  Although

24  movants insist that requiring the depositions to be held in the

25  courthouse reflects the presence of the Court's prejudice

1  against Mr. Manookian, what it more reasonably reflects is the

2  judge's familiarity with the case.

3         Mr. Spragens stated that Mr. Young called the

4  courtroom deputy to inform her of an order of protection

5  against Mr. Manookian by a creditor's attorney, and that was

6  how we started this case.  First of all, the courtroom deputy

7  is not a member of Judge Walker's chamber staff.  Secondly,

8  that is not how we started this case.  The hearing on March 17,

9  2022, involved cross motions to compel and reflected the

10 biggest issue so far in this adversary, discovery.  In fact,

11 the case is comprised mostly of three years of discovery

12 disputes with rulings reflecting the Court's stamina for

13 fairness and judiciable administration of the case.

14         Mr. Spragens sought to take advantage of the Court's

15 patience by stepping dangerously close to a line with his

16 accusation that this judge may have had communications with

17 judges in other tribunals about his client.  His accusation was

18 with absolutely no basis and was, as I stated, dangerously

19 close to the line drawn by Rule 11.  The fact is the applicable

20 standard here is an objective one applied to facts, not applied

21 to whatever imaginative scenario the movants can conjure up out

22 of thin air.

23         Simply because a ruling does not reflect the stated

24 interest of a party or non-party doesn't mean we default to

25 disqualifying prejudice.  The transcript shows that the

1 decision on March 17, 2022, as on all days, was so that there

2 would be no advantage or disadvantage to any party.

3 Illustrative of this, the order that Mr. Manookian's deposition

4 be scheduled the courthouse.  What is glaringly absent from the

5 motion is the fact that the judge ordered all depositions to be

6 conducted under the same terms in that order.  All parties,

7 including the plaintiff, were to have their depositions at the

8 courthouse.  This was another ruling in another discovery

9 controversy with another clearly objective, reasonable, and

10 fair ruling.

11        Moreover, none of these issues are material to the

12 case.  Material to the logistics of the case, sure.  But given

13 the inability of these parties and these witnesses to conduct

14 discovery without disagreeing about every little detail, it was

15 necessary for the judge to rule on all of the discovery matters

16 and to do so in an equitable, fair, and reasonable manner, and

17 that he did.

18        The expectation of lawyers in the discovery process,

19 as reflected in the applicable rules, is to conduct themselves

20 in a professional, civil, and agreeable manner in order to

21 resolve the case either on the merits or by settlement.  The

22 contentious nature of these discovery proceedings were a beast,

23 one might say a gorilla, with which the Court has tamed as best

24 as possible.

25        Furthermore, this Court never had to rely on

1  extrajudicial research.  Now let's get back to the record for

2  this one.  The record contains the rulings from other tribunals

3  that have found Mr. Manookian to have acted in bad faith,

4  engage in a pattern of obfuscation, and conduct himself in a

5  reckless manner.  Specifically, a Williamson County judge found

6  that Mr. Manookian had knowingly, willfully, and intentionally

7  violated a protective order and then attempted to mislead that

8  court about that violation.  That judge found Mr. Manookian's

9  behavior regarding discovery matters to be so egregious that he

10 imposed significant monetary sanctions against him.  All of

11 this is part of the record in this case.

12          Additionally, this case did not find that Mr.

13 Manookian posed a threat.  That would be the state court that

14 issued the restraining order.  This Court simply sought to

15 honor that order, as federal courts do with most state court

16 orders, and to protect the integrity of the proceedings.

17 Movants neglect to mention that the judge stated having the

18 depositions in the courthouse protects everyone, including

19 Mr. Manookian.

20          Therefore, although the movants express their

21 perceptions of bias and prejudice, the record does not support

22 that as a reasonable view.  The record shows not only

23 evenhanded judgment in this proceeding, but also illustrates

24 the Court's elevated patience with a painful number of

25 discovery disputes, including the ones that is the catalyst of

1  this motion.

2       Since any ex parte communication was permissible and

3  that it was not material, but concerned with security and

4  administrative procedures within the Court, and because no

5  extrajudicial research was conducted to impair this Court's

6  impartiality, it is mandatory that I deny the motion to

7  disqualify.  Since there was no reasonable possibility that my

8  objectivity and neutrality has been compromised, it is

9  incumbent that I remain on the case.  The absence of any

10  reasonable question regarding my impartiality demands that I

11  deny the motion to disqualify.

12       The Court will issue an order containing full

13  analysis and discussion.  The Court will also enter an order

14  scheduling an evidentiary hearing on Mr. Manookian's objection

15  to the motion to compromise in the main case, that hearing

16  being bifurcated into Mr. Manookian's standing issue and the

17  substance of his objections.  Any questions?

18       MR. SPRAGENS:  No, Your Honor.

19       MR. YOUNG:  No, Your Honor.

20       THE COURT:  All right.  Court will be adjourned.

21       THE COURTROOM DEPUTY:  All rise.

22    (Proceedings concluded at 9:32 a.m.)

23                    * * * * *

24

25

1

2 **C E R T I F I C A T I O N**

3

4      I, Alicia Jarrett, court-approved transcriber, hereby

5 certify that the foregoing is a correct transcript from the

6 official electronic sound recording of the proceedings in the

7 above-entitled matter.

8

9

10

11 _____

12 ALICIA JARRETT, AAERT NO. 428      DATE: May 5, 2023

13 ACCESS TRANSCRIPTS, LLC

14

15

16

17

18

19

20

21

22

23

24

25