IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MANOOKIAN PLLC and BRIAN MANOOKIAN, | ) ) ) |
| Appellants, | ) ) |
| v. | ) ) ) |
| JEANNE ANN BURTON, TRUSTEE, | ) ) |
| Appellee. | ) ) ) |

Case No. 3:23-cv-00392
Bankr. Case No. 3:19-bk-07235
Adv. Pro. No. 3:20-ap-90002

Judge Aleta A. Trauger

## MEMORANDUM and ORDER

Before the Court is the Notice of Appeal filed by defendants/appellants Manookian PLLC, Brian Manookian, Afsoon Hagh, and Hagh Law PLLC. (Doc. No. 1; Adv. Pro. No. 231.[1]) The appellants appeal the Bankruptcy Court's Order denying their Motion to Disqualify Bankruptcy Judge Charles Walker. (Adv. Pro. Nos. 161 (Motion), 229 (Order).) The appellants have filed a supporting Brief, a Statement of Issues on Appeal, and the record pertaining to their appeal. (Doc. Nos. 10, 11, and 11-1 through 11-6.) The plaintiff/appellee, Trustee Jeanne Ann Burton, has filed a responding Brief (Doc. No. 13), and the appellants filed a Reply (Doc. No. 14).

For the reasons that follow, the court construes the Notice of Appeal as a motion for leave to pursue an interlocutory appeal. That motion is **GRANTED**. However, the underlying Order is **AFFIRMED**.

---

[1] Citations to "Doc. No." refer to the docket number of filings made in the case in this court. Citations to "Bankr. No." are to the lead bankruptcy court docket in the underlying bankruptcy case, *In re Cummings Manookian, PLLC*, Case No. 3:19-bk-07235 (Bankr. M.D. Tenn.). Citations to "Adv. Pro. No." are to filings in the subject adversary proceeding related to that case, *Burton v. Hagh Law PLLC et al.*, Adv. Pro. No. 3:20-ap-90002 (Bankr. M.D. Tenn.).

I. **BACKGROUND**

On November 6, 2019, Cummings Manookian, PLC[2] filed a Chapter 7 Voluntary Petition in the Bankruptcy Court, which was assigned to Bankruptcy Court Judge Charles M. Walker. (Bankr. No. 1.) Trustee Jeanne Ann Burton was appointed to serve as the Chapter 7 Trustee for the debtor on the same day and continues to serve in that capacity.

On January 8, 2020, the Trustee filed the Adversary Proceeding against Hagh Law PLLC ("Hagh Law"), Afsoon Hagh, Manookian PLLC, and First Citizens Bank and Trust Company (the "Bank"), asserting claims for conversion, fraudulent transfer, tortious interference with contract, successor liability/alter ego, and turnover, and seeking a declaratory judgment, injunctive relief, and other related relief. (Adv. Pro. No. 1, at 1.)[3] Thereafter, the parties pursued a long period of discovery, apparently clashing repeatedly along the way. On March 17, 2022, Judge Walker conducted a hearing ("March 17, 2022 hearing") for the purpose of resolving a number of outstanding discovery disputes. While the parties were able to resolve most of their disputes, one issue on which they had not reached an agreement was where to conduct four depositions the parties agreed should be taken. (Adv. Pro. No. 140, at 81–82.) The Trustee had suggested that the depositions take place in the courthouse, a proposal Judge Walker immediately approved. Counsel for Brian Manookian and Manookian PLLC registered his objection, and the court observed that, while the parties still had the ability to agree on a location, in the absence of an agreement, they would have to hold a hearing. (*Id.* at 82.) Counsel for Manookian and Manookian PLLC continued

---

[2] The debtor's correct name is apparently Cummings Manookian, PLC. It was named incorrectly as Cummings Manookian, PLLC in the Petition.

[3] After the Bank turned over $715,000 (representing disputed fees in a case in which the debtor had represented one of the parties) being held by the Bank to the Clerk of the Bankruptcy Court, pursuant to the Bankruptcy Court's Order, the Trustee dismissed the Complaint as to the Bank on January 28, 2020. (Adv. Pro. Nos. 15, 17, 25.)

to express the reasons why he believed that holding the depositions at the courthouse would be inconvenient for all concerned. He noted in particular that parking at the courthouse was expensive and that he did not understand the basis for departing from the ordinary course of holding depositions at lawyers' offices. The court then asked counsel for the Trustee to articulate a basis for conducting the depositions at the courthouse. Counsel for the Trustee stated several reasons why he believed the depositions should be taken at the courthouse, including his belief that there was, as he explained it, "a security issue here. There's already been a restraining order put down against Mr. Manookian by one of the creditor[s'] lawyers in this case, and I don't take that lightly on behalf of my client." (*Id.* at 83.)

Counsel for Manookian and Manookian PLLC again posited that his office was "just down the street" and offered free parking, and he objected to the suggestion of a security issue "in this ordinary bankruptcy case involving professional lawyers on all sides." (*Id.* at 84.) At this point, the court asked counsel for the Trustee if he was "uncomfortable doing depositions" in the appellants' counsel's office. (*Id.*) Counsel for the Trustee stated that he was. The court then made the following statement:

> All right. And then I'll just address the 100-pound gorilla in the room on that issue.
>
> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties. And to eliminate any of those perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.
>
> And so the Court's going to make that determination, that the depositions, unless the parties can agree, will be held here in the courthouse.

(*Id.* at 84–85.) No further discussion on this topic ensued, and counsel for Manookian did not

object contemporaneously to the court's statement regarding his "client's past behavior," nor did he express concern about or attempt to ask the judge questions about the two telephone calls.

On May 5, 2022, Manookian and Manookian PLLC, through counsel, filed their Motion to Disqualify Bankruptcy Judge Charles Walker, on the basis that the judge had "engaged in multiple prohibited *ex parte* communications about Brian Manookian and this proceeding . . . while this action has been pending." (Adv. Pro. No. 161, at 1–2.) Hagh and Hagh Law later joined in the motion. (Adv. Pro. No. 173, at 1.)

In addition to the "communications with at least two [unidentified] lawyers" referenced by the judge at the March 17, 2022 hearing, the appellants represented that they had learned during the deposition of Phillip Young[4] that the Trustee, "through her Special Counsel, has had at least one improper *ex parte* communication with the Court about Mr. Manookian." (Adv. Pro. No. 161, at 1–2 n.2 (citing Adv. Pro. No. 161-2, Young Dep. 43–45).)[5] The Trustee filed a Response opposing the motion and pointing out that counsel for the Trustee testified that he had had a brief conversation with the judge's courtroom deputy—not with the judge himself—and that the conversation involved a procedural question rather than substantive issues. (Adv. Pro. No. 174, at

---

[4] Phillip Young functioned as receiver in a state court action filed in Williamson County, before being retained as counsel for the Trustee in Cummings Manookian's Chapter 7 bankruptcy proceeding. In that capacity, he was identified by the Trustee as a fact witness in the Adversary Proceeding. (*See* Adv. Pro. No. 140, at 69, 85.)

[5] As relevant here, Young testified as follows during his deposition:

[T]he very, very first hearing in this case, I called [Judge Walker's] courtroom deputy to alert her to the fact that a creditor's lawyer had an order of protection [against Brian Manookian]. And I didn't know how that was going to work logistically when you have a lawyer who's representing a creditor in the bankruptcy and the debtor's representatives and there was an order of protection down. And so I called to alert them to that so they would know how to handle that. But I don't know if anybody else called.

(Adv. Pro. No. 161-2, Young Dep. 44.) Specifically, he did not know if the lawyer who had obtained the order of protection had also called chambers. (*Id.*)

2.) The Trustee also argued that the judge's comments at the March 17 hearing and the decision to hold depositions at the courthouse did not reflect bias but instead a desire to have the depositions conducted at the courthouse in order "to avoid any allegations of bad behavior, whether real or perceived." (*Id.* at 4.) The Trustee asserted that the record did not reflect impermissible *ex parte* communications but also argued that, even if it did, *ex parte* communications, standing alone, do not require a judge's recusal unless the "substance of those communications might cause a reasonable person to question the judge's impartiality." (*Id.* at 6.).

The Bankruptcy Court scheduled a hearing on the Motion to Disqualify for June 29, 2022.[6] On May 31, 2022, Manookian PLLC noticed the deposition of Judge Walker, for the purpose of addressing "(1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record."(Adv. Pro. No. 177.) Judge Walker entered an eight-page Order the next day, quashing the Notice of Deposition. (Adv. Pro. No. 178.) Manookian PLLC and Brian Manookian filed their Notice of Appeal and Statement of Election on June 14, 2022, specifically giving notice of their appeal to this court "from the Bankruptcy Court's June 1, 2022 Order (Doc. 178)," that is, from the Order Quashing Notice of Deposition. (Adv. Pro. No. 184.)[7]

This court thereafter issued a Memorandum and Order construing that Notice of Appeal as

---

[6] The docket reflects that the parties, throughout this time period, continued to engage in discovery disputes.

[7] At the hearing on the Motion to Disqualify, which convened as planned on June 29, 2022, Judge Walker read a statement into the record. In this statement, he expressed his conclusion that, in light of the appeal of the Order Quashing Notice of Deposition, the court was divested of jurisdiction over certain aspects of the case, specifically including both the Motion to Disqualify and the appellants' Motion for Summary Judgment, filed ten days after their Notice of Appeal. (Adv. Pro. No. 212, at 4; *see also* Adv. Pro. No. 188 (Motion for Summary Judgment).)

a motion for leave to appeal an interlocutory order of the Bankruptcy Court and denying it, based on the appellants' failure to show that any of the factors relevant to permitting an interlocutory appeal weighed in their favor and, even if they had, that they failed to make any showing that Judge Walker had abused his discretion in quashing the deposition. *See Manookian PLLC v. Burton*, No. 3:22-cv-00474, Bankr. Case No. 3:19-bk-07235, Adv. Pro. No. 3:20-ap-90002, 2023 WL 1867456 (M.D. Tenn. Feb. 9, 2023).

Following resolution of that appeal, the Bankruptcy Court promptly reset the evidentiary hearing on the Motion to Disqualify (Adv. Pro. No. 220) and, after that hearing was conducted on April 4, 2023, issued the Order Denying Motion to Disqualify (Adv. Pro. No. 229)—the Order that is the subject of the current appeal. A timely Notice of Appeal was filed on behalf of Manookian PLLC, Hagh, Hagh Law, and Manookian. (Adv. Pro. No. 231.)

In their Brief in support of their appeal, appellants first posit that the denial of the Motion to Disqualify is a final order appealable under 28 U.S.C. § 158. Alternatively, they request that the court consider their notice of appeal to be a motion for leave to file an interlocutory appeal. (Doc. No. 10, at 3.) They argue that the Bankruptcy Judge erred in failing to recuse himself because he:

> (1) belatedly revealed "its receipt of and/or participation in multiple *ex parte* communications about this litigation [but] continues to decline to reveal the substance, date, and parties to each of these *ex parte* communications";
>
> (2) issued an Order quashing the subpoena for his deposition and, in that Order, "articulated additional biases and prejudices against" appellant Manookian and directly acknowledged that this matter "was now 'tainted' against Appellants"; and
>
> (3) relied on a "highly prejudicial" state court order about appellant Manookian, concerning "judgments about his character," despite that order's having been vacated.

(Doc. No. 10, at 4.)

The Trustee argues in response that the appellants have failed to show that any impermissible *ex parte* communications occurred or that recusal is required under the governing

standards. She also argues that appellant Manookian, a non-party, lacks standing to pursue this appeal. The court declines to reach that argument, since the appellants who are parties clearly have such standing.

The appellants filed a Reply, reiterating their initial arguments and also asserting that the Trustee failed to address their argument under 28 U.S.C. 455(b)(1), concerning Judge Walker's "self-determination that the proceedings are now 'tainted.'" (Doc. No. 14, at 15.)

## II. THE NOTICE OF APPEAL/MOTION FOR LEAVE TO APPEAL

### A. Legal Standard

Under 28 U.S.C. § 158, a district court has jurisdiction to hear a timely appeal as a matter of right from final orders or decrees issued by a bankruptcy court and, "with leave of court," from interlocutory orders. 28 U.S.C. § 158(a)(1), (a)(3). Rule 8004(a) of the Federal Rules of Bankruptcy Procedure provides that, to appeal from an interlocutory order, a party should file a motion for leave to appeal with its notice of appeal. Fed. R. Bankr. P. 8004(a)(2). At the same time, however, Rule 8004(d) allows the district court to treat a timely notice of appeal as a motion for leave to appeal.

While neither Rule 8004 nor 28 U.S.C. § 158(a) states what factors a district court should consider in deciding whether to grant a motion for leave to appeal, the Sixth Circuit has indicated that the standard set forth in 28 U.S.C. § 1292(b), which deals with interlocutory appeals from district courts to courts of appeal, also applies to bankruptcy appeals. *In re Eggleston Works Loudspeaker Co.*, 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000); *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88 (E.D. Mich. 2022) (citations omitted). Thus, a district court considering a motion to permit an interlocutory appeal should consider "whether the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion; whether an immediate appeal may materially advance the ultimate termination of the litigation;

and whether denying leave would result in wasted litigation and expense." *In re Eggleston Works*, 253 B.R. at 521; *see also In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Even when all these criteria are met, "district courts have 'unfettered discretion to deny certification' in light of the strong bias in federal practice against interlocutory appeals." *In re Great Atl. & Pac. Tea Co.*, 615 B.R. 717, 722 (S.D.N.Y. 2020) (citation omitted). Further, it is well established that permitting interlocutory appeals is "the exception, rather than the rule." *Energy Conversion Devices*, 638 B.R. at 89 (citing *In re Doria*, No. 09-75261, 2010 WL 2870813, at *2 (E.D. Mich. July 21, 2010)).

B. **The Order Denying Motion to Disqualify Is Not a "Final Order"**

In their opening Brief, the appellants contend that the court has jurisdiction over this appeal as a matter of right, under 28 U.S.C. § 158(a), because the Order Denying Motion to Disqualify is a final, appealable order. (Doc. No. 10, at 3.) Alternatively, they ask the court to consider their timely Notice of Appeal as a motion for leave to file an interlocutory appeal (*id.*), but they utterly fail to provide any argument in support of that request.

"Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). Thus, for example, "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* Likewise, orders "denying an application for an administrative expense," "sustaining an objection to a creditor's claim," or "denying a motion under Federal Rule of Civil Procedure 60(b)" all qualify as "final orders" that are appealable as of right. *In re Murray Energy Holdings Co.*, 640 B.R. 558, 560–61 (B.A.P. 6th Cir. 2022).

The denial of a recusal motion is generally considered interlocutory and not immediately

appealable. *In re Royal Manor Mgmt.*, 525 B.R. at 345–46 (citing *Lopez v. Behles (In re Amer. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir. 1994));[8] *accord In re Williams*, ADV LA 04-02775 SB, 2006 WL 6817587, at *6 (B.A.P. 9th Cir. Mar. 10, 2006) ("An order denying a motion to recuse is interlocutory until a final decision is entered."); *Willis v. Kroger*, 263 F.3d 163, 163 (5th Cir. 2001); *In re Moix-McNutt*, 215 B.R. 405, 408 (8th Cir. B.A.P. 1997) ("A majority of courts treat recusal orders as interlocutory." (collecting cases)).

This court finds that the Order Denying Motion to Disqualify entered in the Bankruptcy Case is an interlocutory order from which no immediate right to appeal attaches. The court, therefore construes the Notice of Appeal as a motion for leave to appeal. Fed. R. Bankr. P. 8004(d). The question, then, is whether the court should grant leave to appeal under 28 U.S.C. § 158(a)(3).

### C. Whether to Grant Leave to Appeal

As set forth above, a court may permit an interlocutory appeal if the order in question involves a controlling question of law as to which a substantial ground for difference of opinion exists and an immediate appeal may materially advance the ultimate termination of the litigation. *Energy Conversion Devices*, 638 B.R. at 88. All of these factors must be met. *Id.* And even then, the court may exercise its discretion to deny leave to appeal. *Id.*

With respect to the first factor, the presence of a controlling question of law, recusal motions under § 455 are generally left to the sound discretion of the judge. *See Garrett v. Ohio State Univ.*, 60 F.4th 359, 368 (6th Cir. 2023) (reviewing denial of recusal motion for abuse of

---

[8] In *Royal Manor*, the court deemed the denial of the recusal motion, along with several other orders, to be final, "because they all relate[d] to the sanctions judgment and that is the only issue remaining to complete these Chapter 11 cases." *In re Royal Manor Mgmt.*, 525 B.R. at 346. It also noted that the "finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *Id.* (quoting *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) (some internal quotation marks omitted)).

discretion), *cert. denied sub nom. The Ohio State Univ. v. Gonzales*, 143 S. Ct. 2659 (2023). Interlocutory appeals, however, are typically "limited to questions that present 'neat abstract issues of law.'" *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006) (quoting *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997)). "A legal question of the type envisioned in § 1292(b), . . . generally does not include matters within the discretion of the trial court." *Id.* (citing *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994)).

Many courts have denied leave to appeal the denial of a recusal motion for failure to establish that they involve a disputed *legal* issue. *See, e.g.*, *In re Highland Capital Mgmt., L.P.*, 3:21-CV-0879-K, 2022 WL 394760, at *4 (N.D. Tex. Feb. 9, 2022) ("The Recusal Order was an exercise of the Bankruptcy Judge's discretion, so there is no controlling issue of law presented."); *In re Gonzalez*, 8:12-BK-19213-KRM, 2016 WL 1253274, at *5 (M.D. Fla. Mar. 30, 2016) *McCallan v. Hamm*, 502 B.R. 245, 249 (M.D. Ala. 2013) (denying leave to appeal denial of motion to accuse where the parties did not dispute the applicable legal standards but "the bankruptcy judge's application of the recusal standard to the facts of the particular case"); *In re The Ad Hoc Comm. of Tort Victims*, No. 04CV08934, 2005 WL 267564, at *4–7 (S.D.N.Y. Feb. 3, 2005) (declining discretionary jurisdiction over bankruptcy judge's denial of motion to recuse on the grounds that the dispute did not concern a doubtful legal principle but was rather "a fact-intensive question that would be more appropriate for resolution after the final judgment").

This court agrees with those rulings and finds that the present appeal does not concern a controlling issue of law but, rather, a question of applying settled law to the facts of this case. Moreover, there is no substantial ground for difference of opinion as to the standard governing motions for a judge's recusal. The parties agree that 28 U.S.C. § 455 governs the question. They simply disagree as to how it applies to the facts in this case. The court also finds that the third

element—whether an interlocutory appeal will materially advance the ultimate end to this matter—is not met.

However, despite the appellants' failure to meet (or even argue) these elements, the court will exercise its discretion to grant leave to appeal in the interest of judicial efficiency and to lay to rest this issue that the appellants, apparently, will not let lie. *Accord Moix-McNutt*, 215 B.R. at 408–09 (noting that it would ordinarily deny leave to appeal the denial of a recusal motion, but granting leave in that case, "in the interest of judicial economy, where postponing review risked "tainting the entire course of judicial proceedings").

### III.  MERITS OF THE APPEAL

#### A.  Legal Standard

Bankruptcy Rule 5004(a) states that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a). Under § 455, a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In other words, a judge's recusal under § 455(a) is mandatory if, "based on an objective standard of a reasonable person with knowledge of all the facts, the Bankruptcy Judge concludes that her impartiality is reasonably placed in question." *In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 379–80 (B.A.P. 6th Cir. 2015) (quoting *Barna v. Haas (In re Haas)*, 292 B.R. 167, 175–76 (Bankr. S.D. Ohio 2003), *aff'd*, 652 F. App'x 330 (6th Cir. 2016). A federal judge also has a mandatory duty not to recuse himself when that standard has not been met. *Id.*

Further, a judge should disqualify himself where he has "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the

proceeding." 28 U.S.C. § 455(b)(1). That determination is subjective, though such subjective bias or knowledge may also be revealed by evidence in the record.

"Expressing an opinion about litigation is not a reason for recusal." *In re Royal Manor Mgmt., Inc.*, 525 B.R. at 380. Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Generally, "bias must either be based on an extrajudicial source" or based on a showing of a judicial ruling that is "undeserved or excessive in degree" or "'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 555). "Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." *Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 418 (6th Cir. 2005) (affirming bankruptcy judge's denial of motion to recuse when the record lacked "concrete examples of hostility").

B. **Application of § 455 to the Facts**

The Trustee's first argument is that the appellants have not presented any evidentiary basis for overturning the Bankruptcy Court's findings, because the appellants were not allowed to present evidence or witnesses at the evidentiary hearing, having failed to comply with Local Rule 9014-1. The transcript of that hearing reflects, however, that the parties stipulated to the admissibility of Phillip Young's testimony by deposition. (Adv. Pro. No. 237, at 5–6.) The Bankruptcy Court considered that testimony in ruling on the motion, as well as the appellants' reference to Judge Walker's statements during the March 17, 2022 Hearing. (*See id.* at 6–7 (stating "I think you do know [what's been said to the Court]. You took Mr. Young's deposition, and you have exactly what led you to filing the motion in the first place. You have my statements in the

record. You may proceed however you like, but the Court doesn't have any knowledge other than what you've already been given.").) In other words, the record is not completely devoid of evidence.

The appellants' Motion to Disqualify is premised upon (1) Judge Walker's allegedly "belated revelation" of "multiple *ex parte* communications" regarding which he has purportedly declined to reveal the substance; (2) Judge Walker's Order quashing the notice of his own deposition, in which, according to the appellants, he explicitly acknowledged that the case was "tainted" against the appellants; and (3) Judge Walker's purported reliance on a "highly prejudicial" state court order that had actually been vacated by the Tennessee Court of Appeals. The appellants' histrionics aside, none of this, even considered collectively, objectively suggests bias of the type that would require Judge Walker's recusal.

### 1. The Ex Parte Communications

First, although Canon 3 of the Code of Conduct for United States Judges establishes that a federal judge "should not initiate, permit, or consider *ex parte* communications . . . concerning a pending or impending matter" and should "promptly notify the parties" if he "receives an unauthorized *ex parte* communication *bearing on the substance of a matter*," the appellants have neither demonstrated a violation of Canon 3 nor established that an unintentional violation of Canon 3 would mandate the judge's disqualification.

Regarding the communications themselves, Judge Walker's statement in open court adequately revealed their content, and his statement did not suggest that the communications concerned substantive matters or that Judge Walker credited the validity of "concerns" about Manookian. (*See* Adv. Pro. No. 140, at 84 ("I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions

which drive behaviors of other parties.").) Nothing in this statement implies the existence of improper *ex parte* communications. And even if it did, the appellants have not established that such communications, standing alone, would warrant disqualification. *Accord Bradley v. Milliken*, 620 F.2d 1143, 1158 (6th Cir. 1980) (finding judge did not abuse his discretion in denying recusal motion, despite alleged *ex parte* communications); *see also Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) ("While *ex parte* communications are discouraged, they aren't always improper and don't necessarily call for recusal." (citations omitted)); *In re Brooks*, 383 F.3d 1036, 1043 (D.C. Cir. 2004) (finding that recusal based on judge's *ex parte* communications was not required where those contacts were not shown to "give him personal knowledge of disputed evidentiary facts").

Regarding the appellants' repeated assertions that Judge Walker has declined to further enlighten them about these telephone calls, Judge Walker stated at the hearing on the Motion to Disqualify that the parties knew everything he did. (Adv. Pro. No. 237, at 7.) And one of the purported *ex parte* communications has been explored in depth through the deposition of Special Counsel Phillip Young, who testified that, prior to the very first hearing in the bankruptcy case, he had called the judge's courtroom deputy to alert her to the fact that "a creditor's lawyer had an order of protection" against Manookian, and he wanted to alert the judge and his chambers about this potential logistical problem. (Adv. Pro. No. 174-1, Young Dep. 44–45.) He explained that it did not occur to him to file a motion, "[b]ecause it was just a logistical issue and we always handle that through the courtroom deputies." (*Id.* at 45.) Judge Walker's statement, too, indicated that his chambers had received communications related to security concerns, not substantive issues. And the only reason this issue was raised at all was because the parties could not agree upon where to conduct several key depositions.

The judge, in ordering that the depositions would take place at the courthouse unless the parties reached an agreement to the contrary, made it clear that the order applied to all of the parties, not only Manookian, and that he was interested in protecting all of the parties, specifically including Manookian, from accusations of misconduct, warranted or unwarranted, and interested in making sure that the court would be immediately available in the event conflicts between the parties arose during these depositions. (*See* Adv. Pro. No. 140, at 84 ("And to eliminate any of these perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do [the deposition] here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. . . . And as a matter of fact, again, there will be some method available to reach the Court if during those depositions we have further in issues with discovery.").)

The appellants, in short, are attempting to make a mountain out of a mole hill. There was nothing inherently prejudicial to any party about the order requiring depositions to take place at the courthouse unless the parties agreed otherwise, and Judge Walker's statements in support of that decision do not suggest that he had received—and failed to disclose promptly to the parties— *ex parte* communications about substantive matters involved in the case or "personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1). And certainly nothing in the record concerning these communications provides a *reasonable* basis for questioning Judge Walker's impartiality, under § 455(a). The appellants' assertion that Judge Walker has not been transparent or forthcoming about these communications, like their contention regarding the "clearly corrosive effect" of the communications (*see* Doc. No. 10, at 23), amounts to sheer speculation.

### 2. The Order Quashing Notice of Deposition

For their second argument in support of recusal, the appellants point to the language of Judge Walker's Order Quashing Notice of Deposition. They assert that the "vitriolic" language of that Order makes it clear that Judge Walker has "deemed the mere attempt to require acquiescence to basic Canons of Judicial Conduct as not only a personal attack, but an effort to 'taint' and 'contaminate' the proceedings." (Doc. No. 10, at 22.) They contend that recusal is required, due to Judge Walker's "acknowledgement that the proceedings are personally tainted and contaminated in his view." (*Id.*; *see also* Doc. No. 14, at 16 ("[T]he court's own language . . . is a candid acknowledgment of bias.").) In other words, the appellants suggest that this Order establishes that recusal is required under both the objective standard in 28 U.S.C. § 455(a) and the subjective bias standard in § 455(b)(1).

The Order Quashing Notice of Deposition examines in depth the controlling regulations and then applies those standards to the Notice of Deposition ("Notice"), purporting to notice Judge Walker's deposition, ultimately reaching the conclusion that the Notice was unenforceable. (Adv. Pro. No. 178, at 1–5.) The Order finds, as relevant here, that

> the Notice serves no purpose other than to waste the resources of the United States for private purposes, and act to expend time of federal judicial personnel better used in the performance of official duties. Moreover, such involvement of the federal judiciary in issues unrelated to its mission serves no party and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system.
>
> Secondly, the Notice requests testimony that serves no purpose and has no relation to the merits of the case. Thirdly, the party seeking the testimony under the Notice – Manookian, PLLC – has alleged no specific instance of fraud or injustice. The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court. The request is not appropriate or necessary under the rules of procedure or under substantive laws of privilege and is not within the proper authority of the party making the request.
>
> . . . .

> The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel.
>
> The eleventh factor is not applicable to these proceedings. For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings. There is no expectation that any such testimony would serve any legitimate purpose.
>
> The fourteenth and fifteenth factors are not applicable. As to the last factor, any other consideration that may be germane to the decision of this determining officer, it is important to note that the request to depose Judge Walker was made by a party that has made no specific accusation of bias linked to any ruling in the case. Moreover, two years after its inception, the case is merely at the discovery stage. No dispositive rulings have been issued. The request to depose the sitting judge has no basis in law or fact. Honoring such request would only serve to obstruct the justice administered through the bankruptcy system.

(*Id.* at 6–7.) Based on these considerations, the court quashed the Notice. (*Id.* at 8.)

The judge, that is, closely considered each of the factors that, in his view, governed whether he should comply with the Notice and concluded that they were not satisfied. Viewed objectively, the language of this Order is not "vitriolic." Second, it does not concede or "acknowledge" that these proceedings are "personally tainted" or suggest that the judge considered the Notice to be personally offensive. Rather, the Order construes the Notice as an *attempt* to taint the proceedings by effectively making him a witness, despite the appellants' not alleging any substantive ruling or conduct on the part of the judge that could be deemed biased.

And third, as the Supreme Court has explained, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* The judge's view of the Notice as an attempt to taint the proceedings does not display such

deep-seated antagonism. *Id.* Nor does the fact that he ruled against the appellants both in quashing the Notice and in denying the Motion to Disqualify.

The Order Quashing Notice of Deposition does not provide a reasonable basis for questioning Judge Walker's impartiality, for purposes of § 455(a), nor can it be deemed to express subjective bias on the part of Judge Walker, for purposes of § 455(b)(1).

### 3. The "Highly Prejudicial" State Court Order

The appellants' next argument is that the Bankruptcy Court's "reliance on [a] vacated [state court] order—the overturning of which was a key issue in Judge Crenshaw's decision overturning a prior order of Judge Walker in this case—to justify his impressions of a litigant provides a further basis for reasonably questioning his impartiality." (Doc. No. 10, at 24.)[9] In fact, the statement at issue arose in response to the appellants' argument, in their brief in support of recusal filed in the Bankruptcy Court, that the judge's statements regarding Manookian's "past behavior before tribunals" indicated that the judge had engaged in "extrajudicial research regarding this case." (Adv. Pro. No. 229, at 3.) As Judge Walker noted, the appellants' motion "quite emphatically states that 'No court has ever found that he [Mr. Manookian] acted even remotely inappropriately, much less in a physically threatening manner, during a deposition—nor, crucially, does the record in this

---

[9] The appeal before Judge Waverly Crenshaw involved the settlement of a claim against the debtor by the "Chase parties," which arose from a sanctions judgment issued by a Williamson County judge, which the Tennessee Court of Appeals later vacated and remanded for reconsideration before a different judge, in connection with also ordering the retroactive recusal of the state court judge who had initially issued the sanctions order, based on an appearance of impropriety. *See Chase v. Stewart*, No. M2018-01991-COA-R3-CV, 2021 WL 402565, at *6 (Tenn. Ct. App. Feb. 4, 2021). Judge Crenshaw was called upon to review the Bankruptcy Court's order approving the settlement with the same parties and ruling that Manookian personally lacked standing to challenge the settlement. Finding that the Bankruptcy Court applied the wrong legal standard to the standing question, Judge Crenshaw vacated the order and remanded for further proceedings. *In re Cummings Manookian, PLLC*, 3:21-cv-00797, 2022 WL 677562, at *3–4 (M.D. Tenn. Mar. 7, 2022).

case support such a finding.'" (*Id.* (quoting Adv. Pro. No. 161, at 6).) Addressing that allegation, Judge Walker noted that there was no need for extrajudicial research, because the record in the proceeding before him in fact "contains the rulings from other tribunals that have found Mr. Manookian to have acted in bad faith, engaged in a pattern of obfuscation, and conducted himself in a reckless manner," specifically referencing a Williamson County judge's finding that Manookian had willfully violated an order of protection and then attempted to mislead the court about the violation. (*Id.* at 16.) This reference was apparently to the order subsequently vacated by the Tennessee Court of Appeals in *Chase*, 2021 WL 402565, at *6.[10] Regardless, Judge Walker clarified that he himself had not found that Manookian "posed a threat" and instead simply sought to "protect the integrity of the proceedings" before him. (*Id.*) He again emphasized that requiring the depositions to be conducted in the courthouse "protected everyone, including Mr. Manookian." (*Id.*)

In other words, Judge Walker did not rely on the vacated Williamson County sanctions order for any purpose (other than to refute allegations of "extrajudicial research") or find that Manookian had behaved inappropriately in the case before him. He was simply pointing out that the record in the bankruptcy case included orders by other judges adverse to Manookian. This does not provide a reasonable basis for questioning his partiality, nor reflect either subjective bias or "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) & (b)(1).

---

[10] Notably, the Court of Appeals did not find that the trial court judge was actually biased, instead observing that the "record reflects that the judge showed extraordinary patience and was thorough in his review of serious allegations" against Manookian and another attorney. *Chase*, 2021 WL 402565, at *5. However, statements by the judge on the record demonstrated an objectively reasonable basis for questioning his impartiality. *Id.*

### IV. CONCLUSION AND ORDER

The Order the appellants seek to appeal is not a "final order" giving rise to an automatic right to appeal. The court, therefore, construes the Notice of Appeal as a motion for leave to appeal an interlocutory order. That motion is **GRANTED**.

Regarding the merits of the appeal, the appellants have failed to provide any basis for concluding that Judge Walker's impartiality might "reasonably be questioned" or that he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b). Judge Walker did not abuse his discretion in denying the appellants' Motion to Disqualify, and that Order (Adv. Pro. No. 229) is **AFFIRMED**.

This appeal having been fully disposed of, the Clerk shall close this case.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge