## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC, AND MANOOKIAN PLLC'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC move for summary judgment on all claims in this matter.

## I.     INTRODUCTION

This is a factually contradicted and legally unsupported adversary proceeding initiated by a Trustee who now admits her lawsuit was filed "under a time crunch" and without investigation.[1]

---

[1] *See, e.g.,* Deposition of Trustee Jeanne Ann Burton, Page 91:2-8, 71:1-7; 72:10-13; 107:13-108:1 (conceding, for example, that the Trustee has reviewed a single pleading in a case with over 723 pleadings, but for which the Trustee has alleged entitlement to attorney's fees for work performed.)

Jeanne Ann Burton is the Trustee for Cummings Manookian PLLC ("Cummings Manookian" or "CM"). Following her appointment as such, Ms. Burton immediately filed this adversary proceeding against two law firms and one lawyer alleging all manner of scandalous and improper conduct, including fraud and conversion; but doing so in entirely skeletal, vague, and non-specific terms.

The crux of the Trustee's Complaint is her belief that these Defendants should pay Cummings Manookian, a short-lived and now-defunct law firm, attorney's fees in cases where Cummings Manookian abruptly withdrew from representation and specifically disclaimed any right to such fees.[2]

The undisputed evidence confirms that Cummings Manookian (1) withdrew from the only detailed case pled in the Complaint (*Fitzgerald*), (2) expressly disclaimed any right to an attorney's fee in that matter more than year before it filed bankruptcy, and, in any event, (3) had no licensed attorney owners, partners, or employees capable of practicing law during the time period for which it seeks compensation for legal work.

The Complaint nevertheless asserts, in the most barebones possible fashion, claims for conversion, state-law and Bankruptcy Code fraudulent transfer, tortious interference with contract, successor liability, alter ego, and turnover under 11 U.S.C. § 542. It further seeks a declaration that the bankruptcy estate is entitled to "attorneys' fees generated by each of the CM Cases, listed herein." But the only matter described with any specificity is the *Fitzgerald v. Osborn* case. Notably, the Complaint does **not** allege any specific facts to support its allegation that Cummings

---

[2] Ms. Burton also makes serial, non-specific allegations that these Defendants have misappropriated or otherwise improperly utilized property she claims belongs to Cummings Manookian.

Manookian is entitled to any portion of the *Shoemaker* recovery, and—critically—was never amended when the *Shoemaker* case later settled after the filing of this proceeding.

As discussed herein, the undisputed evidence and the governing law foreclose every theory pled, and the Defendants are entitled to summary judgment on all counts.

**A.     CM withdrew from the *Fitzgerald* matter and is contractually barred from recovering a fee under the terms of its own engagement agreement.**

CM's own engagement agreement in *Fitzgerald*, drafted by CM, and CM's December 7, 2018 withdrawal letter to the Fitzgeralds, establish that because CM withdrew from the representation, it was entitled only to reimbursement of certain advanced expenses and "will not be entitled to any portion of an attorney's fee" and "specifically disclaims the same." CM thus had no contractual or property right to any Fitzgerald fee as of the petition date.

**B.     CM has never pled a cognizable claim to any fee in the *Shoemaker* matter, nor amended its Complaint to include one.**

The Trustee's Complaint never alleges that CM is entitled to any portion of the *Shoemaker* fee, never describes any *Shoemaker* contract or work, and seeks no *Shoemaker*-specific relief.  The *Shoemaker* case settled long after this adversary was filed, and the Trustee never amended her pleading to make any such specific allegations.  Any attempt to recover *Shoemaker* fees now is an unpled theory barred at summary judgment.

**C.     CM is barred by statute and rules governing the practice of law from receiving its claimed attorney's fees because it had no attorneys.**

Critically and dispositively, by the time the Trustee contends fee rights "arose," CM had no partners or members actively practicing law and no employees.  A professional entity with no licensed attorneys cannot ethically or legally earn, share, or receive an attorney's fee. Any attempt to recover post-withdrawal fees in the *Fitzgerald* or *Shoemaker* cases on behalf of CM is therefore barred as a matter of Tennessee law and professional responsibility.

3

**D.  In any event, these Defendants are the wrong parties and CM lacks privity with them to assert these claims.**

Any fee rights CM might have had would run, if at all, against CM's own former clients—not against successor counsel. Under Tennessee law, prior counsel's claim for compensation is a contract or quantum meruit claim against the client. The Trustee identifies no contract of any kind between CM and these Defendants requiring them to pay CM fees, nor any legal duty requiring Defendants to divert their own court-awarded fees to the Debtor.

**E.  CM has failed to offer (or discover) *any* proof supporting its unverified and conclusory allegations, which were instituted under "a time crunch."**

After five years of full discovery, the Trustee has offered no admissible evidence that Defendants ever (1) received property belonging to CM; (2) converted any CM property; (3) received any transfer of CM property, fraudulent or otherwise; (4) interfered with an existing contract; (5) succeeded to CM's assets; or (6) possess any property of the estate that is matured and subject to turnover.  To the contrary, the Trustee testified that her sole basis for alleging CM fee interests in a list of cases—including Fitzgerald and Shoemaker—was a spreadsheet from the state-court receiver, and she admits she did not investigate those alleged interests before filing suit.

**F.  CM seeks an entirely improper and prohibited use of turnover and fraudulent transfer statutes.**

The Trustee seeks to use § 542 turnover and fraudulent transfer statutes as a generalized, *post hoc* collection device for speculative, unliquidated tort and contract claims.  Turnover, however, is limited to specific, identifiable property that is undisputedly property of the estate and presently due—not to contested fee theories and unliquidated damage claims. Likewise, both state-law and Bankruptcy Code fraudulent transfer claims require a "transfer of an interest of the debtor in property," which the Trustee cannot identify and which the *Fitzgerald* withdrawal letter affirmatively negates.

### G. CM has never pled or offered (and flatly refuses to disclose) any damages evidence or methodology.

The Trustee has never articulated any damages methodology, disclosed any damages computation under Rule 26, or offered any expert testimony on quantum meruit or fee allocation. As to *Shoemaker*, she has never even pled that CM was entitled to any portion of that recovery. As to *Fitzgerald*, CM had contractually and expressly waived all fees before the settlement occurred. With respect to CM's various allegations as to Defendants using CM's property (which are demonstrably false), the Trustee refuses to articulate how CM would have been damaged by this use even if it had occurred. On this record, a reasonable trier of fact could not award the Trustee a single dollar.

The Trustee's claims are, and have always been, with factual and legal support. Ms. Burton was forced to admit the same, at length, during her deposition. The Defendants have nevertheless been required to endure five and a half years of expensive litigation to confirm what they already knew: the Trustee's claims were made up out of whole cloth.

Under *Celotex* and *Anderson*, once a movant shows that the non-movant lacks evidence on essential elements of her claims, summary judgment is mandatory. Here the Defendants have done more: they have demonstrated that (1) CM had no cognizable property interest in the Fitzgerald or Shoemaker fees, (2) any fee claim CM might have had would run only against its former clients, not successor counsel, (3) no fraudulent transfer or conversion of CM property occurred, (4) successor-liability and alter-ego theories fail for want of any asset transfer, and (5) the Trustee cannot use turnover to litigate disputed, unliquidated theories of liability.

Accordingly, there is no genuine dispute of material fact, and Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC are entitled to judgment as a matter of law on all claims asserted in the Complaint.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of "summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee's note. A genuine issue of material fact exists only where a reasonably jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere allegations of a factual dispute between the parties will not suffice to defeat a properly supported summary judgment motion. *Id.*

Moreover, "[t]he party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). The moving party satisfies this burden "by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Id*. (citation and internal quotation marks omitted).

When the moving party meets this burden, the party that opposes the motion must come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   <u>STATEMENT OF FACTS</u>

## A. Cummings Manookian

Cummings Manookian is a now-defunct law firm that was formed as a professional limited liability company.[3]  It was comprised of two members: Brian Cummings and Brian Manookian, and it specialized in representing Plaintiffs in medical malpractice actions.[4]  The firm primarily accepted cases on a contingency fee basis whereby Cummings Manookian would only be paid if it recovered money for its client.[5]

As part of its operations, Cummings Manookian entered into written engagement agreements with its clients that laid out the duties and rights of both parties to the contract.[6]  Those contracts took a standard form and generally did not vary from cases to case ("the CM Engagement Agreement").[7]

Representations by Cummings Manookian did not always proceed to completion of a case, and the CM Engagement Agreement included terms laying out the parties' rights in the event that the client terminated Cummings Manookian, as well as for instances where Cummings Manookian withdrew from the engagement.[8]  In the event that the client fired Cummings Manookian, the firm would be contractually entitled to its expenses as well as a portion of any ultimate attorney's fee.[9] In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client would not be required to pay Cummings Manookian an attorney's fee.[10]

---

[3] Joint Statement of Undisputed Material Facts, ¶ 1.
[4] *Id.* at ¶ 2-3.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 6.
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶ 8.
[10] *Id.* at ¶ 9.

The firm was relatively short-lived. It was founded in 2015.[11] Brian Cummings withdrew from the firm in September of 2018.[12] Brian Manookian was suspended from the practice of law in December of the same year.[13] By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.[14]

### B. The Fitzgerald Case

On May 23, 2018, Cummings Manookian entered into an engagement agreement to represent Marty and Melissa Fitzgerald in an action against a truck driver who struck their minor daughter who was riding a bicycle causing her death ("the Fitzgerald Engagement Agreement").[15] The agreement was signed by Brian Manookian who had the authority to enter into the contract on behalf of Cummings Manookian.[16]

The Fitzgerald Engagement Agreement was drafted by Cummings Manookian and it bound the firm, as well as Marty and Melissa Fitzgerald, to its terms.[17] Importantly for purposes of this adversary proceeding, the contract stated that if the Fitzgeralds terminated Cummings Manookian, the firm would be entitled to a portion of any recovered settlement in the form of an attorney's fee.[18] Conversely, if Cummings Manookian withdrew from the representation, it would only be entitled to repayment of advanced expenses.[19]

---

[11] Deposition of Trustee Jeanne Anne Burton, Page 20:12-15.
[12] Joint Statement of Undisputed Material Facts, ¶ 10.
[13] *Id*. at ¶ 11.
[14] *Id*. at ¶ 12.
[15] *Id*. at ¶ 13; Fitzgerald Engagement Agreement, **Exhibit 2.**
[16] Joint Statement of Undisputed Material Facts, ¶ 15-16.
[17] *Id*. at ¶ 17-18.
[18] *Id*. at ¶ 20.
[19] *Id*. at ¶ 21-22.

On December 7, 2018, Brian Manookian wrote to the Fitzgeralds advising them that as a result of his recent suspension he and Cummings Manookian were required to withdraw from the representation (Brian Cummings had left the firm by that time).[20] Mr. Manookian requested that the Fitzgeralds obtain another attorney or firm to represent them, and confirmed that because the firm was withdrawing it would not be entitled to any portion of an attorney's fee in the matter.[21] The letter itself stated that Cummings Manookian expressly and specifically disclaimed any attorney's fee arising out of the Fitzgerald lawsuit.[22]

Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee.[23] The Trustee herself has conceded as much under oath and in response to Requests for Admission.[24]

Marty Fitzgerald testified he received the letter from Brian Manookian on behalf of Cummings Manookian dated December 7, 2018 in which Cummings Manookian withdrew from its representation of the Fitzgeralds and specifically disclaimed any right to an attorney's fee.[25] Mr. Fitzgerald also testified that at the time of Cummings Manookian's withdrawal, Marty Fitzgerald understood that Brian Manookian and Afsoon Hagh were part of different law firms.[26] Mr. Fitzgerald further testified that he had no doubt that once Cummings Manookian ceased

---

[20] *Id*. at ¶ 23-28; Fitzgerald Withdrawal Letter, **Exhibit 3**.
[21] Joint Statement of Undisputed Material Facts, ¶ 29, 32.
[22] *Id*. at ¶ 33-34.
[23] *Id*. at ¶ 30-31.
[24] *Id*. at ¶ 32-34.
[25] *Id.* at ¶ 81.  Deposition of Marty Fitzgerald ("Fitzgerald Depo."), **Exhibit 9**. (This deposition was designated "Confidential" at the outset of the deposition, but upon review of the transcript, Defendants no longer believe the designation should be maintained.)
[26] *Id.* at ¶ 82.

operations and Brian Manookian was suspended from practicing law that Cummings Manookian no longer represented the Fitzgeralds in the case arising out of their daughter's death.[27]

### C. The Shoemaker Case

On April 19, 2017, Cummings Manookian entered into an engagement agreement to represent Brett Keefer, as next of kin and administrator to Chesta Shoemaker's estate, in a medical malpractice action arising out of Ms. Shoemaker's death at Vanderbilt University Medical Center ("the Shoemaker Engagement Agreement").[28]  The Shoemaker Engagement Agreement was drafted by Cummings Manookian and it bound both the firm and Mr. Keefer to its terms.[29]

In identical language as the Fitzgerald Agreement, the contract with Mr. Keefer provided for the repayment of costs and division of attorney's fees in the event that the relationship ended prior to the conclusion of the lawsuit.[30]  In the event that Brett Keefer terminated Cummings Manookian, the firm would be entitled to an attorney's fee in addition to its advanced expenses.[31] If Cummings Manookian withdrew, on the other hand, it would only receive back the money it had paid to prosecute the matter with no additional payment in the form of an attorney's fee.[32]

Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law.[33]  Indeed, the Complaint in the matter was ultimately filed by Mr. Cummings'

---

[27] *Id.* at ¶ 83.
[28] *Id*. at ¶ 35-36; Shoemaker Engagement Agreement, **Exhibit 1**.
[29] Joint Statement of Undisputed Material Facts, ¶ 37-38.
[30] *Id*. at ¶ 40-41; Shoemaker Engagement Agreement, **Exhibit 1**.
[31] Joint Statement of Undisputed Material Facts, ¶ 40.
[32] *Id*. at ¶ 41, 43.
[33] *Id*. at ¶ 44, 48-51.

successor firm, Cummings Law, on February 11, 2019.[34]  By that time, Cummings Manookian had no members or partners who were permitted to practice law, and it had no employees.[35]

As a result, Cummings Manookian never advanced a penny in furtherance of the matter such that it would be entitled to repayment.[36]  Likewise, no attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian;[37] no attorney ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian;[38] and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian.[39]

The Shoemaker case ultimately settled years later in 2021.[40]  Cummings Manookian had no role in litigating the matter or negotiating the settlement.[41]  To the contrary, the lawsuit was filed in 2019 and Cummings Manookian never again corresponded or communicated with the client, Brett Keefer, after 2018.[42]

### D. Cummings Manookian's General Property Claims Asserted by the Trustee

The Trustee has made a number of allegations in which she variously asserts that Cummings Manookian owned client files, causes of action, furnishings, equipment, or property of other kinds.[43]  The Trustee has likewise alleged that the Defendants used, utilized, or took improper control over that property.[44]  The Trustee has additionally accused the Defendants of tortiously

---

[34] *Id*. at ¶ 48, 51.
[35] *Id*. at ¶ 49-50.
[36] *Id*. at ¶ 42.
[37] *Id*. at ¶ 52.
[38] *Id*. at ¶ 53.
[39] *Id*. at ¶ 54.
[40] *Id*. at ¶ 55.
[41] *Id*. at ¶ 44, 48-51; 56.
[42] *Id*. at ¶ 57.
[43] *See, e.g.*, Complaint, at ¶ 43.
[44] *See, e.g.*, Complaint, at ¶ 47.

interfering with Cummings Manookian's business relationships.[45]

In the cases where Cummings Manookian represented clients it did not own the client file, and it did not own cause of action.[46] Cummings Manookian never owned any real property, and it did not own the office property at 45 Music Square West where it operated for a period of time.[47]

### i. Manookian PLLC

Defendant Manookian PLLC has never received any property of any kind belonging to Cummings Manookian, and Cummings Manookian has never transferred any property of any kind to Manookian PLLC.[48] Likewise, Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.[49]

Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.[50] Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.[51] Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.[52] Finally, Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[53]

### ii. Afsoon Hagh and Hagh Law PLLC

Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of

---

[45] *See, e.g.*, Complaint, at ¶ 59.
[46] *Id*. at ¶ 58.
[47] *Id*. at ¶ 59.
[48] *Id*. at ¶ 60-61.
[49] *Id*. at ¶ 62.
[50] *Id*. at ¶ 63.
[51] *Id*. at ¶ 64.
[52] *Id*. at ¶ 65.
[53] *Id*. at ¶ 66.

any kind belonging to Cummings Manookian.[54]  Cummings Manookian has never transferred any property of any kind to the Hagh Parties.[55]  The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.[56]

The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.[57]  The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.[58]  Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[59]

## IV.  ARGUMENT

### A.  Cummings Manookian Has No Contractual or Property Right to Any Portion of the *Fitzgerald* Fee—Much Less From These Defendants.

Defendants are entitled to summary judgment on any claim that the bankruptcy estate owns, or is owed, any portion of the *Fitzgerald* fee.

The Trustee's *Fitzgerald* theory rests entirely on the premise that, under the May 23, 2018 engagement agreement with Marty and Melissa Fitzgerald, "CM was entitled to receive $1,350,000.00 in fees" from the Fitzgerald settlement, and that CM never effectively withdrew or waived those rights. Compl. ¶¶ 27–31.  But the undisputed record conclusively refutes both propositions and establishes that: (1) CM's own engagement agreement provided for a fee only if the Fitzgeralds terminated CM, not if CM withdrew; (2) CM, in fact, withdrew before any recovery, and in doing so wrote an additional letter to the Fitzgeralds that, for a second time,

---

[54] *Id*. at ¶ 67.
[55] *Id*. at ¶ 68.
[56] *Id*. at ¶ 70.
[57] *Id*. at ¶ 71.
[58] *Id*. at ¶ 72.
[59] *Id*. at ¶ 73.

expressly waived and disclaimed any right to a fee; and (3) any fee claim would, in all events, run against the Fitzgeralds, not against successor counsel.

1. **The Fitzgerald engagement agreement does not grant CM a fee where CM withdraws.**

The Fitzgerald Engagement Agreement, drafted by CM and executed on May 23, 2018, sets out the parties' rights if the relationship ends before recovery. It distinguishes between (a) a client-termination scenario, in which the client owes CM an attorney's fee, and (b) a withdrawal by CM, in which CM is limited to reimbursement of advanced expenses only. *See* Fitzgerald Engagement Agreement (Ex. 2); SUMF ¶¶ 13-23; Manookian Decl. ¶¶ 8–10, 14–23.

Specifically, the CM Engagement Agreement:

- Requires the client to pay CM some portion of any recovered attorney's fee if the client terminates CM; and

- Provides that if CM withdraws from the representation, CM is entitled only to reimbursement of advanced expenses and **no** attorney's fee. *Id.*

Those terms are undisputed. The Trustee has admitted that Exhibit 2 is the only written agreement between CM and the Fitzgeralds and that it is binding on both sides. *See*, *e.g.*, RFAs No. 69.; Manookian Decl. ¶¶ 19–23. Under settled Tennessee law, unambiguous contracts are enforced as written, and courts may not rewrite them to supply rights the parties did not bargain for. *See, e.g., Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002).

Thus, as a matter of contract, CM had no contractual entitlement to a contingent fee in the event it chose to withdraw from the Fitzgerald representation. Its only possible claim in that scenario was for reimbursement of costs.

**2. CM voluntarily withdrew and expressly disclaimed any Fitzgerald fee over a year before filing for bankruptcy.**

The undisputed evidence further establishes that CM in fact withdrew from the *Fitzgerald* case—before any settlement—and expressly waived and disclaimed any right to a fee.

On December 7, 2018, Brian Manookian, then the sole member of CM and authorized to speak on its behalf, sent the Fitzgerald Withdrawal Letter (Ex. 3) to Marty and Melissa Fitzgerald. SUMF ¶¶ 25-34, 81-83; Manookian Decl. ¶¶ 24–31. In that letter, Mr. Manookian:

- Informed the Fitzgeralds that his license had been suspended and that he was "required to withdraw as counsel in this matter," and that CM was "additionally required to withdraw" as he was winding up the firm's affairs;

- Notified them that CM was, in fact, withdrawing from their representation and requested that they "obtain another attorney or firm to represent" them; and

- Stated, pursuant to the Fitzgerald Engagement Agreement, that while CM was entitled to reimbursement of certain advanced costs and expenses, "**because Cummings Manookian is withdrawing from this matter, it will not be entitled to any portion of an attorney's fee and specifically disclaims the same**." Fitzgerald Withdrawal Letter (Ex. 3) at 2 (emphasis added); SUMF ¶¶ 25-34, 81-83; Manookian Decl. ¶¶ 24–31.

The Fitzgeralds themselves corroborated the withdrawal: Marty Fitzgerald testified that he understood Mr. Manookian could no longer represent him once his license was suspended; that he thereafter dealt with and was represented by Afsoon Hagh; that he was aware that Ms. Hagh had an entirely different law firm than CM; and that he received the Cummings Manookian December 7, 2018 withdrawal letter. Fitzgerald Depo. 16:4–9, 17:11–24, 19:8-13; 24:24-25:22.

By the time CM filed bankruptcy in late 2019, therefore, the only fee-related rights it could possibly have had in *Fitzgerald* had already been extinguished by (1) its voluntary withdrawal under its own contract and (2) its written, express waiver and disclaimer of any fee almost a year earlier.

As a matter of bankruptcy law, the Trustee "stands in the shoes" of the debtor and can acquire no greater rights than CM itself held as of the petition date. 11 U.S.C. § 541(a); *see, e.g., Stevenson v. J.C. Bradford & Co.* (In re *Cannon*), 277 F.3d 838, 853–54 (6th Cir. 2002). Because CM had no enforceable contractual right to a Fitzgerald fee as of that date, and the estate has none either.

### 3. The Complaint's *Fitzgerald* allegations are conclusively disproved by the record.

Despite this record, the Complaint alleges that:

- CM was contractually "entitled to receive $1,350,000.00 in fees" from Fitzgerald based on the engagement agreement, and

- CM "never formally withdrew as counsel in the Fitzgerald Case and … kept representing the plaintiffs through attorney Afsoon Hagh." Compl. ¶¶ 27, 31.

Both allegations are untenable in light of the undisputed documents and admissions. First, the Trustee's assertion that "the engagement agreement … did not, in fact, specify that CM was entitled to no attorneys' fees if CM withdrew from representation" (Compl. ¶ 30) is directly contradicted by the engagement language and by the Declaration of Brian Manookian, which explains the standard CM Engagement Agreement's termination/withdrawal provisions. See Manookian Decl. ¶¶ 8–10, 21–23. There is no competing provision or interpretation in the record.

Second, the claim that CM never withdrew and "kept representing the plaintiffs through attorney Afsoon Hagh" (Compl. ¶ 31) cannot survive the express withdrawal and disclaimer letter,

the Manookian Declaration, and Marty Fitzgerald's own testimony. Ex. 3; Manookian Decl. ¶¶ 24–35; Fitzgerald Depo., pp. 16-18. The Trustee has no contrary document, testimony, or expert opinion; at most she offers speculation that, despite the written withdrawal, CM somehow continued to be involved. That is not enough to create a genuine dispute of material fact.

On this record, no reasonable finder of fact could find that CM retained any contractual right to an attorney's fee in Fitzgerald <u>after it unequivocally withdrew and disclaimed such a fee in writing</u>. Again, the Trustee may not assert a greater right than the Debtor held. Cummings Manookian forever and irrevocably waived its right to any fee in no later than December of 2018.

### 4. Even if CM had a fee claim, it would lie against the Fitzgeralds—not against successor counsel.

Finally, even assuming arguendo that CM retained some residual quantum meruit or contractual claim notwithstanding its withdrawal and waiver (it did not), any such claim would run against CM's clients, not against these Defendants. Under Tennessee law, fee disputes arising from a contingent-fee engagement are disputes between attorney and client; there is no legal justification for seeking a non-contractual, *quantum meruit* award against successor counsel, nor does successor counsel become personally liable to prior counsel absent an agreement to that effect. *See, e.g.*, *White v. McBride*, 937 S.W.2d 796, 800–01 (Tenn. 1996) (discussing prior counsel's recovery in quantum meruit from the client after discharge).

Here, the Trustee has identified no contract of any kind between CM and any Defendant obligating Defendants to pay CM a portion of their own fee, and no legal authority imposing such an obligation as a matter of law. There is likewise no evidence that any Defendant received "property of CM" in the form of an assigned fee interest. Thus, as a matter of undisputed fact and law:

1. CM's contract does **not** provide for a fee if CM withdraws;

2. CM did withdraw and expressly disclaimed any fee in writing nearly a year before bankruptcy; and

3. Even if a fee claim existed, it would be against the Fitzgeralds, not these Defendants.

There is no genuine issue of material fact on any of these points. Defendants are entitled to summary judgment on all claims seeking any portion of the Fitzgerald recovery.

### B. Cummings Manookian Is Not Entitled to Any Portion of the *Shoemaker* Fee, and Certainly Not From These Defendants.

The same undisputed principles that defeat the Trustee's *Fitzgerald* theories independently dispose of any attempt to recover a portion of the *Shoemaker* fee. But, moreover, with respect to the *Shoemaker* matter, the Trustee failed to amend her Complaint to allege any entitlement to the fee.

#### 1. The Complaint never pleads any entitlement to the *Shoemaker* fee, and it was never amended after *Shoemaker* settled.

Any attempt by the Trustee to recover a portion of the *Shoemaker* fee fails at the threshold because the Complaint does not actually plead such a claim. The only mention of *Shoemaker* in the Complaint appears in a list of cases for which the state-court Receiver filed attorneys' liens—the "CM Cases"—where "*Shoemaker v. Vanderbilt Medical, Davidson Circuit*" is simply one line in a chart. Compl. ¶ 23.

The Complaint never alleges that CM is contractually or equitably entitled to any portion of the *Shoemaker* fee; never describes the terms of the *Shoemaker* engagement agreement; never alleges when or how CM's relationship with Shoemaker began or ended; never details – even generally – what work, if any, was done by CM; and never identifies any specific amount of

*Shoemaker*-related damages. That is undoubtedly because the Trustee is aware that CM withdrew from its representation before the *Shoemaker* matter was even instituted. Indeed, Ms. Hagh has been actively prosecuting the *Shoemaker* case while this adversary proceeding has been occurring.

This adversary proceeding was filed on January 8, 2020, well **before** the *Shoemaker* case ultimately settled in 2021. The Trustee has never amended her pleading to add *Shoemaker*-specific allegations or a *Shoemaker*-fee claim. She likewise has never made any disclosure or attempts to identify any *Shoemaker* damages computation.

Under settled Sixth Circuit law, a plaintiff may not introduce a brand-new theory at the summary judgment stage that was never pled in the complaint. *See, e.g.*, *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788–89 (6th Cir. 2005); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489–90 (6th Cir. 2010). The proper procedure for adding a new claim is to amend the complaint—not to argue a new, unpled entitlement in opposition to summary judgment. Because the Trustee has never pled that CM has any right to the *Shoemaker* fee, any effort to recover *Shoemaker* proceeds in this adversary is procedurally barred and cannot defeat summary judgment.

**2. CM's own *Shoemaker* engagement agreement bars any fee upon CM's withdrawal.**

Even if the Trustee had properly pled a *Shoemaker* fee claim (she did not), the undisputed facts and CM's own contract foreclose any such recovery.

On April 19, 2017, CM entered into an engagement agreement with Brett Keefer (on behalf of the Shoemaker estate), whose terms are contained in Exhibit 1 (the "Shoemaker Engagement Agreement"). Exhibit 1 is a genuine copy of that agreement, was drafted by CM, and is the only written agreement between CM and Mr. Keefer or any representative of the Shoemaker estate. Manookian Decl. ¶¶ 36-40.

As with the Fitzgerald agreement, the Shoemaker Engagement Agreement expressly distinguishes between two different termination scenarios:

- If **Brett Keefer terminates** CM as his lawyers, CM "will be entitled to some portion of any recovered attorney's fee." Manookian Decl. ¶ 41.

- If **CM withdraws** from representing Mr. Keefer, CM "will be entitled to advanced expenses," and nothing more. Manookian Decl. ¶ 42.

It is further undisputed that CM "did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate." Manookian Decl. ¶ 43. The engagement agreement "does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer." Manookian Decl. ¶ 44. And CM did, in fact, withdraw from representing Mr. Keefer, and did so "prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate." Manookian Decl. ¶¶ 45–46.

Under the terms of CM's own contract, once CM withdrew, its potential recovery was limited to reimbursement of advanced expenses—and CM undisputedly did not advance any expenses in connection with the *Shoemaker* lawsuit. Manookian Decl. ¶ 43. The agreement contains no provision granting CM a fee where it withdraws and expressly ties any fee entitlement to the client's termination, not the firm's withdrawal. Manookian Decl. ¶¶ 41–42, 44.

3. **CM did no work on the *Shoemaker* lawsuit and had no licensed attorneys during the period any fee could have arisen.**

By January 1, 2019, CM had "no members or partners with active licenses to practice law" and "no employees." Manookian Decl. ¶ 13. The lawsuit in the *Shoemaker* matter was not filed until February 11, 2019. Manookian Decl. ¶¶ 49–50. As of that filing date, CM indisputably had

no licensed attorneys and no staff. ¶¶ 47–51.  <u>This point is worth repeating: Cummings Manookian had no actively licensed lawyers as owners, partners, or employees by the time the Complaint was filed in the <em>Shoemaker</em> case.</u>

The undisputed record further establishes that:

- "No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian." Manookian Decl. ¶ 52.

- "No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian." Manookian Decl. ¶ 53.

- CM "did not even correspond or communicate with Brett Keefer in 2019, 2020, or 2021," and "was not involved in negotiating the settlement" in the Shoemaker matter. Manookian Decl. ¶¶ 54, 46.

A professional entity with no licensed attorneys cannot ethically or legally perform legal services or earn attorney's fees.  Tenn. Sup. Ct. R. 8, RPC 5.5; Tenn. Code Ann. §§ 48-249-1102, 48-101-601 *et seq.*  Any suggestion that CM nevertheless accrued fee rights in a case it did not file, did not litigate, did not communicate about, and could not lawfully work on is incompatible with Tennessee's professional-responsibility regime and basic contract principles.

**4. Any fee claim would lie, if at all, against the client—not against these Defendants.**

Finally, even if CM somehow had a residual claim arising out of its pre-withdrawal involvement (it did not), that claim would run, if at all, against its client, not against these Defendants.  Tennessee law treats an attorney's right to compensation as a claim against the client's recovery, under contract or quantum meruit; it does not impose personal liability on successor counsel absent a separate agreement. *See* Tenn. Code Ann. §§ 23-2-102, -103.

The Trustee has identified no contract in which Defendants agreed to pay CM any portion of their fee in the *Shoemaker* case, and there is none. As with *Fitzgerald*, the only written engagement in the record is between CM and the client; there is no contractual or statutory basis for shifting any supposed obligation to successor counsel.

In short: (i) the Complaint does not plead any entitlement to the *Shoemaker* fee and was never amended after *Shoemaker* settled; (ii) CM's own engagement agreement bars any fee upon withdrawal and limits CM to costs it never incurred; (iii) CM had no licensed attorneys, no employees, and did no work on the *Shoemaker* lawsuit during the period in which any fee could have arisen; and (iv) any fee claim, if it existed, would lie against the client, not these Defendants. There is no genuine dispute of material fact, and Defendants are entitled to summary judgment on all claims to the extent they seek any recovery connected to the *Shoemaker* matter.

### C. Defendants are entitled to summary judgment on the Trustee's Claims of Conversion.

To prevail on a claim of conversion, the Plaintiff must prove "[1] the appropriation of another's property to one's own use and benefit, [2] by the intentional exercise of dominion over it, [3] in defiance of the true owner's rights." *Kinnard v. Shoney's, Inc*., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

There is no genuine issue of material fact as to the Trustee's claims for conversion. The Trustee herself has now conceded that she has no evidence or bases for her allegations. The entirety of those allegations are contained at Paragraphs 43 and 44 of her Complaint, and they are entirely contradicted by the Trustee's own testimony. The Complaint alleges, in relevant part, as follows:

> 43. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.
>
> 44. More specifically, Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

These Defendants have testified they have never received, appropriated, or exercised control over any property belonging to Cummings Manookian; and the Trustee has now admitted the same. Manookian PLLC, for its part, has never utilized any leased premises, furniture, equipment, or intellectual property whatsoever, and has never even had a bank account such that it could receive attorney's fees or reimbursed expenses. And the Trustee has refused to specifically identify any such property.

With respect to the Hagh Parties, the Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.[60] The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[61]

The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[62] The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or

---

[60] Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.
[61] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[62] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.

equipment located at 45 Music Square West.[63]  The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[64]

The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[65]  And the Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[66]

Finally, and entirely dispositively as to her claim of conversion against the Hagh Parties, the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.[67]

The Trustee's claims of conversion are totally false, completely contrived, and unsupported by any evidence *according to the Trustee herself.*  As such, there is no genuine issue of disputed fact as the Adversary Defendants are entitled to summary judgment.

**D.  Defendants are entitled to summary judgment on the Trustee's Claims of Fraudulent Transfer.**

The Trustee has additionally alleged a state law claim of fraudulent conversion.  She has done so in the most vague and non-specific way possible, declining to even identify the property she alleges was transferred.  Her allegations from the Complaint are contained entirely in Paragraphs 47 and 48, which are reproduced here in full.

---

[63] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[64] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[65] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[66] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[67] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

> 47. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.
>
> 48. Afsoon Hagh, Hagh Law and Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

The Tennessee Uniform Fraudulent Transfers Act is contained at Tenn. Code Ann. § 66-3-305 which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor… if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor."

Here, none of the Defendants have made or incurred a transfer on behalf of Cummings Manookian, nor has the Trustee ever articulated with even the slightest specificity what property was transferred, when, or by whom. Defendants have negated an essential element of the Trustees' claim through the Declarations of Brian Manookian and Afsoon Hagh which establish that none of the Defendants have ever received a transfer from Cummings Manookian or made a transfer to Cummings Manookian. The Defendants are thus entitled to summary judgment.

**E. Defendants are entitled to summary judgment on the Trustee's Claims of Avoidance and Recovery of Fraudulent Transfer.**

The Trustee has additionally alleged a skeletal claim of Avoidance and Recovery of Fraudulent Transfer entirely upon information and belief.

> 51. Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers from CM for the purposes of hindering, delaying, and defrauding creditors.
>
> 52. Further, on information and belief, Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers form CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

In the ensuing years since the filing of her Complaint, the Trustee has declined to disclose the bases for such information and belief. As with her duplicative claim of fraudulent transfer, an essential element of Trustee's claim is negated by the Declarations of Brian Manookian and Afsoon Hagh. Simply put, none of the Defendants have ever made a transfer to Cummings Manookian, received a transfer from Cummings Manookian, or transferred any property belonging to Cummings Manookian. Having made no transfer of any kind, the Defendants have certainly not made a fraudulent transfer. The undisputed facts require entry of summary judgment on this claim.

### F. Defendants are entitled to summary judgment on the Trustee's Claims of Tortious Interference with Contract.

Tortious interference with contract requires five elements: "(1) a prospective relationship with an identifiable class of third persons; (2) that Defendant knew of the relationship; (3) that Defendant intended to cause the termination of the business relationship; (4) that Defendant acted with "improper motives" or employed "improper means"; and (5) damages caused by the interference." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1019–20 (M.D. Tenn. 2018).

The Trustee's claim of tortious interference with contract is similarly deficient on its face and made "upon information and belief." The allegations are contained at Paragraphs 58 and 59 of the Complaint and state, in their entirety:

> 58. CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case. More specifically, CM had an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.
>
> 59. Upon information and belief, Afsoon Hagh and Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

But the undisputed facts, as laid out exhaustively in the Factual section above, show that Cummings Manookian *terminated its own contract* with the Fitzgeralds by withdrawing from the representation and expressly disclaiming any attorney's fee. The Trustee's allegation "upon information and belief" that the Defendants "coerced" the Fitzgeralds from remitting a fee that Cummings Manookian itself disclaimed in writing is both nonsensical and made in utter bad faith. It is axiomatic that a party cannot interfere with a contract that has already been terminated and no longer exists. Defendants are entitled to summary judgment on Trustee's claim for tortious interference with contract.

### G. Defendants are entitled to summary judgment on the Trustee's Claims of Successor Liability and Alter Ego.

Under Tennessee law, a successor entity is a mere continuation if: "1) the predecessor transferred its assets to the successor, 2) the successor company pays less than adequate

consideration for the assets, 3) the successor company continues the predecessor's business, 4) both companies share one common officer who was instrumental in the transfer, and 5) the predecessor company is left incapable of paying its creditors" *RXAR Co., LLC v. Rheumatology Assoc.,* P.A., 2017 U.S. Dist. LEXIS 64354 (M.D. Tenn. 2017).

Here, the undisputed facts, as testified to and conceded by the Trustee establish that there simply was no transfer of any asset from Cummings Manookian to any of the Defendants; moreover, the Trustee has disclaimed even the general allegations comprising her claim of successor liability as stated in its entirety in Paragraph 65 of her Complaint.

> 65. Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM. They occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

The Trustee has now conceded that Cummings Manookian does not own "client files" or causes of action. With respect to Manookian PLLC, that entity has never utilized any leased premises, furniture, or equipment.

With respect to the Hagh Parties, the Trustee now admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[68] The Trustee concedes that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[69]

---

[68] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[69] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.

Entirely contrary to her allegations in the Complaint, the Trustee has admitted that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[70] The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[71] In fact, the Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[72] And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[73] Finally, <u>the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian</u>.[74]

Defendants are again entitled to summary judgment having negated the essential elements of the Trustee's claim for successor liability and alter ego.

### H. The Trustee Has No Evidence That Defendants Ever Received, Used, or Held Any Property of Cummings Manookian.

Independent of the *Fitzgerald* and *Shoemaker* fee issues, all of the Trustee's "property-based" theories — conversion, fraudulent transfer, successor, alter ego, and turnover — fail because she has no evidence that any Defendant ever received, used, or now holds property belonging to Cummings Manookian. The undisputed facts show that: (1) CM did not own the property the Trustee claims was "taken"; (2) CM never transferred any property to Manookian PLLC or to the Hagh Parties; and (3) the Trustee herself admits she has no evidence that the Hagh

---

[70] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[71] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[72] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[73] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[74] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

Case 3:20-ap-90002    Doc 334    Filed 11/17/25    Entered 11/17/25 21:23:45    Desc Main
Document      Page 29 of 36

Parties ever received or used CM property, or that CM suffered any damages from the supposed "use."

Under *Celotex Corp. v. Catrett*, once a movant demonstrates that the nonmovant has no evidence on an essential element, "there can be 'no genuine issue as to any material fact,'" and summary judgment is required. 477 U.S. 317, 322–23 (1986).

**1. CM did not own the alleged property and never transferred anything to the Defendants.**

The Complaint presumes that CM owned client files, causes of action, the premises at 45 Music Square West, and the furnishings and equipment there, and that those were somehow misused or transferred to Defendants. All of the record evidence in this case, ***including the Trustee's own testimony***, contradicts that premise.

It is axiomatic under Tennessee law that, in the cases in which Cummings Manookian represented clients, including the *Fitzgerald* and *Shoemaker* cases, Cummings Manookian did not own the client file or the cause of action. *See also*, Manookian Decl. ¶ 55; Burton Dep. 34:10–13. CM also "never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time." Manookian Decl. ¶ 56. As to Defendant Manookian PLLC specifically:

- Manookian PLLC has never received any property of any kind belonging to Cummings Manookian. Manookian Decl. ¶ 57;

- Cummings Manookian has never transferred any property of any kind to Manookian PLLC. Manookian Decl. ¶ 58;

- Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind. Manookian Decl. ¶ 59;

Case 3:20-ap-90002   Doc 334   Filed 11/17/25   Entered 11/17/25 21:23:45   Desc Main
Document      Page 30 of 36

- Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian. Manookian Decl. ¶ 61;

- Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian. Manookian Decl. ¶ 62; and

- Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian. Manookian Decl. ¶ 63.

These facts are undisputed. There is no competing testimony, document, or expert opinion suggesting that CM owned any property that was transferred to, held by, or used by Manookian PLLC. On this record, there is simply no evidence that Manookian PLLC ever received, used, or holds "property of the debtor."

The record is even clearer as to Afsoon Hagh and Hagh Law, PLLC (the "Hagh Parties"). The Declaration of Afsoon Hagh, as reflected in the SUMF, establishes that:

- Neither Afsoon Hagh or Hagh Law ('the Hagh Parties') has ever received any property of any kind belonging to Cummings Manookian. Hagh Decl. ¶ 3;

- Cummings Manookian has never transferred any property of any kind to the Hagh Parties. Hagh Decl. ¶ 4;

- The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind. Hagh Decl. ¶ 5;

- The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian. Hagh Decl. ¶ 6;

- The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian. Hagh Decl. ¶ 7; and

- Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian. Hagh Decl. ¶ 8.

Those are straightforward factual denials, supported by sworn declarations, that the Trustee has not rebutted with any contrary evidence.

More importantly, the Trustee herself admits she has no evidence to support the factual predicates of her property claims against the Hagh Parties. The SUMF notes, based on her deposition, that:

- The Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian. Burton Dep. 121:10–13;

- The Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian. Burton Dep. 117:5–8;

- She admits she has no evidence that the Hagh Parties ever "set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West or ever used office space, furnishings, or equipment there. Burton Dep. 29:25–30:2; 119:25–120:3; 30:20–31:16;

- She cannot identify any specific furniture or equipment that the Hagh Parties used at 45 Music Square West. Burton Dep. 31:14–16;

- She does not even know who owns or owned the furniture at 45 Music Square West. Burton Dep. 37:17–25; and

- She cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint." Burton Dep. 123:22–124:5.

Thus, as to the Hagh Parties, the record contains: (1) unrebutted sworn testimony that they never received, used, possessed, or owed any property of CM; and (2) the Trustee's own admissions that she has no evidence to the contrary and cannot even articulate any damages suffering by CM from the alleged conduct.

**2. Without proof of "property of the debtor," a transfer, possession, or a matured estate debt, the Trustee's property-based claims fail as a matter of law.**

Each of the Trustee's property-based causes of action requires proof of some combination of the following: that CM owned the property at issue; that CM transferred "an interest of the debtor in property" to Defendants; that Defendants now hold property of the estate or owe "a debt that is property of the estate and that is matured, payable on demand, or payable on order"; or that Defendants appropriated CM property to their own use. The undisputed facts negate each of those elements:

- CM did not own the client files or causes of action and did not own the 45 Music Square West premises.

- CM never transferred any property of any kind to Manookian PLLC or to the Hagh Parties.

- Manookian PLLC and the Hagh Parties have never been in possession, custody, or control of any CM property, have never received any CM property, and have never owed a debt that is property of CM.

- The Trustee admits she has no evidence of any payment from CM to the Hagh Parties, no evidence they ever took or used any CM property or anything at 45 Music Square West, and no evidence of any damages to CM arising from the alleged "use."

On this record, the Trustee cannot establish that there was any "property of the debtor," any "transfer of an interest of the debtor in property," any estate property presently held by

Defendants, or any damages. Under *Celotex*, that complete failure of proof on essential elements of her conversion, fraudulent transfer, successor-liability, and turnover claims requires entry of summary judgment in favor of all Defendants on those claims.

## V.     CONCLUSION

After more than five years of litigation and full discovery, the record is not ambiguous. It shows that:

- Under CM's own engagement agreements—drafted by CM—any fee rights in the *Fitzgerald* and *Shoemaker* matters depended on the clients terminating CM, not on CM withdrawing. When CM withdrew, its recovery was contractually limited to reimbursement of advanced expenses, and in *Shoemaker* it advanced none.

- In *Fitzgerald*, CM not only withdrew before any recovery, it expressly and in writing "will not be entitled to any portion of an attorney's fee and specifically disclaims the same," a year before the bankruptcy filing.

- The Complaint does not plead any entitlement to the *Shoemaker* fee, was filed before *Shoemaker* settled, and has never been amended to add *Shoemaker*-specific allegations or damages. Any effort to reach the *Shoemaker* recovery now is an unpled theory that cannot be raised for the first time in response to summary judgment.

- By the time any meaningful work was performed in *Fitzgerald* or *Shoemaker*, CM had no licensed attorneys and no employees and could not lawfully practice law or earn attorney's fees.

- There is no contract of any kind between CM and any Defendant obligating Defendants to pay CM a portion of their fees. Under Tennessee law, any fee dispute arising out of CM's engagements would run, if at all, against the clients—not against successor counsel.

- CM did not own the client files, causes of action, or the 45 Music Square West premises or contents that the Complaint invokes; CM never transferred any property to Manookian PLLC or to the Hagh Parties; and those Defendants have never held, used, or owed any property of CM.

- The Trustee herself admits she has no evidence that Defendants ever received a payment from CM, ever took any CM property, ever used space, furnishings, or equipment at 45 Music Square West, or that CM suffered any damages from any alleged "use."

On these undisputed facts, the Trustee cannot establish essential elements of any cause of action she has pled. CM had no cognizable property interest in the *Fitzgerald* or *Shoemaker* fees; any claim it might have had would run against its former clients and is barred by CM's own written waiver and by CM's inability to lawfully practice law; there is no "transfer of an interest of the debtor in property" to support fraudulent transfer theories; there is no "property of the estate" in Defendants' possession to support turnover; there is no underlying tort or contract right to sustain conversion, tortious interference, or conspiracy theories; and there is no factual basis for imposing successor or alter-ego liability.

Rule 56 does not permit a plaintiff to proceed to trial on bare allegations that the plaintiff herself concedes are unsupported by evidence. Under *Celotex*, *Anderson*, and the authorities cited above, Defendants have demonstrated both a complete failure of proof on essential elements of

every claim and affirmative documentary and testimonial evidence that negates the Trustee's theories.

Accordingly, Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC respectfully request that the Court grant their Joint Motion for Summary Judgment, enter judgment in their favor on all claims asserted in the Complaint, dismiss this adversary proceeding with prejudice, and award such other and further relief as the Court deems just and proper.

Date: November 17, 2025

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
915 Rep. John Lewis Way S
Suite 100, Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC, Afsoon Hagh and Hagh Law PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed November 17, 2025 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*