EXHIBIT 7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,<br><br>Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

### DECLARATION OF BRIAN MANOOKIAN

Pursuant to 28 U.S. Code § 1746, I, Brian Manookian, declare as follows:

1. I am an adult over the age of eighteen and am competent to make this declaration. I have personal knowledge of the matters stated herein.

2. Cummings Manookian was formed as a professional limited liability company to provide legal services.

3. Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

4. Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

1

5. Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

6. Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

7. Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

8. The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

9. The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

10. The CM Engagement Agreement did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

11. Brian Cummings withdrew from Cummings Manookian effective September of 2018.

12. Brian Manookian was suspended from the practice of law effective December of 2018.

13. By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.

14. On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

15. Exhibit 2 is a genuine copy of the attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.

16. On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

17. On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.

18. The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

19. The Fitzgerald Engagement Agreement is a binding contract upon Cummings Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

20. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

21. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

22. The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

23. The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

24. On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

25. On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

26. Exhibit 3 ("the Fitzgerald Withdrawal Letter") is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

27. The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

28. The Fitzgerald Withdrawal Letter was received by Marty and Melissa Fitzgerald.

29. The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

30. The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

31. Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

32. Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

33. The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

34. The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

35. Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds dated December 7, 2018.

36. On April 19, 2017, Cummings Manookian entered into an Agreement with Brett Keefer whose terms are contained in Exhibit 1 ("the Shoemaker Engagement Agreement.")

37. Exhibit 1 is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

38. The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

39. The Shoemaker Engagement Agreement is a binding contract upon Cummings Manookian and Brett Keefer.

40. The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

41. The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

42. The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

43. Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

44. The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

45. Cummings Manookian withdrew from representing Brett Keefer.

46. Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate.

47. As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

48. As of January 1, 2019, Cummings Manookian had no employees.

49. The lawsuit in the Shoemaker matter was filed on February 11, 2019.

50. On February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

51. On February 11, 2019, Cummings Manookian had no employees.

52. No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

53. No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

54. Cummings Manookian did not even correspond or communicate with Brett Keefer in 2019, 2020, or 2021.

55. In the cases in which Cummings Manookian represented clients, Cummings Manookian did not own the client file or the cause of action.

56. Cummings Manookian never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time.

57. Manookian PLLC has never received any property of any kind belonging to Cummings Manookian.

58. Cummings Manookian has never transferred any property of any kind to Manookian PLLC.

59. Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.

60. Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.

61. Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

62. Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

63. Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

I declare under penalty of perjury that the foregoing to true and correct. Executed on June 24, 2022

_____
Brian Manookian

7