## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

## DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC, AND MANOOKIAN PLLC'S JOINT RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC respond in opposition to Plaintiff's Motion for Partial Summary Judgment.

### I.    INTRODUCTION

The Plaintiff's Motion for Partial Summary Judgment asks the Court to do something Tennessee law does not permit: create property of the estate that Cummings Manookian, PLLC ("CM") never owned, and then collapse two separate law firms into the Debtor to reach that non-existent asset. Nine months before the Fitzgerald recovery was obtained, CM withdrew from the Fitzgerald representation, told the clients to hire new counsel, and expressly disclaimed any right

to a fee.  Under the plain terms of CM's own engagement agreement, that withdrawal left CM with, at most, a right to reimbursement of advanced costs.  It did not leave CM – or its bankruptcy estate – with any contingent fee interest in the later Fitzgerald recovery.

Recognizing this threshold defect, the Trustee pivots to an extraordinary "Hail Mary" theory.  She asks the Court to treat Manookian PLLC and Hagh Law, PLLC as "mere continuations" and alter egos of CM, so that any fees earned years later by different counsel can be treated as if it had always belonged to the Debtor.  But Tennessee law makes successor liability and veil-piercing narrow, element-heavy exceptions that require, at a minimum, proof of an actual transfer of assets and complete dominion used to commit a wrong that proximately caused the plaintiff's injury.

After full discovery, the Trustee has no such proof. The undisputed record shows no transfer of any CM asset to Hagh Law or Manookian PLLC, no common officer instrumental in any transfer, no misuse of the corporate form, and no causal connection between the separate PLLCs' later work and any injury to the CM estate. At most, the Trustee points to shared office space, a telephone number, and a practice area—facts Tennessee courts hold are legally insufficient *as a matter of law*.

Because the Trustee cannot show that the "Fitzgerald fee" was ever property of the CM estate, and because she also cannot satisfy the stringent requirements for successor liability or alter-ego relief, she has not carried her burden under Rule 56. Her Motion for Partial Summary Judgment should be denied, and for the reasons set forth below (and in Defendants' own summary judgment papers), the Court should instead enter judgment in favor of Manookian PLLC, Afsoon Hagh, and Hagh Law, PLLC on the Trustee's property-interest and successor-liability and alter-ego theories.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the non-moving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id*.

## III. ARGUMENT

**A. The Debtor Has No Property Interest in the Fee for Which It Seeks Summary Judgment**

*1. The CM engagement agreements give CM no fee interest when it withdraws.*

Cummings Manookian used a standard engagement agreement (the "CM Engagement Agreement") whose terms regarding termination and withdrawal "generally did not vary from case to case." Manookian Decl. (Dkt. 335-7) ¶¶ 7–8. The CM Engagement Agreement required the

client to pay the Debtor an attorney's fee in the event the client terminated Cummings Manookian, but "did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation." *Id*. ¶¶ 9–10.

The Fitzgerald matter was governed by that Engagement Agreement. On May 23, 2018, CM entered into an engagement letter with Marty and Melissa Fitzgerald (the "Fitzgerald Engagement Agreement"), which is a genuine copy of the attorney-client agreement between CM and the Fitzgeralds and is the only written agreement between them. *Id*. ¶¶ 14–15, 19–20; Ex. 2 to Defendants' Motion for Summary Judgment, Fitzgerald Engagement Agreement (Dkt. 335-2). It included the following material terms:

- **Client termination.** If the client terminates CM "before the conclusion of the matter," CM "will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work [it has] performed," in addition to reimbursement of advanced costs and expenses. (*Id.* at 3 ("If you terminate the representation…")).

- **Firm withdrawal.** By contrast, if CM "withdraw[s] from representing you and request[s], in writing, that you obtain another attorney or firm to represent you," the agreement provides only that "[a] 'withdrawal' by this firm does not relieve you of the responsibility to pay advanced costs." (*Id.* ("We may choose to withdraw…")).

The agreement does ***not*** provide for or require payment of any attorney's fee to CM in the event CM withdraws. (Manookian Decl. ¶¶ 23–24, 44.)

Those contractual terms are undisputed. (Defs.' Statement of Undisputed Material Facts ("Defs.' SUMF") ¶¶ 6–10, 14–24, 36–44.) They mean that, as a matter of contract, Cummings Manookian's only interest after it elected to withdraw from a case was a right to reimbursement of advanced costs—not an ongoing contingent fee interest in any future settlement or judgment.

### *2. CM withdrew from the Fitzgerald representation and expressly disclaimed any fee.*

The undisputed record establishes that CM exercised the "withdrawal" option—not the "client termination" scenario—before any recovery was obtained in Fitzgerald.

By December 2018, Brian Cummings had withdrawn from CM, and Brian Manookian had been suspended from the practice of law. Manookian Decl. ¶¶ 11–12. By January 1, 2019, CM "had no employees and no members or partners with an active license to practice law." *Id*. ¶ 13; Deposition of Jeanne Burton ("Burton Dep.") (Dkt. 335-6) at 16:8–10. CM was thus incapable of continuing to perform legal services in Fitzgerald.

On December 7, 2018, CM sent the Fitzgeralds a written withdrawal letter on CM letterhead (the "Fitzgerald Withdrawal Letter"), Exhibit 3 to the Manookian Declaration. (Manookian Decl. ¶¶ 26–27; Ex. 3, Fitzgerald Withdrawal Letter; Defs.' SUMF ¶¶ 25–27.) The Letter:

- States that "Brian Manookian and Cummings Manookian" are "withdrawing from [their] representation of Marty and Melissa Fitzgerald";

- Requests that the Fitzgeralds "obtain another attorney or firm to represent [them]"; and

- Confirms that CM is entitled only to reimbursement of advanced costs—estimated at less than $3,000.

Crucially, the Fitzgerald Withdrawal Letter then states:

Because Cummings Manookian is withdrawing from this matter, it will not be entitled to any portion of an attorney's fee and specifically disclaims the same under the terms of our prior engagement agreement.

The Trustee's own testimony on this point is conclusive. In her deposition, Jeanne Burton conceded as follows:

> Q. But you don't disagree with me that in December 2018, Cummings Manookian wrote that it disclaimed any fee in the Fitzgerald case?
>
> A. Brian Manookian did, yes.
>
> Q. And Brian Manookian spoke for Cummings Manookian when he did that, correct?

A. Correct.

Burton Dep. at 55:10-16.

Under the plain language of the Fitzgerald Engagement Agreement and the withdrawal letter, CM voluntarily relinquished any contingent fee interest in Fitzgerald and retained only a claim for reimbursement of its costs. Whatever fees were later earned on the August 2019 Fitzgerald settlement were earned by the lawyers who actually represented the Fitzgeralds at that time—not by CM, which had withdrawn and had no licensed attorneys. The Trustee therefore cannot show that the "Fitzgerald fee" was ever property of the estate

**B.** **The Trustee's "Hail Mary" Successor Liability and Alter Ego Claims Fail as a Matter of Law.**

Apparently recognizing that Cummings Manookian has zero property interest in the Fitzgerald fee, the Trustee has now pivoted to the fifth cause of action in her Complaint – captioned "successor liability / alter ego" – as the sole thrust of her partial summary judgment motion. (Trustee's MSJ at 17–20.)

She argues that Manookian PLLC and Hagh Law, PLLC are "mere continuations" or alter egos of Cummings Manookian, and therefore liable for all of the Debtor's alleged claims and "attorney's fees generated by each of the CM Cases." (Trustee's MSJ at 18–19.) But Tennessee law sharply limits both successor-liability and veil-piercing theories, and the undisputed record forecloses multiple essential elements of those claims as a matter of law.

Under settled Tennessee authority, a plaintiff seeking to impose successor liability or pierce the corporate veil must, at a minimum, prove: (1) an actual transfer of assets from the predecessor to the alleged successor; and (2) the stringent elements of "mere continuation" or veil-piercing, including complete dominion and control used to commit a wrong that proximately caused the

6

claimed injury.

But, here, the Trustee has no evidence of any transfer of assets from Cummings Manookian to these Defendants, no evidence that either Defendant is a "mere continuation" of Cummings Manookian under Tennessee law, and no evidence to satisfy the *Continental Bankers / Youree* veil-piercing test, discussed more fully below. This is likely why the Trustee does not attempt to even identify the elements of the causes of action on which she seeks summary judgment, much less demonstrate that they are undisputed in her favor. Indeed, multiple of the elements are proven *against* the Trustee by the undisputed facts in this case.

For that reason, the Trustee is not only not entitled to partial summary judgment on these claims; Defendants are entitled to judgment in their favor.

### 1. *Tennessee law imposes narrow, element-heavy requirements for successor liability.*

Successor liability is predicated on a predecessor company that purchases or succeeds to another's business. In this case, none of the Defendants purchased Cummings Manookian or succeeded to its business in any fashion. Trustee nevertheless pursues this avenue of recovery, so Defendants are obligated to respond by actually briefing the law, elements, and undisputed facts despite Trustee's failure to do so.

Tennessee follows the general rule that a corporation (or PLLC) that purchases or succeeds to another's business is not liable for the predecessor's debts, subject only to narrow exceptions. Courts applying Tennessee law have repeatedly summarized those exceptions as: (1) an express or implied assumption of liabilities; (2) a consolidation or de facto merger; (3) the "mere continuation" of the predecessor; or (4) a transaction fraudulent as to creditors. *Mapco Exp., Inc. v. Interstate Entertainment, Inc.*, No. 3:08-CV-1235, 2011 WL 12556959, at \*14 (M.D. Tenn. Aug. 11, 2011) (citing *Johnson v. Tanner-Peck*, LLC, No. W2009-02454-COA-R3-CV, 2011 WL

1330777, at \*13 (Tenn. Ct. App. Apr. 8, 2011).

For the "mere continuation" theory the Trustee relies on here, Tennessee federal courts applying Tennessee law use a five-part test: the successor may be liable only if

1.  the predecessor **transfers its assets** to the successor;

2.  the successor pays **less than adequate consideration** for those assets;

3.  the successor **continues the predecessor's business**;

4.  the entities share at least one common officer who was **instrumental in the transfer**; and

5.  the predecessor is left **incapable of paying its creditors**.

*Rxar Co., LLC v. Rheumatology Assocs., P.A.*, No. 3:14-C-0789, 2017 WL 1511045, at \*2 (M.D. Tenn. Apr. 27, 2017) (citing *IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97-5340, 1999 WL 486615, at \*3 (6th Cir. Jul. 1, 1999)); *see also Mapco Exp., Inc. v. Interstate Entertainment, Inc.*, No. 3:08-cv1235, 2011 WL 12556959, at \*17 (M.D. Tenn. Aug. 11, 2011).

Importantly, courts emphasize that a plaintiff must first show that a transfer of assets actually occurred before any of these exceptions can even be analyzed. In *RxAR Co., LLC v. Rheumatology Associates*, applying Tennessee law, the court denied a creditor's summary judgment motion even though the alleged successor operated in the same space, with the same physician, same practice manager, same telephone and fax numbers, and the same employees as the predecessor—because there were genuine factual disputes whether any assets were actually transferred at all.

Here, the Trustee never even identifies any transfer of assets from Cummings Manookian to either Manookian PLLC or Hagh Law. That alone is fatal to her successor-liability theory.

**2.** ***The undisputed record establishes that no assets of CM were ever transferred to Manookian PLLC or Hagh Law.***

The Trustee's Count V and her present Motion for Partial Summary Judgment speak in broad generalities—complaining that Defendants "took over" CM's business, "used" CM's address and phone number, and "continued" CM's practice—but she never actually identifies a *specific asset* of the Debtor that was transferred to either Defendant for inadequate or any consideration. By contrast, Defendants' undisputed facts and supporting declarations squarely negate any asset transfer:

- **No CM assets ever moved to Hagh Law.** Ms. Hagh testified that neither she nor Hagh Law ever received, purchased, or otherwise acquired any real or personal property of CM; that Hagh Law never used any CM real property, intellectual property, or "property of any kind"; and that neither she nor Hagh Law has ever owed a debt that is property of the CM estate. Hagh Decl. (Dkt. 335-8) ¶¶ 3–8.

- **The Trustee admits she has no evidence of any property transfer.** The Trustee's own deposition testimony concedes that she has no evidence that the "Hagh Parties" ever took "any property of any kind belonging to Cummings Manookian," that they ever "set foot" on the premises at 45 Music Square West, or that they ever used office space at that property. Burton Dep. 29:25–30:2; 117:5–8; 119:25–120:3.

- **No CM assets ever moved to Manookian PLLC.** Mr. Manookian testified that Manookian PLLC was formed as a separate Tennessee professional LLC, that CM did not assign or transfer its contingent fee contracts to Manookian PLLC, and that all of the work Manookian PLLC performed (including on Fitzgerald and Shoemaker) was done pursuant

9

to its own engagements or co-counsel relationships—not pursuant to any assignment of CM's property. Manookian Decl. ¶¶ 2–3, 38–43, 55–63.

- **CM had effectively shut down before Hagh Law ever operated.** As of January 1, 2019, CM had no members or partners with active law licenses and had no employees. Manookian Decl. ¶¶ 47–48; Burton Dep. 20:16–21:1, 25:17–25. By February 11, 2019—the date of CM's petition—CM still had no licensed attorney-members and no employees. Manookian Decl. ¶¶ 50–51. In other words, by the petition date CM had no functioning law practice to "transfer" to anyone.

In *RxAR*, the court held that even where the successor opened in the same leased space, with the same phone numbers, the same physician, and the same staff as the predecessor, summary judgment for the plaintiff creditor was improper because there remained genuine issues whether any "assets" had actually been transferred. Here, the Trustee has less than that: she offers no evidence of *any* asset transfer, while Defendants have put forth affirmative testimony and the Trustee's own admissions that no such transfer occurred.

Because Tennessee law requires proof of an actual transfer of assets as a threshold requirement for successor liability, the Trustee cannot satisfy the first, foundational element of the "mere continuation" test as to either Hagh Law or Manookian PLLC. That alone defeats Count V.

### 3. *The Trustee cannot satisfy the remaining elements of "mere continuation" or de facto merger.*

Even if the Trustee could somehow conjure a disputed issue as to a transfer of "assets"—which she cannot—her proof still fails multiple other required elements.

#### a. No evidence of inadequate consideration.

The Trustee points to no purchase agreement, no bill of sale, no assumption agreement,

and no other instrument by which either Defendant acquired any CM assets for "less than adequate consideration." Trustee's MSJ at 18–19. Courts applying Tennessee law routinely reject mere-continuation theories where, as here, the plaintiff cannot show that any assets changed hands for inadequate consideration.

Here, there is nothing to value. The Trustee identifies no transaction at all—much less a transaction in which CM's assets were divested for inadequate consideration. The absence of any evidence on the second element is dispositive.

### b. Continuity of business alone is insufficient.

The Trustee leans heavily on the fact that Manookian PLLC and Hagh Law also practiced personal-injury and medical-malpractice law; that Mr. Manookian continued to work on the Fitzgerald and Shoemaker cases; and that the firms at times used the same office address or phone number. Trustee's SUMF ¶¶ 4–6, 49–53; Trustee's MSJ at 18–19.

But Tennessee law does not treat "same line of business," "same type of cases," or "same key professional" as sufficient to impose successor liability. In *RxAR*, the alleged successor opened in the same leased space, with the same doctor, practice manager, employees, and phone numbers as its predecessor; yet the court still refused to impose successor liability because the plaintiff could not prove a qualifying asset transfer and satisfy the full five-factor test.

Defendants' evidence shows even less "continuity" than *RxAR*. CM had no licensed attorney-members and no employees as of January 1, 2019 for its business to be continued. It was a dead entity whose members had either voluntarily withdrawn (Brian Cummings) or been withdrawn by operation of orders by the Tennessee Supreme Court (Brian Manookian). Manookian PLLC and Hagh Law were separately formed professional entities, and the Trustee herself has testified that she has zero evidence of any "roll-over" of CM's accounts receivable,

furniture, equipment, or property of any kind. (Burton Dep. 117:5-8; Manookian Decl. ¶¶ 38–43, 55–63; Hagh Decl. ¶¶ 3–8.)

### c. No common officer "instrumental in the transfer."

The fourth "mere continuation" element is particularly important here: to invoke this exception, the plaintiff must show that the predecessor and successor "share at least one common officer who was instrumental in the transfer."

The Trustee has no such proof because there was no transfer for anyone to be "instrumental" in. The mere fact that Mr. Manookian was an owner of CM and later the sole member of Manookian PLLC does not satisfy this element in the absence of an actual transaction by which CM transferred assets to Manookian PLLC for inadequate consideration.

As to Hagh Law and Afsoon Hagh, this point is dispositive: Afsoon Hagh was **never** an owner, officer, or partner of CM at all, but merely performed paralegal or contract work. (Hagh Decl. ¶¶ 2–4; Manookian Decl. ¶¶ 11–13. There is no common "officer" between CM and Hagh Law who could have been "instrumental in the transfer," because there was no transfer. This is fatal to the Trustee's claim and requires entry of summary judgment in favor of the Defendants.

### d. No showing that any alleged transfer left CM unable to pay its creditors.

Finally, the Trustee offers no evidence that any supposed transfer to Manookian PLLC or Hagh Law left CM "incapable of paying its creditors," as the fifth element requires. She points to no balance sheets, no bankruptcy schedules, and no testimony tying CM's financial condition to any alleged property transfer to these Defendants. The record instead reflects that CM's inability to continue operating preceded any of the conduct at issue: as of January 1 and February 11, 2019, CM had no licensed attorneys and no employees, and therefore no ability to generate revenue. In short, even if the Trustee could satisfy one or two elements of the "mere continuation" test (and

she cannot), she fails multiple others as a matter of law.

> **4.** **The Trustee's alter-ego / veil-piercing theory fails under Continental Bankers and Youree, and Tennessee does not permit the kind of "reverse" veil-piercing she seeks.**

Apparently recognizing the weakness of her traditional successor-liability theory, the Trustee also labels Hagh Law and Manookian PLLC as CM's "alter egos" and asks the Court to disregard their separate existence. Trustee's MSJ at 19–20. Tennessee law imposes a demanding standard for such relief.

In *Continental Bankers Life Ins. Co. v. Bank of Alamo*, the Tennessee Supreme Court held that veil-piercing requires proof that: (1) the controlling entity exercised "complete dominion" over the corporation such that it had no separate will with respect to the transaction at issue; (2) that control was used to commit a fraud, wrong, or unjust act in violation of a legal duty; and (3) that such control and breach of duty proximately caused the injury. 578 S.W.2d 625 (Tenn. 1979).

In *Youree v. Recovery House of East Tennessee, LLC*, decided earlier this year, the Tennessee Supreme Court reaffirmed that the *Continental Bankers* three-element test—not the looser "Allen factors"—governs veil-piercing between related entities, and held that a complaint which fails to plead facts satisfying each element cannot support judgment even by default. Tenn. Sup. Ct., M2021-01504-SC-R11-CV (January 22, 2025).

Here, the Trustee cannot satisfy – nor does the operative Complaint in this matter even allege – any of the *Continental Bankers / Youree* elements as to either Hagh Law or Manookian PLLC:

- **No "complete dominion" by CM over Defendants.** CM did not own, control, or dominate Hagh Law or Manookian PLLC. To the contrary, the undisputed record shows that: (a) CM had no licensed attorney-members or employees by January 1, 2019; (b) Manookian PLLC

and Hagh Law were separately formed professional entities; and (c) CM never owned any membership interest in either entity. Manookian Decl. ¶¶ 38–43, 47–51, 55–63; Hagh Decl. ¶¶ 2–8. A defunct law firm with no licensed members or employees cannot possibly exercise "complete dominion" over active, independently-owned PLLCs.

- **No use of control to commit a wrong.** The Trustee points to no act in which CM allegedly "used" Hagh Law or Manookian PLLC as an instrumentality to commit fraud or a wrongful act. Her theory is exactly the opposite: she claims that *Defendants* wronged *CM*. That is not veil-piercing; it is an ordinary damages claim. *Continental Bankers* and *Youree* require proof that the controlling entity used the nominal corporation "to commit fraud or wrong…or a dishonest and unjust act," not merely that related entities share office space or clients.

- **No proximate causation.** The Trustee's alleged injuries—her claims to the Fitzgerald fee and other supposed "property" of the estate—do not arise from any use of CM's control over these Defendants. They arise, if at all, from CM's own withdrawal from representation, its express disclaimer of fees, and her inability to prove that CM retained any legal or equitable interest in the Fitzgerald or Shoemaker recoveries. Those issues are addressed in Counts I–III; they are not veil-piercing issues.

Equally important, the Trustee's theory is a form of **reverse veil-piercing**: she seeks to hold Hagh Law and Manookian PLLC liable for CM's alleged obligations, not to hold CM liable for obligations of those PLLCs. The Sixth Circuit, applying Tennessee law, has expressly rejected expanding reverse veil-piercing beyond the narrow parent–subsidiary context. In *Church Joint Venture L.P. v. Blasingame*, the court held that Tennessee law does not recognize reverse alter-

Case 3:20-ap-90002    Doc 354    Filed 11/25/25    Entered 11/25/25 23:39:32    Desc Main
Document      Page 14 of 17

ego / reverse veil-piercing in order to reach the assets of non-debtor entities like trusts or corporations owned or controlled by a debtor. 947 F.3d 925, 931–32 (6th Cir. 2020) ("There is no authority under Tennessee law for reverse piercing the corporate veil outside the parent-subsidiary context.") (quoting district court opinion).

That is exactly what the Trustee attempts here: she asks this Court to treat separate PLLCs as if they *were* CM and to reach their assets for CM's alleged debts. Under *Youree*, *Continental Bankers*, and *Church Joint Venture*, Tennessee law does not permit this kind of doctrinal short-cut.

**5.      *The Defendants are entitled to summary judgment on these claims as a matter of law.***

Here, Defendants have not merely raised doubt about the Trustee's theories; they have presented affirmative testimony and admissions by the Trustee demonstrating:

- CM never transferred assets—tangible or intangible—to Manookian PLLC or Hagh Law.

- CM had ceased to function as an operating law firm—without licensed attorney-members or employees—before Hagh Law and Manookian PLLC did the work that generated the Fitzgerald and Shoemaker recoveries.

- CM had no common officers for Hagh Law.

- The Trustee herself admits she has no evidence that the "Hagh Parties" ever used or took any CM property, ever occupied CM's former office space, or ever owed any debt that is property of the estate.

Under Tennessee successor-liability and veil-piercing law, those facts are not merely enough to defeat the Trustee's motion; they compel judgment as a matter of law in favor of Defendants on Count V.

## IV. CONCLUSION

At bottom, the Trustee's Motion depends on an asset that never existed. Once CM withdrew from the Fitzgerald representation, instructed the clients to hire new counsel, and expressly disclaimed any contingent fee, there was nothing left for the CM estate to own beyond reimbursement of hard costs. The later Fitzgerald recovery was earned by lawyers at different firms. No amount of repackaging can turn those later fees into "property of the estate."

Confronted with that problem, the Trustee asks the Court to take a second, impermissible step – collapsing CM, Manookian PLLC, and Hagh Law, PLLC into a single entity under successor-liability and alter-ego theories that Tennessee law reserves for truly extraordinary cases. But the undisputed record shows no transfer of CM assets, no misuse of the corporate form, and no causal link between anything Defendants did and any alleged injury to the CM estate. Shared office space, a telephone number, and a practice area are not enough, and Tennessee courts say so as a matter of law.

Because the Trustee cannot establish that any portion of the Fitzgerald fee was ever property of the CM estate, and cannot satisfy the demanding elements of her successor liability or alter ego theories, she has not carried her burden under Rule 56. Her Motion for Partial Summary Judgment should be denied in its entirety, and for the reasons set forth herein and in Defendants' own motion papers, the Court should enter summary judgment in favor of Manookian PLLC, Afsoon Hagh, and Hagh Law, PLLC on all claims premised on (i) any alleged estate interest in the Fitzgerald recovery and (ii) any successor-liability or alter-ego theory of recovery, together with such other and further relief as the Court deems just and proper.

Date: November 25, 2025                                Respectfully submitted,


                                                       */s/ John Spragens*
                                                       John Spragens (TN Bar No. 31445)
                                                       Spragens Law PLC
                                                       915 Rep. John Lewis Way S., Suite 100
                                                       Nashville, TN 37203
                                                       T: (615) 983-8900
                                                       F: (615) 682-8533
                                                       john@spragenslaw.com

                                                       *Attorney for Manookian PLLC, Afsoon*
                                                       *Hagh and Hagh Law PLLC*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed November 25, 2025 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                                       */s/ John Spragens*

Case 3:20-ap-90002   Doc 354   Filed 11/25/25   Entered 11/25/25 23:39:32   Desc Main
Document       Page 17 of 17