IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>　　Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>　　Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,<br><br>　　Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

**DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC, AND MANOOKIAN PLLC'S JOINT RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC submit this Response to Plaintiff's Statement of Undisputed Material Facts.

1.　　Debtor was a PLC law firm formed by its members Brian Manookian and Brian Cummings in January 2015 and mostly representing plaintiffs in medical malpractice and other personal-injury cases. (Ex. A, Manookian Depo., 7:10-12, 10:13-19; Ex. B, Cummings Depo., 12:5-10.)

**RESPONSE:**

**Undisputed.**

1

2. Debtor had no other attorneys as members besides Brian Manookian and Brian Cummings, and had no other attorneys as paid employees. (Manookian Depo., 7:10-12; 43:9-13.)

**RESPONSE:**

**Undisputed, with the clarification that Brian Cummings ultimately withdrew from Cummings Manookian PLC and Brian Manookian was suspended and later disbarred from the practice of law.**

3. Debtor's Operating Agreement states that, although suspended members "shall be deemed to have voluntarily withdrawn from the Company," the "existence and business of the Company shall be continued, without any affirmative action on the part of the Members, and the Company shall not be dissolved." (Ex. P, Manookian Depo., Ex. 2, Op'g Agmt., Secs. 10.1 & 10.8.)

**RESPONSE:**

**Undisputed that the Operating Agreement speaks for itself. Disputed that the business of Cummings Manookian did or could continue without any members.** *See* **Tenn. Code Ann. § 48-249-1116 ("If any member or holder of financial rights of a PLLC becomes disqualified to render those professional services for which the PLLC was formed, or has elected professional LLC status within this state, such member or holder shall be deemed to have resigned and withdrawn from the PLLC, and shall have no further interests as a member or holder in the PLLC, other than the right to receive any distribution to which such member or holder may be entitled as a member or holder under the LLC documents or §§ 48-249-1111 - 48-249-1115, if applicable. If any member, manager, director, officer, agent or employee of a domestic or foreign PLLC who is rendering professional service to the public within this state becomes legally disqualified to render those professional services within this state, that member, manager, director, officer, agent or employee shall immediately sever all professional employment and professional relationships with, and financial interests in, that domestic or foreign PLLC. A domestic PLLC's failure to require compliance with this provision shall constitute a ground for the dissolution of the PLLC by the secretary of state, and a foreign PLLC's failure to require compliance with this provision shall constitute a ground for the revocation of the foreign PLLC's certificate of authority in this state by the secretary of state.").**

4. Brian Manookian's wife, Afsoon Hagh, worked on Debtor's cases. (Manookian Depo., 45:7-9; Ex. C, Hagh Depo., 12:1-18.)

**RESPONSE:**

**Disputed that Cummings Manookian PLC "owned" any cases. Undisputed that Afsoon Hagh worked on cases with the member-attorneys of Cummings Manookian PLC.**

5. Afsoon Hagh was never an employee of Debtor. (Manookian Depo., 50:24-51:6.)

**RESPONSE:**

**Undisputed.**

6. Afsoon Hagh had no title while working on Debtor's behalf. (Hagh Depo., 17:6-8; Manookian Depo., 53:22-24.)

**RESPONSE:**

**Undisputed that Afsoon Hagh had no title with Cummings Manookian PLC.**

7. Afsoon Hagh never received any salary or fee from Debtor. (Hagh Depo., 18:12-14; Manookian Depo., 41:4-6; Cummings Depo., 42:15-18.)

**RESPONSE:**

**Undisputed that Afsoon Hagh never received a salary or fee from Cummings Manookian.**

8. Afsoon Hagh never received any ownership interest from Debtor. (Manookian Depo., 51:2-3; Cummings Depo., 42:12-14.)

**RESPONSE:**

**Undisputed that Afsoon Hagh never held or received any ownership interest in Cummings Manookian PLC.**

9. Afsoon Hagh was on Debtor's malpractice-insurance policy. (Cummings Depo., 51:9-17.)

**RESPONSE:**

**Disputed as stated. Plaintiff does not identify any specific period of time and the cited deposition testimony is ambiguous as well on that point.**

10. Afsoon Hagh was on Debtor's health-insurance policy. (Cummings Depo., 42:21-43:1.)

**RESPONSE:**

**Disputed. The cited deposition testimony specifically states that the Deponent did not even know if the firm had a health insurance plan. At all material times, Afsoon Hagh had her own private health insurance or was on her husband's plan.**

11. Afsoon Hagh believed her role was just to "help[] Brian [Manookian] and Brian [Cummings] on their cases." (Hagh Depo., 18:8-11.)

**RESPONSE:**

**Disputed as stated. This statement does not provide any context as to "role" as to what, or identify any cases, nor does it accurately quote or characterize Ms. Hagh's testimony.**

12. Afsoon Hagh had "unlimited" access to Debtor's confidential client files. (Cummings Depo., 129:12-130:7.)

**RESPONSE:**

**Disputed as stated. Moreover, the cited deposition testimony does not support the assertion.**

13. Afsoon Hagh had a Debtor-associated email address. (Hagh Depo., 13:23-14:2.)

**RESPONSE:**

**Undisputed, in part. Afsoon Hagh had an email address ending in @cummingsmanookian.com for a limited period of time.**

14. Afsoon Hagh used Debtor's telephone number to communicate with clients. (Hagh Depo., 14:19-21.)

**RESPONSE:**

**Disputed. The cited testimony does not support the statement: Ms. Hagh simply testified there was a phone in the office that she used at Cummings Manookian "from March or April of 2017 until the last week of June 2018," Hagh Dep. at 13:13-22, and contains no mention of communicating with clients.**

15. If someone left a voicemail for Afsoon Hagh on Debtor's telephone, Afsoon Hagh would receive an emailed transcription of the voicemail. (Hagh Depo., 15:11-21.)

**RESPONSE:**

**Undisputed that for a limited period of time voicemails for Afsoon Hagh were transcribed by a VOIP system that emailed her a transcription of the voicemail.**

16. Afsoon Hagh had a physical office at Debtor's law office from March/April 2017 to at least June 2018. (Hagh Depo., 13:10-15.)

**RESPONSE:**

**Undisputed that Ms. Hagh had a physical office at Cummings Manookian's law office from March or April 2017 until the last week of June of 2018; "at least" is unsupported by the testimony and therefore disputed.**

17. Post-June 2018, Afsoon Hagh worked from home after having had a baby. (Hagh Depo., 12:4-8.)

**RESPONSE:**

**Undisputed that Ms. Hagh did not work at Cummings Manookian's office after June 2018.**

18. Afsoon Hagh used Debtor's signature block in her pleadings until at least March 2019. (Hagh Depo., 15:25-16:11; Ex. D, Hagh Depo., Ex. 5 Plfs.' MSJ; Ex. E, Hagh Depo., Ex. 6 Misc. Plead'gs.)

**RESPONSE:**

**Disputed as stated. Defendants do not understand what Plaintiff means by "Debtor's signature block," and the Hagh Deposition Transcript Exhibit to Plaintiff's Motion for Summary Judgment does not contain page 16.**

19. When Brian Manookian first heard about the *Fitzgerald* case, he called Afsoon Hagh because she had handled similar cases. (Manookian Depo., 60:2-18; Hagh Depo., 11:6-9.)

**RESPONSE:**

**Undisputed; the cited testimony reflects that Mr. Manookian called Ms. Hagh regarding the Fitzgerald case at or near the time he first spoke with the Fitzgeralds because Ms. Hagh had much more experience than he did with auto and truck wreck cases and had specific experience with Erie Insurance and the adjuster involved with the Fitzgerald's case.**

20. Debtor's signed engagement letter with Marty and Melissa Fitzgerald said that Afsoon Hagh, Brian Manookian, and Brian Cummings would work on the case. (Hagh Depo., 50:20-51:1; Manookian Depo., 61:9-62:2; Ex. F, Manookian Depo., Ex. 4 Fitzgerald Engagement Ltr., p.1.)

**RESPONSE:**

**Undisputed.**

21. Brian Cummings was never involved in the *Fitzgerald* case. (Cummings Depo., 52:14-21.)

**RESPONSE:**

**Undisputed.**

22. Brian Manookian drafted and signed the *Fitzgerald* complaint, in mid-2018. (Manookian Depo., 72:18-21.)

**RESPONSE:**

**Undisputed.**

23. In the *Fitzgerald* case, Afsoon Hagh met with the client, answered discovery, spoke with witnesses, scheduled depositions, sent discovery, and addressed insurance and billing issues. (Hagh Depo., 52:1-12.)

**RESPONSE:**

**Undisputed.**

24. Brian Cummings withdrew from Debtor around August or September 2018. (Cummings Depo., 17:20-22.)

**RESPONSE:**

**Undisputed.**

25. Brian Cummings then started his own firm in September 2018. (Cummings Depo., 11:14-16.)

**RESPONSE:**

**Undisputed.**

26. Brian Manookian's law license was temporarily suspended by court order in September 2018. (Ex. G, Marty F. Depo., Ex. 5, Oct. 5 Ltr.)

**RESPONSE:**

**Undisputed.**

27. The Tennessee Supreme Court stayed the temporary suspension order until December 2018. (Ex. H, Manookian Depo., Ex. 6, Dec. 7 Ltr.)

**RESPONSE:**

**Undisputed.**

28. In December 2018, the order temporarily suspending Brian Manookian's license took effect. (Manookian Depo., Ex. 6, Dec. 7 Ltr.)

**RESPONSE:**

**Undisputed.**

29. Brian Manookian drafted a letter, dated December 7, 2018, purporting to inform Marty and Melissa Fitzgerald of his suspension and Debtor's need to withdraw from their case. (Manookian Depo., Ex. 6, Dec. 7 Ltr.)

**RESPONSE:**

**Undisputed.**

30. Brian Manookian testified that he sent the December 7, 2018 letter by certified mail to the Fitzgeralds. (Manookian Depo., 73:12-13.)

**RESPONSE:**

**Undisputed.**

31. Brian Manookian never received a signed green card confirming the Fitzgeralds had received the December 7, 2018 letter that he had sent by certified mail. (Manookian Depo., 73:21-23.)

**RESPONSE:**

**Disputed as stated. The cited testimony regarding the December 7, 2018 letter reflects that it was sent via Certified Mail, not that it was sent with a return receipt requested or with use of a signature or "green card." Indeed, Manookian testified that he had an account with a mail vendor and would use a postage meter to send certified mail, which would not necessarily result in a signed green card. *See also* https://faq.usps.com/s/article/What-is-Electronic-Return-Receipt ("Return Receipt (Electronic) is an electronic alternative to the Return Receipt (green postcard).")**

32. Marty Fitzgerald testified that he had seen and received the letter but could not remember where or how. (Ex. I, Marty F. Depo., 17:21-18:3; 22:1-15.)

**RESPONSE:**

**Undisputed that Mary Fitzgerald testified that he had seen and received the December 7, 2018 letter, and undisputed that he testified that he had received it seven years prior to his deposition in 2025 (Marty Fitzgerald Depo, 22:9-15).**

33. Marty Fitzgerald did not recall receiving the letter in the mail. (Marty F. Depo., 18:16-18.)

**RESPONSE:**

**Disputed; Marty Fitzgerald testified that he did not specifically recall, seven years later, having received the letter in the mail although he did not deny having received it in the mail. Mr. Fitzgerald testified unambiguously that he did, in fact, receive the letter and review the letter in 2018. (Marty F. Depo, 22:9-15).**

34. Marty Fitzgerald searched for no documents in response to Trustee Burton's subpoena duces tecum and produced none. (Marty F. Depo., 10:19-12:10.)

**RESPONSE:**

**Disputed. Marty Fitzgerald testified to the contrary. (Marty F. Depo (Dkt. 335-9), 26:19-27:14)**

35. Marty and Melissa Fitzgerald remember being told that Brian Manookian had been suspended from practicing law. (Marty F. Depo., 15:16-19, 19:1-3; Ex. J, Melissa F. Depo., 15:5-11.)

**RESPONSE:**

**Undisputed.**

36. Marty Fitzgerald understood that Brian Manookian's suspension meant that Brian Manookian could not represent him. (Marty F. Depo., 16:4-9.)

**RESPONSE:**

**Undisputed that Marty Fitzgerald understood that Brian Manookian could not represent him while his law license was suspended.**

37. Marty and Melissa Fitzgerald could not remember anyone telling them that Brian Manookian's suspension meant that Debtor was withdrawing from the *Fitzgerald* case. (Marty F. Depo., 16:22-25; Melissa F. Depo., 15:25-16:14.)

**RESPONSE:**

**Disputed. Marty Fitzgerald repeatedly testified to the contrary, including testifying to his receipt of the December 7, 2018 letter. (*See, e.g.,* Marty F. Depo., 17:11-18:8 (recalling receiving letter with subject line "Withdrawal by Brian Manookian and Cummings Manookian"); 19:8-13 (testifying that as of Cummings Manookian's withdrawal he understood Brian Manookian and Afsoon Hagh were part of different law firms); 22:9-15; 24:13-26:2 (testifying that there was "no doubt" in his mind that Afsoon Hagh and Hagh Law were exclusively representing him after Cummings**

**Manookian's withdrawal, and reciting numerous instances of receiving Ms. Hagh's advice and counsel in important situations).**

38. Neither Brian Manookian nor anyone at Debtor told the Fitzgeralds that they should find a new lawyer. (Marty F. Depo., 17:1-4; Melissa F. Depo., 15:18.)

**RESPONSE:**

**Disputed, Marty Fitzgerald repeatedly testified to his receipt of the December 7, 2018 letter that stated that the letter should be provided to his new counsel outside of Cummings Manookian PLC. (*See, e.g.,* 17:11-18:8 (recalling receiving letter with subject line "Withdrawal by Brian Manookian and Cummings Manookian"); 22:9-15) (testifying that he received and reviewed the letter).**

39. Following Brian Manookian's December 2018 suspension, he filed a motion for him to withdraw from the *Fitzgerald* case, telling the court that "Afsoon Hagh continues to represent the Plaintiffs." (Ex. K, Manookian Depo., Ex. 7, Mot. to Withdraw.)

**RESPONSE:**

**Undisputed that Brian Manookian filed the Motion to Withdraw, and that the Motion speaks for itself.**

40. In Brian Manookian's Motion to Withdraw, he and Afsoon Hagh signed under the same Debtor signature block. (Manookian Depo., Ex. 7, Mot. to Withdraw.)

**RESPONSE:**

**Disputed. Afsoon Hagh did not sign the Motion which is apparent from the Exhibit itself.**

41. Following Brian Manookian's withdrawal, the Fitzgeralds noticed Afsoon Hagh take a more prominent role in their case. (Marty F. Depo., 20:6-11; Melissa F. Depo., 25:15-23.)

**RESPONSE:**

**Undisputed.**

42. The Fitzgeralds continued contacting Afsoon Hagh at Debtor's same number. (Melissa F. Depo., 18:4-6.)

**RESPONSE:**

**Disputed. The cited testimony demonstrates only that Melissa Fitzgerald did not recall whether the number at which she reached Ms. Hagh changed.**

43. The Fitzgeralds continued contacting Afsoon Hagh at her Debtor-associated email address. (Melissa F. Depo., 18:7-9.)

**RESPONSE:**

**Disputed. The cited testimony states that Ms. Fitzgerald was not aware of the email address she used to contact Ms. Hagh changing.**

44. Afsoon Hagh continued using Debtor's same signature block in pleadings filed in the *Fitzgerald* case. (Hagh Depo., 23:19-25; Hagh Depo., Ex. 5 Plfs.' MSJ; Hagh Depo., Ex. 6, Misc. Plead'gs.)

**RESPONSE:**

**Disputed insofar as this "fact" does not identify any period of time and cannot be answered as phrased. The record in Fitzgerald case establishes that the "signature block" Ms. Hagh used was altered—removing the name "Cummings Manookian"— and merely continued to list contact information while she was practicing through her own firm.**

45. Marty Fitzgerald had "no doubt" that Afsoon Hagh represented him after Brian Manookian's suspension. (Marty F. Depo., 25:5-6.)

**RESPONSE:**

**Undisputed. Mr. Fitzgerald further testified that he was aware that Ms. Hagh had her own law firm. (Marty F. Dep., 24:13-26:2.)**

46. Brian Manookian created a new law firm, Manookian, PLLC, on February 1, 2019. (Manookian Depo., 102:8-17; Ex. L, Manookian Depo., Ex. 15, Sec. of State Filing Info.: Manookian, PLLC.)

**RESPONSE:**

**Undisputed.**


47. Brian Manookian was Manookian PLLC's only member. (Manookian Depo., 103:3-9.)

**RESPONSE:**

**Undisputed.**

48. Brian Manookian could not remember working on any case other than the *Fitzgerald* case and one other of Debtor's cases (*Shoemaker*), as the sole member of Manookian PLLC. (Manookian Depo., 103:10-20.)

**RESPONSE:**

**Disputed, Mr. Manookian specifically testifies in the very passage cited that he worked on other cases.**

49. Manookian PLLC's practice focused on complex personal-injury and medical-malpractice cases. (Manookian Depo., 102:20-103:7.)

**RESPONSE:**

**Undisputed.**


50. Manookian PLLC's office was Debtor's office. (Manookian Depo., 104:21-22.)

**RESPONSE:**

**Undisputed that Manokian PLLC's office address was 45 Music Square West. Disputed that the building was owned in any way by Debtor to the extent that this "fact" is intended to imply such. Mr. Manookian testified that Cummings Manookian PLC did not own an office. The office was owned by 45 MSW Partners.**

51. Manookian PLLC used Debtor's office number on pleadings. (Manookian Depo., 108:17-18; *cf.* Manookian Depo., 31:20-22.)

**RESPONSE:**

**Undisputed that Manookian PLLC used the number 615-266-3333. Disputed that the Debtor owned the phone number in any way if this "fact" is intended to imply such.**

52. Manookian PLLC never signed a new engagement letter with the Fitzgeralds. (Melissa F. Depo., 20:6-8.)

**RESPONSE:**

**Undisputed that Manookian PLLC did not sign an engagement letter with the Fitzgeralds.**

53. In the *Fitzgerald* case, Manookian PLLC's Brian Manookian took depositions and attended the final mediation. (Manookian Depo., 113:11-24.)

**RESPONSE:**

**Undisputed.**

54. Manookian PLLC ceased operations once Brian Manookian was suspended later in 2019, a second time. (Manookian Depo., 104:1-16.)

**RESPONSE:**

**Undisputed.**

55. Afsoon Hagh created a new law firm, Hagh Law, PLLC, on March 25, 2019. (Hagh Depo., 21:23-24:9; Ex. M, Hagh Depo., Ex. 1, Sec. of State Filing Info.: Hagh Law, PLLC.)

**RESPONSE:**

**Undisputed.**

56. Hagh Law PLLC's practice focused on car accidents and medical-malpractice cases. (Hagh Depo., 24:1-25.)

**RESPONSE:**

**Undisputed.**

57. Afsoon Hagh was Hagh Law PLLC's only member and attorney. (Hagh Depo., 21:11-15, 36:8-13, 37:4-9.)

**RESPONSE:**

**Undisputed.**

58. Afsoon Hagh could not remember whether Hagh Law PLLC had ever filed a complaint for any client who was not Debtor's client. (Hagh Depo., 26:11-16.)

**RESPONSE:**

**Undisputed that Afsoon Hagh could not recall during her deposition.**

59. Hagh Law never entered a new engagement letter with the Fitzgeralds. (Hagh Depo., 44:14-17, 77:1-18; Melissa F. Depo., 19:25-21:12.)

**RESPONSE:**

**Disputed. Afsoon Hagh testified unambiguously that she did. (Hagh Depo., 44:1-3) Marty Fitzgerald testified that he believed that he did sign a new engagement agreement with Hagh Law, and the agreement looked familiar, but he could not say for sure due to the many events going on surrounding the death of his daughter. (Marty F. Depo., 22:16-23:22.)**

60. Hagh Law never filed a notice of address change in the *Fitzgerald* case. (Hagh Depo., 66:14-25.)

**RESPONSE:
Undisputed that Hagh Law never filed a document titled "Notice of Address Change" in the *Fitzgerald* case.**

61. Hagh Law never filed a notice of firm change in the *Fitzgerald* case. (Hagh Depo., 66:17-18.)

**RESPONSE:**

**Undisputed that Hagh Law never filed a document titled "Notice of Firm Change" in the *Fitzgerald* case.**

62. Hagh Law never filed a notice of substitution of counsel in the *Fitzgerald* case. (Hagh Depo., 66:19-21.)

**RESPONSE:**

**Undisputed that Hagh Law never filed a document titled "Notice of Substitution of Counsel" in the *Fitzgerald* case.**

63. Afsoon Hagh never filed anything that notified the *Fitzgerald* court that she was no longer associated with Debtor. (Hagh Depo., 66:22-25.)

**RESPONSE:**

**Disputed. The pleadings in the case themselves reflect that she was no longer associated with Cummings Manookian PLLC.**

64. In the *Fitzgerald* case, Afsoon Hagh filed motions and attended the final mediation. (Hagh Depo., 42:4-43:6.)

**RESPONSE:**

**Undisputed.**

65. The *Fitzgerald* case settled in August 2019 for $[REDACTED]. (Hagh Depo., 67:1-3; Ex. N, Young Depo., 40:4-6; Compl., ¶26.)

**RESPONSE:**

**Undisputed that the matter settled at the time and for the amount asserted by the Plaintiff.**

66. At that time, the Fitzgeralds thought that they were still represented by Debtor. (Melissa F. Depo., 22:3-5.)

**RESPONSE:**

**Disputed. Marty Fitzgerald repeatedly testified that he was aware that the Fitzgeralds were represented by Afsoon Hagh and that Ms. Hagh was with a different law firm. (Marty F. Depo, 19:8-13; 22:9-15; 24:13-26:2 (testifying that there was "no doubt" in his mind that Afsoon Hagh and Hagh Law were exclusively representing him after Cummings Manookian's withdrawal, and reciting numerous instances of receiving Ms. Hagh's advice and counsel in important situations).)**

67. In finalizing the agreed order approving the Fitzgerald settlement, Brian Manookian emailed the Fitzgerald defendant's counsel asking that he "change the attorney for the Plaintiffs on the Order to Afsoon Hagh of Hagh Law." (Ex. O, Hagh Depo., Ex. 7, Aug. 21 Email.)

**RESPONSE:**

**Undisputed.**

68. Afsoon Hagh was cc'd on that email and did not correct Brian Manookian because she thought it was "correct" that the funds should go to her. (Hagh Depo., 69:6-10, 71:25-72:1.)

**RESPONSE:**

**Undisputed.**

69. The *Fitzgerald* court entered an agreed order, allowing certain funds to be released to Afsoon Hagh. (Hagh Depo., 72:5-8, 73:20-21; Doc. 2-8, Ex. H, AO.)

**RESPONSE:**

**Undisputed.**

70. In June 2019, Phillip Young, Jr. was appointed receiver over Debtor's accounts receivable to satisfy a state-court judgment against Debtor. (Young Depo., 10:12-11:20, 13:20-14:1, 14:20-24; Doc. 2-8, Ex. H, AO.)

**RESPONSE:**

**Undisputed as to fact, disputed as to materiality.**

71. When Receiver Young discovered that the *Fitzgerald* attorney's fees were being rerouted to Afsoon Hagh, he filed and obtained a temporary restraining order in the receivership case on August 23, 2019. (Doc. 2-7, Ex. G, First TRO.)

**RESPONSE:**

**Undisputed that the referenced exhibit is a preliminary and temporary restraining order. Disputed as to materiality.**

72. The state court entered an agreed order August 29, 2019, that released $760,000 of the fee to a Hagh Law IOLTA account, and the $590,000 remainder to Hagh Law's operating account. (Doc. 2, Exp'd Mot. for Turnover, ¶17; Doc. 2-8, Ex. H, AO.)

**RESPONSE:**

**Defendants do not dispute that the referenced order says what it says. Defendants dispute the materiality.**

73. Without court approval, Hagh Law moved the $760,000 trust funds to Afsoon Hagh's personal account at First Citizens Bank & Trust Co. (Doc. 2, Exp'd Mot. for Turnover, ¶18; Doc. 15, Order Grant'g Turnover Mot.)

**RESPONSE:**

**Disputed, moreover the cited "record" evidence is a disputed and preliminary Order in this case, not sworn testimony or discovery material.**

74. This Court ordered that the trust funds be deposited with the Bankruptcy Clerk, where they remain today. (Doc. 15, Order Grant'g Turnover Mot.; Doc. 32, Order Cont'g to Hold Turnover Funds.)

**RESPONSE:**

**Defendants rely on the substance of the Order to speak for itself.**

Date: November 25, 2025                                     Respectfully submitted,

                                                            */s/ John Spragens*
                                                            John Spragens (TN Bar No. 31445)
                                                            915 Rep. John Lewis Way S., Suite 100
                                                            Nashville, TN 37203
                                                            T: (615) 983-8900

F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC, Afsoon Hagh and Hagh Law PLLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed November 25, 2025 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*