**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE
DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235 Chapter 7** |
| | **Judge Walker** |
| **CUMMINGS MANOOKIAN, PLLC** | |
| **Debtor.** | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| **Plaintiff,** | |
| **v.** | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| **Defendants.** | |

**JOINT STIPULATIONS FOR TRIAL**

Plaintiff Jeanne Ann Burton ("Trustee"), Chapter 7 Trustee for Cummings Manookian, PLC (the "Debtor"), and Hagh Law, PLLC ("Hagh Law"), Afsoon Hagh ("Hagh") and Manookian, PLLC ("Manookian Law") (Hagh Law, Hagh, and Manookian Law, collectively the "Defendants") submit these Joint Stipulations for the trial of this matter on December 9, 2025.

1.    Cummings Manookian was formed as a professional limited liability company to provide legal services.

2.    Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

3.    Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

4.    Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if it recovered monies for their client.

5. Cummings Manookian entered into engagement agreements with its clients that laid out the duties and rights of both parties to the contract.

6. Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

7. The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

8. The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

9. The CM Engagement Agreement did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

10. Brian Cummings withdrew from Cummings Manookian effective September of 2018.

11. Brian Manookian was suspended from the practice of law effective December of 2018.

12. By January 1, 2019, Cummings Manookian had no members or partners with an active license to practice law.

13. On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

14. Exhibit 2 to the Defendants' Statement of Undisputed Material Facts ("SUMF") is a genuine copy of the attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.

15. On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

16. On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.

17. The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

18. The Fitzgerald Engagement Agreement is a binding contract upon Cummings Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

19. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

20. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

21. The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

22. The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

23. On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

24. On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

25. Exhibit 3 to the SUMF ("the Fitzgerald Withdrawal Letter") is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

26. The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

27. The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

28. The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

29. The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

30. On April 19, 2017, Cummings Manookian entered into an Agreement with Brett Keefer whose terms are contained in Exhibit 1 of the SUMF ("the Shoemaker Engagement Agreement.")

31. The Shoemaker Agreeement is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

32. The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

33. The Shoemaker Engagement Agreement is a binding contract upon Cummings Manookian and Brett Keefer.

34. The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

35. The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

36. The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

37. Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

38. The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

39. As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

40. The lawsuit in the Shoemaker matter was filed on February 11, 2019.

41. On February 11, 2019, Cummings Manookian had no members or partners with active

licenses to practice law.

42. The Shoemaker lawsuit was filed by Brian Cummings on behalf of Cummings Law.

43. The Shoemaker Case ultimately settled in 2021.

44. In the cases in which Cummings Manookian represented clients, Cummings Manookian did not own the client file or the cause of action.

45. Cummings Manookian never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time.

46. Manookian PLLC has never received any property of any kind belonging to Cummings Manookian.

47. Cummings Manookian has never transferred any property of any kind to Manookian PLLC.

48. Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

49. Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

50. The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.

51. Debtor's Operating Agreement states that, although suspended members "shall be deemed to have voluntarily withdrawn from the Company," the "existence and business of the Company shall be continued, without any affirmative action on the part of the Members, and the Company shall not be dissolved."

52. Afsoon Hagh worked on cases with other members of Debtor.

53. Afsoon Hagh had no title with Debtor.

54. Afsoon Hagh never received any salary or fee from Debtor.

55. Afsoon Hagh never received any ownership interest from Debtor.

56. Afsoon Hagh had an email address ending in "@cummingsmanookian.com" for a period

of time.

57.     Afsoon Hagh used Debtor's telephone number in her signature block for a period of time.

58.     If someone left a voicemail for Afsoon Hagh on Debtor's telephone, Afsoon Hagh would receive an emailed transcription of the voicemail.

59.     Afsoon Hagh had a physical office at Debtor's law office from March/April 2017 to June 2018.

60.     Post-June 2018, Afsoon Hagh worked from home after having had a baby.

61.     When Brian Manookian first heard about the *Fitzgerald* case, he called Afsoon Hagh because she had handled similar cases.

62.     Debtor's signed engagement letter with Marty and Melissa Fitzgerald said that Afsoon Hagh, Brian Manookian, and Brian Cummings would work on the case.

63.     Brian Cummings was never involved in the *Fitzgerald* case.

64.     In the *Fitzgerald* case, Afsoon Hagh met with the client, answered discovery, spoke with witnesses, scheduled depositions, sent discovery, and addressed insurance and billing issues.

65.     Brian Cummings withdrew from Debtor around August or September 2018.

66.     Brian Cummings then started his own firm in September 2018.

67.     Brian Manookian testified that he sent the December 7, 2018 letter by certified mail to the Fitzgeralds.

68.     Marty and Melissa Fitzgerald remember being told that Brian Manookian had been suspended from practicing law.

69.     Marty Fitzgerald understood that Brian Manookian's suspension meant that Brian Manookian could not represent him.

70.     Following Brian Manookian's December 2018 suspension, he filed a motion for him to withdraw from the *Fitzgerald* case, telling the court that "Afsoon Hagh continues to represent the Plaintiffs."

71.     In Brian Manookian's Motion to Withdraw, he and Afsoon Hagh are both listed under the

same Debtor signature block.

72. Following Brian Manookian's withdrawal, the Fitzgeralds noticed Afsoon Hagh take a more prominent role in their case.

73. Brian Manookian created a new law firm, Manookian, PLLC, on February 1, 2019.

74. Brian Manookian was Manookian PLLC's only member.

75. Manookian PLLC's practice focused on complex personal-injury and medical-malpractice cases.

76. Manookian PLLC's office was at 45 Music Square West.

77. Manookian PLLC used the same telephone number on pleadings that Debtor used on pleadings.

78. Manookian PLLC never signed a new engagement letter with the Fitzgeralds.

79. In the *Fitzgerald* case, Manookian PLLC's Brian Manookian took depositions and attended the final mediation.

80. Manookian PLLC ceased operations once Brian Manookian was suspended later in 2019, a second time.

81. Afsoon Hagh created a new law firm, Hagh Law, PLLC, on March 25, 2019.

82. Hagh Law PLLC's practice focused on car accidents and medical-malpractice cases.

83. Afsoon Hagh was Hagh Law PLLC's only member and attorney.

84. Hagh Law never filed a notice of address change in the *Fitzgerald* case.

85. Hagh Law never filed a notice of firm change in the *Fitzgerald* case.

86. Hagh Law never filed a notice of substitution of counsel in the *Fitzgerald* case.

87. In the *Fitzgerald* case, Afsoon Hagh filed motions and attended the final mediation.

88. The *Fitzgerald* case settled in August 2019 for $4,050,000.

89. In finalizing the agreed order approving the Fitzgerald settlement, Brian Manookian emailed the Fitzgerald defendant's counsel asking that he "change the attorney for the Plaintiffs on the Order to Afsoon Hagh of Hagh Law."

90.     Afsoon Hagh was cc'd on that email and did not correct Brian Manookian because she thought it was "correct" that the funds should go to her.

91.     The *Fitzgerald* court entered an agreed order, allowing certain funds to be released to Afsoon Hagh.

92.     Afsoon Hagh was never a W-2 employee of Cummings Manookian.

93.     Cummings Manookian never identified Afsoon Hagh as an employee to the Internal Revenue Service.

94.     Cummings Manookian never identified Afsoon Hagh as an employee to the Tennessee Department of Revenue.

95.     Cummings Manookian never filed any documents with any state, local, or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

96.     Afsoon Hagh was never a member or partner of Cummings Manookian.

97.     Afsoon Hagh never held an ownership interest in Cummings Manookian.

98.     Afsoon Hagh was never paid a salary by Cummings Manookian.

99.     Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

100.    Afsoon Hagh was never listed on Cummings Manookian's website.

101.    Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

102.    Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

103.    Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

104.    Cummings Manookian has never entered into a contract or written agreement with Manookian PLLC.

105.    Cummings Manookian does not own, and has never owned, any real property.

106.    Cummings Manookian does not own, and has never owned, 45 Music Square West,

Nashville, Tennessee 37203.

107. Defendants have never utilized cummingsmanookian.com as a website.

108. Under Tennessee law, a legal client's file is owned by the client.

109. Cummings Manookian does not now, nor has it ever, owned a client's case file.

110. Cummings Manookian does not own a client's case.

111. Any cause of action or right of recovery pursued by Cummings Manookian on behalf of a client belongs to the client.

112. Cummings Manookian provided no services to Manookian PLLC.

113. Cummings Manookian provided no services to Hagh Law.

114. Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in the Fitzgerald v. Osborn matter.

115. The Fitzgeralds did not terminate Cummings Manookian from representing them in the Fitzgerald v. Osborn matter.

116. Manookian PLLC has never received a transfer of funds from Cummings Manookian.

117. Manookian PLLC has never received any funds from Cummings Manookian.

118. Manookian PLLC has never received any funds belonging to Cummings Manookian.

119. Manookian PLLC has never received any monies from Hagh Law.

120. Manookian PLLC has never received any monies from Afsoon Hagh.

121. Manookian PLLC has never received any monies from any person or any entity.

122. Manookian PLLC does not now, nor has it ever, held a bank account.

123. Exhibit 1 to Plaintiff's Responses to Defendant's Second Set of Requests for Admission is a genuine copy of an attorney–client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

124. On April 19, 2017, Brian Cummings was a member of Cummings Manookian.

125. On April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 to Plaintiff's

Responses to Defendant's Second Set of Requests for Admission on behalf of Cummings Manookian.

126.  On April 1, 2017, Cummings Manookian entered into an agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1 to Plaintiff's Responses to Defendant's Second Set of Requests for Admission.

127.  The Shoemaker Engagement Agreement is a binding contract.

128.  The Shoemaker Engagement Agreement is binding upon Cummings Manookian.

129.  Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or the estate of Chesta Shoemaker.

130.  The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and any representative of the estate of Chesta Shoemaker.

131.  As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

132.  As of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

133.  As of March 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

134.  As of January 1, 2019, Cummings Manookian had no salaried employees.

135.  As of February 1, 2019, Cummings Manookian had no salaried employees.

136.  As of February 11, 2019, Cummings Manookian had no salaried employees.

137.  As of March 1, 2019, Cummings Manookian had no salaried employees.

138.  Cummings Manookian made no payments to any employee, as salary or otherwise, in 2020.

139.  Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

140.  Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

141.  Brian Cummings never signed a pleading in Shoemaker v. VUMC, Davidson County

Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

142. Brian Manookian never signed a pleading in Shoemaker v. VUMC, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

143. Cummings Manookian did not correspond with Brett Keefer or Edward Goodwin in 2019.

144. Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2020.

145. Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2021.

146. Cummings Manookian was not involved in negotiating any final terms of settlement in Shoemaker v. VUMC, Davidson County Circuit Court No. 19C358.

147. On May 23, 2018, Brian Manookian was a member of Cummings Manookian.

148. On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement on behalf of Cummings Manookian.

149. The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

150. Exhibit 3 to Defendant's Second Set of Requests for Admission is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

151. On December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

152. On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

153. On December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

154. On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

155. Exhibit 3 to Defendant's Second Set of Requests for Admission (the Fitzgerald Withdrawal Letter") is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa

Fitzgerald.

156. The genuineness of the Fitzgerald Withdrawal Letter is admitted pursuant to Fed. R. Civ. P. 36(a)(1)(B).

157. The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

158. The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

159. The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

160. The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

161. The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

162. The Fitzgerald Withdrawal Letter states that Cummings Manookian was disclaiming any attorney's fees in the Fitzgerald matter.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (BPR #021087)
THOMPSON BURTON, PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008
phillip@thompsonburton.com

*Special Counsel to Trustee*

/s/ John Spragens
John Spragens (BPR #031445)
915 Rep. John Lewis Way S.
Suite 100
Nashville, TN 37203
(615) 983-8900
john@spragenslaw.com

*Counsel to Defendants*